Aisha Tinker Bray
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Anchorage, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RONALD V. WEILBACHER,          )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )
PROGRESSIVE NORTHWESTERN       )
INSURANCE COMPANY,             )
                               )
          Defendant.           )
_____)     3:05-cv-204-JWS

MEMORANDUM IN SUPPORT OF
PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT

Progressive Northwestern Insurance Company
("Progressive") properly denied plaintiff Ronald V. Weilbacher's
insurance claim for an additional policy limit of underinsured
motor vehicle bodily injury liability ("UIMBI") coverage based on
the death of his daughter Heidi Weilbacher in an automobile
accident based on the clear, unambiguous terms of his Progressive
policy.  Since Progressive properly denied plaintiff's UIMBI claim,
Progressive cannot have committed bad faith as a matter of law.

<u>Standard of Review</u>

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions
> on file, together with the affidavits, if
> any, show that there is no genuine issue as
> to any material fact and that the moving
> party is entitled to a judgment as a matter
> of law.

Fed. R. Civ. P. 56(c).

> [S]ummary judgment shall be granted when,
> viewing the facts in the light most
> favorable to the nonmoving party, (1) there
> is no genuine issue of material fact, and
> (2) the moving party is entitled to summary
> judgment as a matter of law.  Once the
> moving party has satisfied his burden, he is
> entitled to summary judgment if the
> nonmoving party fails to designate, by
> affidavits, depositions, answers to
> interrogatories, or admissions on file,
> "specific facts showing that there is a
> genuine issue for trial."  *Celotex Corp. v.
> Catrett*, 477 U.S. 317, 324-25, 106 S.Ct.
> 2548, 91 L.Ed.2d 265 (1986) (internal
> quotation omitted). "The mere existence of a
> scintilla of evidence in support of the non-
> moving party's position is not sufficient."
> *Triton Energy*, 68 F.3d at 1221.  Factual
> disputes whose resolution would not affect
> the outcome of the suit are irrelevant to
> the consideration of a motion for summary
> judgment.  *Anderson v. Liberty Lobby, Inc.*,
> 477 U.S. 242, 248, 106 S.Ct. 2505, 91
> L.Ed.2d 202 (1986). In other words, "summary
> judgment should be granted where the
> nonmoving party fails to offer evidence from
> which a reasonable jury could return a
> verdict in its favor."  *Triton Energy*, 68
> F.3d at 1221.

<u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919

(9th Cir. 2001).

Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 2 of 24

"Bad faith," as that term is used in litigation between insurers and insureds, signifies a breach of the covenant of good faith and fair dealing that is implied by law in every contract. Breach of this implied covenant involves something beyond breach of the specific contractual duties. It implies *unfair dealing* rather than just mistaken judgment. It is an insurer's responsibility to act *fairly and in good faith* with respect to an insured's claim. This is not the "'requirement mandated by the terms of the policy itself--to defend, settle, or pay. It is the obligation . . . under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.'" "Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence *but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement*.

State Farm Fire & Casualty Co. v. Superior Court, 45 Cal. App. 4th 1093, 1104-1105 (Cal. Ct. App. 1996) (internal citations omitted).

In Alaska, contract interpretation is generally a matter of law. "[C]ontractual interpretation generally presents a question of law." ConocoPhillips Alaska, Inc. v. State, Dept. of Natural Resources, 2005 WL 182957, *6 (Alaska 2005). "[Q]uestions of interpretation of the meaning of written

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 3 of 24

documents are treated as questions of law for the court except
where they are dependent for their resolution on conflicting
extrinsic evidence.  Still v. Cunningham, 94 P.3d 1104, 1109
(Alaska 2004) (quoting Alaska Northern Dev., Inc. v. Alyeska
Pipeline Servs. Co., 666 P.2d 33, 39 (Alaska 1983)).  Whether
Progressive breached the insurance contract by denying
plaintiff's claim for an additional "each person" policy limit
for UIMBI is a question of contract interpretation, and, as
such, an matter of law.

Here, there are no genuine issues of material fact.
The only issue is the legal interpretation of the UIMBI policy
language.  Under the clear, unambiguous language of the policy,
plaintiff's damages under AS 09.15.010 for the loss of
consortium/loss of society of his daughter were included in the
"each person" UIMBI policy limit previously paid by Progressive
to the Estate of Heidi Weilbacher, plaintiff, and Cathy Mauro.
Under his policy, plaintiff is simply not entitled to an
additional, separate "each person" UIMBI policy limit as a
matter of law.

