*5200. 120*

**RECEIVED**

# KENNETH W. LEGACKI, P. C.
### ATTORNEY AT LAW

JUN 2 6 2006

**GUESS & RUDD**

425 "G" STREET, SUITE 920
ANCHORAGE, ALASKA 99501

TELEPHONE: (907) 258-2422
FACSIMILE: (907) 278-4848
E-MAIL: legacki@gci.net

June 23, 2006

**VIA FACSIMILE**

Ms. Aisha Tinker Bray
Attorney at Law
Guess & Rudd, P.C.
100 Cushman Street, Suite 500
Fairbanks, AK  99701-4659

RE:     Weilbacher vs. Progressive
            Claim No.             :  017489548
            Your File No.        :  5200.120

Dear Aisha:

I am asking you to reconsider your objections to producing discovery requested in Weilbacher's First Set of Discovery Requests.  I am writing to see if we can reconcile your objections to producing this discovery.  It appears to me that your objections are inappropriate and are not well founded.

You acknowledge that the production Mr. Weilbacher seeks is relevant or may lead to relevant information in this case.  Progressive's discovery responses stated:

> While Progressive anticipates that both it and plaintiff will cite such legal interpretations, if any are found, as persuasive authority in support of their interpretation of the quoted policy provision under Alaska law, the Civil Rules do not require Progressive to do plaintiff's legal research for him.

In stating your objection to Interrogatory No. 3, you object to producing business records that have been compiled by Progressive in the normal course of business regarding any court decisions interpreting the policy in dispute in this case.  You readily acknowledge in your response to Interrogatory No. 1 that Kelly Rubesne, a Progressive employee, oversees the policy contracts database for Alaska, but you refused to list others who oversee the database for other states.  You refused to list any other individuals who oversee data regarding trial court interpretations regarding the policy language that is germane to this case.  You state that these decisions are a matter of public record, but as

EXHIBIT_____O_____
Page____1____of__4__

Ms. Aisha Tinker Bray
June 23, 2006
Page 2


you know, most <u>trial</u> court decisions are not readily available for public consumption because they are just distributed to the parties. These decisions are generally not placed on the Internet, nor are they easily available to the public. This is the situation for not only federal trial court decisions, but state court decisions as well. Progressive confirms that it keeps a database containing relevant evidence in the normal course of business with these cases easily accessible to Progressive. Progressive refuses to produce such evidence which directly bears on the critical policy language.

You readily acknowledge that the issue in this case has been contested numerous times by other insureds, otherwise why would you make the statement that the discovery requested is burdensome? You readily acknowledge that Progressive keeps track of all the litigated cases that deal with the interpretation of this policy language, and that <u>you</u> intend to rely on this database in this case to support Progressive's position. Clearly then, it would not be burdensome to produce the requested discovery.

You also state that these "public documents" that are retained by Progressive in a database are also protected under the attorney work product or attorney-client privileges. It appears that your argument regarding the attorney work product or attorney-client privilege is contradicted by your other argument that these documents are public records and that these decisions are routinely kept in the normal course of business. Obviously, a decision by a court cannot be attorney work product nor could it be protected by the attorney-client privilege. So your argument that the electronic files of court decisions routinely kept by Progressive are protected as attorney work product or attorney-client privilege is disingenuous. <u>See</u> <u>McGarry v. Holland America Line-Westours, Inc.</u>, 2003 U.S. Dist. LEXIS 25668.

You also acknowledge in your response to the interrogatory that you intend to rely on these legal interpretations of court cases to support your position. Clearly then, your statement that the information that the plaintiff seeks in Interrogatory No. 3 is not going to lead to discoverable information is actually dishonest and a disingenuous statement.

Your objections to Interrogatory No. 4 are the same objections that you gave to Interrogatory No. 3, and my response to your objections is the same. Your objections are internally inconsistent. You say that you intend to rely on this information for your case before the Court, which belies your argument that the information sought is not relevant and will not lead to relevant information. You also acknowledge the documents are public records and therefore do not need to produce them, but then again you object to

EXHIBIT___O___
Page___2___of___4___

Ms. Aisha Tinker Bray
June 23, 2006
Page 3


production of the documents that are public records based on the attorney work product or attorney-client privilege. Clearly, your arguments are disingenuous and dishonest and basically are committing a fraud upon the Court.

In response to your objections to Request for Production No. 1, you also acknowledge that you intend to rely on this information in presenting your case to the Court, which states that the information would be relevant to this case. The drafting history of this policy provision is relevant because it would lead to information to see whether, when drafting this policy, Progressive intended to preclude the statutory right of action for loss of society by the parent, and if so, then it would be in contravention of the state policy which would nullify the language. See State Farm Mut. Auto. Ins. Co. v. Harrington, 918 P.2d 1022 (Alaska 1996). It would also show whether Progressive was aware of the state statute when drafting this language and whether it intended to incorporate the mandates of the state statute in this language. If Progressive was aware of the statute, AS 09.15.010, when drafting the policy language, then it would be acting unlawfully and in bad faith.

The drafting history would also show how Progressive interpreted loss of society when drafting this language and whether it only pertained to the common law claim of a child's or spouse's loss of society, which would be different from the statutory claim of parental loss of society. The history of this language would show whether the provision actually intended to exclude the statutory parent's loss of society direct claim, which is permitted by statute in Alaska, and not just a common law claim as is a child's or spouse's loss of consortium or society claim.

The argument that the information is attorney work product and attorney-client privilege is specious when the contract and the intent of the contract is at issue and therefore the drafting of the contract is relevant in order to show the intent of the contract. This intent is discoverable, even if the contract was drafted by attorneys.

Your responses to Request for Production Nos. 2 and 3 are really inappropriate in that, as you readily acknowledge in your objections, the Alaska Supreme Court has stated in Dowdy that Progressive in Wold argued that the insureds did not exhaust their policy limits because they did not make a separate claim for loss of society as a direct action for the parent. Your assertion that the Alaska Supreme Court was wrong and did not know what they were talking about does not preclude me from looking at business records.

EXHIBIT _O_
Page_3_ of _4_

Ms. Aisha Tinker Bray
June 23, 2006
Page 4


Correspondence between the adjuster and the attorney would not generally be part of the public record, nor would the claims files. Pursuant to Langdon v. Champion, the records are not privileged information. The correspondence from the adjusters in Wold addressed to opposing counsel and other internal business records would help shed light as to whether the Supreme Court of Alaska misinterpreted Wold's position in the Dowdy decision as you assert. Mr. Weilbacher has the right to look at that information to see whether those issues were discussed and what Progressive's position was in Wold and not just accept your assertion on what the issues were in Wold. Therefore, since the discovery rules allow me to take a look at that information, your objection is unfounded. The documents in Wold also would show that Progressive had knowledge of the Gillespie issue, and would show its actions in response to it.

Aisha, I would hope that you would reconsider your objections to producing the requested discovery because, as you readily acknowledge in your responses and objections, Progressive anticipates that it will cite to the documents plaintiff has requested in further motions to the Court. As Judge Sedwick stated in Kyte v. Progressive, "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth."

Since Progressive will rely on records Weilbacher seeks, and the information in the requested records is relevant, discovery should be produced.

Please reconsider your decision and answer the interrogatories and produce the requested documents.

Sincerely,

KENNETH W. LEGACKI, P.C.

Kenneth W. Legacki

KWL/ksh
cc:    Gary Zipkin, Esq.

EXHIBIT ___O___
Page___4___ of ___4___