Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PROGRESSIVE NORTHWESTERN )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>_____ ) | 3:05-cv-204-TMB |

MEMORANDUM IN SUPPORT OF
<u>PROGRESSIVE'S RENEWED MOTION FOR SUMMARY JUDGMENT</u>

Progressive Northwestern Insurance Company
("Progressive") properly denied plaintiff Ronald V. Weilbacher's
insurance claim for an additional, separate "each person" policy
limit of underinsured motor vehicle bodily injury liability
("UIMBI") coverage for his loss of society/loss of consortium claim
under AS 09.15.010 based on the clear, unambiguous terms of his
Progressive policy.  Since Progressive both properly denied
plaintiff's UIMBI claim and had a reasonable basis for its
decision, Progressive cannot have committed the tort of insurance
bad faith as a matter of law.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 1 of 40

Standard of Review

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions
> on file, together with the affidavits, if
> any, show that there is no genuine issue as
> to any material fact and that the moving
> party is entitled to a judgment as a matter
> of law.

Fed. R. Civ. P. 56(c).

> [S]ummary judgment shall be granted when,
> viewing the facts in the light most
> favorable to the nonmoving party, (1) there
> is no genuine issue of material fact, and
> (2) the moving party is entitled to summary
> judgment as a matter of law.  Once the
> moving party has satisfied his burden, he is
> entitled to summary judgment if the
> nonmoving party fails to designate, by
> affidavits, depositions, answers to
> interrogatories, or admissions on file,
> "specific facts showing that there is a
> genuine issue for trial."  Celotex Corp. v.
> Catrett, 477 U.S. 317, 324-25 [] (1986)
> (internal quotation omitted). "The mere
> existence of a scintilla of evidence in
> support of the non-moving party's position
> is not sufficient."  Triton Energy, 68 F.3d
> at 1221.  Factual disputes whose resolution
> would not affect the outcome of the suit are
> irrelevant to the consideration of a motion
> for summary judgment.  Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 248 [] (1986). In
> other words, "summary judgment should be
> granted where the nonmoving party fails to
> offer evidence from which a reasonable jury
> could return a verdict in its favor."
> Triton Energy, 68 F.3d at 1221.

Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919

(9th Cir. 2001).

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 2 of 40

In Alaska, contract interpretation is generally a matter of law. "Where no facts are in dispute, 'interpretation of the words of the contract is treated in the same manner as questions of law.'" Maynard v. State Farm Mut. Auto. Ins. Co., 902 P.2d 1328, 1329 (Alaska 1995) (quoting National Bank of Alaska v. J.B.L. & K. of Alaska Inc., 546 P.2d 579, 586 (Alaska 1976)). "[Q]uestions of interpretation of the meaning of written documents are treated as questions of law for the court, except where they are dependent for their resolution on conflicting extrinsic evidence." Still v. Cunningham, 94 P.3d 1104, 1109 (Alaska 2004) (quoting Alaska Northern Dev., Inc. v. Alyeska Pipeline Servs. Co., 666 P.2d 33, 39 (Alaska 1983)). Whether Progressive breached the insurance contract by declining to pay Mr. Weilbacher an additional, separate "each person" policy limit for UIMBI is a question of contract interpretation and, as such, an matter of law.

Here, there are no genuine issues of material fact. The only issue is the legal interpretation of the UIMBI policy language. Under the clear, unambiguous language of the policy, Mr. Weilbacher's damages for his claim under AS 09.15.010 for loss of consortium/society were properly included in the "each person" UIMBI policy limit previously paid by Progressive. Under his policy, Mr. Weilbacher is simply not entitled to an additional "each person" UIMBI policy limit as a matter of law.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 3 of 40

Additionally, "as a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." <u>Medical Care Am., Inc. v. Nat'l Union Fire Ins. Co.</u>, 341 F.3d 415, 425-26 (5th Cir. 2003). <u>See Drennan v. Maryland Casualty Company</u>, 2005 U.S. Dist. LEXIS 8305, *13-14 (D. Nev. April 25, 2005) ("If plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for concluding that Maryland Casualty acted in bad faith."); <u>Truck Ins. Exch. v. Waller</u>, 828 P.2d 1384, 1388 (Mont. 1992) (where the policy excludes coverage, the bad faith claim fails as a matter of law). Since Progressive did not breach the insurance contract, Mr. Weilbacher's bad faith claim fails as a matter of law. As a matter of law, Progressive cannot have committed any act of bad faith since its actions were valid and proper under the terms of the contract of insurance.

The law in Alaska is also clear that the tort of bad faith in first-party cases requires proof that, at the time of the insurer's denial of the claim, there was no "reasonable basis" for the denial. <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993); <u>Peter v. Progressive Northwestern Ins. Co.</u>, S-11416/11445 (Alaska February 22, 2006).[1] Progressive's reliance on its clear, unambiguous policy language

---

[1]  Judges and lawyers may rely on unpublished decisions for whatever persuasive power those decisions might have. <u>McCory v. State</u>, 80 P.3d 757 (Alaska App. 2002).

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 4 of 40

and advice of counsel are reasonable bases for its decisions in this case as a matter of law.

<u>Background</u>

On July 9, 2001, Mr. Weilbacher's daughter, Heidi Weilbacher, died in a tragic automobile accident on the Glenn Highway near Anchorage.  Heidi was a passenger in an automobile driven by Robert M. Esper.  Although Mr. Esper was insured with Allstate Insurance Company, his coverage was insufficient to fully compensate all the victims of the accident.  Complaint at ¶VI.

At the time of the accident, Mr. Weilbacher had an automobile policy with Progressive, Policy No. 65824951-0. Exhibit A, certified copy of Progressive Policy No. 65824951-0. On December 13, 2001, a claim was made on Mr. Weilbacher's policy for underinsured motor vehicle bodily injury liability coverage ("UIMBI") on behalf of the Estate of Heidi Weilbacher, Mr. Weilbacher, and Heidi's mother, Cathie Mauro.[2]  Exhibit B at 100283, Progressive's PACMAN notes[3], and Exhibit C at 100237-238,

---

[2]  A claim was also opened for medical payments coverage for the funeral costs.  This claim was paid, and is not at issue in this litigation.  <u>See</u> Exhibit B at 100312-100313.

[3]  Progressive's PACMAN Face Sheet Notes are the computerized notes of the adjuster and others regarding the claim<u>s</u> submitted under Mr. Weilbacher's policy.  <u>See</u> Exhibit J at 19:6-11.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 5 of 40

correspondence.  Progressive promptly acknowledged this claim.
However, as this claim was for underinsured motor vehicle
coverage and the claimants had not yet resolved and received the
policy limits from all other relevant liability insurance
policies, UIMBI coverage was not triggered and nothing could be
done at that time.  Exhibit C at 100235-236 and 100227.

