**Disclosure of Expert Witness Testimony of Robert A. Lohr, pursuant to**

**Rule 26 of Alaska Rules of Civil Procedure**

I have been retained by Gary Zipkin of Guess & Rudd on behalf of

Progressive Northwestern Insurance Company ("Progressive") to express my expert

opinion on questions arising in the litigation of <u>Weilbacher v. Progressive Northwestern</u>

<u>Insurance Company</u>, Case No. 3:05-CV-204-JWS.

**Rule 26 Disclosure**

I have been deposed four times on expert opinions that I have filed with

the courts: <u>Peter v. Progressive</u>, Case No. 3KN-97-964 Civil. 2003 deposition; <u>Sims v.</u>

<u>Allstate</u>, Class Action No. 99 L 393-A. 2003 deposition; <u>Truong v. Allstate</u>, 2004

deposition and <u>USA v. CNA Financial Corporation, et al.</u>, A98-285 CV (JWS) 2006

deposition.  I testified in court as an expert witness but was not deposed in <u>Tatum v.</u>

<u>Allstate</u>, 3PA-02-914 CI.  My current rate schedule is attached as Exhibit A.  My resume

follows as Attachment B.

**Materials Reviewed**

I reviewed the following documents in forming my opinions:

- AS 21.36, 21.42 and generally Title 21, the statutes governing insurance.

- Complaint and Answer, <u>Weilbacher v. Progressive Northwestern</u>, 3AN-05-9823 Civil.

- Progressive's Motion for Summary Judgment, Proposed Order and Memorandum in Support of Progressive's Motion for Summary Judgment and Exhibits.

- Progressive Northwestern Policy 65824951-0 issued to Ron V. Weilbacher, from 12/21/00-12/21/01.

- Scheduling and Planning Order dated October 28, 2005.

- <u>Allstate Ins. Co. v. Teel</u>, 100 P.3d 2 (Alaska 2004)

EXHIBIT _L_
Page _1_ of _16_

200378

1

- <u>Gillispie v. Beta Const. Co.</u> 842 P.2d 1272 (Alaska 1992).

- <u>Hillman v. Nationwide Mutual Fire Insurance</u>  855 P 2d 1321, July 89, 1993.

- Lee R. Russ and Thomas F. Segalla and Steven Plitt, <u>Couch on Insurance,</u> " Limits of Insurer's Liability; UM/UIM Coverage, Elements of Recovery, Limits of Insurer's Liability, Per Occurrence and Per Person Limits"

- Alan I. Widiss, <u>Uninsured and Underinsured Motorist Insurance,</u> (Rev.2d ed.2000).

- Alaska Division of Insurance File Number 25405, Progressive Northwestern, et. al, Alaska Motor Vehicle Policy Form No. 9607(AK) (08-99); 373 pages (1997-1999).

- Alaska Division of Insurance, <u>66th Annual Report</u>.

- <u>Government Employee's  Insurance Company v. Graham-Gonzalez;</u> 107 P.3d 279 (Alaska 2005)

## Qualifications as Expert Witness

I have personal knowledge of the following facts unless otherwise indicated, and I am in all other ways competent to testify.

From 1999 through 2003, I served as the Director of the Alaska Division of Insurance (Division).  As the highest officer in the Division, I was responsible for regulating the insurance industry in Alaska to protect insurance customers in Alaska.  The Division's mission is to develop, interpret, and enforce the insurance statutes and regulations; protect and educate the consumer; and to enhance the insurance business environment.

In this capacity, my responsibilities included enforcement and oversight activities relating to consumer protection, rate and form filings, market conduct and

EXHIBIT___*L*___
Page___*1*___ of ___*16*___

2

financial examinations, and investigation of potential violations of the Alaska Insurance Code, Title 21 of Alaska Statutes, among many other duties.

While Director I served as a member of the National Association of Insurance Commissioners ("NAIC"), an organization responsible for formulating national insurance policy.  I was an active member of the NAIC, where I served as a member of the Executive Committee and Vice Chair and Acting Chair of the 14-state Western Zone. I served as a member of a working group to speed up regulatory approval/disapproval of insurers' proposed policy language filings, while maintaining the quality and thoroughness of the reviews.  I enrolled Alaska in a pilot program to share staff resources with other states to increase the efficiency of insurers' proposed policy language.

I also served as a member of the Internal Administration subcommittee responsible for overseeing NAIC operations, and as a member of the International Committee. I conducted training on insurance regulation topics in Japan, India, Jordan, Croatia, Romania and Bulgaria.

