Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| RONALD V. WEILBACHER,<br><br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>Defendant. | ) | 3:05-cv-204-TMB |

MEMORANDUM IN SUPPORT OF PROGRESSIVE'S MOTION *IN LIMINE* TO ESTABLISH LAW OF THE CASE REGARDING COMPENSATORY DAMAGES

Defendant Progressive Northwestern Insurance Company ("Progressive") requests that the court determine as the law of the case and conclusively establish that: (1) the maximum liability of Progressive on Mr. Weilbacher's breach of contract claim is the $100,000 "each person" UIMBI policy limit as set forth in the policy's Declarations Page; and (2) on his bad faith claim (if viable), Mr. Weilbacher may only recover as compensatory damages those damages, if any, stemming directing from Progressive's bad faith, and such compensatory damages specifically do not include any damages suffered by Mr.

Weilbacher as a result of Heidi Weilbacher's death (i.e., Mr. Weilbacher's loss of society/consortium damages).[1]

> A district court possesses inherent power over the administration of its business. It has inherent authority to regulate the conduct of attorneys who appear before it, to promulgate and enforce rules for the management of litigation, to punish contempt, and to remand cases involving pendent claims.

Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995). See Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) ("the inherent authority of a court to enforce its orders by whatever means, without abusing its discretion") (quoting Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir. 1977)).

By filing this motion, Progressive in no way concedes that it is not entitled to summary judgment on Mr. Weilbacher's breach of contract or bad faith claims. Progressive is simply requesting that the court clarify for the benefit of the parties prior to the eve of trial the legal issue of the nature of compensatory damages available. Progressive asks the court to clarify that Mr. Weilbacher's compensatory damages, if any, on his breach of contract claim are capped at the $100,000 "each person" UIMBI policy limit in his Declaration Page as those

[1] Progressive acknowledges and agrees that this motion is mooted when the court grants Progressive's Renewed Motion for Summary Judgment (DE#61-62). This motion is filed at this time in order to comply with the Scheduling and Planning Order's motions deadline of August 28, 2006.

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 2 of 15

damages that put him in as good a position as he would have been had the contract been performed, and do not include damages as a result of the underlying automobile accident.  Progressive also asks the court to clarify that Mr. Weilbahcer's compensatory damages, if any, on his first-party bad faith claim (if viable) are those damages that stem directly from Progressive's actions in this case, and also do not include damages as a result of the underlying automobile accident (i.e., loss of society/consortium damages).

The nature of compensatory damages is purely an issue of law.  See Breck v. Moore, 910 P.2d 599, 607 (Alaska 1996) (determining method of measuring damages as a matter of law); Davis v. Chism, 513 P.2d 475, 482 (Alaska 1973) (holding pre-judgment interest is in the nature of compensatory damages as a matter of law).  "Issues of law are decided by the court, not the jury." Lampley v. State, 33 P.3d 184, 187 (Alaska App. 2001).  As such, the nature of the compensatory damages recoverable in this action is a question for the court to decide prior to trial.

Mr. Weilbacher claims, *inter alia*, that Progressive breached its contract with him by failing to pay additional UIMBI coverage for his loss of society claim under AS 09.15.010.  In his Supplemental Responses to Progressive's First Set of Discovery Requests, Mr. Weilbacher stated,

USDC Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 3 of 15

> Mr. Weilbacher believes that the policy language indicates that he will be compensated for any damages that the tortfeasor's insurance policy is not fully able to cover. Mr. Weilbacher had a contract with Progressive to pay money for his underinsured loss under AS 09.15.010. Mr. Weilbacher has his own separate individual claim because of the death of his daughter. Again, according to Mr. Weilbacher, the underinsured policy states it will cover the difference between what the insurance of the tortfeasor pays and the actual damage that Mr. Weilbacher suffered. Progressive has not paid that money. Mr. Weilbacher has not received compensation for his own individual claim under AS 09.15.010 from Progressive. Therefore, Progressive breached the contract.

Exhibit A at 2. In other words, Mr. Weilbacher suggests that based on Progressive's denial of a second, "each person" policy limit of UIMBI coverage for his claim, Progressive is liable for all of his actual damages sustained as a result of Heidi's death, without regard to the limits of the policy. Mr. Weilbacher is simply wrong. Mr. Weilbacher may recover only those damages that are a direct result of Progressive's (alleged) breach of contract.

