# KENNETH W. LEGACKI, P. C.
## ATTORNEY AT LAW

425 "G" STREET, SUITE 920
ANCHORAGE, ALASKA 99501

TELEPHONE: (907) 258-2422
FACSIMILE: (907) 278-4848
E-MAIL: legacki@gci.net

July 19, 2006

**VIA FACSIMILE**

Ms. Aisha Tinker Bray
Attorney at Law
Guess & Rudd, P.C.
100 Cushman Street, Suite 500
Fairbanks, AK  99701-4659

      RE:  Weilbacher vs. Progressive
             Claim No.      : 017489548
             Your File No.   : 5200.120

Dear Aisha:

      The following information is being submitted in response to your July 17, 2006 letter.

      In response to Interrogatory No. 1, at Bates #100,375, page 20 of the insurance policy, the paragraph entitled "INSURING AGREEMENT - UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE", states that Progressive will pay for any bodily injury that was incurred when an insured person, like Mr. Weilbacher, is entitled to recover from the owner or operator of an uninsured/underinsured motor vehicle.

      Under Gillespie, as we have argued before, it states that Mr. Weilbacher has an independent, separate, direct cause of action that is not derivative of the death of his daughter. Progressive is asserting Mr. Weilbacher's individual claim is derivative of the wrongful death claim of his daughter; that assertion is in violation of Alaska law.

      Alaska law says that underinsured motorist coverage is to compensate an insured for damages that are not covered by the tortfeasor, and Progressive is trying to limit the amount of money Mr. Weilbacher can receive directly for his loss, which is a violation of law.

EXHIBIT 2
Page 1 of 3

Ms. Aisha Tinker Bray
July 19, 2006
Page 2

The answer to Interrogatory No. 3 is very similar to the answer to Interrogatory No. 1. Mr. Weilbacher believes that the policy language indicates that he will be compensated for any damages that the tortfeasor's insurance policy is not fully able to cover. Mr. Weilbacher had a contract with Progressive to pay money for his underinsured loss and Progressive is asserting the amount that it gave to Mr. Weilbacher as derivative of the wrongful death claim of his daughter is sufficient. But he has his own separate individual claim because of the death of his daughter. Again, according to Mr. Weilbacher, the policy language says that the underinsured policy states it will cover the difference between what the insurance of the tortfeasor pays and the actual damage that Mr. Weilbacher suffered. Progressive has not paid that money. Mr. Weilbacher has not received compensation for his own individual claim under AS 09.15.010 from Progressive. Therefore, Progressive breached the contract.

Regarding Mr. Weilbacher's response to Interrogatory No. 4, Mr. Weilbacher believes again, and incorporates the answers to Interrogatory Nos. 1 and 3, that as he reads the insurance policy, Progressive has an obligation to pay him a separate claim under AS 09.15.010 and it has not done so. Under the Fair Claims Settlement Act, Progressive had an obligation to pay him his separate individual claim, and Progressive is trying to avoid payment by claiming that Mr. Weilbacher's AS 09.15.010 claim is a derivative claim, rather than a direct claim. Progressive has an obligation to pay Mr. Weilbacher for the death of his daughter for his separate individual claim.

In response to Interrogatory No. 5, again Mr. Weilbacher reiterates his responses to Interrogatory Nos. 1 and 3. I do not know how to explain it any better to you, but Mr. Weilbacher reads his insurance agreement as saying that Progressive has to compensate him for the loss of his daughter for his own claim under AS 09.15.010.

Why Progressive has failed to pay Mr. Weilbacher is beyond his knowledge, and all the documents for the reason for not paying Mr. Weilbacher are in the possession of Progressive.

I am perplexed by your request for a response to Interrogatory No. 6, when numerous lawsuits in which he was involved have been listed. After having talked to Mr. Weilbacher again, and doing some "research" on the "Internet", we were able to find some other cases in which Mr. Weilbacher was involved. Obviously, some of these cases are over 10 years old, and are not relevant, nor will they lead to relevant information.

EXHIBIT 2
Page 2 of 3

Ms. Aisha Tinker Bray
July 19, 2006
Page 3

    Regarding Interrogatory No. 9 and Request for Admission Nos. 5 through 7, the checks are self-explanatory. As Mr. Withers' testified, the checks were made out to the Estate of Heidi Weilbacher and also to the personal representatives of the estate, Cathie Mauro and Ronald Weilbacher. As the distribution checks from my office indicate, the money went to the estate since that is who the checks were made out to.

    If you look at the checks, Mr. Weilbacher received $26,506.92 from Allstate under the third-party claim (Document No. RW-10002), and then he received $33,333.33 from the underinsured motorist claim against Allstate. That is all the money that Mr. Weilbacher received for his private right of action. From looking at the checks, one can readily add up the figures to determine the amount of money Mr. Weilbacher received. Mr. Weilbacher had no control over how the checks were written. None of the checks state that they were to compensate Mr. Weilbacher for his direct claim.

    I have sent a verification page to Mr. Weilbacher to sign before a notary with respect to his responses to your discovery requests.

    I hope the above clarifies any ambiguity for you.

                      Sincerely,

                      KENNETH W. LEGACKI, P.C.

                      Kenneth W. Legacki

KWL/ksh
Enclosures
cc:   Gary Zipkin, Esq. (w/encl.)

EXHIBIT 2
Page 3 of 3