Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PROGRESSIVE NORTHWESTERN<br>INSURANCE COMPANY,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  3:05-cv-204-TMB |

REPLY TO PLAINTIFF'S OPPOSITION TO
<u>PROGRESSIVE'S ALTERNATE MOTION FOR SUMMARY JUDGMENT</u>

Mr. Weilbacher's opposition to Progressive's motion clarifies that at all relevant times, his daughter was a resident of his household such that his omission of her on his application was an incorrect statement rendering the policy void *ab initio*.

Mr. Weilbacher confuses the relevant time periods: when he signed his Progressive insurance application on December 21, 2000, and the date of the accident July 9, 2001. The issue for purposes of this motion is not whether Heidi was a resident of Mr. Weilbacher's residence in July 2001; it is undisputed that she was. The issue for purposes of this motion is whether she was a resident

of his household in December 2000 when he signed the application. Mr. Weilbacher has now affirmatively established that she was.

As Mr. Weilbacher points out, in evaluating whether there was UIMBI coverage for Heidi Weilbacher's death, Progressive investigated Heidi's residence in July 2001.  See Exhibit 11. Heidi needed to be a resident relative at the time of the accident to trigger UIMBI coverage.  Progressive accepted as true Mr. Weilbacher's testimony at his February 20, 2002 interview that Heidi resided with her mother, Ms. Mauro, during the school year and with him during the summer, and that Heidi was living with him (not merely visiting) at the time of the accident.[1]  Exhibit 1 at 3:96-100 & 12.  Based on Mr. Weilbacher's interview testimony that Heidi was actually living with him at the time of the accident in July 2001, Progressive determined that she was a resident relative of his household and, thus, an insured person under the policy. See Exhibits 11, 12, 16, 17, & 20.  As such, Progressive concluded there was UIMBI coverage available, and paid the full "each person" policy limit.  See Exhibit 3.

---

[1] In his Opposition, Mr. Weilbacher initially states that Heidi only "visited with [him] in Kenai for periods of time in the summer." Opposition at 2. Given Mr. Weilbacher's earlier testimony and subsequent assertions, this is obviously a misstatement of fact.  Heidi resided with him as a member of his household during each summer; she was not merely a visiting guest.  If not, Mr. Weilbacher has made material misrepresentations to Progressive throughout the claims and litigation process.

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 2 of 12

It was not until Mr. Weilbacher's deposition on August 21, 2006 that Progressive learned that Heidi was a resident of Mr. Weilbacher's household as of December 21, 2000 when he signed the insurance application. Mr. Weilbacher's deposition testimony could not have been clearer. Heidi Weilbacher resided with him as of December 21, 2000 when he signed the application. Mr. Weilbacher's affidavit does nothing to contradict this testimony. In his Affidavit, Mr. Weilbacher reiterates that Heidi lived with her mother during the school year, suggesting — but not stating — that she did not live with him during December 2000. See Exhibit 21 at ¶5. Mr. Weilbacher supports his suggestions by stating that during the winter he is "seldom" in Soldotna as he is traveling for his business. Id. at ¶7. He also states that in the deposition he believed he was being asked about whether he had joint legal custody of Heidi in December 2000. Id. at ¶6. Notably, Mr. Weilbacher did not state that he was not in Soldotna on December 21, 2000 or that Heidi did not reside with him in December 2000. Id. In his affidavit, Mr. Weilbacher only makes suggestions, states generalities, and gives his beliefs. As such, nothing in Mr. Weilbacher's affidavit contradicts his deposition testimony.

In fact, even if we accept Mr. Weilbacher's current version of the truth — that Heidi Weilbacher did not actually, physically live with him in December 2000 but that he shared joint legal custody of her with Ms. Mauro — Heidi is still a resident of his household and his policy is still void *ab initio*. Mr.

