Danny Withers                   Deposition                    July 12, 2006

Page 57

1    Q   Did you talk to counsel?
2    A   Yes, I did yesterday.
3    Q   And what was discussed?
4        MR. ZIPKIN: Well, that's attorney-client. I
5    instruct him not to answer, conversations between
6    counsel and the witness.
7        MR. LEGACKI: That's fine. So you're
8    asserting attorney-client privilege for him?
9        MR. ZIPKIN: Yes.
10       MR. LEGACKI: Okay.
11       MR. ZIPKIN: If I may just say, although we
12   did have a break for reading purposes, the witness has
13   not had a break and it's been an hour and a half. If
14   you would like a break or if the court reporter would
15   like a break --
16       MR. LEGACKI: I apologize, so he can take a
17   break.
18       MR. ZIPKIN: -- and let them have five
19   minutes.
20       (A brief break taken.)
21       MR. ZIPKIN: I just want the record to
22   reflect that I have handed Mr. Legacki unredacted
23   copies of face sheet notes pertaining to the witness's
24   phone conversation with Dan Quinn. Progressive has
25   decided we are, in fact, going to waive any

Page 58

1    attorney-client privilege with respect to that conversation
2    which has already been discussed in general, but I did
3    instruct the witness during those questions not to answer
4    and we have decided to waive that privilege and so I have
5    given Mr. Legacki unredacted copies of Bates 100333 and
6    100334. I have added the designation capital "A" after
7    both of those numbers just so it's clear to everybody how
8    to distinguish the redacted from the unredacted. If you
9    wish to inquire about the areas I told him not to answer,
10   you are free to do so.
11   Q   (By Mr. Legacki) Tell me about your
12   conversations with Mr. Quinn, how they came about
13   and how many conversations were there?
14   A   What part do you want to know?
15   Q   Everything.
16   A   Well, I don't know if I can recall
17   everything. I remember calling him about -- when you
18   brought up the Teel case and Dan told me that that was
19   more about a contract of an insured person and really
20   it wasn't all on point as far as the issue about loss
21   of society or loss of consortium being derivative or
22   non-derivative.
23   Q   Did he put anything in writing?
24   A   No, I don't think -- no, he didn't. I don't
25   believe so.

Page 59

1    Q   Did you put anything in writing to him?
2    A   No, I don't believe so. It was all verbal,
3    telephone conversations.
4    Q   So you called him and asked him -- tell me
5    about that. How did that start?
6    A   If I recall, when you brought up the Teel
7    case, I just called him and asked him about the Teel
8    case and if this changed anything as far as the policy
9    contract and how we address loss of consortium and
10   loss of society claims as derivative or
11   non-derivative and from what I recall he said no. It has
12   nothing to do with that.
13   Q   Did you ask him whether or not Gillespie
14   versus Brta Construction allows for an independent
15   direct cause of action for the parent?
16       MR. ZIPKIN: Object to form when you confuse
17   independent with direct. But go ahead.
18       THE WITNESS: I don't recall. It's been a
19   while ago.
20   Q   (By Mr. Legacki) Did you ask him whether
21   or nor AS O9.15.O1O allows for an independent claim
22   for the parent?
23   A   You know, I don't recall specifically if I
24   did. But if that came up, I think he mentioned that
25   it was an independent claim but is still subject to

Page 60

1    the contract as to derivative or non-derivative and in
2    this case it's a derivative claim.
3    Q   Well, you agree with me then, if the contract
4    does not conform to the statute that the contract --
5    the statute prevails over the contract?
6        MR. ZIPKIN: Object to form. He hasn't said
7    that.
8    Q   (By Mr. Legacki) Well, let me ask, would
9    you agree with me that if there is a conflict
10   between the contract and the statute, the statute
11   prevails?
12   A   If there is a conflict, but there's not a
13   conflict here I don't believe.
14   Q   You don't believe. But did you ask Dan
15   whether or not there's a conflict between the statute,
16   an independent claim for a parent versus what you
17   consider to be derivative?
18   A   You know, I don't recall.
19   Q   Let's go back to Exhibit No. 1, please.
20       Do you see that, sir?
21   A   I see it.
22   Q   This language here: "We will pay damages
23   other than punitive or exemplary damages which the
24   insured person is legally entitled to recover from the
25   owner or operator of an uninsured/underinsured motor

EXHIBIT _E_
Page _1_ of _1_

Alaska Stenotype Reporters (907) 276-1680

15 (Pages 57 to 60)