Gary A. Zipkin
Aisha Tinker Bray
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| RONALD V. WEILBACHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROGRESSIVE NORTHWESTERN | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | Case No. A05-204 CIV (TMB) |

PROGRESSIVE'S SUPPLEMENTAL DISCLOSURES AND
RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY
REQUESTS PURSUANT TO THE COURT'S ORDER OF NOVEMBER 13, 2006

Defendant Progressive Northwestern Insurance Company

("Progressive"), by and through its attorneys, Guess & Rudd

P.C., hereby supplements its responses to Plaintiff's First Set

of Discovery Requests to Defendant dated April 7, 2006, pursuant

to the court's November 13, 2006 order, as follows:

1.    A copy of the Alaska policy contracts database for

the AK 9607 personal lines automobile insurance policy provision

at issue, attached hereto as Bates No. 100,475.  Portions of

EXHIBIT___A___
Page___1___of__22__

W OFFICES OF
uess & Rudd
P.C.
CUSHMAN STREET
SUITE 500
IRBANKS, ALASKA
99701-4659
(907) 452-8986
AX: (907) 452-7015

this file have been redacted or withheld.  Please see enclosed *Vaughn* index/Privilege Log for an explanation.

2.    The model policy form 9607, enclosed herewith at Bates Nos. 100,496-100,527, and the Affidavit of Michael A. Sablack regarding the drafting history of Form No. 9607.[1]

A copy of the State of Alaska Division of Insurance file for Form No. 9607 AK (08/99) was already produced on May 22, 2006 at Bates Nos. 200,000 — 200,373.

3.    Those portions of Richmond & Quinn's file in the Wold matter that relate to or concern in any way the position taken by Progressive on the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit are enclosed herewith, specifically: (1) footnote 2 on page 18 of Progressive's Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment, and (2) Supplemental Brief of Appellee Progressive Preferred Insurance Company in Wold v. Progressive Preferred Insurance Company, S-09775.  Note, both disclosures are publicly available in the trial court and supreme court files, respectively, and the Supplemental Brief was previously provided to plaintiff on June 12, 2006.

---

[1]  Mr. Sablack's original Affidavit will be retained in Progressive's file.

USDC Case No. A05-204 CIV (TMB)  Weilbacher v. Progressive
Progressive's Supplemental Disclosures and Responses to Plaintiff's First Set of Discovery Requests Pursuant to the Court's November 13, 2006 Order
Page 2 of 4

LAW OFFICES OF
uess & Rudd
P.C.
CUSHMAN STREET
SUITE 500
AIRBANKS, ALASKA
99701-4659
(907) 452-8986
FAX: (907) 452-7015

EXHIBIT_____A____
Page__2__of__22__

The majority of the Richmond & Quinn's file does <u>not</u> relate to or concern the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit and has been redacted or withheld.  Please see enclosed *Vaughn* index/Privilege Log for an explanation.  After reading the entire Richmond & Quinn file, it is apparent that the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit did not arise between Progressive and Wold until the Alaska Supreme Court requested supplemental briefing on the issue.  Progressive has already provided all the supplemental briefing to plaintiff.

4.    Progressive's electronic claim file notes, Bates Nos. 100,528-100,571, were reviewed for disclosure pursuant to the court's order.  Nothing in the claim file notes in any way related to or concerned the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit and has been redacted or withheld, much less Progressive's position on this issue in the <u>Wold</u> matter.  As such, the electronic claim file notes have been withheld. Please see enclosed *Vaughn* index/Privilege Log.

---

EXHIBIT____*A*____
Page_3__ of _22_

W OFFICES OF
less&Rudd
P.C.
CUSHMAN STREET
SUITE 500
IRBANKS, ALASKA
99701-4659
(907) 452-8986
AX: (907) 452-7015

By her signature below, the undersigned affirms that she has reviewed in detail the entire file for <u>Wold v. Progressive</u> produced by Richmond & Quinn and all the electronic claim file notes for <u>Wold v. Progressive</u> produced by Progressive, and that the pages disclosed are the <u>only</u> pages in these files that relate to or concern in any way Progressive's position on or discussion of the issue of whether a loss of consortium claim triggers a separate per person policy limit.

