Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER,              )<br>                                    )<br>        Plaintiff,                  )<br>                                    )<br>    v.                              )<br>                                    )  CASE NO. 3:05-cv-204-TMB<br>PROGRESSIVE NORTHWESTERN            )<br>INSURANCE COMPANY,                  )<br>                                    )<br>        Defendant.                  )<br>_____) | |

MEMORANDUM IN SUPPORT OF
PROGRESSIVE'S MOTION TO STRIKE PLAINTIFF'S EXPERT
WITNESS DISCLOSURES AND REPORT/OPINIONS OF EXPERT WITNESS

Progressive Northwestern Insurance Company ("Progressive") is entitled to a court order striking Mr. Weilbacher's expert disclosures, including the 68-page report by Stanley C. Garlington because Mr. Garlington's report far exceeds the scope of the expert witness testimony permitted by this court's November 13, 2006 Order and is, thus, barred. Additionally, most of Mr. Garlington's report addresses claims or issues that were never made and are not part of this litigation.[1]

---

[1] The report also fails to meet the requirements of Rule 26(a)(2)(B) because it does not include a complete statement of all the data or other information

On November 13, 2006, this court issued an Order granting in part and denying in part Progressive's motion to preclude Mr. Weilbacher from calling any expert witnesses in this matter based on his failure to make timely disclosures pursuant to the court's civil pretrial order.  Order at 4-5 (DE#103).  The court ruled,

> Plaintiff will be permitted to identify an expert and provide expert witness disclosures if he can demonstrate that the expert testimony is <u>directly related</u> to the newly produced discovery.

<u>Id</u>. at 5 (emphasis added).  The "newly produced discovery" refers to the discovery required to be produced by that part of the court's Order granting plaintiff's motion to compel discovery, specifically: (1) the disputed policy provision of the Alaska policy contracts database for the AK 9607 personal lines automobile insurance policy, <u>id</u>. at 3; (2) the drafting history of the disputed policy provision as used in Alaska, <u>id</u>.; and (3) those portions of Richmond & Quinn's file in the <u>Wold</u> matter that relate to or concern in any way the position taken by Progressive on the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit, <u>id</u>. at 4.  All of these materials were produced by Progressive on December 15, 2006.  <u>See</u> Notice of Compliance

---

considered in forming the opinions.  The report purports to contain such information in Attachment 1.  Exhibit A at 1 §II.  However, there is no Attachment 1.

Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 2 of 13

(DE#110). The relevant and disputed policy provision was identified by plaintiff in his discovery requests as,

> The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

See DE#46 Ex. 8. If plaintiff cannot make the showing that his belated expert witness disclosures are "directly related" to the newly produced discovery — the disputed policy provision and the information in Wold — then, in the court's own words, "Plaintiff will not be permitted to identify any additional experts." Order at 5 (DE#103) (emphasis added).

On March 28, 2007, Mr. Weilbacher served Plaintiff's Expert Witness Disclosures, identifying Stanley C. Garlington as plaintiff's expert witness and attaching a 68-page expert report by Mr. Garlington. A full and complete copy of Mr. Weilbacher's disclosures is attached hereto as Exhibit A. Mr. Weilbacher, however, did nothing to "demonstrate that the expert testimony is directly related to the newly produced discovery." DE#110 at 5. The court's November 13, 2006 Order specifically contemplates that it is Mr. Weilbacher's burden to demonstrate that his belated expert disclosures conform to the limited scope permitted by the court. Mr. Weilbacher has done nothing in this regard. As such, his expert disclosures should be stricken.

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 3 of 13

In fact, Mr. Weilbacher's expert disclosures through Mr. Garlington's report do <u>not</u> directly relate to any of the newly produced discovery, i.e., the disputed policy provision or Progressive's position in the <u>Wold</u> matter. Mr. Garlington's 68-page diatribe has <u>nothing</u> to do with the limited discovery produced, the claims in this case, and wholly disregards the limitations of the court's November 13, 2006 Order.[2]

Mr. Garlington's (unsubstantiated) opinions begin at Section V. In Section V, Mr. Garlington discusses his opinions on whether Progressive produced its "records" documenting its development of Part III of the policy. Exhibit A 7-16. Part III of the policy is the entire UIM/UM section. First, the real issue in this case is not whether Progressive fully complied with the court's November 13, 2006 order in its disclosures. If Mr. Weilbacher truly had a basis for contesting Progressive's supplemental disclosures, Mr. Weilbacher could have written to Progressive and, if necessary, filed a timely motion to compel the additional discovery. Instead, Mr. Weilbacher did nothing.

