failed to advise Weilbacher in writing of Progressive's acceptance or denial of the

Underinsured Motorist claims within 15 working days after receipt of a properly

executed statement of claim, proof of loss, or other acceptable evidence of loss.[20]

Progressive, as noted above, does not require a statement of claims or proof of

loss for Underinsured Motorist coverage.  Progressive received a letter dated

May 9, 2003 requesting authority to accept Allstate's policy limits offers.

Withers gave permission, noting that "NEED ALL SETTLEMENT INFO/TO

COMPLETE UIMBI UNDER THIS POLICY."  On August 21, 2003, Withers

notes that he had received the release and proof of underinsured motorist

payments under the Allstate policy.

No later than September 12, 2003, Progressive had to provide written acceptance

or denial of Weilbacher's Underinsured Motorist claims, or, if additional time

were needed to determine whether the claim should be accepted or denied,

---

(14) fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or the offer of a compromise settlement;"

[20] 3 AAC 26.070(a). STANDARDS FOR PROMPT, FAIR, AND EQUITABLE SETTLEMENTS. "Any person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a first-party claim:

(1) shall advise a first-party claimant in writing of the acceptance or denial of the claim within 15 working days after receipt of a properly executed statement of claim, proof of loss, or other acceptable evidence of loss unless another time limit is specified in the insurance policy, insurance contract, or other coverage document; payment of the claim within this time limit constitutes written acceptance; a written denial of the claim must state the specific provisions, conditions, exclusions, and facts upon which the denial is based; if additional time is needed to determine whether the claim should be accepted or denied, written notification giving the reasons that more time is needed shall be given to the first-party claimant within the deadline. While the investigation remains incomplete, additional written notification shall be provided 45 working days from the initial notification, and no more than every 45 working days thereafter giving the reasons that additional time is necessary to complete the investigation; if there is a reasonable basis supported by specific information for suspecting that a first-party claimant has fraudulently caused or wrongfully contributed to the loss, and the basis is documented in the claim file, this reason need not be included in the written request for additional time to complete the investigation or the written denial; however, within a reasonable time for completion of the investigation and after receipt of a properly executed statement of claim, proof of loss, or other acceptable evidence of loss, the first-party claimant shall be advised in writing of the acceptance or denial of the claim;"

Progressive had to provide written notification giving the reasons that more time was needed. While a diligent investigation was being conducted, Progressive had to provide written notification every 45 working days thereafter.

On August 15, 2003 Withers received a letter advising that "Ron Weilbacher has an independent claim for his emotional distress because of the death of his daughter pursuant to AS 09.15.010."

Withers' August 26, 2003 letter responds that "I was surprised to hear that Mr. Weilbacher is presenting an independent claim for emotional distress, as my recollection in interviewing Mr. Weilbacher was that he was on the Kenai Peninsula when this accident occurred. Accordingly, there will be issues as to whether Mr. Weilbacher has an emotional distress claim pursuant to current Alaska Law." Withers also notes that Liberty Mutual would "provide concurrent coverage with the Progressive policy, and must respond to the Estate claim. This is in accordance with AS 28.20.445, priority of coverages."

In regard to Ronald Weilbacher's individual claims, Withers' August 26, 2003 PACMAN notes and his letter indicate a focus solely on a negligent infliction of emotional pain (NIED) claim. Withers' letter and log notes do not address the loss of society claims for which Progressive had been on notice, as noted above, for more than a year. Progressive's claim records do not document any

subsequent investigation of the unspecified issues regarding the emotional distress claim.

It is my opinion that if Withers' August 26, 2003 letter were to be construed as a written denial of Ronald Weilbacher's individual claim, it failed to state the specific provisions, conditions, exclusions, facts, and applicable law upon which the denial was based.

7. Progressive failed to settle Weilbacher's first-party Underinsured Motorist claims on the basis that the responsibility for payment must be assumed by Liberty Mutual when its Underinsured Motorists coverage did not expressly provide such a provision.[21]  Progressive failed to pay those portions of Estate's Underinsured Motorist claim that were not in dispute within 30 working days after receipt of a properly executed statement of claim, proof of loss, or other acceptable evidence of loss.

Progressive's claim records do not document which provision in Progressive's Underinsured Motorist coverage, if any, permitted Progressive to delay payment for the Estate's claims.

---

[21] 3 AAC 26.070(a)(3). STANDARDS FOR PROMPT, FAIR, AND EQUITABLE SETTLEMENTS. "Any person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a first party claim: . . . may not fail to settle first-party claims on the basis that responsibility for payment must be assumed by others, except as may be expressly provided by provisions of the insurance policy, insurance contract, or other coverage document."

It is my opinion that, in regard to the Estate claim, if there were concurrent coverage, Progressive must respond to the Estate claim. If, as Withers' PACMAN notes suggest, Progressive and Liberty Mutual coverage applied pro-rata, Progressive should have accepted the claim for the Estate's pro-rata share and paid the undisputed portion.

