Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER,<br><br>      Plaintiff,<br><br>  v.<br><br>PROGRESSIVE NORTHWESTERN<br>INSURANCE COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO. 3:05-cv-204-TMB |

MEMORANDUM IN SUPPORT OF
PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT[1]

Progressive Northwestern Insurance Company
("Progressive") is entitled to summary judgment on all of plaintiff
Ronald V. Weilbacher's claims in this matter because:
(1) Progressive properly denied Mr. Weilbacher's claim for a
second, separate "each person" policy limit of underinsured motor
vehicle bodily injury liability ("UIMBI") coverage for his loss of
society/consortium claim under AS 09.15.010 based on the clear,
unambiguous terms of his Progressive policy; (2) Mr. Weilbacher's
misrepresentations, omissions, and incorrect statements on his
insurance application render the policy void *ab initio* under
AS 21.42.110; and (3) since Progressive both properly denied

plaintiff's UIMBI claim and had reasonable bases for its decision and Mr. Weilbacher did not suffer any compensable harm as a result of Progressive's denial, Progressive cannot have committed the tort of insurance bad faith as a matter of law.  Additionally, Mr. Weilbacher cannot recover punitive damages as a matter of law because his bad faith claim fails as a matter of law and Progressive's conduct does not rise to the level of outrageous and malicious conduct necessary to support punitive damages.

<u>Standard of Review</u>

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

> [S]ummary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law.  Once the moving party has satisfied his burden, he is entitled to summary judgment if the nonmoving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-25 [] (1986) (internal quotation omitted). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Triton Energy</u>, 68 F.3d at 1221.  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 [] (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." <u>Triton Energy</u>, 68 F.3d at 1221.

---

[1]  This motion combines DE #61-62, 68-69, & 70-71.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 2

<u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001).

In Alaska, contract interpretation is generally a matter of law.  "Where no facts are in dispute, 'interpretation of the words of the contract is treated in the same manner as questions of law.'"  <u>Maynard v. State Farm Mut. Auto. Ins. Co.</u>, 902 P.2d 1328, 1329 (Alaska 1995) (quoting <u>National Bank of Alaska v. J.B.L. & K. of Alaska Inc.</u>, 546 P.2d 579, 586 (Alaska 1976)).  Whether Progressive breached the insurance contract by declining to pay Mr. Weilbacher an additional, separate "each person" policy limit for UIMBI is a question of contract interpretation and, as such, a matter of law.

Here, there are no genuine issues of material fact.  The only issue is the legal interpretation of the UIMBI policy language.  Under the clear, unambiguous language of the policy, Mr. Weilbacher's damages for his claim under AS 09.15.010 for loss of consortium/society were properly included in the "each person" UIMBI policy limit previously paid by Progressive.  Under his policy, Mr. Weilbacher is simply not entitled to an <u>additional</u> "each person" UIMBI policy limit as a matter of law.

Additionally, "as a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."  <u>Medical Care Am., Inc. v. Nat'l Union Fire Ins. Co.</u>, 341 F.3d 415, 425-26 (5th Cir. 2003).  <u>See</u> <u>Drennan v. Maryland Casualty Company</u>, 366 F. Supp. 2d 1002,

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 3

1007-08 (D. Nev. 2005) ("If plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for concluding that Maryland Casualty acted in bad faith."); Truck Ins. Exch. v. Waller, 828 P.2d 1384, 1388 (Mont. 1992) (where the policy excludes coverage, the bad faith claim fails as a matter of law). Since Progressive did not breach the insurance contract, Mr. Weilbacher's bad faith claim fails as a matter of law. Progressive cannot have committed any act of bad faith since its actions were valid and proper under the terms of the contract of insurance.

        The law in Alaska is also clear that the tort of bad faith in first-party cases requires proof that, at the time of the insurer's denial of the claim, there was no "reasonable basis" for the denial. Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1324 (Alaska 1993); Peter v. Progressive Northwestern Ins. Co., S-11416/11445 (Alaska February 22, 2006).[2] Progressive's reliance on its clear, unambiguous policy language and advice of counsel are reasonable bases for its decisions in this case as a matter of law.

        Finally, Mr. Weilbacher does not seek any compensatory damages -- and did not suffer any compensatory damages -- as a result of Progressive's denial of his claim for a second UIMBI policy limit. As such, Mr. Weilbacher cannot maintain a bad faith claim as a matter of law. Since Mr. Weilbacher's only

_____

[2]  Judges and lawyers may rely on unpublished decisions for whatever persuasive power those decisions might have. McCory v. State, 80 P.3d 757 (Alaska App. 2002).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 4

basis for the remedy of punitive damages is his bad faith claim, his prayer for punitive damages falls with his bad faith claim. Additionally, Progressive's conduct in this matter does not rise to the level of outrageous and malicious conduct necessary to support a punitive damages award as a matter of law.

<u>Background</u>

On July 9, 2001, Mr. Weilbacher's daughter Heidi died in a tragic automobile accident while a passenger in an automobile driven by Robert M. Esper. Although Mr. Esper was insured with Allstate Insurance Company, his coverage was insufficient to fully compensate all the victims of the accident. Complaint at ¶VI.

At the time of the accident, Mr. Weilbacher had an automobile policy with Progressive, Policy No. 65824951-0. Exhibit A. On December 13, 2001, a claim was made on Mr. Weilbacher's policy for underinsured motor vehicle bodily injury liability coverage ("UIMBI") on behalf of the Estate of Heidi Weilbacher, Mr. Weilbacher, and Heidi's mother, Cathie Mauro.[3] Exhibit B at 100283,[4] and Exhibit C at 100237-238. Progressive promptly acknowledged this claim. However, as this claim was for underinsured motor vehicle coverage and the

---

[3] A claim was also opened for medical payments coverage for the funeral costs. This claim was paid, and is not at issue in this litigation. <u>See</u> Exhibit B at 100312-100313.

[4] Progressive's PACMAN Face Sheet Notes are the computerized notes of the adjusters and others regarding the claims submitted under Mr. Weilbacher's policy. <u>See</u> Exhibit J at 19:6-11.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 5

claimants had not yet resolved and received the policy limits
from all other relevant liability insurance policies, UIMBI
coverage was not yet triggered and nothing could be done at that
time.  Exhibit C at 100235-236 & 100227.

On January 21, 2004, claimants notified Progressive
that they had finally exhausted all other policy limits and
formally requested UIMBI policy limits from Progressive.  Id. at
100089.  On February 24, 2004, Progressive paid the full policy
limits for UIMBI coverage for the claim of the Estate of Heidi
Weilbacher and all related, derivative claims of Mr. Weilbacher
and Cathy Mauro.  Id. at 100062.

Thereafter, in October 2004, Mr. Weilbacher demanded
that Progressive pay him an additional, separate "each person"
policy limit under his policy's UIMBI coverage.  Exhibit D at
100048.  Correspondence between Mr. Weilbacher and Progressive
ensued.  Exhibit D.  On October 29, 2004, Progressive initially
denied Mr. Weilbacher's claim, believing it to be one for
negligent infliction of emotional distress ("NIED") because
Mr. Weilbacher could not satisfy the elements of such a claim
having been in Kenai at the time of his daughter's death in
Anchorage.  Id. at 100047.  On April 19, 2005, Progressive
denied Mr. Weilbacher's claim under AS 09.15.010 for loss of
society/loss of consortium.  Id. at 100030.  Progressive again
fully acknowledged that Mr. Weilbacher had UIMBI coverage under
his policy.  Id.  Progressive denied his claim, however, on the
grounds that his claim under AS 09.15.010 for loss of

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 6

consortium/loss of society was within the same "each person"
policy limit as the UIMBI claims it had already paid in February
2004.  Id.  In other words, Mr. Weilbacher's claim was not
denied on the basis of lack of UIMBI coverage.  Plaintiff's
claim was denied on the basis that it had already been paid.
Id.

     On August 11, 2005, Mr. Weilbacher filed this action
against Progressive, claiming Progressive breached the insurance
contract and acted in bad faith by denying his claim for an
additional, separate "each person" UIMBI coverage policy limit
for his loss of society/loss of consortium claim under
AS 09.15.010.  Complaint at 2-3.  Mr. Weilbacher seeks both
compensatory and punitive damages based on his allegations.  Id.
He is entitled to neither as a matter of law.

Discussion

A. Breach of Contract - UIMBI Coverage

     In this matter, Mr. Weilbacher seeks a separate "each
person" policy limit of UIMBI coverage under his Progressive
policy for his claim under AS 09.15.010 for loss of
society/consortium as a result of the death of his daughter in
the automobile accident.  However, under the clear, unambiguous
policy language of Mr. Weilbacher's policy, he is not entitled
to a separate "each person" UIMBI policy limit.
Mr. Weilbacher's claim was included in the "each person" UIMBI
policy limit as the claims of the Estate of Heidi Weilbacher,
himself, and Cathy Mauro previously paid by Progressive.  As

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 7

such, Progressive did not breach the insurance contract as a matter of law by declining to pay Mr. Weilbacher a separate "each person" UIMBI policy limit.

As a preliminary matter, Mr. Weilbacher has admitted that his claim in this matter is solely for loss of society/loss of consortium under AS 09.15.010 as a result of the loss of his daughter.