Additionally, "as a general rule there can be no claim
for bad faith when an insurer has promptly denied a claim that
is in fact not covered."  Medical Care Am., Inc. v. Nat'l Union
Fire Ins. Co., 341 F.3d 415, 425-26 (5th Cir. 2003).  See
Drennan v. Maryland Casualty Company, 2005 U.S. Dist. LEXIS

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 4 of 24

8305, *13–14 (D. Nev. April 25, 2005) ("If Plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for concluding that Maryland Casualty acted in bad faith."); <u>Truck Ins. Exch. v. Waller</u>, 828 P.2d 1384, 1388 (Mont. 1992) (where the policy excludes coverage, the bad faith claim fails as a matter of law).  Since Progressive did not breach the insurance contract, plaintiff's bad faith claim fails as a matter of law.  As a matter of law, Progressive cannot have committed any act of bad faith if its actions were valid and proper under the contract.

<u>Background</u>

On July 9, 2001, plaintiff's daughter, Heidi Weilbacher, died in a tragic automobile accident on the Glenn Highway near Anchorage.  Heidi was a passenger in an automobile driven by Robert M. Esper.  Although Mr. Esper was insured with Allstate Insurance Company, his coverage was insufficient to fully compensate all the victims of the accident.  Complaint at ¶VI.

At the time of the accident, plaintiff had an automobile policy with Progressive, Policy No. 65824951-0.  Exhibit A, certified copy of Progressive Policy No. 65824951-0.  On December 13, 2001, a claim was made on plaintiff's policy for underinsured motor vehicle bodily injury liability coverage

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 5 of 24

("UIMBI") on behalf of the Estate of Heidi Weilbacher,
plaintiff, and Heidi's mother Cathie Mauro.[1]  Exhibit B at
100283, Progressive's PACMAN notes[2], and Exhibit C at 100237-238.
Progressive promptly acknowledged this claim, however, as this
claim was for underinsured motor vehicle coverage and the
claimants had not yet resolved and received the policy limits
from all other relevant insurance policies, nothing could be
done at that time.  Exhibit C at 100235-236 & 100227.

On January 21, 2004, claimants notified Progressive
that they had finally exhausted all other policy limits and
formally requested UIMBI limits from Progressive.  Exhibit C at
100089.  On February 24, 2004, Progressive paid the full policy
limits for UIMBI for the claim of the Estate of Heidi Weilbacher
and the related, derivative claims of plaintiff and Cathie
Mauro.  Exhibit C at 100062.

Thereafter, in October 2004, plaintiff demanded that
Progressive pay him an additional, separate "each person" policy
limit under his policy's UIMBI coverage as an "insured person"
under his policy.  Exhibit D at 100048.  Correspondence ensued.
Exhibit D.  On March 14, 2005, Progressive initially denied
plaintiff's claim believing it to be one for negligent

---

[1]  A claim was also opened for medical payments coverage for the funeral
costs.  This claim was paid, and is not at issue in this litigation.  See
Exhibit B at 100312-100313.
[2]  Progressive's PACMAN notes are the computerized notes of the adjusters
regarding the claims at issue in this litigation.

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 6 of 24

infliction of emotional distress because plaintiff could not
satisfy the elements of such a claim having been in Kenai at the
time of his daughter's accident in Anchorage.  Id. at 100043.
On April 19, 2005, Progressive then denied plaintiff's more
amorphous claim for loss of society/loss of consortium,
presumably pursuant to AS 09.15.010.  Id. at 100030.
Progressive again fully acknowledged that plaintiff has UIMBI
coverage under his policy.  Id.  Progressive denied his claim,
however, on the grounds that his claim under AS 09.15.010 for
loss of consortium/loss of society was within the same "each
person" policy limit as the UIMBI claims it had already paid in
February 2004.  Id.

On August 11, 2005, plaintiff filed this action against
Progressive, claiming Progressive breached the insurance
contract and acted in bad faith by denying his claim for an
additional, separate UIMBI coverage policy limit for his loss of
society/loss of consortium claim under AS 09.15.010.  Complaint
at 2-3.  Plaintiff seeks both compensatory and punitive damages
based on his allegations.  Id.