On January 21, 2004, claimants notified Progressive
that they had finally exhausted all other policy limits and
formally requested UIMBI policy limits from Progressive.
Exhibit C at 100089.  On February 24, 2004, Progressive paid the
full policy limits for UIMBI coverage for the claim of the
Estate of Heidi Weilbacher and all related, derivative claims of
Mr. Weilbacher and Cathy Mauro.  Exhibit C at 100062.

Thereafter, in October 2004, Mr. Weilbacher demanded
that Progressive pay him an additional, separate "each person"
policy limit under his policy's UIMBI coverage.  Exhibit D at
100048, correspondence.  Correspondence between Mr. Weilbacher
and Progressive ensued.  Exhibit D.  On October 29, 2004,
Progressive initially denied Mr. Weilbacher's claim, believing
it to be one for negligent infliction of emotional distress
("NIED") because Mr. Weilbacher could not satisfy the elements
of such a claim having been in Kenai at the time of his
daughter's death in Anchorage.  Id. at 100047.  On April 19,
2005, Progressive denied Mr. Weilbacher's more amorphous claim

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 6 of 40

under AS 09.15.010 for loss of society/loss of consortium.  Id.
at 100030.  Progressive again fully acknowledged that
Mr. Weilbacher has UIMBI coverage under his policy.  Id.
Progressive denied his claim, however, on the grounds that his
claim under AS 09.15.010 for loss of consortium/loss of society
was within the same "each person" policy limit as the UIMBI
claims it had already paid in February 2004.  Id.  In other
words, Mr. Weilbacher's claim was not denied on the basis of
lack of UIMBI coverage.  Plaintiff's claim was denied on the
basis that it was already paid.

        On August 11, 2005, Mr. Weilbacher filed this action
against Progressive, claiming Progressive breached the insurance
contract and acted in bad faith by denying his claim for an
additional, separate "each person" UIMBI coverage policy limit
for his loss of society/loss of consortium claim under
AS 09.15.010.  Complaint at 2-3.  Mr. Weilbacher seeks both
compensatory and punitive damages based on his allegations.  Id.
He is entitled to neither as a matter of law.

Discussion

A. Breach of Contract - UIMBI Coverage

        In this matter, Mr. Weilbacher seeks another, separate
"each person" policy limit of UIMBI coverage under his
Progressive policy for his claim under AS 09.15.010 for loss of

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 7 of 40

society/consortium as a result of the loss of his daughter.
However, under the clear, unambiguous policy language of
Mr. Weilbacher's policy, he is not entitled to another, separate
"each person" UIMBI policy limit.  Mr. Weilbacher's claim was
included in the same "each person" UIMBI policy limit as the
claims of the Estate of Heidi Weilbacher, himself, and Cathy
Mauro previously paid by Progressive.  As such, Progressive did
not breach the insurance contract as a matter of law.

As a preliminary matter, Mr. Weilbacher has admitted
that his claim in this matter is solely for loss of society/loss
of consortium under AS 09.15.010 as a result of the loss of his
daughter.

> REQUEST FOR ADMISSION NO. 1:  Please admit that in
> this action you are seeking damages only under
> AS 09.15.010 for loss of consortium/loss of society
> based on Heidi's death.

> ANSWER TO REQUEST FOR ADMISSION NO. 1:  Admit.

> REQUEST FOR ADMISSION NO. 2:  Please admit that
> you are not making a claim for negligent infliction of
> emotional distress (NIED) in this case.

> ANSWER TO REQUEST FOR ADMISSION NO. 2:  Admit.

Exhibit E at 1, Plaintiff's responses to Requests for Admission.

Under PART III — UNINSURED/UNDERINSURED MOTORIST
COVERAGE, the policy provides:

> Subject to the Limits of Liability, if **you**
> pay a premium for Uninsured/Underinsured
> Motorist Coverage for **bodily injury, we** will

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 8 of 40

> pay for damages, other than punitive or
> exemplary damages, which an **insured person**
> is legally entitled to recover from the
> **owner** or operator of an
> **uninsured/underinsured motor vehicle** because
> of **bodily injury**:
>
> 1.   sustained by an **insured person**;
>
> 2.   caused by **accident**; and
>
> 3.   arising out of the ownership,
> maintenance or use of an
> **uninsured/underinsured motor vehicle**.

Exhibit A at 100,375.  For purposes of UIMBI coverage, an

"insured person" is defined as:

> a.   **you** or a **relative**;
>
> b.   any person **occupying** a **covered vehicle**;
> and
>
> c.   any person who is entitled to recover
> damages covered by this Part III because of
> **bodily injury** sustained by a person
> described in a or b above.

Id. at 100,376.


It is undisputed that: (1) Mr. Weilbacher is an

"insured person" as the named insured, or **you**, under the policy,

(2) Mr. Weilbacher's daughter, Heidi, sustained serious bodily

injury and died as the result of an automobile accident wherein

she was a passenger in an underinsured motor vehicle, and

(3) Mr. Weilbacher is entitled to recover damages as a result of

Heidi's death under AS 09.15.010 from the operator of the

underinsured motor vehicle.  It is assumed and not disputed for

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 9 of 40

purposes of this discussion that Heidi was a "relative" of Mr.
Weilbacher and, thus, also an "insured person" under the policy
since Heidi was living with Mr. Weilbacher at the time of the
accident.[4]  It is also assumed for purposes of this discussion
that Weilbacher's damages as a result of Heidi's death exceed
the amounts plaintiff has already recovered from the various
insurers involved.[5]

     The issue in this case is not whether Mr. Weilbacher is
an "insured person" or whether plaintiff is entitled to any
UIMBI coverage.  The issue here is whether Mr. Weilbacher is
entitled to another, separate "each person" UIMBI policy limit
for his claim for loss of consortium/society, or whether his
claim is subject to the "each person" UIMBI policy limit already
paid as provided in the policy.

     Although the issue of separate "each person" policy
limits is generally discussed as being based on the
characterization of the claim at issue as either direct or
derivative, this characterization is not necessarily

---

[4]  Under the policy, a "relative" includes "a person residing in the same
household as [the named insured], and related to [the named insured] by
blood."  Exhibit A at 100,360 ¶10.  Since Mr. Weilbacher and Ms. Mauro were
divorced, Heidi's residence changed as between her parents.  In his
February 20, 2002 interview, Mr. Weilbacher told Progressive that Heidi was
living with him for the summer and had only returned to Anchorage with her
mother for a short visit.  Exhibit F at 3:93-96 and 12:458-459.