Prior to my tenure as Director of the ADOI, I served as executive director of the Alaska Public Utilities Commission, the state agency responsible for regulating the tariff language, rates and practices of public utilities and pipeline carriers.  I advised the Commission and supervised formal teams of staff advocates representing the public interest on a wide range of regulatory matters.

I earned a Master's Degree in Public Administration from Harvard University's Kennedy School of Government and a Bachelor of Arts Degree in International Relations and Economics from Swarthmore College.

EXHIBIT___L___
Page___3___of__16__

The Division has both the statutory authority and the responsibility to administer and enforce Alaska Insurance Code, Alaska Statutes, Title 21 and is authorized to invoke legal, equitable and other remedies to obtain compliance. My enforcement responsibilities included the Unfair Claim Practices Act, AS 21.36.125. I supported successful legislative amendments that strengthened Alaska's Unfair Claim Practices Act, AS 21.36.125.

As I understand it, in this case the court is asked to interpret the applicable contract language in the insurance policy to decide whether there is separate "per person" coverage for a loss of consortium claim under uninsured motorist/ underinsured motorist (UM/UIM) provisions of a Progressive Alaska Motor Vehicle Policy.

### Bad faith

1.     Did Progressive Northwestern Insurance Company have a reasonable basis for its conclusion that loss of consortium is not a separate claim? In my opinion they did. Specifically, Progressive's handling of the claims for UM/UIM coverage under Policy #65824951 by Plaintiff had a reasonable basis.

Based on my review of the documents listed above, it is my opinion that Progressive Northwestern Insurance Company had a reasonable basis for its decision to decline the UIM bodily injury claim for additional, separate "each person" policy limits filed by Mr. Ron V. Weilbacher with Progressive in October 2004.

Every action taken by Progressive in this matter had a reasonable basis and, in my opinion, complied with the provisions of AS 21. In my opinion Progressive had a reasonable basis to deny making a second payment under the policy. Progressive

EXHIBIT _L_
Page _4_ of _16_
4

200381

conducted the claims investigation in this matter with utmost good faith. It was thorough, diligent, timely and well documented. There was a reasonable basis for every action taken.

Under Alaska law the tort of bad faith must be knowingly wrongful. Hillman v. Nationwide 855 P.2d 1321, 1324 (Alaska 1993). The Alaska Supreme Court quotes with approval Anderson v. Continental Insurance Co., 271 N.W.2d 368 (Wis. 1978):

> Under the Anderson standard an insurance company may still challenge claims which are fairly debatable. The tort of bad faith arises when the insurance company intentionally denies, fails to process, or pay a claim without a reasonable basis for such action.

This denial of the claim issue met the reasonable basis standard of Hillman because it was fairly debatable based on the clear, lay reading of the unambiguous language of the policy. Progressive's position on the claim was clear and it was promptly communicated.

Alaska's Unfair Claims Practice Act (UCPA), AS 21.36, sets out procedural and substantive requirements for fair dealing and good faith. During the 2000 legislative session I worked with the Alaska Legislature to develop a bill that would authorize the Director of the Division of Insurance to take enforcement action against an insurer for a single violation of the UCPA. Previously either a general business practice or repeated violation of the same standard without a reasonable explanation was required.

In my opinion, this claim was handled in full accordance with Alaska's Unfair Claims Practices Settlement Act and regulations. Progressive's investigation was prompt and thorough.

EXHIBIT___L___
Page___5___ of _16_

200382                                    5

In my opinion, it is not bad faith for an insurer to rely on a reasonable interpretation of Alaska statutes, case law and its own policy language. This issue met the reasonable basis test of <u>Hillman</u>. Even if the court were to find that the language was broad enough to conclude that separate per accident coverage was available for a loss of consortium claim, there cannot be bad faith found where the insurer's interpretation was fairly debatable. Based on the relevant statues, case law, and interpretations in Alaska and elsewhere, Progressive's action on this claim is both reasonable and fairly debatable.

### Punitive Damages

Respectfully, a claim for punitive damages in this matter is utterly without merit. I find no indication whatsoever of any egregious or outrageous conduct in Progressive's handling of this claim certainly nothing approaching a clear and convincing evidentiary standard. Breach of contract cannot serve as a basis for punitive damages. Alan I. Widiss, <u>Uninsured and Underinsured Motorist Insurance</u> (Rev.2d ed.2000) observes:

> In many of the instances in which appellate courts have been asked to review a trial court's determination about whether an insurer inappropriately rejected an uninsured motorist insurance claim, the allegation that the insurer acted in bad faith appears to have been made on the basis of the proverbial "wing and a prayer" – that is, nothing in the court's description of the facts supports the allegations.
> (§ 20.1, at 217)

EXHIBIT _L_
Page _6_ of _16_

200383                    6

## Key Events

1.      On July 9, 2001 passenger Heidi Weilbacher was killed in a catastrophic auto accident.  Her father, Ronald V. Weilbacher (Plaintiff) had purchased Progressive Policy #65824951 and it was in effect on that date.