"The goal of contract damages is to place the nonbreaching party in as good a position as if the contract had been fully performed." Central Bering Sea Fishermen's Ass'n v. Anderson, 54 P.3d 271, 278 (Alaska 2002) (quoting Luedtke v. Nabors Alaska Drilling, Inc., 834 P.2d 1220, 1226 (Alaska 1992)

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 4 of 15

(citation omitted)). See also Nickels v. Napolilli, 29 P.3d 242, 250 (Alaska 2001). "The ordinary measure of damages in contract law . . . strives to give the benefit of the bargain to the non-breaching party." Alaska Const. Equipment, Inc. v. Star Trucking, Inc., 128 P.3d 164, 167 (Alaska 2006) (citing RESTATEMENT (SECOND) OF CONTRACTS § 347 & cmt. a (1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.")). See e.g. Valdez Fisheries Development Ass'n, Inc. v. Alyeska Pipeline Service Co., 45 P.3d 657, 667 (Alaska 2002) (party bringing a claim for breach of an agreement to negotiate is entitled to recover only costs associated with the negotiations themselves).

In Peter v. The Progressive Corporation, S-11416/11445 (Alaska February 22, 2006), Exhibit B, the Alaska Supreme Court specifically considered and rejected the claim that the injured plaintiff was entitled to unlimited UIM coverage because Progressive earlier denied him UIM benefits. Exhibit B at 16-17. As in this case, Peter argued that "UIM benefits under the policy have no limits because the policy provides that the limits for UIM benefits are equal to the damages the insured could recover from a liable party." Id. at 16. The court

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 5 of 15

disagreed, holding that the Declarations Page of the policy provided the limits of Peter's UIM benefits. Id.

> [T]his argument lacks merit because the declarations page of the policy expressly states that the Peters' UIM limits were $50,000 per person and $100,000 per accident.

Id. The court also rejected Peter's analogy of first-party UIM coverage to third-party liability coverage, noting that the same risks are not inherent in first-party insurance. Id.

Here, the Declarations Page sets the limits of Mr. Weilbacher's UIMBI coverage at $100,000 per person and $300,000 per accident. Exhibit C. Thus, if Mr. Weilbacher has a valid breach of contract claim and if he prevails on his breach of contract claim, then the maximum he could recover on his breach of contract claim is another "each person" UIMBI policy limit of $100,000, plus appropriate add-ons if any. Contrary to Mr. Weilbacher's wishes, he is not entitled to receive all of his uncompensated damages as a result of his daughter's death. $100,000 "each person" is the maximum coverage Mr. Weilbacher paid for and, thus, it is the maximum coverage he is entitled to if he prevails on his breach of contract claim.

Maximum coverage of another $100,000 in UIMBI coverage also places Mr. Weilbacher is as good a position as he would

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 6 of 15

have been assuming no breach. In other words, if Progressive had not denied Mr. Weilbacher's claim for an additional "each person" UIMBI policy limit based on the policy language, it would have paid him for his loss of society/consortium damages under AS 09.15.010 up to the limit the "each person" UIMBI limit of $100,000.

Any other interpretation, including Mr. Weilbacher's "unlimited coverage" theory, would render the Coverages and Limits of Liability in the Declarations Page meaningless. This the courts will not do. "'To the extent possible, all provisions in a contract should be found meaningful." Grant v. Anchorage Police Dept., 20 P.3d 553, 556 (Alaska 2001) (quoting Native Village of Eyak v. GC Contractors, 658 P.2d 756, 760 (Alaska 1983)). "In interpreting a contract, courts should "'interpret the contract in a manner that makes the contract internally consistent.'" Exxon Corp. v. State, 40 P.3d 786, 795 (Alaska 2001) (quoting Brobeck, Phleger, & Harrison v. Telex Corp., 602 F.2d 866, 872 (9th Cir.1979)). When the Progressive policy at issue is read as a whole in a manner that makes the contract internally consistent, Progressive's policy limit or cap on UIMBI coverage is clearly set forth in the declarations page as $100,000 "each person." See Exhibit C.