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 3 of 12

Weilbacher's Opposition and affidavit underscore that he and Ms. Mauro shared joint custody, legal and physical, of Heidi.  It is undisputable that Heidi resided with each of them at various times, i.e., with Ms. Mauro during the entire school year and with him during the summer.  See Opposition &  Exhibit 1.  As such, Heidi had dual residency.

As the court in Wainscott v. Ossenkop, 633 P.2d 237 (Alaska 1981), stated, it is the relationship between the father and daughter that is important.  "[T]the focus must be on the relationship between [the father] and his daughter [].  If that separation was intended to be only temporary, then they would still be considered as being in the same household."  Id. at 240.  If there is no permanent separation of the parent-child relationship, the child remains a resident or member of the parent's household. "A child of divorced parents may, depending on the facts, be regarded as being in the household of both."  Id. at 241.  See Simmons v. Insurance Co. of North America, 17 P.3d 56, 64 (Alaska 2001) ("Moreover, we have noted that a child may be a resident of the household of one parent for coverage purposes even when the other parent has custody.").

It is undisputable that Mr. Weilbacher maintained a close relationship with his daughter, and any separations were simply temporary.  She lived with him during her summer vacations from school.  See Exhibit 1.  She was the beneficiary of his will.  See

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 4 of 12

id. at 13.  And, he was devastated by her death.  Id.  Mr. Weilbacher and Heidi had a on-going parent-child relationship.  Any time she was not with him was not a permanent separation, but merely a temporary one such that she was a resident of both parents' households.  Mr. Weilbacher understood this when he testified at his deposition since he considered her a member or resident of his household.

Mr. Weilbacher's current assertion that he was "confused" between legal custody and residency when answering the questions at his deposition is completely disingenuous.  The questions specifically asked about residency.

> Q. . . . It says, "Complete for applicant spouse and all persons age 14 and over **residing** with applicant."
>     Was Heidi Weilbacher **residing** with you when you purchased the Progressive Northwestern policy?
>
> A. Yes.
>
> * * *
>
> Q.  Your signature, your date, December 21st.  As of that date, Heidi Weilbacher was **residing** with you.  She was over 14 and you agree, don't you, she should have been identified if you were asked the question —
>     If you were asked the question, "Who **resides** with you who is 14 or older," you should have identified her, correct.
>
> A. Yeah.

Exhibit B at 20:2-7 & 22:23-23:5 (emphasis added).  See also id. at 21:2-6.  The entire focus of the questioning was on Heidi's

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 5 of 12

<u>residence</u> as of December 21, 2000.  There was absolutely no discussion of custody.  There were no prior or concurrent questions regarding custody.  <u>See</u> Exhibit B.  In fact, custody was <u>never</u> discussed at the deposition.  <u>See</u> Exhibit D, Deposition Index for "C."  Even someone with Mr. Weilbacher's limited intelligence and understanding (as his counsel would like us to believe despite the fact that he is a successful businessman), surely knows whether his daughter resides with him or not.  In fact, Mr. Weilbacher did understand this concept and acknowledged at his deposition that he should have listed Heidi as a resident of his household on his application.  <u>See</u> Exhibit B at 21:4-6 & 23:1-5.  Mr. Weilbacher understood the questions and answered them appropriately.

Mr. Weilbacher's self-serving profession of "confusion" in his affidavit with an issue that was never discussed is simply an ill-conceived attempt to re-cast his testimony to avoid the ramifications of his actions.  As the Alaska Supreme Court has already noted, "self-serving statements are not considered to be probative."  <u>Hazell v. Richards</u>, 659 P.2d 575, 577 n.3 (Alaska 1983).  It is also interesting that Mr. Weilbacher is suddenly so confident about the issue of joint legal custody of Heidi and that it was on his mind in a deposition wherein it was never mentioned, when at his February 20, 2002 interview, Mr. Weilbacher could not remember the custody arrangement for Heidi and was very vague on the issue.  <u>See</u> Exhibit 1 at 4:131-135.  Mr. Weilbacher cannot simply "revise" his deposition testimony every time he is faced

Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 6 of 12

with a situation he does not like.  At his deposition, Mr. Weilbacher understood Heidi was a resident of his household, whether because she physically lived with him or because he knew he had joint custody of her.  Mr. Weilbacher knew and acknowledged that he should have disclosed her on his insurance application, and that he did not do so.