DATED at Fairbanks, Alaska, this 15th day of December, 2006.

GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company


By: _Aisha T Bray_
Aisha Tinker Bray
Alaska Bar No. 9505028

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on the
15th day of December, 2006, a copy
of the foregoing document was served
on by <u>U.S. Mail</u>:

Kenneth W. Legacki, Esq.
425 G Street, Suite 920
Anchorage, Alaska 99501

Guess & Rudd P.C.

By: _Naomi M Marley_
Naomi M. Marley

USDC Case No. A05-204 CIV (TMB)  <u>Weilbacher v. Progressive</u>
Progressive's Supplemental Disclosures and Responses to Plaintiff's First Set of Discovery Requests Pursuant to the Court's November 13, 2006 Order
Page 4 of 4

LAW OFFICES OF
Guess & Rudd
P.C.
CUSHMAN STREET
SUITE 500
FAIRBANKS, ALASKA
99701-4659
(907) 452-8986
FAX (907) 452-7015

EXHIBIT ___A___
Page___4___ of _22_



The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.



EXHIBIT _A_

Page _5_ of _22_

100,475

REDACTED

The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

REDACTED

EXHIBIT  *A*
Page  *6*  of  *22*

100,513

seeing a loved one suffer or die at the scene of the accident. <u>Pekin Ins. Co.</u>, 501 N.W.2d at 511; <u>Treichel</u>, 930 P.2d at 665; <u>Wolfe</u>, 540 A.2d at 873. [2]

Other decisions which allow recovery of a separate "per person" limit for a bystander claim include <u>Auto Insurance Association v. Hardiman</u>, 579 N.W.2d 115 (Mich. App. 1997) (pointing out that unlike a loss of consortium claim, a bystander claim "involves a separate independent cause of action", the success of which is not contingent on any recovery by the bodily injury victim); <u>State Farm Mutual Automobile Insurance Company v. Ramsey</u>, 368 S.E.2d 477 (S.C. App. 1988); <u>Employers Casualty Insurance Company v. Foust</u>, 106 Cal. Rptr. 505 (App. 1972).

Here, there can be no dispute that if factually justified by both the liability of Koby Smith and sufficient damages to Cynthia Wold, Ms. Wold would entitled to a separate per person limit of approximately $135,000 under Allstate's liability coverage -- just as she was entitled to a separate

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

---

[2] As Judge Greene points out in her decision at 5, courts are virtually unanimous in concluding that loss of consortium claims (as opposed to bystander claims) fall within the single per person limit of the injured person, and do not give rise to a separate per person limit. George Wold, Heidi's father possess only a loss of consortium claim, because he did not see his daughter at the accident scene. Accordingly, Progressive does not contend that he was entitled to collect a separate limit.

EXHIBIT___A___
Page___7___of___22___

IN THE SUPREME COURT OF THE STATE OF ALASKA

CYNTHIA WOLD            )
ESTATE OF HEIDI WOLD,    )
                             )
        Appellants,        )
                             )
   v.                            )
                             )
PROGRESSIVE PREFERRED   )
INSURANCE COMPANY,      )
                             )      Supreme Court No: S-09775
                             )
        Appellee.         )      Superior Court Case No.
                             )           3AN-99-10357 Civil

## SUPPLEMENTAL BRIEF OF APPELLEE
## PROGRESSIVE PREFERRED INSURANCE COMPANY

By order dated May 1, 2001, this Court requested that the parties supply supplemental briefing on the following question:

> Whether a parent's claim for loss of care, comfort, companionship and solace resulting from the death of a child is subject to the same "each person" limit in the Allstate liability policy as an action brought by the personal representative for the death of the child.