In fact, contrary to Mr. Garlington's misrepresentations, all the documents relevant to the drafting

---

[2] As noted above, since the report did not include the required disclosures of what was considered in writing the report, it is unclear whether Mr. Garlington was aware of the November 13, 2006 order and chose to ignore it or whether Mr. Weilbacher failed to make Mr. Garlington aware of the court's Order.

Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 4 of 13

history of the policy provision in Alaska were produced as ordered. See Exhibit A at 8. Progressive produced in its supplemental disclosures the entire drafting history for the disputed policy provision in its care, custody, and control: (1) the relevant portion of the 9607 model policy, and (2) the relevant portion of the Alaska policy contracts database. See DE#110. Documents regarding the disputed policy provision subsequent to the 9607 model policy relevant to Alaska are included in the Alaska policy contracts database. See id. Since there was absolutely no change in the disputed policy language from the 9607 model policy to the Alaska policy at issue, there was nothing to produce but the language itself. Id. The 9607 model policy language already fully complied with Alaska law so no modifications were necessary.

Progressive also produced the entire file it received from the Division of Insurance ("DOI") on Alaska policy Form No. 9607 (08/99). Even a cursory reading of the DOI file demonstrates that the DOI was not concerned with the disputed policy provision and that the disputed policy provision did not change during the DOI's review process.[3] Again, since the disputed policy provision did not change during the DOI's review and approval process, there is nothing to produce with regard to that provision.

---

[3] Due to the size of the DOI's file, Progressive has not provided the court with a complete copy, but would be happy to do so upon request.

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 5 of 13

Second, it is not the entire UIM/UM provision (Part III) of the policy that is at issue is this case. Mr. Garlington frames his question as whether Progressive has disclosed or produced all its records regarding development of Part III UIM/UM coverage. Id. at 7. However, Progressive's supplemental production and the court's Order were properly limited to the information actually requested in Mr. Weilbacher's discovery requests — the drafting history of the disputed provision. See DE#46, 103, & 110. Mr. Weilbacher identified the disputed policy provision that he sought discovery on in his discovery requests. See DE#46. The disputed provision is a single paragraph in the Limits of Liability section of Part III, as set forth above. Thus, the report's discussions, conclusions, and opinions regarding any provision of the policy other than the disputed provision identified by plaintiff is outside the scope of the court's Order and barred. Since no part of the report discusses the disputed policy provision, the entire report must be struck and is barred.

Most of the report is not only far beyond the limited scope of this court's November 13, 2006 order, but is also beyond the scope of the claims actually made in this case. Mr. Weilbacher's sole claims in this case are for (1) loss of consortium damages (i.e., breach of contract damages for

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 6 of 13

Progressive's refusal to pay him an additional per person limit of UIMBI coverage), and (2) punitive damages based on Progressive's refusal to make such payment.

Sections VI, VII, VIII, IX, and X purport to address Progressive's disclosures or alleged lack thereof with regard to Progressive's submissions to the DOI and the DOI's review and approval of policies in general.[4]  Exhibit A at 17-24 & Summary of Sections attached hereto.  Progressive's disclosures to the DOI are not relevant to any issue in this case, were not the subject of any discovery requests, and are beyond the scope of this court's November 13, 2006 Order.  Since the disputed provision — as correctly defined by plaintiff in his discovery requests — did not change even slightly from the 9607 model policy to the initial policy provided to the DOI through the entire review process of the DOI resulting in the final Alaska Form No. 9607 (08/99) policy, there is obviously nothing specifically regarding this provision in submissions to the DOI. Progressive also produced the entire file on the relevant policy — not just the disputed provision — from the DOI and everything Progressive submitted to the DOI should be in that file.