It is my opinion that Progressive failed to accept any part of its concurrent coverage hoping Liberty Mutual would pay all or part of Progressive's contractual obligation.

8.    Progressive failed to implement reasonable standards for the prompt investigation of claims.[22] As noted above, standards, if any, adopted by Progressive have not been provided to me for review and I cannot at this time make observations regarding their reasonableness. I can make preliminary observations regarding Progressive's claim handling of the Weilbacher's' claims and conclude, as detailed above, that the investigation conducted was below reasonable standards and the custom and practice in the property and casualty insurance industry.

It is my opinion that Progressive failed to implement reasonable standards for the prompt investigation of claims.

---

[22] Alaska Statute (AS) 21.36.125. Unfair claim settlement practices. "A person may not commit or engage in with such a frequency as to indicate a practice any of the following acts or practices:
    (3) fail to adopt and implement reasonable standards for prompt investigation of claims;"

The observations above are intended to be illustrative of Progressive's numerous and multiple failures to comply with Alaska's Unfair Claim Settlement Practices statute and Alaska's Unfair Claims Settlement Acts or Practices regulation, and to note on some of the more significant failures.

It is my opinion that the failings are so frequent, so persistent, so serious, and occurred over so many years that they are neither inadvertent nor incidental to the handling of the claim.

XXI.

The previously cited Casualty Insurance Claims 4th Edition goes into great detail regarding the claims adjusting occupation:

"The skills must be learned and honed into a system of positive and active steps that make the claim representative a true professional and enhance the principals on whose behalf the representative proceeds." An adjuster must "Know the law. Law, says Winans (David E. Winans, General Counsel for the Capital District Transportation Authority in New York), 'is not rocket science.' An adjuster must know and understand legal principals, whether they involve contract, tort or statutory law. . . Winans suggests that the adjuster be cautious about applying principles of law that may apply in one jurisdiction to a claim in a different jurisdiction."

"The adjusters' . . . education must be ongoing. . . Every profession requires continuing education, and that must involve reading technical journals or other publications that deal with claims, reading court decisions that affect claims in the individual's jurisdiction (one doesn't need to be an attorney to read and understand a court ruling or a statute), and attending seminars."

What sort of educational background?  "For casualty:

a.    A good working knowledge of tort law, law of agency, contracts, and statutes, such as those dealing with workers' compensation, no-fault or uninsured motorist statutes.  Special skill in reading and understanding insurance contracts is mandatory."

"Coverage is the most important aspect of any claim investigation . . ."

"It is obvious, therefore, that without a basic knowledge of the law of a particular jurisdiction, one is inept in the handling of casualty claims."  "Throughout this text, the claim representative will find that the phrase most often repeated is 'learn the law of your jurisdiction.'  Be familiar with it as it is today, not as it was yesterday, except as a matter of history.  Discussion of the law cannot be confined to one section of a text on claim handling.  It permeates the entire book and is a vital part of all discussions of investigation and policy contracts."

"Finally, the claim representative should be aware that as with many extensive compilations of writings, legal source materials have been reduced to computer database formats."

"Finally, it goes without saying that if the claim representative is going to turn to legal source materials, he is going to have to have access to a law library."

"In addition to on-line systems, many law publishing services and insurance services are offering a variety of CD-ROM systems . . ."

Withers, in deposition, stated "Well, I don't do any legal research myself. I'm familiar with you know, Alaska law and case law that might be pertinent to the particular claim I am investigating, you know. Sometimes I confer with defense counsels on issues that might come up in a coverage investigation or liability investigation." Later, Withers stated:

Q      Do you refer to any databases, is there any group of documents at Progressive that you can go refer to regarding this issue?

A      No, we looked at the specific policy that's relevant to the case.

As discussed above, Progressive's Corporate Law Department reported repeatedly that it had conducted comprehensive reviews of Alaska's statutes, regulations, and case law during the course of drafting Progressive's Alaska motor vehicle policy. According to Withers' deposition that extensive knowledge was not shared with Progressive's claims handlers.

Lund, from whom Withers sought settlement approval, stated in deposition that he "Only found out about AS09.15.010 shortly before deposition." When asked about Alaska case law relevant to Weilbacher's Underinsured Motorist claims, Lund advised that he was not qualified to give an opinion.

It is my opinion that Progressive's claims staff involved in Weilbacher's claims did not meet the level of competence expected of insurance adjusters.

Casualty Insurance Claims 4th Edition discusses coverage questions, noting that

> In all claims involving coverage questions it is essential that the investigation be as comprehensive as possible. A decision with reference to coverage cannot be made on guess or surmise. All facts must be obtained. This, admittedly, requires initiative.

It is my opinion that Progressive's claims staff involved in Weilbacher's claims did not conduct a comprehensive coverage investigation.

Casualty Insurance Claims 4th Edition discusses automobile insurance in general and underinsured motorist coverage in particular, noting:

Auto liability insurance is one of the few types of insurance coverages usually mandated by legislation. . . For those involved in handling claims under auto policies, understanding the coverage is obligatory . . .