> REQUEST FOR ADMISSION NO. 1:  Please admit that in this action you are seeking damages only under AS 09.15.010 for loss of consortium/loss of society based on Heidi's death.

> ANSWER TO REQUEST FOR ADMISSION NO. 1:  Admit.

Exhibit E at 1.[5]

Under PART III — UNINSURED/UNDERINSURED MOTORIST COVERAGE, Mr. Weilbacher's policy provides:

> Subject to the Limits of Liability, if **you** pay a premium for Uninsured/Underinsured Motorist Coverage for **bodily injury, we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury:**

> 1.    sustained by an **insured person;**

> 2.    caused by **accident;** and

> 3.    arising out of the ownership, maintenance or use of an **uninsured/underinsured motor vehicle.**

Exhibit A at 100,375.  For purposes of UIMBI coverage, an "insured person" is defined as:

> a.    **you** or a **relative;**

---

[5]  Mr. Weilbacher further admitted that he was not making a claim for negligent infliction of emotional distress.  Exhibit E at 1.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 8

b.    any person **occupying** a **covered vehicle**; and

c.    any person who is entitled to recover damages
covered by this Part III because of **bodily injury**
sustained by a person described in a or b above.

Id. at 100,376.

It is undisputed that: (1) Mr. Weilbacher is an
"insured person" as the named insured, or **you**, under the policy,
(2) Mr. Weilbacher's daughter Heidi sustained serious bodily
injury and died as the result of an automobile accident wherein
she was a passenger in an underinsured motor vehicle, and
(3) Mr. Weilbacher is entitled to recover damages as a result of
Heidi's death under AS 09.15.010 from the operator of the
underinsured motor vehicle.  It is assumed and not disputed for
purposes of this discussion that Heidi was a "relative" of Mr.
Weilbacher and, thus, also an "insured person" under the policy
since Heidi was living with Mr. Weilbacher at the time of the
accident.[6]  It is also assumed for purposes of this discussion
that Mr. Weilbacher's damages as a result of Heidi's death
exceed the amounts he has already recovered from the various
insurers involved.[7]

---

[6]  Under the policy, a "relative" includes "a person residing in the same
household as [the named insured], and related to [the named insured] by
blood."  Exhibit A at 100,360 ¶10.  Since Mr. Weilbacher and Ms. Mauro were
divorced, Heidi's residence changed as between her parents.  In his
February 20, 2002 interview, Mr. Weilbacher told Progressive that Heidi was
living with him for the summer and had only returned to Anchorage with her
mother for a short visit.  Exhibit F at 3:93-96 and 12:458-459.

[7]  Progressive reserves the right to refute and challenge this assumption that
Mr. Weilbacher's damages exceed the amounts already received, if necessary.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 9

The issue in this case is not whether Mr. Weilbacher is an "insured person" or whether he is entitled to any UIMBI coverage.  The issue here is whether Mr. Weilbacher is entitled to a separate "each person" UIMBI policy limit for his loss of consortium/society claim, or whether his claim is subject to the "each person" UIMBI policy limit already paid as provided in the policy.  Although the issue of separate "each person" policy limits is generally discussed as being based on the characterization of the claim at issue as either direct or derivative, this characterization is not necessarily dispositive.[8]  Whether a claim is entitled to a separate "each person" policy limit depends not on the characterization of the claim, but on the policy language at issue.

The Alaska Supreme Court most recently addressed this issue of whether a claim for loss of consortium/society triggered separate "per person" UM/UIM policy limits in State Farm Mut. Automobile Ins. Co. v. Dowdy, 111 P.3d 337 (Alaska 2005).  The Dowdys, whose daughter Heather was killed in a head-on collision, sought "per person" policy limits of UIMBI coverage ($100,000) under each of their three State Farm policies for NIED, loss of consortium, and punitive damages. Id. at 339.  At the time the Dowdys made their claims, State

---

[8]  See e.g. State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1079 (Alaska 2001), discussing the difference between NIED claims and loss of consortium claims, the court stated, "Unlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered directly, rather than derivative injuries that resulted from an injury to another."

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 10

Farm had already paid a "per person" UIMBI policy limits payment
of $100,000 plus add-ons to the Estate of Heather Dowdy under
each of the three policies.  Id.  State Farm filed a declaratory
judgment action to establish the rights of the parties under the
policies to another set of "per person" UIMBI policy limits.
Id.  The Dowdys sought to stay the judicial proceeding pending
arbitration of the merits of their claims.  Id.  On petition for
review from an order to stay the judicial proceedings, the
Alaska Supreme Court addressed whether the issues of coverage
under the State Farm policies for the Dowdys' claims were
required to be arbitrated along with the merits of the Dowdys'
claims.  Id. at 340.

        In determining that the coverage issues were not
subject to arbitration, the court first considered the issue of
separate "per person" policy limits for the NIED and loss of
society claims.  Id. at 341.  With regard to the loss of
consortium/society claim, the court recalled:

        The issue may not be amenable to a definitive
        resolution, since much of the case law cited by the
        parties in their supplemental briefing seems to
        suggest that whether a loss-of-society claim should
        trigger separate "per person" coverage may hinge more
        on a particular policy's definition of the scope of
        its bodily injury coverage than on the inherent nature
        of a cause of action for loss of society.

Id. (quoting Wold v. Progressive Preferred Ins. Co., 52 P.3d
155, 166 n.36 (Alaska 2002)).  The court then noted:

        An added layer of complexity in determining these
        coverage issues, therefore, is that many variations
        exist in policy language and scope.  As our footnote
        in Wold suggests, these variations may prevent the
        court from making a broad or general determination as

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 11

> to whether separate policy limits apply and may
> require a specialized analysis of the policy language
> in question.

Id. at 341.[9]  Thus, whether an insurance claim triggers a

separate "each person" policy limit under UIMBI coverage depends

on the particular policy language at issue.

In interpreting the policy language of an insurance

contract, the court looks to: (1) the language of the disputed

policy provisions, (2) the language of other provisions of the

insurance policy, (3) relevant extrinsic evidence, and (4) case

law interpreting similar provisions.  Maynard v. State Farm Mut.

Auto. Ins. Co., 902 P.2d 1328, 1330 (Alaska 1995) (quoting

Stordahl v. Gov't Employees Ins. Co., 564 P.2d 63, 65-66 (Alaska

1977)).  It is also well established in Alaska that

> [i]n interpreting an insurance policy, courts follow
> the definitions provided in the policy itself.  Where
> an insurance company limits the coverage of a policy
> issued by it in plain language, this court recognizes
> that restriction.

Insurance Co. of N. Am. v. State Farm Mut. Auto. Ins. Co., 663

P.2d 953, 955 (Alaska 1983) (internal citations omitted).  "It

is well-established that 'the obligations of insurers are

generally determined by the terms of their policies.'"  State

Farm v. Bongen, 925 P.2d 1042, 1045 (Alaska 1996).  "Where an

insurance company by plain language limits the coverage of its

---

[9]  Notably, the court's holding that the "coverage issues" depend on policy
language may apply equally to an NIED claim such that an NIED claim is not
automatically a separate per person limit.  However, NIED is not at issue in
this case.  See Exhibit E at 1 (RFA#2).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 12

policy, we recognize that restriction." <u>C.P. ex rel. M.L. v.</u>
<u>Allstate Ins. Co.</u>, 996 P.2d 1216, 1222-23 (Alaska 2000).

  The Alaska Supreme Court also applies the doctrine of
reasonable expectations when reviewing the terms of an insurance
policy.  In other words, insurance policies are construed to
provide the coverage that a lay person would have reasonably
expected from a lay interpretation of the policy terms.
<u>Serradell v. Hartford Acc. & Indem.</u>, 843 P.2d 639, 641 (Alaska
1992).  But the Alaska Supreme Court has expressly noted that
this doctrine should not be misused to transform a mere hope of
coverage into a reasonable expectation of coverage.

> However, since most insureds develop an expectation
> that every loss will be covered, the reasonable
> expectation doctrine "must be limited by something
> more than the fervent hope usually engendered by
> loss."

<u>Bongen</u>, 925 P.2d at 1047.  To determine the objectively
reasonable expectations, the court again looks to: (1) the
language of the disputed policy provisions, (2) the language of
other policy provisions, (3) relevant extrinsic evidence, and
(4) case law interpreting similar provisions.  <u>Id</u>.  The policy
terms should be interpreted in their ordinary and popular sense,
as they would be read and understood by a person of average
intelligence and experience.  <u>Whispering Creek Condominium Owner</u>
<u>Ass'n v. Alaska Nat. Ins. Co.</u>, 774 P.2d 176, 177 (Alaska 1989).
An "insured does not reasonably expect the policy to be
interpreted in ways that contravene the contract language."
<u>Accord Trinity Universal Ins. Co. v. Cowan</u>, 945 S.W. 2d 819, 823

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 13

(Tex. 1997). Thus, it is the clear, unambiguous language of the policy that controls.

Here, the clear and unambiguous policy language specifically defines what constitutes an "each person" policy limit. Under the LIMITS OF LIABILITY section of Part III, the policy provides:

> If **your Declarations Page** shows a split limit:[10]
>
> 1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one (1) person;
>
> 2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two (2) or more persons in any one (1) accident;
>
> \* \* \*
>
> The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

Exhibit A at 100,383. Mr. Weilbacher's loss of consortium/society claim is clearly and expressly included in the "each person" UIMBI policy limit -- which, in this case, has already been paid.