## Discussion

In this matter, plaintiff seeks another, separate "each
person" policy limit of UIMBI coverage under his Progressive
policy for his claim under AS 09.15.010 based on the loss of his

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 7 of 24

daughter.  However, under the clear, unambiguous policy language of plaintiff's policy, plaintiff is not entitled to another, separate "each person" UIMBI policy limit.  Plaintiff's claim was included in the same "each person" UIMBI policy limit as the claims of the Estate of Heidi Weilbacher, himself, and Cathy Mauro already paid by Progressive.  As such, Progressive did not breach the insurance contract as a matter of law.

> Under PART III — UNINSURED/UNDERINSURED MOTORIST
COVERAGE, the policy provides,

> > Subject to the Limits of Liability, if **you** pay a premium for Uninsured/Underinsured Motorist Coverage for **bodily injury, we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury:**

> > 1.    sustained by an **insured person;**

> > 2.    caused by **accident;** and

> > 3.    arising out of the ownership, maintenance or use of an **uninsured/underinsured motor vehicle.**

Exhibit A at 100,375.  For purposes of UIMBI coverage, an "insured person" is defined as:

> > a.    **you** or a **relative;**

> > b.    any person **occupying** a **covered vehicle;** and

> > c.    any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a or b above.

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 8 of 24

<u>Id</u>. at 100,376.

It is undisputed that: (1) plaintiff is an "insured person" as the named insured, or **you**, under the policy, (2) plaintiff's daughter, Heidi, sustained serious bodily injury and died as the result of an automobile accident wherein she was a passenger in an underinsured motor vehicle, and (3) plaintiff is entitled to recover damages as a result of Heidi's death under AS 09.15.010 from the operator of the underinsured motor vehicle. It is assumed and not disputed for purposes of this discussion that Heidi was a "relative" of plaintiff and, thus, also an "insured person" under the policy since Heidi was living with plaintiff at the time of the accident.[3]  It is also assumed for purposes of this discussion that plaintiff's damages as a result of Heidi's death exceed the amounts plaintiff has already recovered from the various insurers involved.[4]

---

[3] Under the policy, a "relative" includes "a persons residing in the same household as [the named insured], and related to [the named insured] by blood." Exhibit A at 100,360 ¶10.  Since plaintiff and Ms. Mauro were divorced Heidi's residence changed as between her parents.

[4] Progressive reserves the right to refute and challenge this assumption that plaintiff's damages exceed the amounts already received, if necessary.  On information and belief, plaintiff received one-third of $92,362.50 ($30,787.50) from Allstate on his third-party bodily injury liability claim against the driver of the vehicle Robert Esper; one-third of $112,500 ($37,500) from Liberty Mutual, (Heidi's mother's insurer) on his UIMBI claim; and one-third of $117,256 ($39,085.33) from Progressive under this policy on his UIMBI claim.  <u>See</u> Exhibit C at 100067, 100068, & 100062.  As such, plaintiff has received a total of $107,372.83.

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 9 of 24

The issue in this case is not whether plaintiff is an "insured person" or whether plaintiff is entitled to any UIMBI coverage. The issue here is whether plaintiff is entitled to another, <u>separate</u> "each person" policy limit for his claim for loss of consortium/loss of society or whether his claim is subject to the "each person" policy limit already paid to the Estate of Heidi Weilbacher, plaintiff, and Cathy Mauro.

Although the issue of separate "each person" policy limits is generally discussed as being based on the characterization of the claim at issue as either direct or derivative, this characterization is not necessarily dispositive. Whether a claim is entitled to a separate "each person" policy limit depends not on the characterization of the claim, but on the policy language at issue.

The court most recently addressed the issue of whether a claim for loss of consortium/society triggered separate UM/UIM policy limits in <u>State Farm Mutual Automobile Insurance Company v. Dowdy</u>, 111 P.3d 337 (Alaska 2005). The Dowdys, whose daughter Heather was killed in a head-on collision, sought per person policy limits of UIMBI coverage ($100,000) under each of their three State Farm policies for NIED, loss of consortium, and punitive damages. <u>Id</u>. at 339. At the time the Dowdys made their claims, State Farm had already paid three separate per person UIMBI policy limits payments of $100,000 plus add-ons to

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 10 of 24

the Estate of Heather Dowdy (one per person policy limit under
each of the three policies). Id. State Farm filed a
declaratory judgment action to establish the rights of the
parties under the policies to another set of per person UIMBI
policy limits. Id. The Dowdys sought to stay the judicial
proceeding pending arbitration of the merits of their claims.
Id. On petition for review from an order to stay the judicial
proceedings, the Alaska Supreme Court addressed whether the
issues of coverage under the State Farm policies for the Dowdys'
claims were required to be arbitrated along with the merits of
the Dowdys' claims. Id. at 340.