[5]  Progressive reserves the right to refute and challenge this assumption that
Mr. Weilbacher's damages exceed the amounts already received, if necessary.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 10 of 40

dispositive.[6]  Whether a claim is entitled to a separate "each person" policy limit depends not on the characterization of the claim, but on the policy language at issue.

        The Alaska Supreme Court most recently addressed this issue of whether a claim for loss of consortium/society triggered separate "per person" UM/UIM policy limits in State Farm Mut. Automobile Ins. Co. v. Dowdy, 111 P.3d 337 (Alaska 2005).  The Dowdys, whose daughter Heather was killed in a head-on collision, sought "per person" policy limits of UIMBI coverage ($100,000) under each of their three State Farm policies for NIED, loss of consortium, and punitive damages.  Id. at 339.  At the time the Dowdys made their claims, State Farm had already paid three separate "per person" UIMBI policy limits payments of $100,000, plus add-ons, to the Estate of Heather Dowdy (one "per person" policy limit under each of the three policies).  Id.

        State Farm filed a declaratory judgment action to establish the rights of the parties under the policies to another set of "per person" UIMBI policy limits.  Id.  The

_____

[6]  See e.g. State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1079 (Alaska 2001), discussing the difference between NIED claims and loss of consortium claims, the court stated, "Unlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from an injury to another."

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 11 of 40

Dowdys sought to stay the judicial proceeding pending
arbitration of the merits of their claims. Id. On petition for
review from an order to stay the judicial proceedings, the
Alaska Supreme Court addressed whether the issues of coverage
under the State Farm policies for the Dowdys' claims were
required to be arbitrated along with the merits of the Dowdys'
claims. Id. at 340.

In determining that the coverage issues were not
subject to arbitration, the court first considered the issue of
separate "per person" policy limits for the NIED and loss of
society claims. Id. at 341. With regard to the loss of
consortium/society claim, the court recalled:

> The issue may not be amenable to a
> definitive resolution, since much of the
> case law cited by the parties in their
> supplemental briefing seems to suggest that
> whether a loss-of-society claim should
> trigger separate "per person" coverage may
> hinge more on a particular policy's
> definition of the scope of its bodily injury
> coverage than on the inherent nature of a
> cause of action for loss of society.

Id. (quoting Wold v. Progressive Preferred Ins. Co., 52 P.3d
155, 166 n.36 (Alaska 2002)). The court then noted:

> An added layer of complexity in determining
> these coverage issues, therefore, is that
> many variations exist in policy language and
> scope. As our footnote in Wold suggests,
> these variations may prevent the court from
> making a broad or general determination as
> to whether separate policy limits apply and

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 12 of 40

> may require a specialized analysis of the
> policy language in question.

Id. at 341.[7]  Thus, whether an insurance claim triggers a separate "each person" policy limit under UIMBI coverage depends on the particular policy language at issue.

In interpreting the policy language of an insurance contract, the court looks to: (1) the language of the disputed policy provisions, (2) the language of other provisions of the insurance policy, (3) relevant extrinsic evidence, and (4) case law interpreting similar provisions.  Maynard v. State Farm Mut. Auto. Ins. Co., 902 P.2d 1328, 1330 (Alaska 1995) (quoting Stordahl v. Gov't Employees Ins. Co., 564 P.2d 63, 65-66 (Alaska 1977)).  It is also well established in Alaska that

> [i]n interpreting an insurance policy,
> courts follow the definitions provided in
> the policy itself.  Where an insurance
> company limits the coverage of a policy
> issued by it in plain language, this court
> recognizes that restriction.

Insurance Co. of North America v. State Farm Mut. Auto. Ins. Co., 663 P.2d 953, 955 (Alaska 1983) (internal citations omitted).  See State Farm v. Bongen, 925 P.2d 1042, 1045 (Alaska 1996) ("It is well-established that 'the obligations of insurers

---

[7]  Notably, the court's holding that the "coverage issues" depend on policy language may apply equally to an NIED claim such that an NIED claim is not automatically a separate per person limit.  However, NIED is not at issue in this case.  See Exhibit E at 1 (RFA#2).

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 13 of 40

are generally determined by the terms of their policies.'").
"Where an insurance company by plain language limits the
coverage of its policy, we recognize that restriction." <u>C.P. ex
rel. M.L. v. Allstate Ins. Co.</u>, 996 P.2d 1216, 1222-23 (Alaska
2000).

        The Alaska Supreme Court also applies the doctrine of
reasonable expectations when reviewing the terms of an insurance
policy.  In other words, insurance policies are construed to
provide the coverage that a layperson would have reasonably
expected from a lay interpretation of the policy terms.
<u>Serradell v. Hartford Acc. & Indem.</u>, 843 P.2d 639, 641 (Alaska
1992).  But the Alaska Supreme Court has expressly noted that
this doctrine should not be misused to transform a mere hope of
coverage into a reasonable expectation of coverage.

> However, since most insureds develop an
> expectation that every loss will be covered,
> the reasonable expectation doctrine "must be
> limited by something more than the fervent
> hope usually engendered by loss."

<u>State Farm Fire & Cas. Co. v. Bongen</u>, 925 P.2d 1042, 1047
(Alaska 1996).  To determine the objectively reasonable
expectations, the court again looks to: (1) the language of the
disputed policy provisions, (2) the language of other policy
provisions, (3) relevant extrinsic evidence, and (4) case law
interpreting similar provisions.  <u>Id</u>.  The policy terms should
be interpreted in their ordinary and popular sense, as they

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 14 of 40

would be read and understood by a person of average intelligence
and experience.  <u>Whispering Creek Condominium Owner Ass'n v.
Alaska Nat. Ins. Co.</u>, 774 P.2d 176, 177 (Alaska 1989).  An
"insured does not reasonably expect the policy to be interpreted
in ways that contravene the contract language."  <u>Accord Trinity
Universal Ins. Co. v. Cowan</u>, 945 S.W. 2d 819, 823 (Tex. 1997).
Thus, it is the clear, unambiguous language of the policy that
controls.