2.      On December 14, 2001 an uninsured motorist bodily injury claim was filed for Heidi's estate, for her mother, Cathy Mauro and for Plaintiff Ronald V. Weilbacher (100237-238).  Less than one week later Progressive's Senior Claims Specialist Danny Withers responded to acknowledge the claim, identify the applicable coverage (100235-236), and to request a statement from Mr. Weilbacher.  The statement was taken February 20, 2002.  The liability and UIM coverage available from other carriers had to be paid before the Progressive UIM claim was due.  On February 2, 2004 Mr. Legacki wrote to Progressive (Withers) to report and provide copies of payment of claims by other insurers, and to request payment of amounts due to Mr. Weilbacher and the Estate of Heidi Weilbacher. (100065-069)  Progressive (Withers) paid policy limits for the UM/UIM "underinsured claims of the Estate of Heidi Weilbacher and the derivative claims of Ron Weilbacher and Cathie Mauro" in a check for $117,256, including add-ons.  (100062)

3.      On October 4, 2004 Mr. Weilbacher, through counsel, argued that Allstate Ins. Co. v. Teel, 100 P.3d 2 (Alaska 2004) supported a claim that the parents of Heidi Weilbacher were entitled to compensation for her death under the Progressive policy.  (100048)  Progressive assumed that it was a negligent infliction, said it was working with coverage counsel, and pointed out that the parents did not appear to meet the NIED criteria, but asked for clarification.  Progressive (Withers) letter of October 29

EXHIBIT  L
Page  7  of  16
7
200384

2004 to Mr. Kenneth W. Legacki, P.C. (100047). In three different letters Mr. Legacki did not identify the type of claim he was asserting. He neither clarified why he believed it met the NIED requirements established by Alaska case law, nor asserted an unambiguous loss of consortium claim. On April 5, 2005 Progressive (Withers) writes to Mr. Legacki denying that Mr. Weilbacher has separate UM/UIM coverage under the Progressive policy. Finally, on June 8, 2005 Mr. Legacki demanded payment "for the direct claim of a father for the death of his child and promptly tender the policy limit."...

### Interpretation of Policy Language

I reviewed the policy with particular attention to Section III, UM/UIM Coverage. The policy language is clear. It is not ambiguous or misleading. It does not deceptively affect the risk purported to be assumed. It complies with and does not violate Title 21 of Alaska Statutes.

I base this opinion on my review of the policy language. I also note that the Alaska Division of Insurance approved this policy form on September 8, 1999, while I served as Director.

In Part III of the Progressive policy, page 27-28, the "LIMITS OF LIABILITY" section states:

> The Limit of Liability shown on the **Declarations Page** for the coverages under this Part III is the most we will pay regardless of the number of:
> 1. claims made;
> 2. **covered vehicles;**
> 3. **insured persons;**

EXHIBIT $L$

Page $8$ of $16$

4. lawsuits brought;
5. vehicles involved in an **accident**; or
6. premiums paid.

.... [combined single limits language]

**If your Declarations Page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one (1) person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two (2) or more persons in any one (1) **accident;** and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** caused by any one (1) **accident.**

The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury,** including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death. (100382-383)

The Declarations Page (100344) shows, under the "Coverages and Limits of Liability" section the following split limit:

UNINSURED/UNDERINSURED MOTORIST
$100,000 EACH PERSON – $300,000 EACH ACCIDENT

The common-sense meaning of this language is unmistakable. The "each person" limit for **bodily injury** under the UM/UIM coverage is $100,000 and "includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury,** including, but not limited to, ... loss of consortium, ... It does not require an attorney's assistance to interpret.

The limit of liability language expressly states that the total derivative claims for loss of consortium are included in the "each person" limit and therefore,

EXHIBIT ___L___
Page __9__ of _16_

cannot trigger a separate per person limit.

In my opinion it is appropriate to hold insurers to a high standard of clarity in writing policy language, with the penalty of interpretation of ambiguity or misleading terms against the drafter.  However, when an insurer gets it right by drafting, clear, coherent, and understandable language, it must be upheld.