Additionally, if, and only if, the court determines that Mr. Weilbacher may maintain a bad faith claim against

USDC Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 7 of 15

Progressive (including that Mr. Weilbacher did actually seek some compensatory damages based on Progressive's alleged bad faith), Mr. Weilbacher's may recover only those damages which are a direct result of the tort of bad faith, i.e., are a direct result of the insurer's bad faith conduct.[2] Compensatory damages in bad faith claims also do not include damages arising out of or a direct result of the accident itself.

"'Compensatory damages' are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." RESTATEMENT (SECOND) OF TORTS (1979) §903. "The general principle underlying the assessment of compensatory damages in tort cases is that 'an injured person is entitled to be replaced as nearly as possible in the position he [or she] would have occupied had it not been for the defendant's tort.'" Beaux v. Jacob, 30 P.3d 90, 97 (Alaska 2001) (quoting Beaulieu v. Elliott, 434 P.2d 665, 670-71 (Alaska 1967)). See also RESTATEMENT (SECOND) OF TORTS (1979) §903 cmt. a.

In a first-party bad faith cases, such as this case, a prevailing plaintiff is entitled to be compensated for injuries sustained as a result of the insurer's tort or bad faith, i.e., injuries sustained as a direct result of the insurer's bad faith

[2] Progressive's arguments and assertions in this motion are in the alternative to its position that Mr. Weilbacher failed to articulate any compensatory damages in his bad faith claim. See DE#68-69.

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 8 of 15

denial of UIM coverage. Compensatory damages in first-party insurance bad faith claims do not include the damages caused by the underlying tortfeasor. For example, in an automobile accident case such as this one, where a negligent, underinsured driver injures the insured, compensatory damages could include compensation for the insured's emotional distress as a result of the insurer's wrongful denial of insurance benefits to the insured, but it would not include any recovery by the insured for the actual injuries or damages caused by the negligent driver (i.e., loss of society/consortium damages).

In National Ins. Ass'n v. Sockwell, 829 So. 2d 111, (Ala. 2002), the court affirmed the jury's award of compensatory damages for mental anguish and physical suffering which were the direct result of the insurer's bad faith refusal to pay the insured's UIM claim. Betty Sockwell sustained serious bodily injuries when the vehicle in which she was a passenger was rear-ended. Id. at 114. At the time of the accident, Ms. Sockwell had two automobile insurance policies with National Insurance Association for a total of $40,000 in UIM coverage. Id. National repeatedly denied UIM coverage and Ms. Sockwell sued it for bad faith denial of her UIM claim. Id. Following trial, the jury awarded Ms. Sockwell $201,000 in compensatory damages and $600,000 in punitive damages. Following a thorough discussion of Alabama law on emotional distress damages, the court affirmed the compensatory damages award because Ms.

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 9 of 15

Sockwell presented sufficient evidence that National's wrongdoing caused her physical and mental anguish separate and apart from the physical injuries and pain and suffering she experienced as a result of the automobile accident itself. Id. at 134.

In Weese v. Nationwide Ins. Co., 879 F.2d 115 (4th Cir. 1989), the court specifically held that compensatory damages for breach of the covenant of good faith and fair dealing did not include the losses suffered as a result of the tortfeasor's actions, i.e., the plaintiffs could not recover for the uncollected amount of the judgment against the tortfeasor. Id. at 121. The court stated,

> The Weeses seek compensatory and punitive damages, and attorney fees to reimburse them for fees they have incurred. The compensatory damages include a claim for $ 101,000, the unsatisfied portion of their judgment against the uninsured motorist. They cannot recover this item of damages. The uninsured motorist, not Nationwide, was responsible for this loss. Nothing that Nationwide did, or omitted to do, contributed to the damage the Weeses suffered as a result of the accident.

Id. (emphasis added).

In Ace v. Aetna Life Ins. Co., 139 F.3d 1241 (9th Cir. 1998), Sherrie Ace sued Aetna Life Insurance Company alleging Aetna acted in bad faith in denying her claim for long-term disability benefits. Id. at 1242-43. The jury ruled for Ace on