Also, contrary to Mr. Weilbacher's current assertion, he did <u>not</u> tell the insurance agent that he had a 14-year old daughter.  At his deposition, Mr. Weilbacher testified,

> Q. . . . Did you tell the person who faxed it to you, "I have a 14-year old," and they said, "That's okay.  Go ahead—"
>
> A. They knew I had my daughter.
>
> Q. Did they know she was 14?
>
> A.  I don't know.  **I don't believe so.**
>
> \* \* \*
>
> Q. Did they ask you on the phone whether you had anyone in the household who was 14 or over?
>
> A. I don't remember talking to them on the phone, what they asked me.
>
> Q. So they might have asked you, they might not have asked you whether you had someone in the household who was over 14?  Is that a fair summary?
>
> A. I don't know.

Exhibit B at 33:11-17 & 34:10-17.  It is evident from Mr. Weilbacher's deposition testimony that he did <u>not</u> discuss his

Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 7 of 12

daughter's age with his insurance agent. In fact, even when Mr. Weilbacher's attorney attempted to "suggest" at the deposition that Mr. Weilbacher had told the agent that his daughter was 14 (presumably so that it could be argued it was the agent's error), Mr. Weilbacher would not lie. Despite Mr. Weilbacher's immediately prior testimony that he did not discuss his daughter with the insurance agent, Mr. Legacki stated,

> MR. LEGACKI: Assuming he did not tell. **He is saying he did tell.**
>
> Q. I don't think actually Mr. Legacki said something that's truthful, but let's just take up on that. Did you — Mr. Legacki says you told the people at Denali Alaskan that you had a 14-year old daughter in the residence. Did you?
>
> A. They knew my daughter.
>
> Q. That's not my question. That wasn't the question. Did you tell the people at Denali Alaskan that you had a 14-year old daughter, not that you had a daughter, that you had a 14-year old daughter
>
> A. **I don't think my daughter was ever brought up in it.**

Id. at 35:23-36:2. Mr. Weilbacher testified that he was trying to be truthful, no one told him to lie, and he would not have done so anyway. Id. at 35-36. The insurance agent has nothing to do with this issue. Mr. Weilbacher made the material misrepresentation himself. He failed to disclose that Heidi was a resident of his household over 14-years of age on his application. Any suggestions that the misrepresentations, omissions and incorrect statements are

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 8 of 12

the agent's as opposed to Mr. Weilbacher's are disingenuous, knowing misrepresentations of the facts.

There is no estoppel and no sanctionable conduct on the part of Progressive, its attorneys, and its adjusters.  As discussed above, Mr. Weilbacher confuses the relevant times. Progressive investigated Heidi's residency at the time of the accident in July 2001 as to whether there was UIMBI coverage.  It is undisputed that she was a resident of Mr. Weilbacher's household at that time.  Hence, Progressive provided UIMBI coverage.  It was not until Mr. Weilbacher's deposition on August 21, 2006 that Progressive learned that she was also an undisclosed resident of his household in December 2000 when he signed the application.

Despite the fact that Mr. Weilbacher wholly fails to articulate his estoppel argument and merely throws it out in a cursory fashion, he cannot make the necessary showings.  At a minimum, estoppel requires fraudulent conduct <u>and</u> some form of reliance.[2]  Neither is present in this case.  There has been <u>no</u> fraudulent conduct on the part of Progressive as Progressive has never misrepresented any facts.[3]  Progressive has relied to its detriment on facts provided by Mr. Weilbacher.  Progressive relied on Mr. Weilbacher's statements at his February 2002 interview and

---

[2] See e.g. <u>Williams v. Williams</u>, 129 P.3d 428, 432 (Alaska 2006) (elements of estoppel).
[3] See e.g. <u>Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.</u>, 129 P.3d 905, (Alaska 2006) (identifying elements of actual fraud).

Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 9 of 12

paid full UIMBI coverage policy limits.  Progressive then learned at Mr. Weilbacher's deposition that he omitted Heidi as a resident of his household on his application, resulting in the submission of false/incorrect statements to Progressive to obtain his policy.  There is simply no fraud on the part of Progressive.

It is also unclear how Mr. Weilbacher could have relied to his detriment on Progressive's actions.  Progressive paid full "each person" UIMBI policy limits to Mr. Weilbacher's financial benefit.[4]  Progressive then denied him another, separate "each person" UIMBI policy limit based solely on the policy language.  The fact that Progressive recently discovered that the policy was void *ab initio* due to Mr. Weilbacher's misrepresentations, omission, and incorrect statements does not change anything.  Progressive's fundamental position has not changed.  Mr. Weilbacher is still <u>not</u> entitled to another, separate "each person" UIMBI policy limit.

Also, contrary to Mr. Weilbacher's intentional misstatements, Progressive is not claiming there is no "coverage" under a valid policy, i.e., coverage is excluded.  Progressive is also not asserting that Mr. Weilbacher intentionally committed fraud.  <u>See</u> Opposition at 14.  Progressive is entitled to rescind

---

[4] In fact, Mr. Weilbacher received a financial windfall because Progressive paid the full "each person" policy limit of UIMBI coverage before it learned from him of his false/incorrect statements on his application.

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 10 of 12

the policy under AS 21.42.110 due to Mr. Weilbacher's omissions or incorrect statements regarding residents of his household as of December 21, 2000 when he signed his application. Mr. Weilbacher's omissions or incorrect statements void the policy *ab initio*.

Finally, contrary to Mr. Weilbacher's (or more correctly his attorney's) rantings, Progressive, its attorneys, and its adjusters have not intentionally misled anyone, withheld any material facts, or committed fraud. Mr. Weilbacher's *ad hominem* attacks are not only a demonstration of the level of unprofessionalism he has brought to this case, but a clear indication that he has no substantive rebuttal to Progressive's arguments.

Mr. Weilbacher understood that Heidi was a resident of his household. It is immaterial whether this was because she physically resided with him in December 2000 or because he had joint custody of her. Mr. Weilbacher also acknowledged and agreed that as a resident of his household over 14-years old Heidi should have been disclosed on his insurance application. She was not. By failing to properly disclose Heidi, Mr. Weilbacher made misrepresentations, omissions, and incorrect statements of fact on his insurance application. As such, AS 21.42.110 prevents any recovery under the policy as the policy is rendered void *ab initio* as a matter of law. Since Mr. Weilbacher's policy is void *ab*

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 11 of 12

*initio*, Progressive is entitled to summary judgment on all of Mr. Weilbacher's claims against it as matter of law.

DATED at Fairbanks, Alaska, this 21st day of September, 2006.

>GUESS & RUDD P.C.
>Attorneys for Progressive
>Northwestern Insurance Company
>
>By:      s/Aisha Tinker Bray
>Guess & Rudd P.C.
>100 Cushman Street, Suite 500
>Fairbanks, Alaska  99701
>Phone: 907-452-8986
>Fax:   907-452-7015
>Email: atbray@guessrudd.com
>Alaska Bar No. 9505028

CERTIFICATE OF SERVICE
I hereby certify that on the
21st day of September, 2006, a copy
of the foregoing document was served
electronically on:

Kenneth W. Legacki, Esq.

Guess & Rudd P.C.

By:     /s/Aisha Tinker Bray

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Reply to Plaintiff's Opposition to Progressive's Alternate Motion for Summary Judgment
Page 12 of 12