Progressive believes that the language of the Allstate policy, and overwhelming case law from other jurisdictions, mandate an answer of "yes."

In interpreting an insurance contract, this Court looks to (1) the language of the disputed policy provision; (2) language of other provisions of the insurance policy; (3) relevant intrinsic evidence; and (4) case law interpreting similar provisions. <u>Maynard v. State Farm Mutual Ins. Co.</u>, 902 P.2d 1328, 1330 (Alaska 1995) (quoting <u>Stordahl v.</u>

<u>Government Employees Ins. Co.</u>, 564 P.2d 63, 65-66 (Alaska 1977) (footnotes and citations omitted). Additionally, "where an insurance company limits the coverage of a policy issued by it in plain language, this court recognizes that restriction." <u>Maynard</u>, at 1330, quoting <u>Insurance Company of North America v. State Farm Mutual Automobile Ins. Co.</u>, 663 P.2d 953, 955 (Alaska 1983).

Here, factors (1), the language of the policy, and (4) case law interpreting similar provisions, are most relevant. Since only one policy provision addresses the issue, factor (2), other policy provisions, is not a helpful consideration. Similarly, since no extrinsic evidence bears on this question, factor (3) does not apply. Accordingly, Progressive addresses below the relevant policy language and case law from other jurisdictions

A.    **THE PLAIN LANGUAGE OF THE STATE FARM POLICY MANDATES THAT ALL DAMAGES FLOWING FROM A SINGLE BODILY INJURY FALL WITH THE SINGLE "PER PERSON" LIMIT.**

The Allstate policy directly addresses the issue presented here. The language is found in the "Alaska Automobile Amendatory Endorsement." (Exc. 233-247). This endorsement, at pages 8-14, (Exc. 240-246), replaces the main policy concerning uninsured motorist insurance.[1]  The UM/UIM section of Allstate's endorsement includes

---

[1] The main policy's UM/UIM "Limits of Liability" is found on page 16 of the Allstate policy. For reasons unknown, this page is missing from the policy in the Excerpt of Record. See Exc. 223-24. The parties agree the page attached hereto as Exhibit A, is an accurate copy of page 16. Progressive believes that under the language of the main policy, the conclusion that a loss of consortium claim falls within the "each person" limit, would be the same. But when an endorsement modifies the provisions of a policy, the

2

EXHIBIT  A
Page  9  of  22

the following "Limits of Liability" provision which controls the question presented by the

Court:

**Limits of Liability**

1.      The coverage limit shown on the declarations page for:

(a) "Each person" is a maximum that **we** will pay for all damages arising out of **bodily injury** to one person in any **one motor vehicle** accident including all damages sustained by anyone else as a result of that **bodily injury.**

(b) "Each accident" is the maximum that **we** will pay for all damages arising out of **bodily injury** to two or more persons in any **one motor vehicle** accident.  This limit is subject to the limit for "each person."  [Exc. 243].

This language could hardly be more clear.  The "each person" limit applies to all

damages flowing out of a single bodily injury.  The provision expressly clarifies that this

single limit includes "all damages sustained by anyone else as a result of that **bodily**

**injury.**"  Here, only Heidi Wold suffered a bodily injury, defined in the policy to mean

"bodily injury, sickness, disease or death."  (Exc. 242).  Any claim of Heidi's parents for

"loss of care, comfort, companionship and solace"[2] constitutes damage sustained by

---

endorsement controls.  <u>Alaska Rural Electric Cooperative Ass'n., Inc. v. Insco Ltd.,</u> 785 P.2d 1193, 1195 (Alaska 1990).  Accordingly, Progressive focuses its analysis on the endorsement's language.

[2]  Hereafter, Progressive will use the term "consortium," which constitutes shorthand for "care, comfort, companionship and solace."  <u>See</u> <u>Schreiner v. Fruit,</u> 519 P.2d 462, 465 (Alaska 1974).

3

someone else as a result of Heidi's bodily injury. Therefore, under the plain meaning of this provision, the claims of Heidi's parents fall within the single "each person" limit.