---

[4]  Progressive's cover letters to the DOI during the approval process of the policy do not constitute part of the policy purchased by Mr. Weilbacher. Progressive did not make any promise to Mr. Weilbacher to "make him whole." Progressive promised to pay him the coverages he purchased in the unfortunate event of a covered loss, and Progressive kept its promise.

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 7 of 13

Sections XI, XII, XIII, and XIV, purport to address whether Progressive's Part III UIM/UM coverage complies with the statutory requirements of AS 28.20, the Motor Vehicle Safety Responsibility Act, and AS 28.22, the Alaska Mandatory Automobile Insurance Act.  Id. at 24-32.  Again, the discovery produced by Progressive that is the only permissible topic for Mr. Weilbacher's expert disclosures pursuant to the court's November 13, 2006 Order is the disputed provision, not the entire Part III UIM/UM section.  Mr. Weilbacher's expert disclosures must directly relate to Progressive's supplemental disclosures.  Nothing in these sections has anything to do with Progressive's supplemental disclosures under the court's November 13, 2006 Order.  Nothing in these sections has anything to do with Mr. Weilbacher's actual claims in this matter.  There is also absolutely no reason Mr. Weilbacher could not have produced an expert report on these purely legal issues in a timely manner in May 2006.

In Section XV, the report conclusively states that Mr. Weilbacher is entitled a separate per person policy limit of UIMBI for his loss of consortium/society claim.  Id. at 33-34.  This is the ultimate issue in this case — whether Mr. Weilbacher is entitled to a separate per person UIMBI policy limit based on his loss of society claim.  However, it is not directly related to Progressive's supplemental disclosures.  In fact, it does not even mention the relevant disputed provision, but relies solely

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 8 of 13

on the Additional Definition of "insured person." Id. There is again no reason this purely legal argument could not have been put forth in a timely manner in May 2006; it is now barred by this court's November 13, 2006 Order.

Sections XVI, XVIII, and XIX purport to discuss Progressive's coverage investigation, general internal practices of insurers, and the background of this claim, respectively. Id. at 34-39. Again, none of these topics directly relates to Progressive's supplemental production - the disputed policy provision. In fact, Section XVIII does not even involve Progressive or this case at all. These sections could also have been put forth in a timely manner in May 2006; they are now barred.

Sections XVII, XX, XXI, XXII, and XXIV purport to discuss the adoption of regulations for unfair claims settlement practices, Progressive's compliance with unfair claims settlement practices, Progressive's adjusters' competence, Progressive's alleged general business practices, and Progressive's representations and advertising. Id. at 36-68. None of these topics relate directly to Progressives' supplemental disclosures and none of these relate to the claim in this matter. There are no claims in this case regarding unfair claims settlement practices, the adjusters' actions,

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 9 of 13

Progressive's general business practices, or Progressive's representations in its advertising.

In Paragraph I of his Complaint, Mr. Weilbacher states, "This is an action to recover damages for failure to pay a claim under an underinsured motorist insurance policy."  Complaint at 1 ¶1.  In Plaintiff's Initial Discovery Disclosures, Mr. Weilbacher identified his categories of damages as,

> damages for loss of consortium, emotional distress, and general compensation because of the loss of his daughter, and he also requests punitive damages for the failure to pay under the insurance policy.

Exhibit B.  This case involves only the legal interpretation of the disputed policy provision.

In Section XXIII, the report conclusively alleges that Progressive breached its duty of good faith and fair dealing to Mr. Weilbacher without any support or justification whatsoever.  Exhibit A at 65-66.  Not only does this conclusive allegation fail to directly relate to Progressive's supplemental disclosures, but it wholly fails to relate to any claim in this matter.

For the foregoing reasons, Mr. Weilbacher's expert disclosures are barred by this court's November 13, 2006 Order.  This court specifically held,

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 10 of 13

> Plaintiff will be permitted to identify an expert and
> provide expert witness disclosures if he can
> demonstrate that the expert testimony is directly
> related to the newly produced discovery.  If Plaintiff
> cannot make such a showing, Plaintiff will not be
> permitted to identify any additional experts.