Financial responsibility laws and mandatory insurance laws are fairly universal thought out the United States. . . Other legislative dictates of various states, besides No-fault, include laws requiring insurers to offer uninsured and/or underinsured motorists coverages with automobile liability policies.

These laws [Financial Responsibility Laws] vary in different states. . . Each claims representative needs to be familiar with the financial responsibility laws of any states in which he or she is handling claims.  Several excellent texts, and current sources for such information are the West Group texts, *Automobile and No-Fault, 2 nd Ed.*, by Robert Joost, *Automobile Liability Insurance 3 rd Ed.*, by Irvin E. and William J. Schermer, and the 'Personal Auto,' Section D & E of the Personal Lines Volume of the *Fire, Casualty & Surety Bulletins* published by the National Underwriter Company.

Uninsured (UM) and Underinsured Motorist (UIM) coverage has been subjected to more changes and interpretations by both legislatures and the courts than any other part of the auto insurance policy.  The rules governing how a claim will be handled can change frequently within a state.  The adjuster handling such claims needs to be certain that he or she fully understands how the coverage is intended to work, how the legislation or courts

have modified that intention, and whether that works to the UM/UIM claimant's benefit, or that of the insurer.

Coverage issues surrounding Uninsured (UM) and Underinsured (UIM) Motorist coverage are common. . . Court interpretation of UM/UIM coverage is far from uniform between the states. . . Most states regulate UM/UIM as part of their financial responsibility law, or as separate statutes.  One of the more difficult issues relating UM/UIM coverage is interpretation of what constitutes an 'underinsured' trigger.

Quite often this policy language may be modified by either the specific state endorsement, or by the statute of the applicable jurisdiction; hence it is necessary as part of the investigation to determine not only how the policy and any applicable endorsements read, but also what is required by statute. . . Assumptions have no place in any insurance coverage investigation, especially not in a UM/UIM coverage situation . . .

Progressive's claim records do not document review or consideration of Alaska's financial responsibility laws in regard to Progressive's Underinsured Motorist coverage for Weilbacher's claims.

Casualty Insurance Claims 4th Edition discusses automobile underinsured motorist coverage, noting:

Another key difference between state interpretations of coverage involves the 'stacking' issue. . . All states have enacted some form of Uninsured Motorist statute, either separately or as a part of the Insurance Code, and many of these statutes specifically address the 'stacking' issue." [Footnote 3 "**Alaska**: Curran v. Fireman's Fund Insurance Co., 393 F. Supp. 712(D. Alaska1975) was overturned by Statute . . . 28.20.445[c] ]

However, the rules and twists and turns of the 'stacking' issue are constantly changing, and it behooves the claims adjuster . . . involved in a UM/UIM claim to carefully review both the policy language, governing statutes, and caselaw relative to any particular issue.

As observed above, Progressive's claim records do not document review careful review of the stacking of Underinsured Motorist coverages for Weilbacher's claims under the Liberty Mutual and Progressive policies.

Casualty Insurance Claims 4th Edition discusses automobile conflicts between state financial responsibility laws and policy language, noting: "Where a policy definition or exclusion conflicts with state financial responsibility legislation, it is usually the state law that determines coverage." In deposition, Withers acknowledged that if there is a conflict between the policy and the statute, the statute prevails. Progressive's claim records do not document review of Alaska's financial responsibility laws to determine if Progressive's Underinsured Motorist coverage complied AS 28.20, AS 28.22, and AS 21.

Casualty Insurance Claims 4th Edition notes that "In the early part of the 20th Century, an agreement was reached between the casualty insurance industry and the American Bar Association regarding which aspects of the adjustment process technically constituted the practice of law, but could be performed by claim adjusters who were not attorneys. . . *Statement of Principles on Respective Rights and Duties of Lawyers and Layman. . .*"

It is my opinion that not only do Progressive's claims adjusters handling Alaska claims have to know the law in Alaska, virtually every claims decision a claims adjuster makes is based upon knowledge of Alaska law.  As noted above, coverage, liability, and damages all involve statutes, regulations, and case law.  Under Progressive's Part III Uninsured/Underinsured Motorist Coverage's Insuring Agreement, Progressive contractually agrees "to pay for damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover . . ."

It is my opinion that Progressive's claims adjusters must determine what Underinsured Motorist coverage Progressive must provide under Alaska's laws, what the legal liability of the underinsured motorist is, and what damages the underinsured motorist caused that Progressive's insured persons are entitled to recover.  Each of those determinations requires Progressive's claims adjusters to reach a legal conclusions about coverage, liability, and damages.

XXII.