A person of average intelligence and experience would read this for exactly what it is: the "each person" limit is the most Progressive will pay for all damages due to bodily injury to one person, including all claims derived from such bodily

---

[10] Mr. Weilbacher's policy provides split limits of "$100,000 EACH PERSON" and "$300,000 EACH ACCIDENT" for UIMBI coverage. Exhibit A at 100,344.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Page 14

injury such as loss of consortium/society claims.  Id. at
100,383.  Heidi Weilbacher is the only "insured person" for
purposes of UIMBI to have sustained bodily injury in the
accident.  Mr. Weilbacher's claim under AS 09.15.010 is due to
the death of, or bodily injury sustained by, his daughter Heidi.
Complaint at ¶VII.  Mr. Weilbacher's claim is clearly the result
of injury to another or "due to a bodily injury to one (1)
person" —— Heidi.  The policy specifically states that the
bodily injury limit for "each person" includes the total of all
claims made for bodily injury to the one person, plus all claims
derived from such bodily injury.  Exhibit A at 100,383.  As
such, Mr. Weilbacher's claim is subject to the same "each
person" UIMBI policy limit as Heidi's estate's claim.

        Progressive paid precisely these claims on February 24,
2004.  Exhibit C at 100062.  Progressive paid the full "each
person" UIMBI policy limit for all claims of the Estate of Heidi
Weilbacher and all derivative claims of Mr. Weilbacher and Ms.
Mauro.  Id.  Under the clear, unambiguous policy language, there
is simply no more UIMBI coverage available for Mr. Weilbacher's
current claim.  As a matter of law, Mr. Weilbacher has exhausted
the available "each person" policy limit of his UIMBI coverage.

        Additionally, the policy specifically provides that in
order for the "each accident" provision to apply, two or more
insured persons must be injured in the same accident.
"[S]ubject to the 'each person' limit, the amount shown for
'each accident' is the most **we** will pay for all damages due to

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 15

**bodily injury** sustained by two (2) or more persons in any one (1) accident." Exhibit A at 100,383. Although Mr. Weilbacher and Heidi are both "insured persons" under the policy, only Heidi sustained "bodily injury" in the accident in question. See infra. Mr. Weilbacher was not involved in the accident at all; he was in Kenai. Exhibit F. He could not and did not suffer any bodily harm, sickness, or disease in the accident. Id. Mr. Weilbacher's damages are solely for his loss of consortium/society claim for "the loss of his daughter." Complaint at ¶¶VII, IX and 1; Exhibit E at 1. Under the clear language of the policy, this claim is derivative to, and included within, the "each person" UIMBI policy limits already paid.

The clear majority of the cases, including decisions by this court, which have considered this issue with similar policy language have agreed with Progressive's position here: loss of consortium/society claims are derivative to the original bodily injury claim and included within the "each person" policy limit paid for such bodily injury.

> An unambiguous limitation on liability should be fully enforced. The policy term "one person" has repeatedly been construed as "one person injured," and the construction has been applied to all damages sustained by all persons due to an injury to one person. That policy term has not provided a means to extend an insurer's liability to loss of consortium. . . . Loss of consortium is a personal rather than a bodily injury and is generally included and subject to the policy limitations for bodily injury to one person.

Creamer v. State Farm Mut. Auto. Ins. Co., 161 Ill. App. 3d 223 (Ill. App. 1987).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 16

In <u>GEICO v. Fetisoff</u>, 958 F.2d 1137, 1142 (D.C. Cir. 1992), the court considered the question of whether loss of consortium was encompassed by the phrase "all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person." <u>Id</u>. at 1142.  In holding that it was, the court stated:

> Examining the plain language of the GEICO policy, we conclude that the limitation of liability provision is unambiguous, and that Mr. Whitney's loss of consortium claim is encompassed by the "each person" limitation. The provision states that "*all* damages, including damages for care and loss of services, *arising out of* bodily injury sustained by one person" are subject to the "each person" liability limit. Here, Mr. Whitney's claim clearly "arises out of" his wife's injury; Mr. Whitney would have no claim for loss of consortium under the insurance policy absent the injury suffered by Mrs. Whitney in an accident covered by the policy. As a result, Mr. Whitney's claim, like "all damages" stemming from Mrs. Whitney's injury, is subject to the "each person" limitation.  Surely the word "all" – one of the least ambiguous in the English language – leaves no room for uncertainty as to the inclusion of Mr. Whitney's claim.  And even if some doubt about the purview of the "each person" limitation did remain, it is removed by the dependent clause "including damages for care and loss of services," which plainly refers to consortium-type claims.

<u>Fetisoff</u>, 958 F.2d at 1142.  The court also noted that it was equally clear that the loss of consortium claim was not encompassed in the "each occurrence" limitation, because the higher "each occurrence" limitation was triggered only when two or more persons sustain bodily injury in the same accident.  <u>Id</u>.

In fact, this court previously determined –– on cross-motions for summary judgment –– that a loss of consortium/society claim based on the loss of a child is derivative to the bodily injury (death) of the child and subject

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 17

to the same "each person" limit, and that it was <u>not</u> reasonable to expect additional coverage.  In <u>Government Employees Ins. Co. v. Encelewski</u>, 1995 U.S. Dist. LEXIS 1107 (D. Alaska January 13, 1995), the parties filed cross-motions for summary judgment on the issue of whether there was coverage under the insured's policy for the mother's loss of consortium/society and NIED claims as a result of the death of her son in the automobile accident.  <u>Id</u>. at *1-2.  The court granted the insurer's motion for summary judgment seeking a declaration that the policy did not provide coverage for the loss of society claim.  <u>Id</u>. at *11. The policy provided as follows:

> The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of one occurrence.

<u>Id</u>. at *3.  Based on this policy language, the court recognized that Mrs. Encelewski had coverage.  However, her claims, including her loss of society claim, were derivative of her son's injuries such that she could not recover any additional funds because the settlement of her son's injuries had exhausted the "per person" limit under the policy.  <u>Id</u>. at *4.  The court also determined that Mrs. Encelewski's "reasonable expectations" argument was <u>unreasonable</u>.  In this regard, the court stated as follows:

> [R]easonable parties would **not** understand or interpret the term 'bodily injury' or 'injury to a person' to include a loss of consortium.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 18

Id. at *10-11 (emphasis added).[11] Encelewski is also fully
consistent with this court's earlier decision in Nationwide Mut.
Ins. Co. v. Cummings, No. A-83-533 Civil (Alaska January 24,
1984) (Exhibit G), where this court held that loss of
consortium/society claims fall within the "per person" limit
where the policy in question provided that the "per person"
limit included "all legal damages claimed by anyone for bodily
injury or loss of services of one person."  See Hauser v. State
Farm Mut. Auto. Ins. Co., 252 Cal. Rptr. 569 (Cal. App. 1988)
(loss of consortium claim included in "each person" policy limit
where policy's "each person" provision defined "bodily injury to
one person" to include "all injury and damages to others
resulting from this bodily injury").  See also Jane M. Draper,
Annotation, *Consortium Claim of Spouse, Parent or Child of
Accident Victim as Within Extended "Per Accident" Coverage
Rather Than "Per Person" Coverage of Automobile Liability
Policy*, 46 A.L.R. 4th 735 at §3b and 3c (2004) (collecting cases
holding that loss of consortium/society claims fall within the
"each person" policy limit).[12]

     In Illinois Farmers Insurance Company v. Urszula
Marchwiany *et al.*, Docket No. 101598 (Ill. Sept. 21, 2006)

---

[11]  "A person who has lost the society, companionship, and services of his or
her [child] has sustained a personal injury.  This loss, although tangible,
real, and compensable, is not a bodily injury within the commonly accepted
meaning of that term."  Lampton v. United Servs. Auto. Ass'n, 835 P.2d 532
(Colo. Ct. App. 1992).

[12]  Rather than simply string cite additional cases, Progressive cites to this
relevant A.L.R. collecting and summarizing additional relevant cases.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Page 19

(DE#99), the court held that "the policy unambiguously provided
that the per-person limit of liability was the maximum payment
required for all damages resulting from bodily injury to an
insured, including damages sustained by others." Id. at 4.  In
Marchwiany, the policy provided,

> The uninsured motorist bodily injury limit for 'each
> person' is the maximum we will pay for all damages
> resulting from bodily injury sustained by one person
> in any one accident or occurrence.  Included in this
> limit, but not as a separate claim or claims, are all
> the consequential damages sustained by other persons,
> such as loss of services, loss of support, loss of
> consortium, wrongful death, grief, sorrow and
> emotional distress.