In determining that the coverage issues were not
subject to arbitration, the court first considered the issue of
separate "per person" policy limits for the NIED and loss of
society claims. Id. at 341. With regard to the loss of
consortium/society claim, the court recalled,

> the issue may not be amenable to a
> definitive resolution, since much of the
> case law cited by the parties in their
> supplemental briefing seems to suggest that
> whether a loss-of-society claim should
> trigger separate "per person" coverage may
> hinge more on a particular policy's
> definition of the scope of its bodily injury
> coverage than on the inherent nature of a
> cause of action for loss of society.

Id. (quoting Wold v. Progressive Preferred Ins. Co., 52 P.3d
155, 166 n.36 (Alaska 2002)). The court then held,

> An added layer of complexity in determining
> these coverage issues, therefore, is that

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 11 of 24

many variations exist in policy language and
scope.  As our footnote in *Wold* suggests,
these variations may prevent the court from
making a broad or general determination as
to whether separate policy limits apply and
may require a specialized analysis of the
policy language in questions.

<u>Dowdy</u>, at 341.[5]  Thus, whether an insurance claim triggers a

separate "each person" policy limit under UIMBI coverage depends

on the particular policy language at issue.


        In this case, the clear, unambiguous policy language

defines what constitutes an "each person" policy limit, and

plaintiff's loss of consortium/society claim does not qualify

for a separate policy limit as a matter of law.  Under the

LIMITS OF LIABILITY section of Part III, the policy provides,

        If **your Declarations Page** shows a split limit:

        1. the amount shown for "each person" is the
        most **we** will pay for all damages due to a
        **bodily injury** to one (1) person;

        2. subject to the "each person" limit, the
        amount shown for "each accident" is the most
        **we** will pay for all damages due to **bodily
        injury** sustained by two (2) or more persons
        in any one (1) accident;

                        * * *

        The **bodily injury** Limit of Liability under
        this Part III for "each person" includes the
        total of all claims made for such **bodily
        injury** and all claims derived from such
        **bodily injury**, including, but not limited
        to, loss of society, loss of companionship,

---

[5]  Notably, the court's holding that the "coverage issues" depend on policy
language may apply equally to an NIED claim such that an NIED claim is not
automatically a separate per person limit.  However, NIED is not at issue in
this case.

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 12 of 24

loss of services, loss of consortium, and
wrongful death.

Exhibit A at 100,383.  Plaintiff's policy provides split limits
of "$100,000 EACH PERSON" and "$300,000 EACH ACCIDENT" for UIMBI
coverage.  Id. at 100,344.


   The policy unambiguously provides that the "each
person" limit is the most Progressive will pay for all damages
due to bodily injury to one person.  Id. at 100,383.  Heidi
Weilbacher is the only "insured person" for purposes of UIMBI to
have sustained bodily injury in the accident.  Plaintiff's claim
under AS 09.15.010 is due to the death of or bodily injury
sustained by his daughter Heidi Weilbacher.  Complaint at ¶VII.
Plaintiff's claim under AS 09.15.010 is the result of injury to
another or "due to a bodily injury to one (1) person" — Heidi
Weilbacher.  The policy specifically states that the bodily
injury limit for "each person" includes: the total of all claims
made for bodily injury to the one person, plus all claims
derived from such bodily injury.  Exhibit A at 100,383.  The
"each person" UIMBI policy limit included all claims made based
on Heidi Weilbacher's death and all claims stemming from or as a
result of her death.  As a result, all of plaintiff's damages,
including his current claim, are subject to the same "each
person" policy limit as Heidi Weilbacher's claim.  Progressive
paid precisely this claim on February 24, 2004.  Exhibit C at
100062.  Progressive paid the full "each person" policy limit

Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 13 of 24

for all claims of the Estate of Heidi Weilbacher and all derivative claims of plaintiff and Cathie Mauro.  <u>Id</u>.  Under the clear, unambiguous policy language, there is simply no more UIMBI coverage available for plaintiff's current claim.  As a matter of law, Plaintiff has already exhausted the available "each person" policy limit of his UIMBI coverage.