Here, the clear and unambiguous policy language
specifically defines what constitutes an "each person" policy
limit.  Under the LIMITS OF LIABILITY section of Part III, the
policy provides:

> If **your Declarations Page** shows a split limit:[8]
>
> 1. the amount shown for "each person" is the
> most **we** will pay for all damages due to a
> **bodily injury** to one (1) person;
>
> 2. subject to the "each person" limit, the
> amount shown for "each accident" is the most
> **we** will pay for all damages due to **bodily
> injury** sustained by two (2) or more persons
> in any one (1) accident;
>
>         * * *
>
> The **bodily injury** Limit of Liability under
> this Part III for "each person" includes the
> total of all claims made for such **bodily
> injury** and all claims derived from such
> **bodily injury**, including, but not limited
> to, loss of society, loss of companionship,

---

[8]  Mr. Weilbacher's policy provides split limits of "$100,000 EACH PERSON" and
"$300,000 EACH ACCIDENT" for UIMBI coverage.  <u>Id</u>. at 100,344.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 15 of 40

loss of services, loss of consortium, and
wrongful death.

Exhibit A at 100,383.  Mr. Weilbacher's loss of
consortium/society claim is clearly and expressly included in
the "each person" UIMBI policy limit -- which, in this case, has
already been paid.


A person of average intelligence and experience would
read this for exactly what it is:  the "each person" limit is
the most Progressive will pay for all damages due to bodily
injury to one person, including all claims derived from such
bodily injury such as loss of consortium and loss of society
claims.  Id. at 100,383.  Heidi Weilbacher is the only "insured
person" for purposes of UIMBI to have sustained bodily injury in
the accident.  Mr. Weilbacher's claim under AS 09.15.010 is due
to the death of, or bodily injury sustained by, his daughter,
Heidi.  Complaint at ¶VII.  Mr. Weilbacher's claim under
AS 09.15.010 is clearly the result of injury to another or "due
to a bodily injury to one (1) person" —— Heidi Weilbacher.  The
policy specifically states that the bodily injury limit for
"each person" includes the total of all claims made for bodily
injury to the one person, plus all claims derived from such
bodily injury.  Exhibit A at 100,383.  As such, Mr. Weilbacher's
claim is subject to the same "each person" UIMBI policy limit as
Heidi's estate's claim.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 16 of 40

Progressive paid precisely these claims on February 24, 2004. Exhibit C at 100062. Progressive paid the full "each person" UIMBI policy limit for all claims of the Estate of Heidi Weilbacher and all derivative claims of Mr. Weilbacher and Cathie Mauro. Id. Under the clear, unambiguous policy language, there is simply no more UIMBI coverage available for Mr. Weilbacher's current claim. As a matter of law, Mr. Weilbacher has already exhausted the available "each person" policy limit of his UIMBI coverage.

Additionally, the policy specifically provides that in order for the "each accident" provision to apply, two or more insured persons must be injured in the same accident. "[S]ubject to the 'each person' limit, the amount shown for 'each accident' is the most **we** will pay for all damages due to **bodily injury** sustained by two (2) or more persons in any one (1) accident." Exhibit A at 100,383. Although Mr. Weilbacher and Heidi Weilbacher are both "insured persons" under the policy, only Heidi sustained "bodily injury" in the accident in question. See infra. Mr. Weilbacher was not involved in the accident at all; he was in Kenai. Exhibit F, Transcript of February 20, 2002 interview of Ronald Weilbacher. He could not and did not suffer any bodily harm, sickness, or disease in the accident. Id. Mr. Weilbacher's damages are solely for his loss of consortium/society claim for "the loss of his daughter." Complaint at ¶¶VII, IX and 1; Exhibit E at 1. Under the clear

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 17 of 40

language of the policy, this claim is derivative to, and included within, the "each person" UIMBI policy limits already paid.

The clear majority of the cases, including decisions by this court, which have considered this issue with similar policy language have agreed with Progressive's position here:  loss of consortium/society claims are derivative to the original bodily injury claim and included within the "each person" policy limit paid for such bodily injury.

In <u>GEICO v. Fetisoff</u>, 958 F.2d 1137, 1142 (D.C. Cir. 1992), the court faced the question of whether loss of consortium was encompassed by the phrase "all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person."  <u>Id</u>. at 1142.  In holding that it was, the court stated:

> <u>Examining the plain language of the GEICO policy, we conclude that the limitation of liability provision is unambiguous, and that Mr. Whitney's loss of consortium claim is encompassed by the "each person" limitation.</u> The provision states that "*all* damages, including damages for care and loss of services, *arising out of* bodily injury sustained by one person" are subject to the "each person" liability limit. Here, Mr. Whitney's claim clearly "arises out of" his wife's injury; Mr. Whitney would have no claim for loss of consortium under the insurance policy absent the injury suffered by Mrs. Whitney in an accident covered by the policy.  As a result, Mr. Whitney's

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 18 of 40

> claim, like "all damages" stemming from
> Mrs. Whitney's injury, is subject to the
> "each person" limitation.  Surely the word
> "all" - one of the least ambiguous in the
> English language - leaves no room for
> uncertainty as to the inclusion of
> Mr. Whitney's claim.  And even if some doubt
> about the purview of the "each person"
> limitation did remain, it is removed by the
> dependent clause "including damages for care
> and loss of services," which plainly refers
> to consortium-type claims.

Fetisoff, 958 F.2d at 1142 (emphasis added).  The court also

noted that it was equally clear that the loss of consortium

claim was not encompassed in the "each occurrence" limitation,

because the higher "each occurrence" limitation was triggered

only when two or more persons sustain bodily injury in the same

accident.  Id.

In fact, this court previously determined —— on cross-

motions for summary judgment —— that a loss of

consortium/society claim based on the loss of a child is

derivative to the bodily injury (death) of the child and subject

to the same "each person" limit, and that it was not reasonable

to expect additional coverage.

In Government Employees Ins. Co. v. Encelewski, 1995

U.S. Dist. LEXIS 1107 (Alaska January 13, 1995), the parties

filed cross-motions for summary judgment on the issue of whether

there was coverage under the insured's policy for the mother's

loss of consortium/society and NIED claims as a result of the

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 19 of 40

death of her son in the automobile accident.  Id. at *1-2.  The
court granted the insurer's motion for summary judgment seeking
a declaration that the policy did not provide coverage for the
loss of society claim.  Id. at *11.  The policy provided as
follows:

> The limit of bodily injury liability stated
> in the declarations as applicable to "each
> person" is the limit of our liability for
> all damages, including damages for care and
> loss of services, because of bodily injury
> sustained by one person as the result of one
> occurrence.