Under <u>Teel</u>, even when the language is clear, the policy provisions must be interpreted consistent with the reasonable expectations of the insured, without requiring a lawyer's skill in interpreting the language.  [<u>Teel</u> FN 29, <u>Farquhar v. Alaska Natl Ins. Co.</u>, 20 P.3d 577, 579 (Alaska 2001)].

<u>Couch on Insurance 3d</u>, " Limits of Insurer's Liability; UM/UIM Coverage, Elements of Recovery, Limits of Insurer's Liability, Per Occurrence and Per Person Limits, Sec. 171.15 " states:

> Language in an underinsured motorist policy referring to "bodily injury to each person" is unambiguous and refers to insured persons who were actually present and injured in an accident.  All damages anyone may have because of bodily injury to a person in automobile accident are included under the "each person" limit in an underinsured automobile insurance policy, where the policy states that its "each person" limits apply for all damages due to a bodily injury.  Policies may differentiate between an "insured" and a "bodily injured" person, and, in such instances, the status of an insured does not allow recovery under the higher per accident limits if the insured was not injured in the accident." (<u>Littlefield v. State Farm Fire and Cas. Co.</u> 857 P.2d 65 (Okla. 1993)).

Plaintiff's complaint at Paragraph 8 on the  loss of consortium claim states:

> Progressive has refused to acknowledge Ronald Weilbacher's direct claim for compensation under its underinsured policy, although the Alaska Supreme Court held in <u>Allstate Ins. Co. v. Teel</u>, 100 P.3d 2 (Alaska 2004), that underinsured coverage must compensate for a direct claim by a parent when there is an underinsured accident.

EXHIBIT  L
Page 10 of 16

200387

10

Progressive denies this paragraph of the complaint in its Answer.

      _Teel_ dealt with a direct NIED claim, not with loss of consortium.  In affirming the superior court's ruling the Court stated:

> Judge Wood held that because a reasonable layperson would have no reason to believe that the policy language would exclude Teel's NIED claim, Teel was an insured under the UM/UIM provisions in O'Flanagan's policy.
> Because we conclude that the policy language does not clearly exclude Teel from coverage, we affirm the decision of the superior court.

      The _Teel_ Court's Footnote #3 is instructive on distinguishing derivative and direct injury claims:

> In State Farm Mutual Automobile Insurance Co. v. Lawrence, we characterized claims for emotional distress as direct rather than derivative injuries, in which a party can recover solely based upon another party's injuries. 26 P.3d 1074, 1079 (Alaska 2001). **Claims of emotional distress are fundamentally different from derivative claims, such as loss of consortium.** Id. We reasoned that [u]nlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from injury to another. Id.

(emphasis added)

### Regulatory Review of Policy Language
### by Alaska Division of Insurance

      The Alaska Insurance Code requires the filing of insurance policy language and the Division reviews and approves or disapproves them to ensure that insurers and other entities are in compliance with the code.  Policy language and forms incorporated by the insurer into the policy must be approved by the Division before they

EXHIBIT _L_
Page_11_ of _16_

may be used.  The Division conducts market conduct examinations and handles consumer complaints to monitor ongoing compliance with statutory and regulatory requirements.

Insurance policy language must be submitted to and approved by the Director of Insurance before it may be used to write insurance coverage in Alaska.  The first sentence of AS 21.42.120(a) provides:

> A basic insurance policy or annuity contract form, or application form where written application is required and is to be made a part of the policy or contract, or printed rider or endorsement form or form of renewal certificate, may not be delivered, or issued for delivery in this state, unless the form has been filed with and approved by the director.

The Director is required to disapprove language or withdraw a previous approval that is inconsistent, misleading, ambiguous, or that "deceptively affects the risk".  Only if the form is in any respect a violation of or does not comply with the Alaska Insurance Code, Title 21, the Director shall disapprove it:

> The director shall disapprove a form filed under AS 21.42.120 or withdraw a previous approval of the form only if the form
>
> (1) is in any respect in violation of or does not comply with this title;
> (2) contains or incorporates by reference, where incorporation is permissible, an inconsistent, ambiguous, or misleading clause, or exception and condition that deceptively affects the risk purported to be assumed in the general coverage of the contract;
> (3) has a title, heading, or other indication of its provisions that is misleading;
> (4) is printed or otherwise reproduced in a manner that renders a provision of the form substantially illegible;
> (5) provides benefits for Medicare supplement insurance that are unreasonable in relation to the premium charged.

EXHIBIT___L___
Page__12__ of __16__

200389          12

Progressive filed its proposed policy language, including its UM/UIM provisions with the Division on September 8, 1997. (Filing #25405). The Division approved the filing on September 8, 1999, to take effect on November 12, 1999. During this two-year review period the Division analyzed the filing, raised questions about it to Progressive and required significant revisions to the language before agreeing to approve the insurance policy form.