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 10 of 15

her bad faith claim and awarded her compensatory damages of $27,009 for the wrongful denial of disability benefits and $100,000 for emotional distress. Id. at 1243. On appeal, the court affirmed the jury's verdict on compensatory damages, recognizing that under Alaska law "[e]motional distress is a category of damages in a bad faith case but is not an element of the claim." Id. at 1250. See also Wardrip v. Continental Ins. Co., 1999 U.S. App. LEXIS 25628, No. 98-3333, *8 (10th Cir. October 14, 1999) ("Wardrip is not claiming that any bad faith on Continental's part caused injury other than Hart's incurrence of punitive damages. . . . because the only damages Wardrip seeks are unrecoverable, she has not stated a valid bad faith claim, and the district court correctly dismissed it."); Guaranty Nat'l Ins. Co. v. Potter, 912 P.2d 267, 273 (Nevada 1996) (affirming $150,000 in compensatory damages based on Guaranty's bad faith in failing to timely pay for IME's as "consistent with the two years of threats and subsequent litigation the Potters had to endure and the damage to their credit reputation during that time"); Wyoma v. Begovic, 1994 Ohio App. LEXIS 3124, *29 (July 14, 1994) (in affirming compensatory damages award of $75,000 for bad faith denial of UIM coverage the court noted "it must be first pointed out that this tort claim does not result from the accident which occurred on September 10, 1988 but instead from American Select's bad faith in dealing with Mrs. Woyma.").

USDC Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 11 of 15

As the above cases clearly demonstrate, compensatory damages in first-party bad faith litigation are those damages that compensate the insured for any damages suffered as a direct result of the insurer's bad faith. Such compensatory damages are separate and apart from the actual damages the insured may have suffered as a result of the tortfeasor's actions.

In this case, the compensatory damages Mr. Weilbacher may be able to recover if he prevails at trial on his bad faith claim include only those damages that he suffered (if any), and is able to prove at trial, as a result of Progressive's alleged bad faith denial of his claim for a second "each person" UIMBI policy limit. Compensatory damages simply do not include recovery for the actual injuries sustained as a result of his daughter's death, i.e., his loss of society/consortium claim. As the court in Weese explained, "Nothing that [the insurer] did, or omitted to do, contributed to the damage the Weeses suffered as a result of the accident." Weese, 879 F.2d at 121. Progressive is simply not vicariously liable under a bad faith claim to Mr. Weilbacher for damages he suffered as a result of actions by an unrelated third-party; Progressive may be liable to Mr. Weilbacher only for the injuries or damages to him caused by Progressive.

Based on the foregoing and in the alternative to Progressive's other pending motions for summary judgment,

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 12 of 15

Progressive requests an order determining the law of the case regarding compensatory damages. First, if Progressive is not granted summary judgment on Mr. Weilbacher's breach of contract claim and Mr. Weilbacher prevails on his claim, Mr. Weilbacher may only recover compensatory damages up to the UIMBI policy limit of $100,000 "each person." Second, if Progressive is not granted summary judgment on Mr. Weilbacher's bad faith claim and if Mr. Weilbacher prevails at trial on his bad faith claim, Mr. Weilbacher may only recover as compensatory damages those damages, if any, stemming directly from Progressive's bad faith as proven at trial, and that such compensatory damages specifically do not include the actual damages suffered by Mr. Weilbacher as a result of Heidi Weilbacher's death.

DATED at Fairbanks, Alaska, this 28th day of August, 2006.

GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company

By: /s/Aisha Tinker Bray

Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
Phone: 907-452-8986
Fax: 907-452-7015
Email: atbray@guessrudd.com
Alaska Bar No. 9505028

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 13 of 15

CERTIFICATE OF SERVICE
I hereby certify that on the
28th day of August, 2006, a copy
of the foregoing document was served
electronically on:

Kenneth W. Legacki, Esq.

A Chambers Copy was also mailed
to the court pursuant to D.AK.LR 10.1(b).

Guess & Rudd P.C.

By:      /s/Aisha Tinker Bray

USDC Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he
Case Regarding Compensatory Damages
Page 14 of 15

Table of Exhibits

| Exhibit | Description |
|---|---|
| A | Pages 4-5 of Plaintiff's Supplemental Responses to Progressive's First Set of Discovery Requests & Mr. Weilbacher's signature page |
| B | Peter v. The Progressive Corporation, S-11416/11445 (Alaska February 22, 2006) |
| C | Declarations Page for Mr. Weilbacher's Policy (Bates No. 100,344) |

USDC Case No. 3:05-cv-204-TMB Weilbacher v. Progressive
Memorandum in Support of Progressive's Motion *In Limine* to Establish Law of he Case Regarding Compensatory Damages
Page 15 of 15