Subsection (b) quoted above confirms this conclusion. It provides that the "each accident" limit "is the maximum **we** will pay for all damages arising out of **bodily injury to** <u>two or more persons</u> in any one **motor vehicle** accident" (emphasis added). Again, since this accident involved bodily injury to only one person, Heidi Wold, the "each accident" limit would not be triggered. The controlling policy language mandates a conclusion that the parents' loss of consortium claims must fall within the single "each person" limit applicable to Heidi Wold's bodily injury.

**B.    <u>CASE    LAW    FROM    OTHER    JURISDICTIONS OVERWHELMINGLY SUPPORTS THE APPLICATION OF THE "EACH PERSON" LIMITS TO CONSORTIUM CLAIMS</u>.**

This Court has not yet addressed whether consortium claims fall within the "each person" bodily injury limit of an insurance policy.[3] Therefore it is appropriate to look for guidance to the numerous other jurisdictions which have considered the issue. After canvassing nationwide authority, the leading commentator on uninsured and underinsured motorist coverage directly addressed the question, and concluded that consequential damages (such as consortium claims) flowing from a single bodily injury fall within the single "per person" limit:

---

[3]  However, United States District Court for the District of Alaska, applying Alaska law, concluded that loss of consortium fell within the "each person" limit. <u>See</u> Order in <u>Nationwide Mutual Ins. Co. v. Cumming</u>, Case No. A83-533 Civil, attached as Exhibit B.

The uninsured motorist insurance terms used by most companies provide coverage for persons who suffer consequential damages. If only one person is physically injured, the fact that several insureds may have sustained consequential damages in excess of the limits of liability for injury to one person does not mean that the company is liable beyond the limit of liability for a single accident. The limit of liability for "each accident" is clearly defined in terms of "*bodily injury* sustained by *two or more persons* as a result of any one accident."

The question whether multiple claims resulting from injuries to a single person justify the application of the "per accident" limit of liability rather than the "per person" has arisen in regard to liability insurance, as well as uninsured motorist insurance. Courts have almost uniformly held that persons who sustain consequential damages have not sustained bodily injuries *in* an accident and, therefore, the Limit of Liability for one injured person applies regardless of how many uninsured motorists insurance claims there may be by individuals who suffered consequential damages.

1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 12.4, at 709, Revised 2nd ed. (1999).

As Widiss points out, countless decisions from other jurisdictions establish that consortium claims do not give rise to a second "unit" of coverage. A recent New Mexico decision considered Allstate language virtually identical to the language at issue here. Gonzalez v. Allstate Ins. Co., 921 P.2d 944, 945 (N.M. 1996). In Gonzalez, Allstate paid its full "each person" underinsured motorist coverage limit of $25,000 to a wife, as the personal representative of the estate of her husband who died in an auto accident. The wife claimed entitlement to an additional $25,000 for her loss of consortium. The court acknowledged that New Mexico law recognized loss of consortium as an independent cause of action, but concluded nevertheless that under the Allstate policy language, the

EXHIBIT __A__
Page __12__ of __22__

5

trigger for an additional "unit" of coverage depended on the number of bodily injuries, not the number of causes of action or claims:

> Under the terms of the policy, separate causes of action do not necessarily invoke the "each person" limit. The limits of liability under the policy are neither affected nor contingent upon the number of causes of action that might accrue from one person's bodily injury. Rather, the relevant contingency is the number of people who suffer bodily injury.
>
> Thus, if only one person suffered bodily injury, then the "each person" limitation applies; if two or more people suffer bodily injury, then the "each accident" limitation applies. Gonzalez' claim that the independent nature of a loss of consortium claim necessarily triggers a separate "each person" liability is without support in the policy.