Order at 5 (DE#103).  Plaintiff did not and cannot make such a showing.  Nothing in the report disclosed by Mr. Weilbacher directly relates to the supplemental disclosures produced by Progressive in response to this court's November 13, 2006 Order.  Thus, Mr. Weilbacher is barred from calling any expert witnesses in this matter pursuant to this court's November 13, 2006 Order, and Progressive is entitled to an order striking Plaintiff's Expert Disclosures.

DATED at Fairbanks, Alaska, this 6th day of April, 2006.

>       GUESS & RUDD P.C.
>       Attorneys for Progressive
>       Northwestern Insurance Company
>
> By:        s/Aisha Tinker Bray
>       Guess & Rudd P.C.
>       100 Cushman Street, Suite 500
>       Fairbanks, Alaska  99701
>       Phone: 907-452-8986
>       Fax:   907-452-7015
>       Email: atbray@guessrudd.com
>       Alaska Bar No. 9505028

CERTIFICATE OF SERVICE
I hereby certify that on the
6th day of April, 2007, a copy
of the foregoing document was served
electronically on:

Kenneth A Legacki, Esq.

Guess & Rudd P.C.

By:     s/Aisha Tinker Bray

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert
Witness Disclosures and Report/Opinions of Expert Witness
Page 11 of 13

Summary of Sections

| Section | Question/Description (page) |
|---|---|
| I | Introduction & scope of work (1) |
| II | Materials reviewed (not attached) (1) |
| III | Mr. Garlington's experience (1-7) |
| IV | Omitted |
| V | Whether Progressive disclosed records documenting its development of Part III UIM/UM policy language (7-17) |
| VI | Progressive's disclosures to the DOI regarding Progressive's understanding of the purpose and scope of Alaska's UM/UIM coverage (17-18) |
| VII | Whether Progressive disclosed to the DOI how it interpreted and applied Part III UM/UIM's "Persons Insured and Limits of Liability provisions" (19) |
| VIII | Whether Progressive disclosed to the DOI its interpretation of Part III UM/UIM's "Persons Insured and Limits of Liability provisions contained in Progressive's Motion for Summary Judgment" (19) |
| IX | Whether Progressive disclosed to the DOI that it intended to rely on the cases cited and discussed in its Motion for Summary Judgment to interpret Part III (20) |
| X | Whether Progressive can construe DOI approval of a policy as a determination by the DOI that all the policy language complies with Alaska law (21-24) |
| XI | Whether AS 28.20 and AS 28.22 require the minimum per person/per accident UM/UIM limits "triggered by each covered person's damages arising from bodily injury" (24-28) |
| XII | Whether Part III of the policy impermissibly limits "the bodily injury AS 28.20 and AS 28.22 require" (29) |
| XIII | Whether Part III's "Limits of Liability" provision provides minimum per person/per accident UIM/UM liability limits required by AS 28.20 and AS 28.22 (30-31) |
| XIV | Progressive must construe Part III's "Limits of Liability" provision in full compliance with AS 21, AS 28.20, and AS 28.22 (31-32) |
| XV | Whether plaintiff is entitled to recover his loss of consortium/society damages as a separate limit of damages from the Estate (33-34) |

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert
Witness Disclosures and Report/Opinions of Expert Witness
Page 12 of 13

| XVI | Progressive's coverage investigation must conform to statute and policy must be construed to comply with statutes (34-36) |
|---|---|
| XVII | DOI adopted unfair claims settlement practices regulations (36-38) |
| XVIII | Insurers general internal practices (39) |
| XIX | Heidi sustained serious injuries in the accident and Progressive immediately recognized UIM exposure and assigned Mr. Withers to handle the claim (39) |
| XX | Progressive's compliance with the Unfair Claims Settlement Practices Act (39-56) |
| XXI | Whether Progressive's adjusters met the minimum level of competence expected of insurance adjusters (56-63) |
| XXII | Whether Progressive's general business practices require insureds to hire attorney to bring suit to obtain full payment of claims (63-65) |
| XXIII | Whether Progressive breached its duty of good faith and fair dealing with plaintiff (65-66) |
| XXIV | Whether Progressive has misrepresented its claim service and the advantages of Progressive's insurance (66-68) |
| XXV | Will supplement if additional facts received (68) |

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Memorandum in Support of Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 13 of 13