The Alaska Legislature has established the clear public policy that insurance companies may not refuse to pay claims without just cause, that insurers may not delay adjustment of claims, and

that insurers may not compel insureds or claimants to employ attorneys or to bring suit against

the insurer to secure full payment or settlement of claims.  So important is this public policy that

the Legislature decreed that the Division of Insurance must impose its most serious

administrative sanction if the division finds after a hearing that the insurer violated this public

policy with a frequency that indicates a general business practice – the insurer's certificate of

authority to transact business in this state must be suspended or revoked.  [23]


Lund in deposition said his title was "injury process manager," that he "supervise[d] the group of

managers and claims reps who handle claims . . ."  Lund was responsible "for reviewing high

exposure files for claims reps in Alaska and Washington and some litigated files."  Lund

admitted that he did not give an opinion as to whether or not to give a separate per person limit to

Mr. Weilbacher.  In regard to how an insured would know how Underinsured Motorist Coverage

would apply, Lund stated

> Q  Do you know the difference between a direct and a derivative claim?
>
> A  Well, I described what I understand to be a derivative claims, and I would need a legal
>
> opinion as to the definition of direct and how that's interpreted in Alaska."
>
> Q      How is an insured to understand that?

---

[23] AS 21.09.150(b). Suspension or revocation for violations and special grounds. "The director shall, after a hearing, suspend or revoke an insurer's certificate of authority if the director finds that the insurer

   (1) is in unsound condition, or in a condition, or using methods or practices in the conduct of its business, which render its further transaction of insurance in this state injurious or hazardous to its policyholders or to the public; . . .

   (4) with a frequency that indicates its general business practice in this state, has without just cause refused to pay proper claims arising under its policies, whether the claim is in favor of an insured or is in favor of a third person, or without just cause delays adjustment of claims, or compels the insured or claimant to accept less than the amount due them or to employ attorneys or to bring suit against the insurer or an insured to secure full payment or settlement of claims;"

A      That assumes that they ask the question.  I mean, it requires basically a legal

opinion and advice from coverage counsel.  We would provide that information to the

insured.


Lund in his deposition also stated:


You're asking me a question about what's the difference between common law and how

is an insured to know the difference between common law and how is an insured to know

and he's not going to get legal advice from Progressive as a claims adjuster.  He would

need to find out the legal issues, I believe, from counsel.


As noted previously, Progressive's March 29, 1999 e-mail the Alaska Division of Insurance

suggested that Progressive believed that it is permissible to "keep these exclusions in our policy

until a court holds those exclusions improper or unenforceable . . ."


It is my opinion that Progressive's has a general business practice that requires such covered

insureds such as Ronald Weilbacher to employ attorneys or to bring suit against the Progressive

to secure full payment or settlement of claims.


XXIII.


Progressive knew that a special fiduciary relationship that exists between an insurer and its

insureds.  Progressive knew that because of its size and financial strength that it had a peculiar


Stanley C. Garlington                    Page 65                    March 27, 2007

ability to take advantage of the insured's trust.   Progressive knew that the typical insured is particularly reliant on the insurer's good conduct.

It is my opinion that Progressive breached its duties of good faith and fair dealing with Weilbacher and acted with reckless indifference to the interests of its insured.  Progressive's conduct taken as a whole has been outrageous.

XXIV.

The first page of the Certified copy of Weilbacher's policy states:

<b><u>IMMEDIATE RESPONSE® claims service</u></b>

Our Immediate Response® claims service goes to work for you immediately

to provide fast, fair, and hassle-free claim service.

Progressive's website in 2002 promised:

**EXPECT EASY. EXPECT FASTER.**
# Policy & Claims Service

**The service you need, when you need it.**
You need the peace of mind that comes from knowing that Progressive will be there when you need us. Our 24/7 policy and claims service will help you keep moving. . .

**Claims Process**

We work with you throughout the entire claims process -- from initial response through final resolution -- to provide fast, caring service and to settle your claim.

Progressive has had extensive advertising programs that for years have attempted to foster the image of prompt, fair, and hassle-free claim service. For example, Progressive's "Ticker" television advertisement (also on its current Website) closes with the line "Hey, if they're this helpful when you're shopping for car insurance, imagine how helpful they'll be once you are a customer."

Progressive has had extensive advertising programs that for years have touted comparison of rates. For example, Progressive's current Black Box television advertisement asks : "Do you know what you are paying what you should be for car insurance. Of course you don't. You have no idea. But I do. Thanks to Progressive Direct rate comparisons. You can call or go on-line to compare. Thanks to Progressive's, now you can compare rates. You are not in the dark."

Alaska statutes regulate the advertising practices by insurers. Alaska Statute 21.36.030, misrepresentation and false advertising of insurance policies, provides that

> (a)     A person may not make, issue, circulate, broadcast, or have made, issued, circulated, or broadcast an estimate, circular, statement, illustration, comparison, or other written or oral presentation that

> (1)     misrepresents the benefits, advantages, conditions, sponsorship, source, or terms of an insurance policy. . .

(11)    is in any other way misleading, false, or deceptive.

(b)    In this section, 'misrepresentation' includes any statement or omission of a statement that when taken in the context of the whole presentation may tend to mislead or deceive the person or persons addressed."