Id. at 2-3.  The court agreed that "only one *reasonable*
interpretation of the limitation of liability provision exists,
that is, the per-person limit applies to all consortium claims
because of the express language of that clause." Id. at 3.  The
court also specifically noted that any other interpretation was
unreasonable and would render the language of the per-person
clause meaningless.  Id. at 4.  This is also true in this case.
Any interpretation of the "each person" UIMBI policy limit that
allows a separate "each person" limit for a loss of consortium
claim, as Mr. Weilbacher asserts, would render the "each person"
clause of the limits of liability meaningless.  Principles of
construction in Alaska militate against interpretations that
render other provisions meaningless.  See Berg v. Popham, 113
P.3d 604, 609 (Alaska 2005) (regarding statutory
interpretation).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Page 20

During the depositions of Progressive employees, Danny Withers and Adam Lund, it became apparent that Mr. Weilbacher is confused by the fact that, while he has an independent claim for loss of consortium/society under AS 09.15.010, his claim is still derivative of and subject to the same "each person" UIMBI policy limit as his daughter's wrongful death claim under the policy language at issue.[13]  In Gillispie v. Beta Const Co., 842 P.2d 1272, 1273 (Alaska 1992), the Alaska Supreme Court recognized that, although parents could not claim loss of society under Alaska's wrongful death statute, parents were not without recourse because they had a separate, independent claim for the loss of society of their minor child under AS 09.15.010. The court held:

> The Gillispies, however, are not without recourse. Another statute, AS 09.15.010, provides in part: "A parent may maintain an action as plaintiff for the injury or death of a child below the age of majority." We have not yet addressed whether AS 09.15.010 creates a separate, independent parental cause of action.  We now hold that it does.

Id.[14]  See Simms v. VICORP Restaurants, Inc., 272 Neb. 744 (Neb. 2006) ("Although a loss of consortium claim derives from the harm suffered by the insured spouse, it remains a personal legal claim which is separate and distinct from those claims belonging to the injured spouse.").  In other words, Mr. Weilbacher's derivative cause of action against the tortfeasor for loss of

---

[13]  Transcripts of the depositions of Danny Withers and Adam Lund are attached hereto as Exhibits N and O, respectively.
[14]  Notably, the dissent in Gillispie would have reached the same result based on the common law.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 21

society as a result of the loss of his minor daughter is a
separate and independent claim.

It does not follow, however, that every separate and
independent claim is entitled to an "each person" UIMBI policy
limit.  Whether a claim is legally independent is not the issue
here.  The issue is whether the policy's definition of its "each
person" UIMBI policy limit includes Mr. Weilbacher's independent
loss of consortium/society claim as derivative to his daughter's
bodily injury and included in the "each person" limit paid to
her estate.  It does.  Mr. Weilbacher's damages from his legally
"independent claim" arise from the loss of his daughter.  As the
court in <u>Fetisoff</u> stated:

> [W]hether the right of a spouse [to recover for loss
> of consortium] be regarded as independent, *i.e.,*
> arising directly from the tort, or as derivative, that
> right does not come into existence except for the
> occurrence of the injury.  Absent a compensable injury
> to the one spouse there would be no claim [for loss of
> consortium]. . . . In that sense certainly the
> "rights" are not independent of but *derive* from or are
> on account of a compensable injury to the [injured
> spouse].
>
> . . ., Mr. Whitney's consortium claim plainly "arises
> out of" Mrs. Whitney's injuries even though his claim
> may be said to be legally independent of hers.

<u>Fetisoff</u>, 958 F.2d at 1143 (internal citations omitted).

Similarly, in <u>Gonzales v. Allstate Ins. Co.</u>, 21 P.2d
944, 946-47 (N.M. 1996), the court held that, although plaintiff
had an independent cause of action for loss of consortium, it
did <u>not</u> trigger a separate "each person" policy limit.  In
<u>Gonzales</u>, the policy language stated that the "each person"
limit included "bodily injury . . . including damages sustained

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 22

by anyone else as a result of that bodily injury." _Id_. at 947. The court held that "the 'each person' limitation specifically and expressly applied.  Gonzales' claim for consortium falls within the phrase 'damages sustained by anyone else as a result of that bodily injury.'" _Id_. at 948.  Based on that policy language, the court found:

> The limits of liability under the policy are neither affected nor contingent upon the number of causes of action that might accrue from one person's bodily injury.  Rather, the relevant contingency is the number of people who suffer bodily injury.

_Id_. at 947.  The court also recognized that:

> It often happens that there are consequential damages, as well as the damages suffered by the injured person himself.  Thus, where a wife or child is injured, the husband or parent may also suffer consequential injuries by reason of liability for hospital and doctor bills or for loss of services or consortium. But it has been held that these different types of injuries cannot be split up, in order to bring the claim within the higher policy limits; they are regarded as essentially injuries to one person, so that the lower policy limits applicable to injuries sustained by any one person would govern.

_Id_. at 948-49 (quoting 8A John A. Appleman, _Insurance Law and Practice_ § 4893 at 60 (1981)).  _See_ A. Widiss, _Uninsured & Underinsured Motorist Coverage_ § 12.4 (1990) ("Courts have almost uniformly held that persons who sustain consequential damages have not sustained bodily injuries in an accident and, therefore, the Limit of Liability for one injured person applies regardless of how many uninsured motorist insurance claims may be made by persons who suffered consequential damages.").

In other words, it is immaterial how many independent claims for damages Mr. Weilbacher may have against the

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 23

underinsured tortfeasor.  All of his injuries and damages stem
from, are the result of, and derive from, his daughter's death.
As such, under the clear, unambiguous policy language in his
Progressive policy, his claims, specifically including the loss
of consortium/society claim presented in this action, are
included in the "each person" UIMBI policy limit already paid.

        Mr. Weilbacher's argument overlooks the fact that, if
his loss of society claim was not a separate and independent
claim, he would not be entitled to any UIMBI coverage for his
claim.  In order to recover UIMBI coverage, Mr. Weilbacher must
be able to recover those damages from the underinsured person.
In this regard, the policy specifically states as follows:

> . . . **we** will pay for damages, . . ., which an **insured
> person** is legally entitled to recover from the **owner**
> or operator of an **uninsured/underinsured motor vehicle**
> because of **bodily injury**: . . .

Exhibit A at 100,375.  If Mr. Weilbacher's loss of society claim
was not separate and independent, then he would not be entitled
to recover for his claim as against the underinsured tortfeasor.
It is the very fact that his loss of society claim under
AS 09.15.010 is a separate, independent claim that provides him
UIMBI coverage -- coverage for which he was paid under the
policy.[15]

_____

[15]  Mr. Weilbacher also suggested that Progressive wrongfully denied his claim
because Cathy Mauro's insurer, Liberty Mutual, agreed to pay her similar claim
under her policy's UIMBI coverage.  In fact, Mr. Weilbacher knowingly
misrepresented Liberty Mutual's position.  At the time he made the
misrepresentation, Mr. Weilbacher knew — and had known for over a year — that
his statements to Progressive were false.  In fact, Liberty Mutual <u>denied</u> Ms.
Mauro's claim for a separate UIMBI policy limit for the same reasons
Progressive denied Mr. Weilbacher's claim — it was specifically included in

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 24

Mr. Weilbacher also asserts that he is entitled to a separate "each person" policy limit based on the Alaska Supreme Court's decision in <u>Allstate Insurance Company v. Teel</u>, 100 P.3d 2 (Alaska 2004). Mr. Weilbacher's reliance on <u>Teel</u> is misplaced.

In <u>Teel</u>, the Alaska Supreme Court held that the mother of the deceased child, who was a passenger in the tortfeasor's vehicle, could recover for her NIED claim under the tortfeasor's UIM coverage because her damages were legally caused by and the foreseeable result of injury to an insured person (her child).[16] The issue in <u>Teel</u> was whether the mother was an "insured person" under the tortfeasor's policy. Under UM/UIM coverage, the tortfeasor's Allstate policy defined an "insured person" as follows:

1.   **You** and any resident relative;

2.   Any person while in, on, getting into or out of **your** insured auto;

3.   Any other person who is legally entitled to recover because of bodily injury to **you**, a **resident** relative, or an occupant of **your** insured auto.

<u>Id</u>. at 4 (removed information replaced). Since Mrs. Teel sought UIM coverage under the tortfeasor's policy, since she was not related to the tortfeasor, and since she was not in the vehicle at the time of the accident, she could only be deemed an

---

the "each person" policy limit already paid for Heidi's death based on the clear policy language at issue. <u>See</u> Exhibit H. Additionally, each insurance policy must be evaluated separately based on its own policy language. <u>See supra</u>.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 25

"insured person" under the third definition -- "any other person who is legally entitled to recover because of bodily injury to an occupant of [the] insured auto."  <u>Id</u>.

Allstate argued that this policy language only covered derivative claims brought by third parties, such as loss of consortium or reimbursement for funeral expenses.  <u>Id</u>.  The court disagreed, following the principle that unambiguous language in insurance contracts will be interpreted to give effect to the reasonable expectations of a lay person.  <u>Id</u>. at 6.  The court held that Allstate's policy provided coverage to "an individual who is legally entitled to recover because of bodily injury to an occupant of the insured vehicle."  <u>Id</u>. "Under both common and legal parlance, a successful NIED claim would be "because of" injury to an occupant of the insured vehicle."  <u>Id</u>. at 7.  Thus, if Mrs. Teel could prove all elements of her bystander NIED claim, then her claim was "because of" -- legally caused by and the foreseeable result of -- the bodily injury suffered by her son, who was an occupant of the insured auto.  <u>Id</u>. at 5.  The court dismissed Allstate's argument that the policy language excluded all direct or non-derivative claims such as Teel's NIED claim.  <u>Id</u>.  The court found that "[t]he fact that Teel's recovery is direct and not derivative does not extinguish the casual relationship between the accident and her injury, as required by the policy."  <u>Id</u>. at 7.