Also, the policy specifically provides that in order for the "each accident" provision to apply two or more insured persons must be injured in the same accident.  "[S]ubject to the 'each person' limit, the amount shown for 'each accident' is the most **we** will pay for all damages due to **bodily injury** sustained by two (2) or more persons in any one (1) accident."  Exhibit A at 100,383.  Although plaintiff and Heidi Weilbacher are both "insured persons" under the policy, only Heidi sustained "bodily injury" in the accident in question.  <u>See</u> <u>infra</u>.  "Bodily injury" under the policy includes "bodily harm, sickness, or disease."  Exhibit A at 100,358 ¶2.  Plaintiff was in Kenai at the time of the accident.  Exhibit E, Transcript of February 20, 2002 interview of Ronald Weilbacher.  He did not suffer any bodily harm, sickness, or disease in the accident.  <u>Id</u>.  As claimed herein, plaintiff's damages are for "the loss of his daughter."  Complaint at ¶¶VII, IX & 1.

Plaintiff has insisted that Progressive wrongly denied his claim under AS 09.15.010 because Cathie Mauro's insurer,

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 14 of 24

Liberty Mutual Insurance Company, agreed to pay her similar claim under her insurance policy's UIMBI coverage.[6]  What plaintiff conveniently overlooks, however, is that each insurance policy must be evaluated separately based on its own language.  Dowdy, at 341 ("whether separate policy limits apply and may require a specialized analysis of the policy language in questions").  It is immaterial for purposes of plaintiff's claim under his Progressive policy whether Ms. Mauro's policy with a different insurer and different policy language provides her an additional, separate per person policy limit for her loss of consortium/loss of society claim.  See Exhibit F, Ms. Mauro's UIMBI provision.[7]

Plaintiff again overlooks the plain language of his policy and instead asserts that he is entitled to a separate "each person" policy limit based on the Alaska Supreme Court's holding in Allstate Insurance Company v. Teel, 100 P.3d 2 (Alaska 2004).  Plaintiff's reliance is again misplaced.

In Teel, the Alaska Supreme Court held that the mother of the deceased child who was a passenger in the tortfeasor's vehicle could recover for her NIED claim under the tortfeasor's

---

[6]  Notably, as of the end of December 2005, Liberty Mutual had not actually paid Ms. Mauro's claim.
[7]  In fact, Ms. Mauro's policy language is significantly distinct from the Progressive policy language at issue.  Exhibit F is the UIMBI provision for Ms. Mauro's Liberty Mutual policy provided by plaintiff's attorney to Progressive on May 29, 2002.  Exhibit C at 100134.  A complete copy of the policy provided was disclosed and is available upon request.

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 15 of 24

UIM coverage because her damages were legally caused by and the foreseeable result of injury to an insured person (her child).[8] The issue in Teel was whether the mother was an "insured person" under the tortfeasor's policy.  Under UM/UIM coverage, the tortfeasor's Allstate policy defined an "insured person" as,

> 1.   **You** and any resident relative;
>
> 2.   Any person while in, on, getting into or out of **your** insured auto;
>
> 3.   Any other person who is legally entitled to recover because of bodily injury to **you**, a **resident** relative, or an occupant of **your** insured auto.

Id. at *4 (removed information replaced).  Since Teel was seeking UIM coverage under the tortfeasor's policy, was not related to the tortfeasor, and was not in the vehicle at the time of the accident, she could only be an "insured person" under the third definition: "any other person who is legally entitled to recover because of bodily injury to an occupant of [the] insured auto."  Id.

Allstate argued that this policy language only covered derivative claims brought by third parties, such as loss of consortium or reimbursement for funeral expenses.  Id.  The court disagreed, following the principle that unambiguous language in insurance contracts will be interpreted to give effect to the reasonable expectations of a layperson.  Id. at

---

[8]  Teel had already recovered policy limits for her NIED claim under her own Allstate underinsured motorist coverage.  Id. at *3.

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 16 of 24

*6.  The court held that Allstate's policy provided coverage to "an individual who is legally entitled to recover because of bodily injury to an occupant of the insured vehicle." <u>Id</u>. at *6.  "Under both common and legal parlance, a successful NIED claim would be "because of" injury to an occupant of the insured vehicle." <u>Id</u>. at *7.  Thus, if Teel could prove all elements of her bystander NIED claim, then her claim was "because of" -- legally caused by and the foreseeable result of -- the bodily injury suffered by her son, who was an occupant of the insured auto.  <u>Id</u>. at *5.