Id. at *3.  Based on this policy language, the court recognized
that Mrs. Encelewski had coverage.  However, her claims,
including her loss of society claim, were derivative of her
son's injuries such that she could not recover any additional
funds because the settlement of her son's injuries had exhausted
the "per person" limit under the policy.  Id. at *4.  The court
also determined that Mrs. Encelewski's "reasonable expectations"
argument was unreasonable.  In this regard, the court stated as
follows:

> [R]easonable parties would **not** understand or
> interpret the term 'bodily injury' or
> 'injury to a person' to include a loss of
> consortium.

Id. at *10-11 (emphasis added).  Encelewski is fully consistent
with this court's earlier decision in Nationwide Mut. Ins. Co.
v. Cummings, No. A-83-533 Civil (Alaska January 24, 1984), where
the court held that loss of consortium/society claims fall

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 20 of 40

within the "per person" limit where the policy in question
provided that the "per person" limit included "all legal damages
claimed by anyone for bodily injury or loss of services of one
person." Exhibit G. See Hauser v. State Farm Mut. Auto. Ins.
Co., 252 Cal. Rptr. 569 (Cal. App. 1988) (loss of consortium
claim included in "each person" policy limit where policy's
"each person" provision defined "bodily injury to one person" to
include "all injury and damages to others resulting from this
bodily injury"). See also Jane M. Draper, Annotation,
*Consortium Claim of Spouse, Parent or Child of Accident Victim*
*as Within Extended "Per Accident" Coverage Rather Than "Per*
*Person" Coverage of Automobile Liability Policy*, 46 A.L.R. 4th
735 at §3b and 3c (2004) (collecting cases holding that loss of
consortium/society claims fall within the "each person" policy
limit).[9]


        The court in Spaur v. Allstate Ins. Co., 942 P.2d 1261,
1265 (Colo. App. 1997), may have said it best.

                [T]he reason plaintiff has been denied
                payment is not because his loss of
                consortium claim is not covered; it is
                covered, but as a derivative claim.  The
                fact is that he cannot recover from
                defendant because the amount of uninsured
                motorist coverage he purchased was not
                sufficient to compensate him fully.  When
                plaintiff did not purchase more extensive
                "per person" uninsured motorist coverage,

---

[9]  Rather than simply string cite additional cases, Progressive cites to this
relevant A.L.R. collecting and summarizing additional relevant cases.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 21 of 40

> he -- not defendant -- elected to assume the
> risk for damages over that amount.

Id. at 1265.

During the depositions of Progressive employees, Danny
Withers and Adam Lund, it became apparent that Mr. Weilbacher is
confused by the fact that, while he has an independent claim for
loss of consortium/society under AS 09.15.010, his claim is
still derivative of and subject to the same "each person" UIMBI
policy limit as his daughter's wrongful death claim under the
policy contract language at issue.[10]  In Gillispie, the Alaska
Supreme Court recognized that, although parents could not claim
loss of society under Alaska's wrongful death statute, parents
were not without recourse because they had a separate,
independent claim for loss of society of their minor child under
AS 09.15.010.  Gillispie, 842 P. 2d 1272, 1273 (Alaska 1992).
The court held:

> When the decedent is not survived by
> dependents, the statute limits recovery to
> pecuniary loss.  AS 09.55.580(a).  The
> Gillispies, then, cannot claim loss of
> society under the wrongful death statute.
>
> The Gillispies, however, are not without
> recourse.  Another statute, AS 09.15.010,
> provides in part:  "A parent may maintain an
> action as plaintiff for the injury or death
> of a child below the age of majority."  We
> have not yet addressed whether AS 09.15.010

---

[10]  Transcripts of the depositions of Danny Withers and Adam Lund are attached
hereto as Exhibits J and K, respectively.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 22 of 40

creates a separate, independent parental
cause of action.  We now hold that it does.

Id.[11] In other words, Mr. Weilbacher has a cause of action for
loss of society as a result of the loss of his minor daughter
that is separate and independent from her estate's wrongful
death claim.

It does not follow, however, that every separate and
independent claim is entitled to an "each person" UIMBI policy
limit.  Whether a claim is legally independent is not the issue
here.  The issue is whether the insurance policy's definition of
its "each person" includes Mr. Weilbacher's independent claim as
derivative to his daughter's bodily injury and included in the
"each person" limit paid to her estate.  Here, it does.
Plaintiff's damages from his legally "independent claim" arise
from the loss of his daughter.  As the court in Fetisoff stated:

> [W]hether the right of a spouse [to recover
> for loss of consortium] be regarded as
> independent, *i.e.,* arising directly from the
> tort, or as derivative, that right does not
> come into existence except for the
> occurrence of the injury.  Absent a
> compensable injury to the one spouse there
> would be no claim [for loss of consortium].
> . . . In that sense certainly the "rights"
> are not independent of but *derive* from or
> are on account of a compensable injury to
> the [injured spouse].
>
> . . ., Mr. Whitney's consortium claim
> plainly "arises out of" Mrs. Whitney's

---

[11] Notably, the dissent in Gillispie would have reached the same result based
on the common law.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 23 of 40

            injuries even though his claim may be said
to be legally independent of hers.

<u>Fetisoff</u>, 958 F.2d at 1143 (internal citations omitted).


        Similarly, in <u>Gonzales v. Allstate Ins. Co.</u>, 21 P.2d 944, 946-47 (N.M. 1996), the court held that, although plaintiff had an independent cause of action for loss of consortium, it did <u>not</u> trigger a separate "each person" policy limit.  In <u>Gonzales</u>, the policy language stated that the "each person" limit included "bodily injury . . . including damages sustained by anyone else as a result of that bodily injury."  <u>Id</u>. at 947.  The court held that "the 'each person' limitation specifically and expressly applies.  Gonzales' claim for consortium falls within the phrase 'damages sustained by anyone else as a result of that bodily injury.'"  <u>Id</u>. at 948.  Based on that policy language, the court found that:

            The limits of liability under the policy are
            neither affected nor contingent upon the
            number of causes of action that might accrue
            from one person's bodily injury.  Rather,
            the relevant contingency is the number of
            people who suffer bodily injury.

<u>Id</u>. at 947.  The court also recognized that:

            It often happens that there are
            consequential damages, as well as the
            damages suffered by the injured person
            himself.  Thus, where a wife or child is
            injured, the husband or parent may also
            suffer consequential injuries by reason of
            liability for hospital and doctor bills or
            for loss of services or consortium.  But is

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 24 of 40

> has been held that these different types of
> injuries cannot be split up, in order to
> bring the claim within the higher policy
> limits; they are regarded as essentially
> injuries to one person, so that the lower
> policy limits applicable to injuries
> sustained by any one person would govern.