Part III, the Progressive Form's UM/UIM section proposed policy language that became the central focus of the discussion and debate about the filing. The Division specifically questioned and required substantial rewriting and deletions of the language proposed by Progressive before approval was granted. Initially it found conflicts between UM/UIM provisions and the governing statutes (200322) Limits of liability language from the UM/UIM Part (200312) and from other parts was discussed, defended and amended (200309-310)/ The placement of exclusions and their allowability were debated (200407). At one point the Division recommended "a full redrafting of Progressive's UM/UIM coverage". (200304)

In my opinion this court should give substantial weight to the Division's approval of the Progressive's policy language. In Government Employees Insurance Company v. Graham-Gonzalez, 107 P.3d 279 (Alaska 2005), the Alaska Supreme Court has taken notice of the Division's review and approval / disapproval of insurance policy language and given "some weight" to what the agency has done:

Although AS 21.89.020(c) does not purport to regulate the forms insurers may use in soliciting coverage, such forms

EXHIBIT _L_
Page _13_ of _16_

200390          13

are subject to state regulation. Alaska Statute 21.42.120(a) requires that application forms that are to become part of a policy must be filed with and approved by the director of the Division of Insurance. Alaska Statute 21.42.130(1) requires that the director disapprove a form that is filed that is in any respect in violation of or does not comply with [Title 21 of the Alaska Statutes]. At the request of GEICO we have taken judicial notice that the Division of Insurance has approved application forms submitted by insurers and by agencies serving insurers that, like the applications at issue in this case, list the various levels of coverage required but do not state the premium that will be charged for each level of coverage.

The parties differ as to the weight that this court should give to the divisions approvals. GEICO argues that we should give substantial deference to the approvals since the legislature has delegated to the division the duty of enforcing and administering the statutes concerning insurance. Graham-Gonzalez, on the other hand, argues that the approvals have no legal effect and that the court must exercise its independent judgment to decide what AS 21.89.020(c) requires.

Typically we use the independent judgment standard on questions of law unless the issue involves agency expertise or the determination of fundamental policy questions on subjects committed to the agency. This court has not ruled on whether Division of Insurance approvals of forms under AS 21.42.120 and .130 should be reviewed deferentially under the reasonable basis standard or whether the court should substitute its judgment for that of the division on the question whether forms comply with the applicable statute. At least one other jurisdiction has suggested that the more deferential standard is appropriate. If we were to adopt the more deferential standard, the question presented in this case would be readily resolved in favor of the insurers, for it is plainly reasonable to interpret the statute as not requiring that initial application forms contain premium information. **But even if the independent judgment standard were applied, the division's approval of forms like those used in the present case would be entitled to some deference. In such cases this court gives some weight to what the agency has done, especially where the agency interpretation is longstanding.** In the present case it is unnecessary to determine which standard of

EXHIBIT __L__
Page __14__ of __16__

200391          14

review should be applied because even if only some weight is given to the approvals they are consistent with this courts view as to what .020(c) requires.

(emphasis added; footnotes omitted).

Also, the Division employs Consumer Complaint Specialists "to investigate complaints, gather and evaluate data, research insurance laws, and take appropriate action to bring the complaint to a proper resolution." (Annual Report, page 21) As of May 19, 2006, I was not able to identify any consumer complaints filed with the Division concerning the issues in this case.

**Fortuitous Risk**

An insurer must be able to rely on the decisions of insurance regulators concerning approval or disapproval of a form containing policy language. The Division is the state agency with primary jurisdiction under Alaska statutes. A Director's finding that policy language passes scrutiny because it is not ambiguous, misleading or deceptive and that it is in compliance with the Insurance Code should stand.

If a court were to reinterpret the meaning of policy language after the insurance regulator agency had already operated squarely within its authority to address the same language, the court could wreak havoc within the heavily regulated insurance industry. The relatively thin insurance market in this state could very well be disrupted. Although insurers specialize in assessing and assuming the risk of fortuitous events in return for a premium payment, it is my experience that they do not handle regulatory or judicial uncertainty very well. Insurers must understand who is regulating them and what

EXHIBIT ___L___
Page ___15___ of ___16___

the standards are in order to effectively comply with the law and properly serve the public with vital coverage.

DATED at Anchorage, Alaska, this 26th day of May, 2006.

_____
Robert A. Lohr

EXHIBIT ___L___
Page ___16___ of ___16___

200393       16