Second, the Gonzalez court concluded that a loss of consortium claim does not constitute a "bodily injury":

> Here Gonzalez contracted for coverage for bodily injury, which is defined in the policy as "bodily injury, sickness, disease or death." Without doubt, loss of consortium, without any physical manifestation, is an emotional injury. See Romero [v. Byers], 117 N.M. [422] at 425, 872 P.2d [840] at 843 (defining loss of consortium as emotional distress suffered by a spouse who loses the normal company of his or her injured mate). By its plain meaning, "bodily injury" constitutes injury to the physical body rather than to mental and emotional injuries. We detect no ambiguity in the language used in the policy, and other courts in evaluating the meaning of "bodily injury" have reached the same conclusion. See, e.g., Lepic v. Iowa Mutual Ins. Co., 402 N.W.2d 758, 762-63 (Iowa 1987) (citing several authorities stating "that loss of consortium is not a separate bodily injury for purposes of the policy liability"); Gillchrest v. Brown, 352 A.2d 692, 293 (Me. 1987) (the term "bodily injury" is unambiguous when interpreted according to plain and commonly accepted meaning).

Another recent decision reaching the same conclusion is Spaur v. Allstate Ins. Co., 942 P.2d 1261 (Colo. App. 1997), also interpreting Allstate language virtually identical to

EXHIBIT _A_

Page _13_ of _22_

the language at issue here.  In the Court's view, the "provision plainly restricts coverage to those who have sustained bodily injury and includes within that coverage any derivative claims of other persons."  Id. at 1263.  Similarly the court concluded that consortium losses could not be deemed a "bodily injury" which could give rise to a second "unit" of coverage, citing numerous cases from other jurisdictions.  Id. at 1264-65.[4]

A third recent decision to the same effect is Medley v. Frey, 660 N.E.2d 1079 (Ind. App. 1996).  Medley is helpful as it contains a lengthy citation to other cases which "have determined that a claim for loss of consortium is not included within the policy definition of bodily injury and is subject to the per person limits paid to the insured's spouse."  Id. at 1081.

A few cases have reached contrary conclusions, but are distinguishable because they interpret significantly different language.  For example, Jiardino v. Feierke, 513 N.E.2d 1168 (Ill. App. 1987) and Allstate Ins. Co. v. Handegard, 688 P.2d 1387 (Or. App. 1984), involved policies which included loss of consortium in the definition of "bodily injury."  This language is clearly distinguishable from the more typical "bodily injury" definition, such as that employed by Allstate in this case.  See Medley, 660 N.E.2d at 1081, n.1 (distinguishing Jiardino and Handegard based on their unusual

---

[4] Moreover, Spaur cited the Widiss treatise, quoted above, for the proposition that in any case, consequential damages cannot be deemed a bodily injury sustained "in an accident", as required by the policy.  Thus, even if the loss of consortium claim might be considered a bodily injury, it would not qualify as a bodily injury sustained in an accident.

7

definition of "bodily injury").  Similarly, in Abellon v. Hartford Ins. Co., 212 Cal. Rptr. 852 (App. 1985) the court concluded that bodily injury included loss of consortium, thus allowing a consortium claimant a separate "unit" of coverage.  In that policy, however, the "each accident" limitation covered "all damages resulting from bodily injury caused by any accident."  Id. at 212.  Unlike Allstate's more conventional "each accident" language, Hartford's was not dependent on a second "bodily injury."  In Gonzalez, supra, 921 P.2d at 948, the New Mexico Supreme Court specifically distinguished the Abellon case based upon this different language:

> As is apparent, Abellon may be distinguished because it interprets an insurance policy containing substantially different language.  In fact, application of Abellon has been limited by subsequent opinions of the California Court of Appeal based on different insurance policy language.

See also Nationwide Mutual Ins. Co. v. Moya, 837 P.2d 426, 430, n.7 (Nev. 1992) (similarly distinguishing Abellon, Jiardino and Handegard based upon applicable policy language); Hauser v. State Farm Mutual Automobile Ins. Co., 252 Cal. Rptr. 569, 570 (App. 1988) (interpreting language virtually identical to the Allstate policy at issue here, and distinguishing Abellon, based on different policy language).