It is my opinion that Progressive, at least in regard to Underinsured Motorist claims and coverages, has misrepresented its claim service and the advantages of purchasing Progressive automobile insurance policies.  Weilbacher's claims were handled neither fast nor fair, and he certainly has encountered hassles.  Progressive's advertising's emphasis on rate comparisons could be valid only if the Uninsured/Underinsured Motorist coverages were the same.  If Progressive were to provide less coverage than another insurer, the rate comparisons would misleading, false, and deceptive.  As discussed above, Progressive's Uninsured/Underinsured Motorist coverage position provided less coverage than another insurer provided for the same claims.

## XXV.

As provided under Civil Rule 26(e), I will supplement this disclosure if additional facts or issues are presented to me.

Dated March 27, 2007

Stanley C. Garlington

**Attachment A**

**INSURER EXAMINATIONS**

**On examination team:**

MCE 88-07    Alaska National Insurance Company (report not adopted)

MCE 91-11    Dependible Insurance Company

MCE 92-05    General American Life Insurance Company
MCE 92-06    Mutual Life Insurance Company of New York

MCE 93-02    Massachusetts General Life Insurance Company
MCE 93-19    Employer Insurance of Wausau, A Mutual Company & Wausau Underwriters
             Insurance Company

MCE 94-01    American International Specialty Lines Insurance Company

**On examination team and Supervisor of examiner-in-charge:**

MCE 97-06    ARECA Insurance Exchange
MCE 97-09    Blue Cross of Washington and Alaska

MCE 98-06    Umialik Insurance Company

**Examiner-in Charge:**

MCE 89-25    Eagle Pacific Insurance Company

MCE 90-01    Umialik Insurance Company
MCE 90-03    State Farm Insurance Companies
MCE 90-08    Eagle Pacific Insurance Company

MCE 91-01    ARECA Insurance Exchange

MCE 92-01    Alaska Timber Insurance Exchange
MCE 92-03    Fireman's Fund Group
MCE 92-04    Chicago Insurance Company

MCE 93-04    Providence Washington Insurance Group
MCE 93-06    Sons of Norway

MCE 95-01    Blue Cross of Washington and Alaska
MCE 95-02    Aetna Life Insurance Company
MCE 95-03    Sunderland Marine Mutual Insurance Company, Limited

MCE 97-08    Progressive Insurance Group

## SURPLUS LINES BROKER EXAMINATIONS

**On examination team:**

MCE 88-01    Alexander & Alexander of Washington
MCE 88-04    Fred S. James of Washington
MCE 88-05    Swett & Crawford of Washington
MCE 88-06    Gene Sause & Company

**Examiner-in-Charge:**

MCE 88-02    Frank B. Hall of Washington
MCE 88-03    Kenneth I. Tobie, Inc.

MCE 89-16    Corroon & Black, Inc.
MCE 89-17    Pettit-Morry Company

MCE 90-04    Sedgwick James of Washington
MCE 90-05    Alexander & Alexander of Washington
MCE 90-06    Frank B. Hall of Washington
MCE 90-07    Swett & Crawford of Washington

MCE 93-01    Brokers Plus
MCE 93-03    Preferred General Agency of Alaska, Inc.
MCE 93-05    M.J. Hall & Company of Alaska, Inc.
MCE 93-18    Willis Corroon Corporation of Anchorage

MCE 98-01    M.J. Hall & Company of Alaska, Inc.
MCE 98-02    Acordia Northwest, Inc.
MCE 98-03    Puget Sound Underwriters, Inc.

## MANAGING GENERAL AGENT EXAMINATIONS

**On examination team and Supervisor of examiner-in-charge:**

MCE 97-05    North Star Underwriting Managers, Inc.

MCE 98-05    Pritchard Insurance, Inc.

## <u>INDEPENDENT ADJUSTER EXAMINATIONS</u>

Examiner-in-Charge:
MCE 91-02    Crawford & Company Anchorage
MCE 91-03    Crawford & Company Fairbanks

## <u>INSURANCE PRODUCER (AGENTS & BROKERS) EXAMINATIONS</u>

**On examination team:**

MCE 92-07    Neil Bledsoe

**On examination team and Supervisor of examiner-in-charge:**

MCE 97-02    Walters & Associate Insurance, Inc.
MCE 97-03    Schumaker Enterprises, Inc. (Soldotna)
MCE 97-04    Schumaker Enterprises, Inc. (Kenai)

MCE 98-07    RBMS L.L.C.

**Examiner-in-Charge:**

MCE 91-10    United Insurance/United Financial Corporation

MCE 97-01    Denali Insurance Brokers, Inc.

**Attachment B**

**List of Statutes**

**Drafted:**

AS 21.03.010(c) Risk Retention Groups and Purchasing Groups

AS 21.06.080(d) Catastrophes

AS 21.09.175 Determination of Impairment

AS 21.09.290 Risk Retention Groups

AS 21.09.310. Authorization of United States branches of alien insurers and general requirements.