---

[16]  Teel had already recovered policy limits for her NIED claim under her own

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 26

The court's decision in <u>Teel</u>, however, is inapplicable to and not dispositive of the issue here —— whether Mr. Weilbacher is entitled to another, separate "each person" UIMBI policy limit under his own policy for his loss of society/consortium claim under AS 09.15.010.  Unlike Mrs. Teel, Mr. Weilbacher is already an "insured person" under his policy without regard to the third prong of the definition since he is the named insured.  As noted above, it is not disputed that Mr. Weilbacher has UIMBI coverage under his policy.  He is the named insured, and he, like Mrs. Teel, is entitled to recover damages "because of" bodily injury sustained in the automobile accident by his child, an insured person under the UIMBI provisions of the policy.  <u>See</u> <u>supra</u>.  Progressive does not dispute that Mr. Weilbacher's loss of consortium/society claim under AS 09.15.010 is "because of" injury to his daughter Heidi.  By definition, it must be.  <u>See</u> AS 09.15.010 (parent's right of action for death of child); <u>Gillispie</u>, 842 P.2d at 1274 (holding "that a parent's right of action under AS 09.15.010 includes the right to recover loss of society damages.").  In fact, Mr. Weilbacher was paid the full "each person" policy limit of UIMBI coverage available along with the Estate of Heidi Weilbacher and Cathy Mauro.  Exhibit C at 100062.  What Mr. Weilbacher is NOT entitled to is another, separate "each person" UIMBI policy limit.

---

Allstate underinsured motorist coverage.  <u>Id</u>. at *3.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 27

Additionally, the policy language at issue was approved by the State of Alaska Division of Insurance ("DOI").  Alaska law specifically requires the Director of the DOI to disapprove any form that is filed that is "in any respect in violation of or does not comply with [Title 21 of the Alaska Statutes]." AS 21.42.130(1).  In order to approve the form, the DOI must have determined that Progressive's inclusion of loss of society/consortium claims in the "each person" UIMBI policy limit paid for the underlying bodily injury did <u>not</u> violate any aspect of Alaska's insurance law.[17]  While the Alaska Supreme Court has not definitely decreed how much weight the DOI's approval should be afforded, the court has acknowledged that it cannot be ignored.  At a minimum, "the division's approval . . . would be entitled to some deference," especially where the agency interpretation is longstanding.  <u>Government Employees Ins. Co. v. Graham-Gonzalez</u>, 107 P.3d 279, 286 (Alaska 2005).

The fact that Mr. Weilbacher has an independent cause of action under AS 09.15.010 for loss of consortium/society as a result of his daughter's death does not mean he is entitled to a separate "each person" policy limit of UIMBI coverage. Insurance policies are clearly <u>not</u> required to cover all claims asserted by an insured under separate "per person" limits, nor are they prevented from invoking the dollar limits which the insured voluntarily purchased.  Under the clear, unambiguous

---

[17]  Notably, the DOI also approved Liberty Mutual's endorsement to its UIM/UM Limits of Liability, containing very similar policy language.  <u>See</u> Exhibit H.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 28

policy language, Mr. Weilbacher's claim is subject to the "each person" UIMBI policy limit already paid.  Thus, Progressive did not breach the insurance contract by declining to pay him a second "each person" UIMBI policy limit for his loss of consortium/society claim.

B.  Policy void *ab initio*.

Alternatively and additionally, Progressive is entitled to summary judgment on all of Mr. Weilbacher's claims against it as a matter of law because his misrepresentations, omissions, and incorrect statements on his insurance application render the policy void *ab initio* under AS 21.42.110.  Mr. Weilbacher made misrepresentations, omissions, and incorrect statements of fact on his insurance application regarding Heidi's residency, which he fully admitted at his deposition.  As such, AS 21.42.110 renders the policy void *ab initio* as a matter of law, preventing any recovery under the policy.

AS 21.42.110 provides,

**Representations in applications.**  All statements and descriptions in an application for an insurance policy or annuity contract, or in negotiations for the policy or contract, by or in behalf of the insured or annuitant, shall be considered to be representations and not warranties.  Misrepresentations, omissions, concealments of facts, and incorrect statements may not prevent a recovery under the policy or contract unless either

(1)  fraudulent;

(2)  material either to the acceptance of the risk, or the hazard assumed by the insurer; or

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 29

(3)  the insurer in good faith would either not have
issued the policy or contract, or would not have
issued a policy or contract in as large an amount, or
at the same premium or rate, or would not have
provided coverage with respect to the hazard resulting
in the loss, if the true facts had been made known to
the insurer as required either by the application for
the policy or contract or otherwise.

AS 21.42.110.

In Bennett v. Hedglin, 995 P.2d 668 (Alaska 2000), the
court specifically addressed the issue of whether an insured's
misrepresentations in his insurance application would render his
policy void *ab initio* under AS 21.42.110.  It does.  On his
insurance application for his Anchor Point cabin, Bennett
misrepresented that he was a full-time resident of his cabin and
did not own, occupy, or rent any other dwelling.[18]  Id. at 671.
At his deposition, however, Bennett admitted that at the time of
his application he owned two homes in Anchorage, living in one
and renting out the other.  Id.  Bennett tried to explain his
response by stating that he intended to reside full-time at the
cabin.  Id. at 671-72.  Based on the inconsistency between
Bennett's responses on his application and his deposition
testimony, the court concluded, "as a matter of law, that
Bennett falsely stated the location of his full-time residence,
thereby providing 'misrepresentations, omissions, concealments
of facts, and incorrect statements' in his insurance
application."  Id. at 672 (quoting AS 21.42.110).

---

[18]  Mr. Bennett also misrepresented that he did not conduct any business at
his cabin and no insured or uninsured losses had occurred at the cabin within
five years.  Id. at 671.  However, the court did not address these

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 30

The court then concluded that, as a matter of law, Bennett's misrepresentations were material to the insurer's acceptance of the risk of insuring the cabin.  Id.  The court stated,

> When an applicant misrepresents a fact material to the acceptance of the risk, AS 21.42.110 permits the insurer to deny coverage under the policy.  Other courts have construed analogous statutes as preserving the insurer's common law remedy of rescission--a remedy which renders the policy void *ab initio*.

Id. at 672.  Since Bennett made material misrepresentations on his application regarding the location of his full-time residence the court held that any insurance coverage was void *ab initio*.  "[T]he insurer may rescind the binder or policy—rendering the contract void *ab initio*—when the applicant makes a misrepresentation material to the risk."  Id. at 674.  The court also recognized that "often the insurer will not discover the false or misleading character of the applicant's statements until after the loss has occurred."  Id. at 673.  See also id. at 672 n.11 (citing other cases).

First, the facts in this case are not disputable, and Mr. Weilbacher has admitted under oath that his responses were false.  Mr. Weilbacher's deposition testimony reveals that he provided false and misleading responses to two of the application's underwriting questions as a matter of law.[19]

---

misrepresentations, focusing instead on the misrepresentation of his residence and ownership of other properties.  Id.

[19]  "Generally, the question of whether an applicant's statements were false or misleading is a jury question.  But when the facts are not in dispute--such as when an applicant admits that a statement is false or when there is no

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 31

On December 21, 2000 Mr. Weilbacher completed his insurance application through Denali Alaskan Insurance/Alaska Business Insurance.  Exhibit I.  On his application he identified and listed himself as the only member of his household over age 14.  Id. at 1 & 3.  Under Driver Information the application states, "Complete for Applicant, Spouse, and all persons age 14 and over residing with Applicant (licensed or not).  Also list any operators."  Exhibit I at 1.  Mr. Weilbacher listed only himself.  Id.  Mr. Weilbacher omitted his daughter Heidi Weilbacher, who was over age 14 and resided with him at the time of the application.  Id.  At his deposition, Mr. Weilbacher testified,

> Q. . . .. Was Heidi Weilbacher residing with you
> when you purchased the Progressive Northwestern
> policy?
>
> A.  Yes.
>                         * * *
>
> Q.  In '86.  So as of July 2000, she would have then
> turned 14?
>
> A.  Yes, she would have.
>
> Q.  So would you agree with me that by December of
> 2000, she was 14?
>                         * * *
> A.  Yes.
>
> Q.  Shouldn't she have been listed, identified by you
> as a resident of your household who was 14 or over?
>
> A.  I guess if I would have read this better at the
> time, I would have had her listed.  All I did is sign
> my name where she had the circles.
>
>                         * * *

conflicting evidence--courts can decide this question as a matter of law."
Bennett, 995 P.2d at 671.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 32

Q.  Your signature, your date, December 21st.  As of
that date, Heidi Weilbacher was residing with you.
She was over 14 and you agree, don't you, she should
have been identified if you were asked the question --
     If you were asked the question, "Who resides with
you who is 14 or older," you should have identified
her, correct?

A.  Yeah.

Exhibit J at 20:5-7, 20:19-23, 21:1-6 & 22:23-23:5.[20]  Thus, it

is incontrovertible that Mr. Weilbacher's response to the Driver

Information section of the application was incorrect and

misleading by the omission of Heidi Weilbacher.