The court dismissed Allstate's argument that the policy language excluded all direct or non-derivative claims such as Teel's NIED claim.  <u>Id</u>.  The court held, "The fact that Teel's recovery is direct and not derivative does not extinguish the casual relationship between the accident and her injury, as required by the policy." <u>Id</u>. at 7.

> [T]he disputed policy provision does not limit coverage to derivative injuries, but rather provides coverage for those whose injuries are legally caused by and are the foreseeable result of injury to an insured, resident relative, or occupant of the insured vehicle . . ..

<u>Id</u>.

The court's decision in <u>Teel</u>, however, is not dispositive of the issue in this case — whether plaintiff is entitled to another, separate "each person" UIMBI policy limit

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 17 of 24

under his own policy for his claims under AS 09.15.010.  Unlike
in <u>Teel</u>, plaintiff is already an "insured person" under his
policy without regard to the third prong of the definition —
plaintiff is the named insured.

It is not disputed that plaintiff has UIMBI coverage
under his policy.  He is the named insured, and he, like in the
mother in <u>Teel</u>, is entitled to recover damages "because of"
bodily injury sustained in the automobile accident by his child,
an insured person under the UIMBI provisions of the policy.  <u>See</u>
<u>infra</u>.  Progressive does not dispute that plaintiff's loss of
consortium/loss of society claim under AS 09.15.010 is "because
of" injury to his daughter Heidi.  By definition, it must be.
<u>See</u> AS 09.15.010 (parent's right of action for death of child);
<u>Gillispie v. Beta Const. Co.</u>, 842 P.2d 1272, 1274 (Alaska 1992)
(holding "that a parent's right of action under AS 09.15.010
includes the right to recover loss of society damages.").  In
fact, plaintiff was paid the full policy limit of UIMBI coverage
available along with the Estate of Heidi Weilbacher and Cathy
Mauro.  Exhibit C at 100062.  What plaintiff is NOT entitled to
is another, separate "each person" UIMBI policy limit.  Under
the clear, unambiguous policy language, plaintiff's claim is
subject to the "each person" UIMBI policy limit already paid.
Exhibit A at 100,383.  Thus, Progressive did not breach the
insurance contract with plaintiff in denying plaintiff a second
"each person" UIMBI policy limit.

Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 18 of 24

Additionally, plaintiff cannot prevail on his extracontractual bad faith claim since Progressive properly denied his UIMBI claim.  The factual predicate to plaintiff's bad faith claim is whether Progressive breached the insurance contract by denying his claim for UIMBI coverage.  "[A]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."  <u>Medical Care Am.</u>, 341 F.3d at 425-26.  "If Plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for concluding that [the insurer] acted in bad faith."  <u>Drennan</u>, 2005 U.S. Dist. LEXIS 8305, *13-14.  Since Progressive did not breach the insurance contract in denying plaintiff additional UIMBI coverage for his loss, plaintiff's bad faith claim is moot.  Progressive cannot have committed bad faith as a matter of law because its actions were valid and proper under the insurance contract.

Also, the law in Alaska is clear: the tort of insurance bad faith in first party cases requires proof that, at the time of the insurer's denial of the claim, there was no "reasonable basis" for the denial.  <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993).

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.  It is apparent, then, that the tort of bad faith is an intentional

Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 19 of 24

one.  "Bad faith" by definition cannot be
unintentional . . . bad faith is the absence
of honest, intelligent action or
consideration based upon a knowledge of the
facts and circumstances upon which a
decision in respect to liability is
predicated . . ..

* * *

The tort of bad faith can be alleged only if
the facts pleaded would, on the basis of an
objective standard, show the absence of a
reasonable basis for denying the claim,
    i.e., would a reasonable insurer under
the circumstances have denied or delayed
payment of the claim under the facts and
circumstances.

Id. (quoting Anderson v. Continental Insurance Co., 271 N.W.2d 368,

376-77 (Wis. 1978) (citations omitted)).  "The tort of bad faith

arises when the insurance company intentionally denies, fails to

process, or pay a claim without a reasonable basis for such

action."  Id. (quoting Noble v. National American Life Insurance

Co., 624 P.2d 866, 868 (Ariz. 1981)).  See e.g., On Air

Entertainment Corp. v. National Indem. Co., 210 F.3d 146, 153 (3rd

Cir. 2000) ("the insured must show the absence of a reasonable

basis for denying benefits of the policy").