Id. at 948-49 (quoting 8A John A. Appleman, *Insurance Law and Practice* § 4893 at 60 (1981)). See A. Widiss, *Uninsured & Underinsured Motorist Coverage* § 12.4 (1990) ("Courts have almost uniformly held that persons who sustain consequential damages have not sustained bodily injuries in an accident and, therefore, the Limit of Liability for one injured person applies regardless of how many uninsured motorist insurance claims may be made by persons who suffered consequential damages.").

In other words, it is immaterial how many independent claims for damages Mr. Weilbacher may have against the underinsured tortfeasor. All of his injuries and damages stem from, are the result of, and derive from, his daughter's death. As such, under the clear, unambiguous policy language in his Progressive policy, his claims, specifically including the loss of consortium/society claim presented in this action, are included in the "each person" UIMBI policy limit already paid.

Mr. Weilbacher's argument overlooks the fact that, if his loss of society claim was not a separate and independent claim, he would not be entitled to any UIMBI coverage. In order

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 25 of 40

to recover UIMBI coverage, Mr. Weilbacher must be able to recover those damages from the underinsured person.  In this regard, the policy specifically states as follows:

> . . . **we** will pay for damages, . . ., which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury: . . .**

Exhibit A at 100,375.  If Mr. Weilbacher's loss of society claims were not separate and independent, but rather subsumed within another claim, such as his daughter's estate's wrongful death claim, then he would not be entitled to recover for his claim as against the underinsured tortfeasor.  It is the very fact that his loss of society claim under AS 09.15.010 is a separate, independent claim that provides plaintiff UIMBI coverage -- coverage for which he was paid under the policy.

Mr. Weilbacher has also suggested that Progressive wrongfully denied his claim for an additional "each person" UIMBI policy limit, because Cathie Mauro's insurer, Liberty Mutual Insurance Company, agreed to pay her similar claim under her insurance policy's UIMBI coverage.[12]  What Mr. Weilbacher conveniently overlooks, however, is that each insurance policy must be evaluated separately based on its own policy language.

---

[12]  It is Progressive's understanding that as of the end of December 2005, Liberty Mutual had not actually paid Ms. Mauro's claim.  It is unknown whether that claim remains unpaid.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS  Weilbacher v. Progressive Northwestern Ins. Co.
Page 26 of 40

Dowdy, 111 P.3d at 341 ("whether separate policy limits apply
and may require a specialized analysis of the policy language in
question"); Wold, 52 P.3d at 166 n.36 ("whether a loss-of-
society claim should trigger a separate "per person" coverage
may hinge more on a particular policy's definition of the scope
of its bodily injury coverage than on the inherent nature of the
[claim]."). It is immaterial for purposes of Mr. Weilbacher's
claim under his Progressive policy whether Ms. Mauro's policy
with a different insurer, which employed different policy
language, provides her an additional, separate "per person"
policy limit for her loss of consortium/society claim. See
Exhibit H, Ms. Mauro's UIMBI provision.[13]  As the court in
Gonzales stated, "We recognize that different policy language
may produce a different outcome; thus, we resolve the issue
before us solely on Gonzales' policy and our state statutes."
Gonzales, 921 P.2d at 950.

Mr. Weilbacher also asserts that he is entitled to a
separate "each person" policy limit based on the Alaska Supreme
Court's decision in Allstate Insurance Company v. Teel, 100 P.3d
2 (Alaska 2004). Mr. Weilbacher's reliance on Teel for this
proposition is misplaced.

---

[13]  In fact, Ms. Mauro's policy language is significantly distinct from the
Progressive policy language at issue. It does not appear to contain a
paragraph like Progressive's policy describing what is included in an "each
person" policy limit. Exhibit H is the UIMBI provision for Ms. Mauro's
Liberty Mutual policy provided by plaintiff's attorney to Progressive on

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 27 of 40

In <u>Teel</u>, the Alaska Supreme Court held that the mother of the deceased child who was a passenger in the tortfeasor's vehicle could recover for her NIED claim under the tortfeasor's UIM coverage because her damages were legally caused by and the foreseeable result of injury to an insured person (her child).[14] The issue in <u>Teel</u> was whether the mother was an "insured person" under the tortfeasor's policy.  Under UM/UIM coverage, the tortfeasor's Allstate policy defined an "insured person" as follows:

> 1.   **You** and any resident relative;
>
> 2.   Any person while in, on, getting into or out of **your** insured auto;
>
> 3.   Any other person who is legally entitled to recover because of bodily injury to **you**, a **resident** relative, or an occupant of **your** insured auto.

<u>Id</u>. at 4 (removed information replaced).  Since Mrs. Teel sought UIM coverage under the tortfeasor's policy, since she was not related to the tortfeasor, and since she was not in the vehicle at the time of the accident, she could only be deemed an "insured person" under the third definition -- "any other person who is legally entitled to recover because of bodily injury to an occupant of [the] insured auto."  <u>Id</u>.

---

May 29, 2002.  Exhibit C at 100134.  A complete copy of the policy provided was disclosed and is available upon request.

[14]  Teel had already recovered policy limits for her NIED claim under her own Allstate underinsured motorist coverage.  <u>Id</u>. at *3.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 28 of 40

Allstate argued that this policy language only covered derivative claims brought by third parties, such as loss of consortium or reimbursement for funeral expenses.  Id.  The court disagreed, following the principle that unambiguous language in insurance contracts will be interpreted to give effect to the reasonable expectations of a layperson.  Id. at 6. The court held that Allstate's policy provided coverage to "an individual who is legally entitled to recover because of bodily injury to an occupant of the insured vehicle."  Id.  "Under both common and legal parlance, a successful NIED claim would be "because of" injury to an occupant of the insured vehicle."  Id. at 7.  Thus, if Mrs. Teel could prove all elements of her bystander NIED claim, then her claim was "because of" -- legally caused by and the foreseeable result of -- the bodily injury suffered by her son, who was an occupant of the insured auto. Id. at 5.

The court dismissed Allstate's argument that the policy language excluded all direct or non-derivative claims such as Teel's NIED claim.  Id.  The court found that "[t]he fact that Teel's recovery is direct and not derivative does not extinguish the casual relationship between the accident and her injury, as required by the policy."  Id. at 7.

> [T]he disputed policy provision does not
> limit coverage to derivative injuries, but

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 29 of 40

rather provides coverage for those whose
injuries are legally caused by and are the
foreseeable result of injury to an insured,
resident relative, or occupant of the
insured vehicle . . ..

Id.