In short, the vast majority of courts which have considered the issue presented here have concluded that consortium type claims, such as claims for loss of care, comfort, companionship and solace, do not give rise to a separate "unit" of coverage.  Rather these claims fall within the "each person" limit.

EXHIBIT A
Page 15 of 22

C.    **THE GILLESPIE CASE, WHICH RECOGNIZED PARENTAL LOSS OF CONSORTIUM, DOES NOT ALTER THIS COVERAGE ANALYSIS.**

In <u>Gillespie v. Beta Construction Co.</u>, 842 P.2d 1272 (Alaska 1992) this court recognized a parent's claim for loss of consortium for the death of a child. Such a recovery was not authorized by the wrongful death statute, AS 19.55.580(a), since this statute authorized recovery of pecuniary loss only when a decedent leaves no dependents. This court relied on a different statute, AS 09.15.010, which provides that "a parent may maintain an action as plaintiff for the injury or death of a child below the age of majority."

<u>Gillespie</u> leaves unresolved an interesting legal question, but one which is ultimately not relevant to the inquiry presented in this case. Specifically, <u>Gillespie</u> does not answer the question of whether a parent's statutory loss of consortium claim for the death of a child is to be considered "derivative" or "independent". This court has determined that a spousal loss of consortium claim is derivative, and accordingly a spouse claiming loss of consortium must join the claim with that of the injured spouse. <u>Schreiner v. Fruit</u>, 519 P.2d 462, 464 (Alaska 1974). Similarly, a child's loss of consortium claim for death or injury to a parent must be joined with any action by the parents "whenever feasible." <u>Hibpshman v. Prudhoe Bay Supply, Inc.</u>, 734 P.2d 991, 997 (Alaska 1987). Conceivably, if a parental loss of consortium claim were deemed more "independent" than spousal or child loss of consortium claims, perhaps this joinder

9

EXHIBIT____A____
Page__16__of__22__

requirement would not apply.   There is language in the <u>Gillespie</u> case suggesting both results.   At 1272-73, the court implicitly characterized the newly recognized statutory cause of action as "a separate, independent parental cause of action."[5]  On the other hand, the decision also equates the parental loss of consortium claim with the common law spousal and child loss of consortium claims which the court had already recognized.

> The result we reached today comports with our earlier case law.  We have already held that a wife has the right to sue for the loss of "care, comfort, companionship and solace" resulting from an injury to her husband, <u>Schreiner</u>, 519 P.2d at 466, and that a child is entitled to loss of consortium damages when his parent is tortiously injured.  <u>Hibpshman v. Prudhoe Bay Supply, Inc.</u>, 734 P.2d 991 (Alaska 1987).

<u>Id.</u> at 1274.   Presumably, then, the <u>Gillespie</u> decision views the parameters of the statutory parental claim to fundamentally parallel the claims possessed by a spouse or child of an injured party -- claims which are derivative.

But this issue is not dispositive, or even relevant, to the issue presented here.  As noted above, under the Allstate policy language, whether an injury gives rise to an additional "unit" of coverage depends on how many "bodily injuries" have been sustained.  If there is only one applicable "bodily injury", then the single "each person" limit applies, regardless of how many additional persons suffer consequential damages,

---

[5] Of course, the decision does not clarify <u>from</u> <u>what</u> the cause of action is "separate and independent."  In context, it would make sense to view this language as providing that the parental cause of action is "separate and independent" from the wrongful death <u>statute</u> (which did not allow the claim).  This language does not necessarily mean that such a claim is still not derivative of the child's death, such that it should be brought together with the wrongful death action.