AS 21.36.145. Unfair financial planning practices.

AS 21.36.150(d). Procedures as to undefined practices.

AS 21.89.035. Mandatory appraisal.

AS 21.89.020(c) and (h). Uninsured and underinsured motorist coverage.

AS 21.89.090. Risk retention groups and purchasing groups

AS 28.20.445(a), (b), and (c). Uninsured and underinsured motorist coverage.

AS 28.22.221. Uninsured and underinsured motorist coverage.

**Rewrote:**

AS 21.27. PRODUCERS, AGENTS, ADMINISTRATORS, BROKERS, ADJUSTERS, AND MANAGERS

AS 21.33. UNAUTHORIZED INSURERS

AS 21.34. SURPLUS LINES INSURANCE

AS 21.36.235. Notice of premium or coverage changes upon renewal.

AS 21.75 ARTICLE 1. RECIPROCAL INSURERS

AS 21.89.020(c) Required motor vehicle coverage.

AS 21.90.900. Definitions for title.

## Revised

AS 21.36.320. Hearings and order on violation.

AS 21.36.360. Fraudulent or criminal insurance acts

AS. 21.80.140. Recognition of assessments in rates.

**Participated in the drafting of revisions:**

AS 21.06.120 – 165 Examinations

AS 21.36.255. Premium return or credit.

AS 21.42.347 – 365; 375 - 500. Various health insurance mandates.

AS 21.87.180 – 190. Forms and Rates.

AS 21.54.100 – 500. HIPAA provisions.

AS 21.55. STATE HEALTH INSURANCE

AS 21.56. SMALL EMPLOYER HEALTH INSURANCE

AS 21.88. HEALTH CARE PROVIDERS INSURANCE

**Attachment C**

**List of Regulations**

Promulgated

1989

Drafted:

3 AAC 26 ARTICLE 1.  UNFAIR CLAIMS SETTLEMENT ACTS OR PRACTICES

3 AAC 30 ARTICLE 2.  PREMIUM INSTALLMENT PAYMENTS

Participated in the drafting:

3 AAC 24.  RISK RETENTION GROUPS AND PURCHASING GROUPS

1990

Drafted:

3 AAC 28 ARTICLE 5.  HEALTH INSURANCE MARKETED AS MEDICARE
SUPPLEMENTS

1991

Drafted:

3 AAC 25.  SURPLUS LINES - UNAUTHORIZED INSURERS

3 AAC 30 ARTICLE 2.  WORKERS COMPENSATION PREMIUM INSTALLMENT
PAYMENTS

1992

Drafted rewrite:

3 AAC 23 ARTICLE 1.  PRODUCERS, MANAGING GENERAL AGENTS, SURPLUS
LINES BROKERS, REINSURANCE INTERMEDIARY MANAGERS, REINSURANCE
INTER- MEDIARY BROKERS, THIRD PARTY ADMINISTRATORS, AND
INDEPENDENT ADJUSTERS

Repealed:

3 AAC 23 ARTICLE 3.  BROKERS' FEE COMPENSATION.

Stanley C. Garlington                    Page 6                    3/27/2007

Drafted revision:

3 AAC 25.  SURPLUS LINES - UNAUTHORIZED INSURERS

Participated in the drafting:

3 AAC 29 ARTICLE 2.  RATE AND RATING PLAN FILINGS

1995

Drafted:

3 AAC 28 ARTICLE 8.  UNIFORM CLAIM FORMS

1996

Drafted:

3 AAC 26 ARTICLE 3.  COVERAGE FOR ATTORNEY FEES TAXABLE AS COSTS AGAINST AN INSURED ACCORDING TO ALASKA RULE OF CIVIL PROCEDURE 82

3 AAC 30 ARTICLE 3.  WORKERS' COMPENSATION REVIEW AND ADVISORY COMMITTEE

Drafted Rewrite:

3 AAC 30 Article 1.  WORKERS' COMPENSATION ASSIGNED RISK POOL

Repealed:

3 AAC 29 ARTICLE 1.  SUPPLEMENTARY PAYMENTS

1997

Drafted:

3 AAC 29 ARTICLE 4.  MOTOR VEHICLE LIABILITY INSURANCE SENIOR DISCOUNT

Drafted New Provision:

3 AAC 26 ARTICLE 1.  UNFAIR CLAIMS SETTLEMENT ACTS OR PRACTICES

1998

Drafted Rewrite:

3 AAC 23 ARTICLE 2.  PREMIUM FINANCING

Participated in the drafting:

3 AAC 29 ARTICLE 5.  SCHEDULE AND INDIVIDUAL RISK RATING PLANS

Not Promulgated

1989

Claims Made Policies

1990

Workers Compensation Loss Reimbursement Plans

**Attachment D**

**List of Cases as of March 30, 2007**

**A.    Cases In Which I Have Rendered An Opinion**

1.    *TIG Insurance Company v. American Motorists Insurance Company and Kemper Insurance Companies*
United States District Court for the District of South Carolina
Attorneys:  Mark Sandberg for Plaintiff, David L. Moore for Defendant