Mr. Weilbacher also testified that he falsely initialed

and filled out Question 1 of the Applicant Questionnaire.  The

Applicant Questionnaire stated,

### APPLICANT QUESTIONNAIRE
### PLEASE HAVE THE APPLICANT COMPLETE THIS SECTION AND INITIAL EACH RESPONSE

1.  Have all the residents of your household been
disclosed on this application?  Including all
residents age 14 and over; exempt drivers; children
away from home or in college and who drive your
vehicle on a regular or frequent basis?
(If no, please explain)  ___ Yes ___ No ___Initial

Exhibit I at 3.  In response, Mr. Weilbacher checked "yes" and

initialed his response that all residents of his household over

age 14 had been disclosed.  Id. & Exhibit J at 32:22-33:6.  In

fact, Mr. Weilbacher admitted at his deposition that this

statement was incorrect.  He admitted that Heidi should have

_____

[20]  After Progressive initially filed its motion for summary judgment on this
basis (DE#70-71), Mr. Weilbacher attempted to change his deposition testimony
to materially alter his earlier responses.  See Exhibit J at 32.  Mr.
Weilbacher's self-serving edits should be disregarded.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 33

been disclosed since she was 14 years old and living with him at the time of the application.  Exhibit J at 22:23-23:5.  It is evident from Mr. Weilbacher's application and his deposition testimony that Mr. Weilbacher incorrectly represented the Driver Information and falsely answered Question 1 of the Applicant Questionnaire on his application as a matter of law.

Second, Mr. Weilbacher's misrepresentations, omissions, and incorrect statements are material and prevent recovery under the policy because they directly affected the premium Progressive charged for the policy.  See AS 21.42.110(3). Again, while materiality is generally a question of fact for the jury, the court may decide it as a matter of law when "the evidence is such that there can be no reasonable difference of opinion." Bennett, 995 P.2d at 672 (quoting Ruhlig v. American Community Mut. Ins. Co., 696 N.E.2d 877, 880 (Ind. App. 1998)). "The materiality inquiry addresses the question of whether truthful answers would have altered the insurer's decision to insure [] and set the premium." Id. at n.11 (citing COUCH ON INSURANCE 3d §81:78).

Here, Mr. Weilbacher's misrepresentations are material because truthful answers would have increased the premium charged for the policy.  Exhibit K.  At the time Mr. Weilbacher procured his policy, Progressive rated every household member over 14 years of age regardless of whether the person was licensed to drive or not for purposes of setting the policy premium.  Id.  Hence the reason for such questions on the

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 34

application.  As a result of Mr. Weilbacher's omissions and incorrect statements, Progressive issued him a policy at a premium rate lower than it would have done had it known the truth.  Id.  Under AS 21.42.110 a misrepresentation, omission, or incorrect statement prevents recovery under the policy if "the insurer in good faith would not have issued the policy . . . at the same premium or rate . . . if the true facts had been made known to the insurer as required . . . by the application for the policy."  Since Progressive would not have issued the policy at the same premium if it had known the true facts, the policy is void *ab initio* and Mr. Weilbacher is prevented from recovering anything under the policy, entitling Progressive to summary judgment on all of Mr. Weilbacher's claims against it as matter of law.  Id.

### C.  Insurance Bad Faith

Mr. Weilbacher cannot prevail on his extra-contractual bad faith claim as a matter of law since: (1) Progressive properly denied his claim for a second, separate UIMBI policy limit, (2) Progressive had a reasonable basis for denying Mr. Weilbacher's claim for a second, separate UIMBI policy limit, and (3) Mr. Weilbacher did not suffer any compensable injury as a result of Progressive's denial of his claim.

The predicate to Mr. Weilbacher's bad faith claim is his breach of contract claim.  "[A]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."  Medical Care Am., 341 F.3d

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 35

at 425-26.  "If Plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for concluding that [the insurer] acted in bad faith."  <u>Drennan</u>, 366 F. Supp. 2d 1002, 1007-08.  Since Progressive did not breach the insurance contract in denying Mr. Weilbacher a second, separate "each person" UIMBI policy limit for his loss of society/consortium claim, his bad faith claim fails as a matter of law.  Progressive cannot have committed bad faith as a matter of law because its actions were valid and proper under the insurance contract.

Also, the law in Alaska is clear that the tort of insurance bad faith in first party cases requires proof that, at the time of the insurer's denial of the claim, there was no "reasonable basis" for the denial.  <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993).

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.  It is apparent, then, that the tort of bad faith is an intentional one.  "Bad faith" by definition cannot be unintentional . . . bad faith is the absence of honest, intelligent action or consideration based upon a knowledge of the facts and circumstances upon which a decision in respect to liability is predicated . . . .
>
> * * *
>
> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 36

Id. (quoting Anderson v. Continental Insurance Co., 271 N.W.2d 368, 376-77 (Wis. 1978) (citations omitted)).  "The tort of bad faith arises when the insurance company intentionally denies, fails to process, or pay a claim without a reasonable basis for such action."  Id. (quoting Noble v. National American Life Insurance Co., 624 P.2d 866, 868 (Ariz. 1981)).  See e.g. On Air Entertainment Corp. v. National Indem. Co., 210 F.3d 146, 153 (3rd Cir. 2000) ("the insured must show the absence of a reasonable basis for denying benefits of the policy").

In Peter v. Progressive, the Alaska Supreme Court recognized that "[t]he first requirement for a bad faith tort against a first-party insurer is 'the insurance company's refusal to honor a claim be made without a reasonable basis."[21] Exhibit L at 14.  The question was whether Progressive committed the tort of bad faith by declining to pay the first-party UIM claim.  Progressive had denied the claim based, in part, on the clear, unambiguous policy language.  Id. at 6.  In holding that Progressive did not engage in insurance bad faith as a matter of law, the court held that Progressive had two reasonable bases for its decision —— one was the policy language itself.  The court determined that:  "Under the policy and a literal interpretation of the applicable statute, the vehicles involved were not 'underinsured vehicle[s].'"  Id. at 12.  As in Peter, the policy language at issue in this case is a reasonable basis

---

[21]  The Peter court also recognized that "questions raised as to particular practices of the insurance company 'have little or no relevance on that point."  Id. at 14 (quoting Hillman, 855 P.2d at 1326).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 37

for declining to pay plaintiff an additional, separate "each person" UIMBI policy limit.

Mr. Weilbacher's sole basis for his allegation that Progressive committed bad faith is that Progressive denied his demand for a second, separate "each person" UIMBI policy limit. Complaint at ¶IX. When asked to set forth in full detail all facts supporting his claim that Progressive acted in bad faith, Mr. Weilbacher responded, "Progressive has an obligation to pay him a separate per person limit under AS 09.15.010 and it has not done so." Exhibit M. The totality of the facts asserted, based on an objective standard, would <u>not</u> show the absence of a reasonable basis for Progressive's denial of plaintiff's claim. At all relevant times, Progressive has a reasonable basis or bases for its actions and decisions — the policy language. Progressive promptly and properly denied Mr. Weilbacher's request for an additional "each person" policy limit of UIMBI coverage based on its prior payment of a full "each person" UIMBI policy limit to Mr. Weilbacher, the Estate of Heidi Weilbacher, and Cathy Mauro. <u>See</u> Exhibit C at 100062. In so doing, Progressive reasonably relied on the relevant policy language at issue.

Progressive also reasonably relied on its advice of counsel. When Mr. Weilbacher presented Progressive with his incorrect "theories" as to why he was entitled to a separate "each person" UIMBI policy limit despite the policy language, Progressive's adjuster, who is not an attorney, reasonably sought the advice of counsel to confirm its position was

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 38

correct.  Mr. Withers testified at his deposition that, when Mr.
Weilbacher's attorney raised the issue that the <u>Teel</u> decision
supposedly required payment of a separate "per person" policy
limit, he called counsel to confer about this argument.
Exhibit N at 58:16-59:12.  Mr. Withers also recalls discussing
with counsel the fact that Mr. Weilbacher's independent claim
for loss of society/consortium was subject to and controlled by
the contract/policy language.  <u>Id.</u> at 58:16-59:12 & 59:23-60:2.
Thus, not only did Progressive reasonably rely on the clear,
unambiguous policy language, Progressive also reasonably relied
on the advice of counsel in declining to pay Mr. Weilbacher
another, separate "each person" UIMBI policy limit.  Since
Progressive had reasonable bases for its decisions in this case,
Progressive cannot have committed bad faith as a matter of law.

In his expert report, Progressive's expert on the issue
of insurance bad faith opined as follows:

> Every action taken by Progressive in this matter had a
> reasonable basis and, in my opinion, complied with the
> provisions of AS 21.  In my opinion Progressive had a
> reasonable basis to deny making a second payment under
> the policy.  Progressive conducted the claims
> investigation in this matter with utmost good faith.
> It was thorough, diligent, timely and well documented.
> There was a reasonable basis for every action taken.
>
> * * *
>
> This denial of the claim issue met the reasonable
> basis standard of <u>Hillman</u> because it was fairly
> debatable based on the clear, lay reading of the
> unambiguous language of the policy.