Here, plaintiff's sole basis for his allegation that

Progressive committed bad faith is that Progressive denied his

demand for a second, separate "each person" UIMBI policy limit.

Complaint at ¶IX.  The totality of the facts pled, based on an

objective standard, would NOT show the absence of a reasonable

basis for Progressive's denial of plaintiff's claim.  Progressive

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 20 of 24

promptly and properly denied plaintiff's request for an additional "each person" policy limit of UIMBI coverage based on the prior payment of a full "each person" UIMBI policy limit to plaintiff, the Estate of Heidi Weilbacher, and Cathy Mauro.  See Exhibit C at 100062.  Thus, as a matter of law, Progressive did NOT consciously and deliberately unfairly frustrate the agreed purposes of the insurance policy and did NOT disappoint the reasonable expectations of plaintiff or deprive plaintiff of the benefits of the contract. Plaintiff was not entitled to a second, separate "each person" UIMBI policy limit under the clear, unambiguous policy language. Thus, Progressive could not have committed bad faith in properly denying coverage that was not owed.

## Conclusion

There are no genuine issues of material fact and Progressive is entitled to summary judgment on all of plaintiff's claims as a matter of law.  Plaintiff's daughter Heidi Weilbacher died in an automobile accident while the passenger in an underinsured motor vehicle.  Plaintiff is an "insured person" for purposes of UIMBI coverage under his own policy and entitled to UIMBI coverage up to the applicable policy limits for such coverage.  Plaintiff, along with the Estate of Heidi Weilbacher and Cathy Mauro, received the full "each person" UIMBI policy limit on February 24, 2004.  Progressive then properly denied plaintiff's claim for another, separate "each person" policy limit of UIMBI

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 21 of 24

coverage.  Under the clear, unambiguous policy language, plaintiff's claim for damages pursuant to AS 09.15.010 is specifically included in the "each person" policy limit already paid to plaintiff, the Estate of Heidi Weilbacher, and Ms. Mauro. Plaintiff has simply exhausted his UIMBI insurance coverage.  As a matter of law, plaintiff is not entitled to another "each person" policy limit of UIMBI coverage.  Since Progressive properly denied plaintiff's claim for another, separate "each person" policy limit under his UIMBI coverage, Progressive cannot have committed bad faith as a matter of law.  As such, Progressive requests that this court granted summary judgment in its favor on all of plaintiff's claims and dismiss all of plaintiff's claims with prejudice.

DATED at Fairbanks, Alaska, this 23rd day of January, 2006.

GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company

By: _____s/Aisha Tinker Bray_____
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska  99701
Phone: 907-452-8986
Fax:   907-452-7015
Email: atbray@guessrudd.com
Alaska Bar No. 9505028

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 22 of 24

CERTIFICATE OF SERVICE

I hereby certify that on the
23rd day of January, 2006, a copy
of the foregoing document was served
on either electronically or by U.S. Mail:

Kenneth A Legacki, Esq.

Guess & Rudd P.C.

By: ____s/Aisha Tinker Bray____

Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 23 of 24

Table of Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Certified copy of Progressive Policy No. 65824951-0 (Bates Nos. 100,342-100,409) |
| B | PACMAN adjuster notes (Bates Nos. 100283-100335) |
| C | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding first claim for UIMBI policy limits (Bates Nos. 100235—239, 100232-233, 100227, 100178-179, 100132-134, 100125,100122-123, 100101, 100097-098, 100088-90, 100062-069)[9] |
| D | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding plaintiff's subsequent, separate claim for UIMBI policy limits (Bates Nos. 100047-048, 100041-044, 100028-032)[10] |
| E | Transcript of February 20, 2002 recorded interview of Ronald Weilbacher (Bates Nos. 100001-100016) |
| F | UIMBI provisions of Cathy Mauro's Liberty Mutual policy (Bates Nos. 100154-100156) |

---

[9] Correspondence is arranged in chronological order rather than Bates number sequence.
[10] Correspondence is arranged in chronological order rather than Bates number sequence.

Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion for Summary Judgment
Page 24 of 24