The court's decision in Teel is inapplicable to the
issue here —— which is whether Mr. Weilbacher is entitled to
another, separate "each person" UIMBI policy limit under his own
policy for his loss of society/consortium claim under
AS 09.15.010.  Unlike Mrs. Teel, Mr. Weilbacher is already an
"insured person" under his policy without regard to the third
prong of the definition since he is the named insured.

As noted above, it is not disputed that Mr. Weilbacher
has UIMBI coverage under his policy.  He is the named insured,
and he, like Mrs. Teel, is entitled to recover damages "because
of" bodily injury sustained in the automobile accident by his
child, an insured person under the UIMBI provisions of the
policy.  See infra.  Progressive does not dispute that
Mr. Weilbacher's loss of consortium/society claim under
AS 09.15.010 is "because of" injury to his daughter, Heidi.  By
definition, it must be.  See AS 09.15.010 (parent's right of
action for death of child); Gillispie, 842 P.2d at 1274 (holding
"that a parent's right of action under AS 09.15.010 includes the
right to recover loss of society damages.").  In fact,

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 30 of 40

Mr. Weilbacher was paid the full "each person" policy limit of UIMBI coverage available along with the Estate of Heidi Weilbacher and Cathy Mauro. Exhibit C at 100062. What Mr. Weilbacher is NOT entitled to is another, separate "each person" UIMBI policy limit.

Additionally, the policy language at issue was approved by the State of Alaska Division of Insurance ("DOI"). Alaska law specifically requires the Director of the DOI to disapprove any form that is filed that is "in any respect in violation of or does not comply with [Title 21 of the Alaska Statutes]." AS 21.42.130(1). Progressive's policy form containing the language at issue was approved by the DOI. In order to approve the form, the DOI must have determined that Progressive's inclusion of loss of society/consortium claims in the "each person" UIMBI policy limit paid for the underlying bodily injury did <u>not</u> violate any aspect of Alaska's insurance law. While the Alaska Supreme Court has not definitely decreed how much weight the DOI's approval should be afforded, the court has acknowledged that it cannot be ignored. At a minimum, "the division's approval . . . would be entitled to some deference," especially where the agency interpretation is longstanding. <u>Government Employees Ins. Co. v. Graham-Gonzalez</u>, 107 P.3d 279, 286 (Alaska 2005).

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 31 of 40

The fact that Mr. Weilbacher has an independent cause
of action under AS 09.15.010 for loss of consortium/society as a
result of his daughter's death does not mean he is entitled to a
separate "each person" policy limit of UIMBI coverage.
Insurance policies are clearly <u>not</u> required to cover all claims
asserted by an insured under separate "per person" limits, nor
are they prevented from invoking the dollar limits which the
insured voluntarily purchased.  Under the clear, unambiguous
policy language, Mr. Weilbacher's claim is subject to the "each
person" UIMBI policy limit already paid.  Thus, Progressive did
not breach the insurance contract by declining to pay him a
second "each person" UIMBI policy limit for his loss of
consortium/society claim.


### B.  <u>Insurance Bad Faith</u>


Mr. Weilbacher cannot prevail on his extra-contractual
bad faith claim as a matter of law since Progressive properly
denied his claim.  The predicate to his bad faith claim is his
breach of contract claim.  "[A]s a general rule there can be no
claim for bad faith when an insurer has promptly denied a claim
that is in fact not covered." <u>Medical Care Am.</u>, 341 F.3d at
425-26.  "If Plaintiffs do not prevail on their breach of
insurance contract claim, there can be no basis for concluding
that [the insurer] acted in bad faith." <u>Drennan</u>, 2005 U.S.
Dist. LEXIS 8305, *13-14.  Since Progressive did not breach the

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 32 of 40

insurance contract in denying Mr. Weilbacher an additional, separate "each person" UIMBI policy limit for his loss of society/consortium claim, his bad faith claim cannot stand. Progressive cannot have committed bad faith as a matter of law because its actions were valid and proper under the insurance contract.

Also, the law in Alaska is clear that the tort of insurance bad faith in first party cases requires proof that, at the time of the insurer's denial of the claim, there was no "reasonable basis" for the denial. <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993).

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. "Bad faith" by definition cannot be unintentional . . . bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated . . ..
>
> * * *
>
> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 33 of 40

Id. (quoting Anderson v. Continental Insurance Co., 271 N.W.2d 368, 376-77 (Wis. 1978) (citations omitted)).  "The tort of bad faith arises when the insurance company intentionally denies, fails to process, or pay a claim without a reasonable basis for such action."  Id. (quoting Noble v. National American Life Insurance Co., 624 P.2d 866, 868 (Ariz. 1981)).  See e.g. On Air Entertainment Corp. v. National Indem. Co., 210 F.3d 146, 153 (3rd Cir. 2000) ("the insured must show the absence of a reasonable basis for denying benefits of the policy").

        In Peter v. Progressive, the court recognized that "[t]he first requirement for a bad faith tort against a first-party insurer is 'the insurance company's refusal to honor a claim be made without a reasonable basis.'"[15]  Exhibit I at 14. The question was whether Progressive committed the tort of bad faith by declining to pay the first-party UIM claim asserted by Peter.  Progressive had denied the claim based, in part, on the clear, unambiguous policy language.  Id. at 6.  In holding that Progressive did not engage in insurance bad faith as a matter of law, the court held that Progressive had two reasonable bases for its decision —— one basis was the policy language itself. The court determined that:  "Under the policy and a literal interpretation of the applicable statute, the vehicles involved

_____

[15]   The Peter court also recognized that "questions raised as to particular practices of the insurance company 'have little or no relevance on that point."  Id. at 14 (quoting Hillman, 855 P.2d at 1326).

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 34 of 40

were not 'underinsured vehicle[s].'"  <u>Id</u>. at 12.  As in <u>Peter</u>,
the policy language at issue in this case is a reasonable basis
for declining to pay plaintiff an additional, separate "each
person" UIMBI policy limit.

Mr. Weilbacher's sole basis for his allegation that
Progressive committed bad faith is that Progressive denied his
demand for a second, separate "each person" UIMBI policy limit.
Complaint at ¶IX.  The totality of the facts pled, based on an
objective standard, would <u>not</u> show the absence of a reasonable
basis for Progressive's denial of plaintiff's claim.  At all
relevant times, Progressive has a reasonable basis or bases for
its actions and decisions.  Progressive promptly and properly
denied Mr. Weilbacher's request for an additional "each person"
policy limit of UIMBI coverage based on its prior payment of a
full "each person" UIMBI policy limit to plaintiff, the Estate
of Heidi Weilbacher, and Cathy Mauro.  <u>See</u> Exhibit C at 100062.
In so doing, Progressive relied both on the policy language at
issue and the advice of its counsel.