EXHIBIT   <u>A</u>
Page  <u>17</u> of <u>22</u>

such as loss of consortium.   Whether a <u>Gillespie</u> parental loss of consortium claim is deemed derivative or independent, such a claim still cannot be converted to its own "bodily injury."  In short, a parent's loss of consortium for the death of a child is not a bodily injury, and thus the pre-requisite to an additional "unit" of coverage under the policy cannot be triggered by such a claim.   As discussed above, this conclusion is supported by the <u>Gonzalez</u> decision, which recognized that loss of consortium under New Mexico law "is a separate cause of action belonging to the spouse."   921 P.2d at 946. This fact did not create any additional coverage beyond the single "each person" limit because the "relevant contingency" was not how many causes of action might accrue from one person's bodily injury but rather "the number of people who suffered bodily injury." <u>Id.</u> at 947.

Here, only Heidi Wold suffered a bodily injury.   Although the emotional loss to her parents is real and profound, such losses cannot fairly be characterized bodily injuries, and therefore the "each accident" limits are not triggered.

## CONCLUSION

In summary, the applicable policy language in Allstate's endorsement mandates inclusion of consortium losses within the single "each person" limit applicable to a child's wrongful death claim.   While the <u>Gillespie v. Beta</u> decision recognizes this parental loss of consortium cause of action, it does not in any way alter this coverage analysis.

EXHIBIT___A___
Page__18_ of _22_

Dated this _____ day of May, 2001, at Anchorage, Alaska.

RICHMOND & QUINN
Attorneys for Progressive
Preferred Insurance Company


By: _____

Daniel T. Quinn
AK Bar: 8211141


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct
copy of the foregoing was mailed this _____ day
of May, 2001, to:

Laurel J. Peterson, Esq.
805 W. 3rd Avenue, Suite 200
Anchorage, Alaska 99501


_____
    RICHMOND & QUINN

1038.177\Pld\Appeal Brief Supplement

12

EXHIBIT _A_
Page _19_ of _22_

Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER, )<br>        )<br>        Plaintiff, )<br>        )<br>    v.   )<br>        )<br>PROGRESSIVE NORTHWESTERN )<br>INSURANCE COMPANY, )<br>        )<br>        Defendant. )<br>_____ ) | 3:05-cv-204-TMB |

AFFIDAVIT OF MICHAEL A. SABLACK

STATE OF OHIO                    )
                                 ) ss.
COUNTY OF CUYAHOGA               )

        Michael A. Sablack, being first duly sworn, deposes and states as follows:


        1.    I am employed by Progressive as Assistant General Counsel in the Corporate Law Department for The Progressive Group of Insurance Companies in Mayfield Village, Ohio.  I am over the age of eighteen and have personal knowledge of the matters set forth herein.

EXHIBIT  A
Page 20 of 22

2.   The provision identified on page 1 of the Court's November 13, 2006 Order has been in Progressive's model policy since the 9607 model was developed.  The 9607 model was finalized on April 28, 1997.

3.   The 9607 model policy was developed by a team of people at Progressive.  That team was led by Jeff Nash, an attorney who is no longer with Progressive.

4.   Other than the model 9607 policy itself, Progressive has no documents, in either hard copy or electronic versions, related to the development of this provision in the 9607 model policy.  We have no documents, in either hard copy or electronic versions, regarding the intent of this provision in the 9607 model policy.

5.   Once the model 9607 policy was completed, it was adapted for Alaska as necessary and then sent to the Alaska Division of Insurance for approval.

6.   I reviewed the "drafting notes" in the policy contracts database for Alaska to determine if there are any drafting notes related to this provision in the 9607 Alaska

EXHIBIT __A__
Page __21__ of __22__

policy.  I found no drafting notes that would have affected this provision in the 9607 Alaska policy.


_Michael A. Sablack_ (signature)

Michael A. Sablack


SUBSCRIBED and SWORN to before me this _15th_ day of December, 2006.


_(signature)_

Notary Public in and for Ohio
My Commission Expires: _never_

CHRISTOPHER E. ZIANCE, Attorney at Law
Notary Public - State of Ohio
My Commission has no expiration date.
Section 147.03 O.R.C.


EXHIBIT __A__
Page __22__ of __22__