2.    *Heady v. Northland Casualty Insurance Company*
United States District Court at Juneau
Attorneys:  Michael J. Schneider for Plaintiff, Ingaldson Maassen for Defendant

3.    *Pittillo v. Allstate Insurance Company*
Superior Court, State of Alaska, Anchorage
Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant

4.    *Elliott, Smith, and Stafford, individually and as representatives of a class v. Nationwide Mutual Fire Insurance Company*
Superior Court, State of Alaska, Anchorage
Attorneys:  Paul Dillon for Plaintiffs, Daniel Quinn for Defendants

5.    *Evridge v. American Equity Insurance Company*
Superior Court, State of Alaska, Anchorage
Attorneys:  William Brattain for Plaintiff, William Wuestenfeld for Defendant

6.    *Moore v Progressive*
Superior Court, State of Alaska, Anchorage
Attorneys:  Michaela Kelley Canterbury for Plaintiff, Gregory Silvey for Defendant

7.    *Machalek v. PFL Life Insurance Company*
Superior Court, State of Alaska
Attorneys:  Don Bauermeister for Plaintiff, Donald Thomas for Defendants

8.    *Estate of Arthur D. McLean v Leader Insurance Company*
Superior Court, State of Alaska
Attorneys:  Vance Sanders for Plaintiff; Michael Corey for Defendants

9.    *Sierra Pacific Power Company vs. The Hartford Steam Boiler Inspection and Insurance Company, et. al.*
Federal District Court, State of Nevada, Reno
Attorneys:  William E. Peterson for Plaintiff,

10. *Armijo v Allstate Indemnity Company*
District Court, State of New Mexico, Santa Fe
Attorneys: David J. Berardinelli for Plaintiff, Cheryl McLean for Defendant

11. *Hensel v. Allstate Insurance Company*
Superior Court, State of Alaska
Attorneys: Atkinson, Conway & Conway for Plaintiffs; Guess & Rudd for Defendants

12. *Kinzel vs. Alaska Insurance Guaranty Association*
Superior Court, State of Alaska, Anchorage
Attorneys: Wade, Kelly & Sullivan for Plaintiffs; Holmes Weddle & Barcott for Defendants

## B.     Trial Testimony as Expert Witness

1. *Evridge v. American Equity Insurance Company*
Superior Court, State of Alaska, Anchorage
Attorneys: William Brattain for Plaintiff, William Wuestenfeld for Defendant

2. *Moore v Progressive*
Superior Court, State of Alaska, Anchorage
Attorneys: Michaela Kelley Canterbury for Plaintiff, Gregory Silvey for Defendant

3. *Estate of Arthur D. McLean v Leader Insurance Company*
Superior Court, State of Alaska
Attorneys: Vance Sanders for Plaintiff; Michael Corey for Defendants

## C.     Depositions in Expert Witness Cases

1. *TIG Insurance Company v. American Motorists Insurance Company and Kemper Insurance Companies*
United States District Court for the District of South Carolina

2. *Pittillo v. Allstate Insurance Company*
Superior Court, State of Alaska, Anchorage

3. *Machalek v. PFL Life Insurance Company*
Superior Court, State of Alaska

4. *Estate of Arthur D. McLean v Leader Insurance Company*
Superior Court, State of Alaska

5. *Armijo v Allstate Indemnity Company*
District Court, State of New Mexico, Santa Fe

## C.    Cases Settled In 2000

1.    *Heady v. Northland Casualty Insurance Company*
      United States District Court at Juneau
      Attorneys:  Michael J. Schneider for Plaintiff, Ingaldson Maassen for Defendant
      Bad Faith case, appeared for plaintiff

2.    *Pittillo v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

3.    *TIG Insurance Company v. American Motorists Insurance Company and Kemper
      Insurance Companies*
      United States District Court for the District of South Carolina
      Attorneys:  Mark Sandberg for Plaintiff, David L. Moore for Defendant
      Bad Faith case, appeared for plaintiff

## Cases Settled In 2001

1.    *Buehrle v. Allstate Insurance Company*
      Superior Court, State of Alaska, Cordova
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

2.    *Martin v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

3.    *Gress v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

4.    *Larson v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

5.    *Sims v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, appeared for plaintiff

6.    *Briner v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, retained by plaintiff

7.    *Talbot v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, retained by plaintiff

8.    *Toms v. Allstate Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas and Michael Moody for Plaintiff, Gary Zipkin for Defendant
      Bad Faith case, retained by plaintiff

## Cases Settled In 2002

1.    *Wolf v. American Manufactures Insurance Company*
      Attorneys:  Kenneth Jarvi for Plaintiff,
      Bad Faith case, retained by plaintiff

2.    *Brenegan v. American Manufacturers Mutual Insurance Company*
      Attorneys:  Dennis Mestas for Plaintiff,
      Bad Faith case, retained by plaintiff.