Exhibit P at 4-5.  Mr. Lohr, a former Director of the Alaska
Division of Insurance, specifically noted that "the common-

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 39

sense" meaning of the policy language is unmistakable. Id. at
9. "It does not require an attorney's assistance to interpret."
Id. "The limit of liability language expressly states that the
total derivative claims for loss of consortium are included in
the 'each person' limit and therefore, cannot trigger a separate
per person limit." Id. at 9-10.

As a matter of law, Progressive could not have
committed bad faith in properly denying coverage that was not
owed. Not only was Progressive's decision correct, but even if
it is ultimately found to be incorrect, Progressive had a
reasonable basis for its decision to decline such payment based
on its policy language and the advice of its counsel.

Finally, Mr. Weilbacher's insurance bad faith claim
fails as a matter of law because he did not suffer any
compensable injury as a result of the alleged bad conduct. It
is axiomatic that the plaintiff, as the injured party, actually
suffer some form of injury or harm resulting in compensable
damages as a result of the defendant's alleged bad conduct in
order for a claim to be actionable. At its most basic level, a
tort (i.e. insurance bad faith) requires: (1) a duty, (2) a
breach of that duty, (3) causation, and (4) harm. See Parks
Hiway Enterprises, LLC v. CEM Leasing, Inc., 995 P.2d 657, 667
(Alaska 2000) (elements of basic tort of negligence). Thus,
"there must be an injury or harm to [plaintiff] as a consequence
of [defendant's] negligence to serve as a basis for recovery of
damages before the tort became actionable." Austin v. Fulton

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 40

Ins. Co., 444 P.2d 536, 539 (Alaska 1968).[22]  If the offending party's conduct does not cause any harm, there is no tort. There is no cause of action.  There is no recovery of any kind since there is nothing to recover for.  Mr. Weilbacher suffered no such harm.

"[R]ecovery of compensatory damages in tort [i]s permitted for the breach of the duty of good faith and fair dealing.  Damages in tort provide necessary compensation for insureds and incentive for insurers to settle valid claims." State Farm Mut. Auto. Ins. Co. v. Shrader, 882 P.2d 813, 833 (Wyo. 1994) (internal quotations omitted).  However, a plaintiff cannot maintain an action for insurance bad faith when the plaintiff did not claim any damages for which she could recover. Talmadge v. State Farm Mut. Auto. Ins. Co., 1997 U.S. App. LEXIS 3114 (10th Cir. 1997).  "Inasmuch as the record reveals no substantial damages, either physical or economic, in addition to emotional distress, Talmadge's claim fails."  Id. at *10.

Here, not only did Progressive do nothing wrong as a matter of law, but Mr. Weilbacher did not suffer any injury or harm as a result of Progressive's actions.  He did not suffer

---

[22]  See e.g. Jones v. State, Dept. of Corrections, 125 P.3d 343, 346 (Alaska 2005) (IIED claim requires plaintiff suffer emotional distress damages); Sisters of Providence In Washington v. A.A. Pain Clinic, Inc., 81 P.3d 989, 997 (Alaska 2003) (one element of tort of intentional interference with prospective economic advantage is damage to plaintiff); Parks Hiway Enterprises, LLC v. CEM Leasing, Inc., 995 P.2d 657, 667 (Alaska 2000) ("The tort of negligence consists of four separate and distinct elements: (1) duty, (2) breach of duty, (3) causation, and (4) harm."); Breck v. Moore, 910 P.2d 599, 604 (Alaska 1996) (like other torts, tort of professional negligence requires actual loss or damage).

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 41

any additional emotional distress.  He did not suffer any

physical injury.  He did not suffer any economic loss.

Progressive's declining to pay him an additional "each person"

UIMBI policy limit simply did not cause Mr. Weilbacher any harm

or injury.

In Plaintiff's Initial Discovery Disclosures, Mr.

Weilbacher identified his categories of damages as,

> damages for loss of consortium, emotional distress,
> and general compensation because of the loss of his
> daughter, and he also requests punitive damages for
> the failure to pay under the insurance policy.

Exhibit Q.  In other words, breach of contract damages in the

form of what he would be entitled to under his incorrect

understanding of the policy and punitive damages.  Mr.

Weilbacher is <u>not</u> seeking any compensatory damages under his bad

faith claim.  He does not identify a category or item of damages

that is based on Progressive's denial of his claim.

In Interrogatory No. 7, Progressive asked Mr.

Weilbacher to specify all of his items and categories of damages

and the amount of damages in/for each item or category.  Exhibit

M at 2.  In his Supplemental Responses to Progressive's First

Set of Discovery Requests, Mr. Weilbacher responded,

> Mr. Weilbacher is seeking compensation for the loss of
> his daughter.  The statutory cap for the death of a
> child under AS 09.15.010 is $400,000 or $8,000 times
> years of life expectancy, whichever is greater, and
> any other damages the Court deems are just.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 42

Exhibit M at 3.[23]  It is clear from Mr. Weilbacher's response
that Mr. Weilbacher is seeking <u>only</u> breach of contract
compensatory damages, i.e., payment of another UIMBI policy
limit on his loss of society/consortium claim.  Mr. Weilbacher
is <u>not</u> seeking any compensatory damages on his bad faith claim,
i.e., damages due to Progressive's denial of a second "each
person" UIMBI policy limit.

At his deposition, Mr. Weilbacher further clarified
that he has <u>no</u> damages as a result of Progressive's denial of
his second claim.  Mr. Weilbacher testified,

> Q.  Okay.  In terms of your damages, do you claim that
> you have suffered any damages because of what
> Progressive has done?  In other words, we know Mr.
> Esper in that accident caused you damage because of
> the loss of your daughter.  Has anything that
> Progressive has done caused you damage?
>
> A.  I can't answer that.  I don't know.

Exhibit J at 91:23-92:5.  Mr. Weilbacher also could not identify
any manner in which Progressive had mistreated him with regard
to the handling of his claim.  <u>Id</u>. at 87:13-21.

Mr. Weilbacher simply does not have -- and is not
claiming -- any compensatory damages as a result of
Progressive's denial of his claim, which is the sole basis of
his bad faith claim.  As such, he cannot maintain a bad faith
claim as a matter of law.  <u>See</u> <u>Talmadge</u>, 1997 U.S. App. LEXIS
3114, *10.

---

[23]  Mr. Weilbacher did not respond to Interrogatory No. 7 in his initial
responses to the discovery requests.  His only response is in his Supplemental
Responses.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 43

Anticipating a possible argument by Mr. Weilbacher, Progressive notes that the Alaska Supreme Court has been quite clear that legal expenses are not compensatory damages even in first-party insurance bad faith cases.  In <u>Alaska Pacific Assur. Co. v. Collins</u>, 794 P.2d 936, 949 (Alaska 1990), the court specifically rejected appellant's argument that attorney's fees and costs could be recovered as compensatory damages on first-party bad faith claims.  As a matter of law, trial courts are precluded from awarding fees other than those allowed by "rule or order."  <u>Id</u>.  <u>See also</u> <u>Sykes v. Melba Creek Mining, Inc.</u>, 952 P.2d 1164, 1172 (Alaska 1998) ("We have previously held that attorney's fees generally cannot be awarded as damages--that fee awards are instead controlled by Civil Rule 82.") (citing <u>Ehredt v. DeHavilland Aircraft Co. of Canada</u>, 705 P.2d 446, 452 n.8 (Alaska 1985) and <u>Curt's Trucking Company v. City of Anchorage</u>, 578 P.2d 975, 981 (Alaska 1978)).  Without any harm or injury resulting in compensatory damages, Mr. Weilbacher's bad faith claim fails as matter of law.

D.  <u>Punitive Damages</u>.

Additionally, Mr. Weilbacher cannot recover punitive damages in this action as a matter of law because his bad faith claim fails as a matter of law, and because Progressive's conduct does not rise to the level of outrageous and malicious conduct necessary to support punitive damages.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 44

First, Mr. Weilbacher's prayer for punitive damages cannot stand without his bad faith claim.  Punitive damages are not an independent cause of action.  Punitive damages are a remedy available in certain causes of action, i.e., torts.  As the Alaska Supreme Court stated,

> Punitive damages do not constitute a cause of action. "Damages constitute the relief which the law affords for the invasion of [a] right ... the relief being limited by the measure of the damage which the law prescribed." Hartzell v. Myall, [] 252 P.2d 676, 681 (1953).  See also Oklahoma City v. Hopcus, [] 50 P.2d 216, 218 (1935) ("injury" denotes the legal wrong to be redressed while "damages" is the scale or measure of recovery as amends for the wrong).
>
> "A cause of action must be distinguished ... from the remedy which is simply the means by which the obligation or corresponding duty is effectuated and also from the relief sought.  " Venuto v. Owens-Corning Fiberglas Corp., [] 99 Cal.Rptr. 350, 355 (1971).  Accord Merlino v. West Coast Macaroni Mfg. Co., [] 202 P.2d 748, 754 (1949); United States v. Smelser, 87 F.2d 799, 800 (5th Cir.1937); Tonn v. Inner Shoe Tire Co., 260 S.W. 1078, 1080-81 (Tex.Civ.App.1924).  Punitive damages are a form of relief, not a cause of action.

Doe v. Colligan, 753 P.2d 144, 145 n.2 (Alaska 1988).