Additionally, when Mr. Weilbacher presented Progressive
with his (incorrect) "theories" as to why he was entitled to a
separate "each person" UIMBI policy limit despite the policy
language, Progressive's adjuster, who is not an attorney,
reasonably sought the advice of counsel to confirm its position
was correct.  Mr. Withers testified at his deposition that, when

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 35 of 40

Mr. Weilbacher's attorney raised the issue that the <u>Teel</u> decision supposedly required payment of a separate "per person" policy limit, he called counsel to confer about this argument. Exhibit J at 58:16-59:12.  Mr. Withers also recalls discussing with counsel the fact that Mr. Weilbacher's independent claim for loss of society/consortium was a derivative claim under the language of the insurance contract.  <u>Id</u>. at 59:23-60:2.  Thus, not only did Progressive reasonably rely on the clear, unambiguous policy language, Progressive also reasonably relied on the advice of counsel in declining to pay Mr. Weilbacher another, separate "each person" UIMBI policy limit.  Since Progressive had a reasonable basis or bases for its decisions in this case, Progressive cannot have committed bad faith as a matter of law.

In his expert report, Progressive's expert on the issue of bad faith opined as follows:

> Every action taken by Progressive in this matter had a reasonable basis and, in my opinion, complied with the provisions of AS 21.  In my opinion Progressive had a reasonable basis to deny making a second payment under the policy.  Progressive conducted the claims investigation in this matter with utmost good faith.  It was thorough, diligent, timely and well documented.  There was a reasonable basis for every action taken.
>
> * * *
>
> This denial of the claim issue met the reasonable basis standard of <u>Hillman</u> because

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 36 of 40

> it was fairly debatable based on the clear,
> lay reading of the unambiguous language of
> the policy.

Exhibit L at 4-5.  Mr. Lohr (a former Director of the Alaska
Division of Insurance) specifically noted that "the common-
sense" meaning of the policy language is unmistakable.  <u>Id</u>. at
9.  "It does not require an attorney's assistance to interpret."
<u>Id</u>.  "The limit of liability language expressly states that the
total derivative claims for loss of consortium are included in
the 'each person' limit and therefore, cannot trigger a separate
per person limit."  <u>Id</u>. at 9-10.


     As a matter of law, Progressive could not have
committed bad faith in properly denying coverage that was not
owed.  Progressive properly declined to pay Mr. Weilbacher a
separate "each person" UIMBI policy limit for his loss of
society/consortium claim under AS 09.15.010 based on the clear,
unambiguous policy language.  Not only was Progressive's
decision correct, but Progressive also had a reasonable basis
for its decision to decline such payment.  Therefore,
Progressive could not have committed bad faith as a matter of
law.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 37 of 40

<u>Conclusion</u>

There are no genuine issues of material fact and Progressive is entitled to summary judgment on all of Mr. Weilbacher's claims as a matter of law.  His daughter, Heidi Weilbacher, died tragically in an automobile accident while the passenger in an underinsured motor vehicle.  Mr. Weilbacher is an "insured person" for purposes of UIMBI coverage under his own policy and entitled to UIMBI coverage <u>up to</u> the applicable policy limits for such coverage.  He, along with the Estate of Heidi Weilbacher and Cathy Mauro, received the full "each person" UIMBI policy limit on February 24, 2004.  Progressive then properly denied his claim for another, separate "each person" policy limit of UIMBI coverage.

Under the clear, unambiguous policy language, Mr. Weilbacher's claim under AS 09.15.010 for loss of society/consortium is specifically included in the "each person" policy limit already paid to him, to the Estate of Heidi Weilbacher, and to Ms. Mauro.  He may not recover additional funds from Progressive where the amount of the "each person" UIMBI coverage he purchased turns out to have been insufficient to compensate him fully.  He simply exhausted his available UIMBI insurance coverage.  As a matter of law, he is not entitled to another "each person" policy limit of UIMBI coverage.  And, since Progressive properly denied his claim for

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 38 of 40

another, separate "each person" policy limit under his UIMBI

coverage, Progressive cannot have committed bad faith as a

matter of law.  As such, Progressive requests that this court

grant summary judgment in its favor on all of Mr. Weilbacher's

claims and dismiss all of those claims with prejudice.


DATED at Fairbanks, Alaska, this 10th day of August, 2006.


GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company

By: _____s/Aisha Tinker Bray_____
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska  99701
Phone: 907-452-8986
Fax:   907-452-7015
Email: atbray@guessrudd.com
Alaska Bar No. 9505028

CERTIFICATE OF SERVICE
I hereby certify that on the
10th day of August, 2006, a copy
of the foregoing document was served
either electronically or by U.S. Mail on:

Kenneth A Legacki, Esq.

Guess & Rudd P.C.

By:_____s/Aisha Tinker Bray_____

F:\DATA\5200\120\pleading\07 gaz MemoinSupProgRenMSJ.doc

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 39 of 40

Table of Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Certified copy of Progressive Policy No. 65824951-0 (Bates Nos. 100,342-100,409) |
| B | PACMAN adjuster notes (Bates Nos. 100283-100335)[16] |
| C | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding first claim for UIMBI policy limits (Bates Nos. 100235-239, 100232-233, 100227, 100178-179, 100132-134, 100125,100122-123, 100101, 100097-098, 100088-90, 100062-069)[17] |
| D | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding plaintiff's subsequent, separate claim for UIMBI policy limits (Bates Nos. 100047-048, 100041-044, 100028-032)[18] |
| E | Plaintiff's responses to Requests for Admission |
| F | Transcript of February 20, 2002 recorded interview of Ronald Weilbacher (Bates Nos. 100001-100016) |
| G | Nationwide Mut. Ins. Co. v. Cummings, No. A-83-533 Civil |
| H | UIMBI provisions of Cathy Mauro's Liberty Mutual policy (Bates Nos. 100154-100156) |
| I | Peter v. Progressive, S-11416/11445 (February 22, 2006 Alaska) |
| J | Transcript of Deposition of Danny Withers |
| K | Transcript of Deposition of Adam Lund |
| L | Expert Report of Robert Lohr |

---

[16] Pages 100333 and 100334 have been replaced by the unredacted copies.
[17] Correspondence is arranged in chronological order rather than Bates number sequence.
[18] Correspondence is arranged in chronological order rather than Bates number sequence.

Memorandum in Support of Progressive's Renewed Motion for Summary Judgment
Case No. 3:05-cv-204-JWS   Weilbacher v. Progressive Northwestern Ins. Co.
Page 40 of 40