3.    *Olson v. State Farm Mutual Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Dennis Mestas for Plaintiff
      Bad Faith case, retained by plaintiff.

4.    *Machalek v. PFL Life Insurance Company*
      Superior Court, State of Alaska
      Attorneys:  Don Bauermeister for Plaintiff, Donald Thomas for Defendants
      Bad Faith case, retained by plaintiff.

## Cases Settled in 2003

1.    *Elliott et al.  v. Nationwide Mutual Fire Insurance Company*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Paul Dillon for Plaintiffs
      Bad Faith case, retained by plaintiff

2.    *Withrow v. Safeco Insurance Company of America*
Superior Court, State of Alaska, Anchorage
Federal District Court for Alaska, Anchorage
Attorneys: Johathon A. Katcher for Plaintiff
Bad Faith case, retained by plaintiff

3.    *Andrews v. Progressive*
Superior Court, State of Alaska, Anchorage
Attorneys: Don Bauermeister for Plaintiff, Gary Zipkin for Defendants
Bad Faith case, retained by plaintiff.

## Cases Settled in 2004

1.    *Bradshaw v. Admiral Insurance Company*
Superior Court, State of Alaska
Attorneys: Linda O'Bannon for Plaintiff, Timothy Lynch for Defendants
Bad Faith case, retained by plaintiff.

2.    *Estate of Arthur D. McLean v Leader Insurance Company*
Superior Court, State of Alaska, Juneau
Attorneys: Vance Sanders for Plaintiff; Michael Corey for Defendants
Bad faith case, retained by plaintiff.

## Cases Settled in 2005

1.    *Quincy v. Allstate*
Superior Court, State of Alaska, Anchorage
Attorneys: Dennis Mestas for Plaintiff
Bad faith case, retained by plaintiff

2.    *Armijo v Allstate Indemnity Company*
District Court, State of New Mexico, Santa Fe
Attorneys: David J. Berardinelli, Cheryl McLean for Defendant
Insurance Regulatory Market Conduct Examinations, retained by Plaintiff

3.    *Neyhart et al. v. State Farm Fire and Casualty Company*
Superior Court, State of Alaska, Juneau
Attorneys: Paul Dillon for Plaintiffs
Bad Faith case, appeared for plaintiff

4.    *Gallaher v. Westport Insurance Company*
Superior Court, State of Alaska, Anchorage
Attorneys: Dennis Mestas for Plaintiff
Bad Faith case, retained by plaintiff.

### Cases Settled in 2006

1. *Bruce Bergman vs. National Casualty Insurance Company, Integrity Insurance Agency*
   Superior Court, State of Alaska, Bethel
   Attorneys:  Cooke, Roosa & Valcarce and Dennis M. Mestas for Plaintiffs

2. *Maniilaq Association v Great West Wife and Annuity Insurance Company*
   Superior Court, State of Alaska, Kotzebue
   Attorneys:  Douglas Pope for Plaintiff, John A Treptow for Defendant
   Failure to pay medical costs and trade practices violations, retained by plaintiff.

3. *Charles vs. GEICO*
   Superior Court, State of Alaska, Bethel
   Attorneys:  Cooke, Roosa & Valcarce for Plaintiffs

## D.    Pending Cases as Expert Witness

1. *Graham-Gonzales v. GEICO*
   Superior Court, State of Alaska, Anchorage
   Attorneys:  Dennis Mestas and Mark Sandberg for Plaintiff,
   Bad Faith case, retained by plaintiff

2. *Rogers v. Integon Indemnity Company*
   Superior Court, State of Alaska, Anchorage
   Attorneys:  Dennis Mestas for Plaintiff
   Bad Faith case, retained by plaintiff.

3. *Sierra Pacific Power Company vs. The Hartford Steam Boiler Inspection and Insurance Company, et. al.*
   Federal District Court, State of Nevada, Reno
   Attorneys:  William E. Peterson for Plaintiff,
   Policy construction and interpretation.

4. *Nageak vs. Progressive Casualty Insurance Company*
   Superior Court, State of Alaska, Barrow
   Attorneys:  Jason Skala and Dennis M. Mestas for Plaintiffs;
   Bad Faith case, retained by plaintiff.

5. *Hensel vs. Allstate*
   Superior Court, State of Alaska, Anchorage
   Attorneys:  Atkinson, Conway & Conway for Plaintiffs; Guess & Rudd for Defendants
   Bad Faith case, retained by plaintiff.

6.    *Kinzel vs. Alaska Insurance Guaranty Association*
      Superior Court, State of Alaska, Anchorage
      Attorneys:  Wade, Kelly & Sullivan for Plaintiffs; Holmes Weddle & Barcott for
      Defendants
      Bad Faith case, retained by plaintiff.

7.    *Weilbacher vs. Progressive*
      Federal District Court, State of Alaska, Anchorage
      Attorneys:  Kenneth W. Legack for Plaintiffs; Guess & Rudd for Defendants
      Bad Faith case, retained by plaintiff.