Also, "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660, 671 (Alaska 2002). Since insurance bad faith is the only tort claim in this case, plaintiff's prayer for punitive damages must fail with his bad faith claim.  Having no bad faith claim as discussed above, punitive damages are not recoverable as a matter of law.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 45

Second, there is absolutely nothing to support an award of punitive damages in this case, even if such remedy were potentially available.  "To support punitive damages, the wrongdoer's conduct must be 'outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.'"  Nicholson, 777 P.2d at 1158 (quoting Sturm, Ruger & Co., Inc., v. Day, 594 P.2d 38, 46 (Alaska 1979), overruled on other grounds, Dura Corp. v. Harned, 703 P.2d 396 (Alaska 1985)). See also AS 09.17.020(b).  See also AS 09.17.020(b); Nelson v. Progressive Corp., 976 P.2d 859, 865 (Alaska 1999) ("Not all conduct which amounts to [an intentional tort] is sufficiently outrageous to warrant an award of punitive damages.").

> However, "where there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice," the trial court need not, and indeed should not, submit the issue of punitive damages to the jury.

State Farm Mut. Auto. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992) (quoting Alyeska Pipeline Serv. Co. v. O'Kelley, 645 P.2d 767, 774 (Alaska 1982)).

In Nicholson, State Farm denied coverage for the Nicholsons' loss while agreeing to cover their neighbor for the same loss.  Id. at 1153-54.  A couple months later State Farm reversed its position and agreed to extend coverage to the Nicholsons.  Id. at 1154.  State Farm then began investigating and adjusting the claim, during which time the Nicholsons experienced additional losses.  Id.  Over one and one-half years after the

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 46

initial claim, State Farm made the Nicholsons the first offer on
their claim.  Id.  After a thorough review of State Farm's conduct,
the court held that "there was insufficient evidence as a matter of
law to support a finding of outrageous conduct or a gross deviation
from an acceptable standard of reasonable conduct in order to
sustain an award of punitive damages."  Id. at 1158.  See e.g.
Weiford, 831 P.2d at 1266-69 (concluding "the evidence does not
reasonably support a conclusion that State Farm was guilty of a
gross breach of accepted standards of conduct which might be
characterized as outrageous or malicious").

        Here, Mr. Weilbacher's bad faith claim is based solely on
Progressive's denying him another, separate "each person" policy
limit of UIMBI coverage.  Complaint at ¶IX.  When asked to set
forth in full detail all facts supporting his claim that
Progressive's acted in bad faith, Mr. Weilbacher responded,

> Mr. Weilbacher believes that as he reads the insurance
> policy, Progressive has an obligation to pay him a
> separate per person limit under AS 09.15.010 and it
> has not done so.  Under the Unfair Claims Settlement
> Act, Progressive had an obligation to pay him his
> separate, individual, per person limit, and
> Progressive is trying to avoid payment by claiming
> that Mr. Weilbacher's AS 09.15.010 claim is a
> derivative claim, rather than a direct claim.
> Progressive has an obligation to pay Mr. Weilbacher
> for the death of his daughter for his separate
> individual claim.

Exhibit M at 1.[24]  There are no allegations -- much less supporting
facts -- that Progressive acted outrageously, maliciously, or with

---

[24]  It is interesting that Mr. Weilbacher's response is based on his reading
of the policy when he testified at his deposition that he has never read his
Progressive policy.  See Exhibit N at 45:18-25 & 46:23.

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Page 47

any bad motive or reckless indifference.  Mr. Weilbacher's <u>sole</u>
basis for bad faith is that Progressive simply did not pay him
another "each person" policy limit of UIMBI coverage when demanded.
An insurer's decision to deny such a claim on the basis of its
clear and unambiguous policy language does not rise to the level of
conduct necessary to support a punitive damages award as a matter
of law.

<u>Conclusion</u>

There are no genuine issues of material fact and
Progressive is entitled to summary judgment on all of
Mr. Weilbacher's claims as a matter of law.  Progressive paid
Mr. Weilbacher, Ms. Mauro, and the Estate of Heidi Weilbacher
the full "each person" policy limits of UIMBI coverage.  Several
months later, Mr. Weilbacher returned to Progressive, insisting
he was owed more money under his UIMBI coverage for his loss of
consortium/society claim as a result of his daughter's death.
Based on its clear and unambiguous policy language, Progressive
denied this claim for a second UIMBI policy limits as derivative
and included within the claim and full "each person" policy
limit already paid.  Mr. Weilbacher, insisting that he is
entitled to additional benefits, filed this action.

Under the clear, unambiguous policy language,
Mr. Weilbacher's claim under AS 09.15.010 for loss of
society/consortium is specifically included in the "each person"
policy limit already paid.  Mr. Weilbacher has simply exhausted
his UIMBI coverage.  He is not entitled to recover additional

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Page 48

funds from Progressive simply because the amount of the "each person" UIMBI coverage he purchased turns out to have been insufficient to compensate him fully.

In addition and in the alternative, Mr. Weilbacher's policy is void *ab initio* under AS 21.42.110 due to his admitted misrepresentations, omissions, and incorrect statements on his insurance application.

Mr. Weilbacher also cannot prevail on his extra-contractual insurance bad faith claim as a matter of law because: (1) Progressive properly denied his claim for a second, separate UIMBI policy limit based on the clear policy language; (2) Progressive had a reasonable basis for denying Mr. Weilbacher's claim for a second, separate UIMBI policy limit based on the unambiguous policy language and the advice of its counsel; and (3) Mr. Weilbacher did not suffer any compensable injury as a result of Progressive's denial of his claim.

Finally, Mr. Weilbacher is not entitled to recover punitive damages because Progressive's conduct in declining to pay him an additional "each person" policy limit of UIMBI coverage for his loss of society/consortium claim when his claim had already been paid as part of the earlier UIMBI payment does not rise to the level of outrageous or malicious conduct necessary to support punitive damages as a matter of law.

The court in Spaur v. Allstate Ins. Co., 942 P.2d 1261, 1265 (Colo. App. 1997), said it best.

[T]he reason plaintiff has been denied payment is not because his loss of consortium claim is not covered;

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 49

it is covered, but as a derivative claim.  The fact is
that he cannot recover from defendant because the
amount of uninsured motorist coverage he purchased was
not sufficient to compensate him fully.  When
plaintiff did not purchase more extensive "per person"
uninsured motorist coverage, he -- not defendant --
elected to assume the risk for damages over that
amount.

Id. at 1265.  Therefore, Progressive is entitled to summary

judgment in its favor on all of Mr. Weilbacher's claims in this

matter.

DATED at Fairbanks, Alaska, this 11th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company

By: _____s/Aisha Tinker Bray_____
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska  99701
Phone: 907-452-8986
Fax:  907-452-7015
Email: atbray@guessrudd.com
Alaska Bar No. 9505028

CERTIFICATE OF SERVICE
I hereby certify that on the
11th day of April, 2007, a copy
of the foregoing document was served
electronically on:

Kenneth A Legacki, Esq.

A Chambers Copy was also mailed
to the court pursuant to D.AK.LR 10.1(b).

Guess & Rudd P.C.

By:_____s/Aisha Tinker Bray_____

Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Page 50

Table of Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Certified copy of Progressive Policy No. 65824951-0 (Bates Nos. 100,342-100,409) |
| B | PACMAN adjuster notes (Bates Nos. 100283-100335)[25] |
| C | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding first claim for UIMBI policy limits (Bates Nos. 100235—239, 100232-233, 100227, 100178-179, 100132-134, 100125,100122-123, 100101, 100097-098, 100088-90, 100062-069)[26] |
| D | Correspondence between Progressive and plaintiff's attorney Kenneth Legacki regarding plaintiff's subsequent, separate claim for UIMBI policy limits (Bates Nos. 100047-048, 100041-044, 100028-032)[27] |
| E | Plaintiff's responses to Requests for Admission[28] |
| F | Transcript of February 20, 2002 recorded interview of Ronald Weilbacher (Bates Nos. 100001-100016) |
| G | Nationwide Mut. Ins. Co. v. Cummings, No. A-83-533 Civil (Alaska January 24, 1984) |
| H | Correspondence regarding Cathy Mauro's Liberty Mutual policy (Bates Nos. RW 100288, 100261-264), including Alaska endorsement on Limit of Liability (Bates No. 100153) |
| I | Mr. Weilbacher's Insurance Application (Bates Nos. 100091-100096) |
| J | Transcript of the August 21, 2006 Deposition of Ronald V. Weilbacher |
| K | Affidavit of Maureen Pfeifer |
| L | Peter v. Progressive, S-11416/11445 (February 22, 2006 Alaska) |
| M | Plaintiff's Supplemental Responses to Interrogatories Nos. 4 & 7[29] |
| N | Transcript of Deposition of Danny Withers |
| O | Transcript of Deposition of Adam Lund |
| P | Expert Report of Robert Lohr |
| Q | ¶G of Plaintiff's Initial Discovery Disclosures[30] |

---

[25] Pages 100333 and 100334 have been replaced by the unredacted copies.
[26] Correspondence is arranged in chronological order.
[27] Correspondence is arranged in chronological order.
[28] Only the relevant pages are provided.
[29] Only the relevant pages are provided.
[30] Only the relevant page is provided.

Table of Exhibits
Memorandum in Support of Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB    Weilbacher v. Progressive Northwestern Ins. Co.