Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER,<br><br>      Plaintiff,<br><br>  v.<br><br>PROGRESSIVE NORTHWESTERN<br>INSURANCE COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    3:05-cv-204-TMB |

**PROGRESSIVE'S REPLY TO PLAINTIFF'S OPPOSITION
TO PROGRESSIVE'S MOTION TO STRIKE PLAINTIFF'S EXPERT
<u>WITNESS DISCLOSURE AND REPORT/OPINIONS OF EXPERT WITNESS</u>**

Mr. Weilbacher wholly fails to meet his burden of demonstrating that Mr. Garlington's report is directly related to the newly produced discovery. Mr. Weilbacher's unsubstantiated, conclusory statements in his Opposition that Mr. Garlington's report and opinions are based on Progressive's newly produced information are insufficient to meet his burden and without merit. As such, this court need look no further, and Progressive's Motion to Strike should be granted.

Additionally, contrary to Mr. Weilbacher's novel belief, Mr. Garlington's report was not "delayed" by Progressive's actions in this case. <u>See</u> Opposition at 9. The court has already ruled on this issue in its November 13, 2006 Order. DE# 103 at 5. Mr. Weilbacher simply ignored this court's deadlines for expert disclosures. <u>Id</u>. As such, this court only allowed Mr. Weilbacher to provide an expert witness "if <u>he</u> can demonstrate that the expert testimony is directly related to the newly produced discovery." <u>Id</u>. Mr. Weilbacher has not –- and cannot –- do so.

Instead, since he cannot meet his burden, Mr. Weilbacher intentionally misrepresents Progressive's discovery responses, pleadings, and correspondence in an effort to confuse the court and further malign Progressive. Mr. Weilbacher's unfounded presumption that any of the documents or information that he requested actually existed when he made his request is totally without merit, and <u>Progressive has not destroyed any evidence or information relevant to this case</u>.

On May 10, 2006, Progressive responded to Mr. Weilbacher's First Set of Discovery Requests. <u>See</u> Exhibit 1. Request for Production No. 1 asked for "all files, documents, pleadings, court orders or decisions, briefs or other materials (however created or maintained including electronic media)" which relate to the original drafting history of the policy provision at issue. <u>Id</u>. at 6. Progressive objected on the grounds that RFP#1,

> does not seek and is not reasonably calculated to lead to the discovery of relevant, discoverable information and is unduly burdensome and over broad as to type of

Case No. 3:05-cv-204-TMB, <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 2 of 20

policy and relevant time period. The issue before the court in this matter is whether Mr. Weilbacher's Progressive Northwestern Insurance Company automobile insurance policy, as interpreted under Alaska law, provides a separate, additional "each person" policy limit of UIM coverage for his loss of consortium/society claim. [RFP#1] is not seeking any factual information that is relevant or that may reasonably lead to relevant evidence on the issue before the court. It is also over broad as to the type of policy this provision may be found in and the relevant time period. [RFP#1] is also grossly overbroad and unduly burdensome in asking for the identification of every single case in the United States in which the quoted policy provision has been raised. Progressive does not have an electronic file with this type of information in it. It would require a manual search and review of every single claim file for every case ever filed. Additionally, any information Progressive would find in such files concerning the above provision would be compiled and maintained by Progressive's attorneys and, thus, protected under the attorney work-product and attorney-client privileges.

[RFP#1 is] essentially asking Progressive to do plaintiff's legal research for him. Interrogatories Nos. 3 and 4 seek publicly available information regarding the legal/judicial interpretation of the quoted policy provision. While Progressive anticipates that both it and plaintiff will cite such legal interpretations, if any are found, as persuasive authority in support of their interpretation of the quoted policy provision under Alaska law, the Civil Rules do not require Progressive to do plaintiff's legal research for him.

\* \* \*

Additionally, Progressive submits that the original drafting history of this policy provision is not relevant to how the policy provision is interpreted under Alaska law, and that the drafting history is protected by the attorney work product and attorney-client privileges. To the extent plaintiff seeks

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 3 of 20

> pleadings, court orders or decisions, and briefs, plaintiff seeks public records that are as easily obtained by plaintiff as Progressive.
>
> Request for Production No. 1 also impermissibly requests confidential information protected by the attorney work-product and attorney-client privileges to the extent it seeks information and materials created or generated by Progressive's attorneys with regard to the quoted policy language.
>
> Progressive notes that to the extent Request for Production No. 1 encompasses Progressive's communications with the Division of Insurance, the Division of Insurance's file is public record and may be obtained directly from the Division.

Id. at 7-8.

Contrary to Mr. Weilbacher's misrepresentations, Progressive did not object to the production of the actual, original drafting history on the grounds that the drafting history, itself, was unduly burdensome or overbroad. See Opposition at 6. Progressive objected to the production of "all files, documents, pleadings, court orders or decisions, briefs or other materials (however created or maintained including electronic media)" as unduly burdensome and overbroad. Exhibit 1 at 7-8. As Progressive stated in its response, RFP#1 is "grossly overbroad and unduly burdensome in asking for the identification of every single case in the United States in which the quoted policy provision has been raised." Id. Mr. Weilbacher's request was also overly broad and unduly burdensome in failing to limit its request to a relevant time period and to the relevant type of insurance policy. Id.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 4 of 20

Furthermore, and as Progressive stated in its objection, responding to RFA#1 would have required Progressive to conduct a manual search and review of every single claim file for every case ever filed —- this was unduly burdensome and overbroad.  Id.  It is axiomatic that Progressive did not conduct such a search.  Progressive did not need to —- and did not -- review all of the requested documents in order to determine that the production requested would be unduly burdensome and overbroad.  There also would be no reason for Progressive to expend its time and energy on such an unduly burdensome and overbroad search and review process unless and until there was a court order compelling disclosure of the information or, as in this case, a limited, reasonable subset of the information.  Although hindsight is 20/20, it was unknowable at the time Progressive served its objections and response whether Mr. Weilbacher would seek an order compelling production, or that the court would grant it even in part.

Progressive's objection based on the attorney-client privilege was based on its knowledge that Progressive's policies are drafted by its attorneys.  Progressive's model policy was drafted by teams of attorneys.  See Affidavit of Michael Sablack.  Progressive's attorneys then adapt model policies as necessary for each jurisdiction.  Id.  In Alaska,

> A client has a privilege to refuse to disclose and to
> prevent any other person from disclosing confidential
> communications made for the purpose of facilitating
> the rendition of professional legal services to the
> client, . . ..

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 5 of 20

Alaska R. Evid. 503(b).  The drafting of the model policy and the Alaska Form No. 9607 AK (08/99) are the result of Progressive's attorneys' professional legal services provided to their client/employer Progressive.  Thus, all notes, documents, files, and other materials created in the internal drafting of the policies and all provisions thereof are protected from disclosure by the attorney-client privilege.  It was not necessary for Progressive to review any of this material before determining the applicability of the attorney-client privilege, and Progressive did not do so.[1]

Mr. Weilbacher then moved to compel Progressive's response to Request for Production No. 1.  In its November 13, 2006 Order, this court denied Mr. Weilbacher's motion in part and granted it in part.  DE# 103.  Specifically with regard to drafting history, the court only granted discovery with regard to the drafting history of the Alaska Form No. 9607 AK (08/99) policy provision at issue.  Id. at 3.

Within one month of this court's order, on December 15, 2006, Progressive fully and completely complied, producing: (1) a copy of the relevant provision and all annotations (drafting notes) in the Alaska policy contracts database for Alaska Form No. AK 9607 (08/99) personal lines automobile insurance policy;[2] (2) a copy of the relevant provision in the model policy form 9607, on which the Alaska Form No. AK 9607

---

[1] Notably, in its November 13, 2006 Order the court indirectly overruled Progressive's attorney-client privilege objection in ordering the production of the drafting history.  This, however, does not change the fact that Progressive had a good faith basis for making its objection to disclosure.
[2] In fact, there were no annotations or drafting notes to produce so all that was produced was a copy of the policy provision itself.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 6 of 20

(08/99) policy is based; and (3) the Affidavit of Michael A. Sablack, explaining that other than the model policy 9607 itself Progressive no longer has, in hard copy or electronic format, any documents related to the drafting of the relevant provision. DE#110, Exhibit A at 20-22.

Mr. Sablack also reviewed the drafting notes in the policy contracts database for Alaska and determined that there were no drafting notes related to the relevant policy provision. Id.  Progressive had previously produced the entire file from the Division of Insurance ("DOI") regarding Alaska Form No. 9607 AK (08/99), which contained all the changes in the policy -- the entire drafting history -- through the DOI review process.[3]  Id. Notably, the relevant policy provision did not change throughout the DOI review process.  Id.  Progressive subsequently produced the Affidavit of Kelly Rubesne, again reaffirming Progressive's assertions and statements.  DE# 115.

Contrary to Mr. Weilbacher's misrepresentations, Progressive did not state in its Opposition to his motion to compel discovery that "'it is obvious' that Progressive took into consideration Alaska law when drafting" the Alaska Form No. 9607 (08/99).[4]  Opposition at 6 & 8.  Progressive stated,

---

[3]  Contrary to Mr. Weilbacher's unfounded assumptions, the fact that Progressive identified the DOI file as a "public record" in its Opposition to his motion to compel discovery does not imply that non-public records exist. See Opposition at 20.  Progressive was simply pointing out to Mr. Weilbacher that, as a public record, he could have obtained the entire DOI file at any time and did not have to wait for Progressive to disclose it in this matter.
[4]  Progressive has also never agreed that any of this information is relevant to any disputed issues in this case.  See Progressive's Motion for Summary Judgment, DE#132-133.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 7 of 20

> It is also obvious that Progressive recognized and <u>took into consideration the existence of loss of consortium and loss of society claims</u> in the drafting process from the final policy language itself.

DE# 56 at 15 (emphasis added). In fact, Progressive <u>did</u> take Alaska law into consideration when drafting its Alaska Form No. 9607 (08/99). It did so independently and then through the review process with the DOI. However, nothing in Alaska law required Progressive to modify the relevant UIMBI policy provision. It fully complies with Alaska law as originally drafted.

Mr. Weilbacher also misrepresents Progressive's responses to his Requests for Admission. Progressive did not "admit" that "the model policy was never modified to comport with Alaska law." Opposition at 9 & 22. Progressive specifically admitted that it was. Progressive admitted, without waiving its objections, in response to Requests for Admission Nos. 3 and 20,

> the 9607 model policy was modified to conform with Alaska law and submitted to and approved by the Alaska Division of Insurance as conforming to Alaska law as Form No. 9607 AK (08/99).

Exhibit 3 at 4-5 & 20.

In other words, the model policy 9607 <u>as a whole</u> was modified to conform with Alaska law, resulting in Form No. 9607 AK (08/99). It is obvious to any reader that the relevant policy provision is unmodified from the model policy 9607 to the Alaska Form No. 9607 AK (08/99) policy because the policy

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 8 of 20

language is <u>exactly</u> the same. The fact that the relevant policy language is unmodified, however, is really immaterial. It simply demonstrates that no modifications were necessary because the relevant language of the model policy 9607 fully and completely complied with Alaska law.

In summary, nothing has been destroyed and nothing is "missing." Progressive has produced <u>everything</u> in the drafting history of the relevant UIMBI policy provision in its care, custody, and control since the commencement of this case. The relevant UIMBI policy provision was created by a team of Progressive attorneys led by Jeff Nash as part of the model policy 9607, completed April 28, 1997. Neither Mr. Nash nor any other member of the team is currently employed by Progressive and Progressive has no knowledge as to their whereabouts. Progressive also has no documentation, either in hard copy or electronic form, as to the development of the relevant policy provision by Mr. Nash's team in the model policy 9607.

The model policy 9607 was not developed to comply with any particular state laws. Progressive attorneys Karen Shaw and Jeff Nash modified the model policy 9607 as a whole, as necessary, to conform with Alaska law. Neither Ms. Shaw or Mr. Nash is still with Progressive, and Progressive does not have any notes or drafting history from their modifications of the model policy 9607 for Alaska. However, since the relevant policy provision in the model policy 9607 was <u>not</u> changed between the model policy 9607 and the Alaska Form No. 9607 AK (08/99), none of this drafting history would be relevant to this

Case No. 3:05-cv-204-TMB, <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 9 of 20

dispute anyway.[5]  The revised model policy 9607 was then submitted to and approved by the Alaska Division of Insurance as conforming to Alaska law as Form No. 9607 AK (08/99).

Additionally, Progressive maintains a policy contracts database for each state in which its attorneys collect and maintain all Progressive policies, annotations to those policies, and other legal research, including footnoting specific judicial decisions that interpret the policies or words, provisions, or terms of the policies.  Ms. Rubesne is the Progressive attorney in charge of the Alaska policy contracts database.  Both Ms. Rubesne and Mr. Sablack reviewed the Alaska policy contracts database and affied that there are no annotations/footnotes to the relevant policy provision.  The relevant policy provision from the Alaska policy contract database was also produced, but since there are no annotations it is simply the provision itself.  Nothing has been destroyed in this action.  Nothing is "missing."  **Mr. Weilbacher has received everything that has been in Progressive's care, custody, or control during this proceeding regarding the drafting history of the relevant policy provision.**

Contrary to Mr. Weilbacher's misconception, Progressive has never "thwarted" reasonable discovery requests.[6]  See Opposition at 10.  In this regard, Mr. Weilbacher now claims that Progressive "thwarted" his efforts to "determine the basis for the declination of [his] independent claim for damages for

---

[5]  The court's November 13, 2006 Order was reasonably limited to the drafting history of the relevant policy provision, not the whole policy.

[6]  In fact, Progressive does not agree that any of Mr. Weilbacher's discovery requests have been reasonable.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 10 of 20

the death of his daughter pursuant to the insurance contract." Id. Mr. Weilbacher also asserts that in reviewing the insurance contract, "there appears no good basis for denying [him] his separate per person limit." Id. Mr. Weilbacher's baseless assertions are disingenuous at best.

First, in April 2005, Progressive explained the precise reason why it was declining his claim for a second, separate "each person" policy limit of UIMBI coverage in its letter to him. Progressive clearly stated, "It is Progressive's position that any claim for loss of society and loss of companionship/loss of consortium under the above noted policy is derivative of any claim for wrongful death, and are subject to a single bodily injury limit of liability." DE# 133 Exhibit D at 9. Progressive then quoted the clear, unambiguous provision of the policy on which it relied; the exact same provision Mr. Weilbacher has identified as the relevant policy provision. Id. Thus, Mr. Weilbacher has known Progressive's position and reasoning for over two years.

Second, Progressive has thrice filed motions for summary judgment based on the clear, unambiguous policy language, specifically explaining the basis for the denial of his claim for a second, separate "each person" policy limit of UIMBI coverage in great detail. See e.g. DE# 133. Mr. Weilbacher need only read any one of Progressive's motions, rather than engaging in pointless, abusive and *ad hominem* discovery and litigation tactics, to understand the reason why Progressive declined to pay his second claim.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 11 of 20

Third, and contrary to Mr. Weilbacher's false impression, there simply is no discovery showing Progressive's policy is contrary to Alaska law. See Opposition at 10. The relevant provision of the policy fully and completely complies with Alaska law. It recognizes that parents may have loss of society claims against underinsured tortfeasors, and it compensates them for such claims within the same "each person" policy limit of coverage as the children's injuries. This is the coverage Mr. Weilbacher purchased and already received.

Progressive also rejects Mr. Weilbacher's recitation of the history of this proceeding. See Opposition at 10-19. Progressive would be pleased to provide the court with an accurate and complete recitation of the history of this case and the correspondence between the parties, if the court believes it necessary. However, since most of Mr. Weilbacher's "history" is irrelevant to the actual issues in this motion to strike (i.e., whether Mr. Garlington's report complies with this court's November 13, 2006 Order and whether Mr. Weilbacher has met his burden of demonstrating that it complies), there is really little gained by such a recitation. Thus, in the interests of brevity, Progressive only comments on those statements that are blatant misrepresentations of the truth and/or are significant to the actual issues before the court in this motion.

On January 6, 2006, Mr. Weilbacher responded to Progressive's December 6, 2005 letter, asking to set the depositions of adjusters Danny Withers and Adam Lund after he provided the information and documents requested in Progressive's December 6, 2006 letter. Exhibit 2 at 1. On

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 12 of 20

January 23, 2006, Progressive responded to Mr. Weilbacher's request for depositions, pointing out that it believed such depositions were unnecessary given the legal nature of the disputed issue in this case, i.e., the interpretation of the policy language.  Id. at 2-3.  Progressive simultaneously filed its first motion for summary judgment.  DE# 17-18.  Progressive did not state that it would not produce the witnesses.  Id.  See Opposition at 10-11.  In fact, Progressive invited Mr. Weilbacher to let it know if he still wanted to take the depositions.  Id.  Mr. Weilbacher did not respond directly, but instead filed a motion for extension of time to oppose Progressive's motion for summary judgment pursuant to Rule 56(f).  DE# 20.

On March 30, 2006, and immediately after the hearing of Mr. Weilbacher's Rule 56(f) motion, Progressive wrote to Mr. Weilbacher to inform him of its availability for depositions.  Exhibit 2 at 4-5.  Progressive did not tell Mr. Weilbacher that it was unavailable for depositions in April.  Id.  Progressive informed Mr. Weilbacher that one of its attorneys, Ms. Bray, was unavailable for depositions in April, but that another attorney, Mr. Zipkin, was available if Mr. Weilbacher wanted to set depositions in April.  Id.  Progressive also notified Mr. Weilbacher about four (4) isolated days in April when Mr. Withers was unavailable.  Id.  Progressive offered a week in May as a possible date for the depositions.  Id.  On March 31, 2007, Progressive followed-up to provide Mr. Lund's availability for April and May.  Id. at 6.  Progressive did not say Mr. Lund was not available in June; Progressive stated it did not know Mr. Lund's availability in June.  Id.  On April 7, 2006, Mr.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to
Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert
Witness
Page 13 of 20

Weilbacher responded, asking to wait on setting the depositions until after Progressive responded to Mr. Weilbacher's first set of discovery requests served simultaneously, and notifying Progressive he was unavailable for depositions the week in May it had suggested. Exhibit C.

On May 10, 2006, Mr. Weilbacher asked for Mr. Withers' and Mr. Lund's availability between June 20-23 and July 11-19.[7] Exhibit 2 at 7. Progressive promptly responded the next day that everyone at Progressive would be available the week of July 11-17. Id. at 8. Progressive also suggested that the depositions be set on the same day, and agreed to bring Mr. Lund to Anchorage for his deposition at no cost to Mr. Weilbacher in order to save the parties time and money by not having to travel to Washington for his deposition. Id.

On July 12 and 13, 2006, Mr. Weilbacher conducted the depositions of Mr. Withers and Mr. Lund, respectively. At Mr. Withers's deposition Progressive decided to waive the attorney-client privilege in a limited manner as to Mr. Withers's communications in this matter with attorney Daniel Quinn to allow Mr. Weilbacher to question Mr. Withers on such communications. Contrary to Mr. Weilbacher's repeated misrepresentations, Progressive has not —- and does not -- waive the attorney-client privilege with Mr. Quinn as to the Wold matter. See Opposition at 13. This court has already recognized the limited extent of Progressive's waiver. "[T]he

---

[7] Progressive also objected and responded to Mr. Weilbacher's First Set of Discovery Requests on May 10, 2006; Progressive's responses speak for themselves and have already been considered by this court in its November 13, 2006 Order.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 14 of 20

Court notes that [Progressive's] waiver of privilege during the deposition was limited to advice given during the conversation between Mr. Withers and Mr. Quinn in connection with this particular case." DE# 103 at 6. Since Progressive's waiver of the attorney-client privilege with Mr. Quinn is limited to this matter —- his communications with Mr. Withers regarding Mr. Weilbacher's claim, Progressive's objections to producing anything in the Wold matter based on attorney-client privilege is valid and enforceable.

Contrary to Mr. Weilbacher's repeated misrepresentations, this court did not order that Progressive produce all of the discovery requested by Mr. Weilbacher or the entire Wold file. See Opposition at 14 & DE# 103. The court ordered Progressive to produce three discreet categories of information, specifically: (1) everything in the Alaska policy contracts database for the Form. No. 9607 AK (08/99) policy dealing with the relevant policy provision, id. at 3; (2) the drafting history of the relevant policy provision as used in Alaska, id.; and (3) those portions of the Wold matter that relate to or concern in any way the position taken by Progressive on the issue of whether a loss of consortium claim is derivative or triggers a separate per person policy limit, id. at 4. Progressive fully and completely complied with the court's Order on December 15, 2006. See DE# 110.

Mr. Weilbacher is correct that Progressive only produced one additional page from the Wold matter in its Supplemental Disclosures in compliance with the court's November 13, 2006 Order. See Opposition at 15. In fact, Progressive did

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 15 of 20

not actually produce the whole page.  DE# 110 Exhibit A.
Progressive only produced and referred Mr. Weilbacher to
footnote 2 at the bottom of the page.  Id.  This is because only
this footnote, out of the hundreds of pages reviewed, had
anything (even remotely) to do with Progressive's position on
whether a loss of consortium claim is derivative or triggers a
separate per person policy limit of coverage.  Id.  All other
materials in the Wold matter on Progressive's position were in
the supplemental briefing to the Alaska Supreme Court,
previously produced to Mr. Weilbacher on July 12, 2006.  Id.

Again, Mr. Weilbacher's attorney deliberately
misrepresents the discovery granted by the court's Order of
November 13, 2006.  The court did not re-open unfettered
discovery until March 31, 2007.  See Opposition at 16.  In its
November 13, 2006 Order, this court allowed Mr. Weilbacher until
March 31, 2007 to conduct additional discovery on the limited
issue of the Wold litigation within the parameters of Section I
of the Order.  DE# 103 at 6.  In Section I, the court ordered --
and Progressive produced -- all materials in the Wold file that
relate to or concern in any way the position taken by
Progressive on the issue of whether a loss of consortium claim
is derivative to the underlying bodily injury claim or triggers
a separate per person policy limit.[8]  This discovery regarding
Wold was the only such discovery permitted by the court.  None
of plaintiff's requests in his second set of discovery requests

---

[8] It should be remembered that the Wold litigation involved the
interpretation of an Allstate policy, not a Progressive policy (i.e., whether
or not the claimants had exhausted the limits under the tortfeasor's Allstate
policy).  See Wold v. Progressive Preferred Ins. Co., 52 P.3d 155 (Alaska
2005); DE# 110 Ex. A at 8-19.  Thus, Progressive's position in Wold involved
an Allstate policy provision, not a Progressive policy provision.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to
Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert
Witness
Page 16 of 20

relate to, or concern in any way, the Wold matter or Progressive's position on the issue of loss of consortium claims.  See DE# 121, Progressive's Motion for Protective Order Regarding Plaintiff's Discovery Requests.

Mr. Weilbacher then expounds on the correspondence between himself and Progressive regarding the depositions of Mr. Quinn, Mr. Sablack, and Ms. Rubesne.  See Opposition at 16-18.  This correspondence speaks for itself.  Also, the issue of the depositions of these individuals is currently pending as the subject of Progressive's Motion for Protective Order Regarding Depositions, and not relevant to the matter in this motion.  See DE# 113-114.

Contrary to Mr. Weilbacher's assertions, Progressive is not deemed to have admitted any of his Requests for Admission simply because it does not have the information available to it to admit or deny the requests.  See Opposition at 25.  First, Progressive objected to all of Mr. Weilbacher's Requests for Admission in his Second Set of Discovery Requests.  See Exhibit 3.  Not only did Progressive assert global objections to all the discovery requests, but it also objected specifically to individual requests.  Id.  Progressive's objections are justified.  However, if a court determines that an objection is unjustified, "it shall order that an answer be served."  Fed. R. Civ. P. 36(a).  Thus, nothing is automatically deemed admitted when it has been properly objected to; a party is given an opportunity to respond.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 17 of 20

Second, Rule 36(a) specifically provides for lack of information as a response.

> An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

Fed. R. Civ. P. 36(a). Progressive not only made reasonable inquiry, Progressive also provided affidavits from its key personnel that the information Mr. Weilbacher sought to compel was not available. "I don't know" is an acceptable answer when it is true following reasonably inquiry.

Third, the adequacy of Progressive's discovery responses is not at issue in this motion. Mr. Weilbacher is trying to mislead the court into an area that is not relevant to the issue of whether he has demonstrated that Mr. Garlington's report is directly related to Progressive's December 15, 2006 production, which it is not.[9] If Mr. Weilbacher truly disputes Progressive's discovery responses he should file an appropriate motion as set forth in Rule 36(a).

Progressive has been honest with Mr. Weilbacher throughout this entire process. Mr. Weilbacher, however, simply

---

[9] "[R]equests for admission should not be used to establish "facts which are obviously in dispute, to demand that the other party admit the truth of a legal conclusion, even if the conclusion is attached to operative facts, or to ask the party to admit facts of which he or she has no special knowledge. Tuvalu v. Woodford, 2006 U.S. Dist. LEXIS 80642, *19 (November 3, 2006) (internal citations and quotations omitted). This is precisely what Mr. Weilbacher has done.

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 18 of 20

refuses to understand that his loss of consortium claim is included within the UIMBI policy limit already paid to him, Ms. Mauro, and the Estate.

Despite all his accusations and maligning of Progressive, Mr. Weilbacher fails to demonstrate that Mr. Garlington's report is <u>directly</u> related to Progressive's December 15, 2006 production.  Mr. Weilbacher wholly fails to refute the fact that Mr. Garlington's report far exceeds the scope of the expert witness testimony permitted by this court's November 13, 2006 Order and is, thus, barred.  Mr. Weilbacher also wholly fails to contest that most of Mr. Garlington's report addresses claims or issues that were never made and are not part of this litigation.  Thus, Mr. Weilbacher is barred from calling any expert witnesses in this matter pursuant to this court's November 13, 2006 Order, and Progressive is entitled to an order striking Plaintiff's Expert Disclosures.

DATED at Fairbanks, Alaska, this 26th day of April, 2007.

> GUESS & RUDD P.C.
> Attorneys for Progressive
> Northwestern Insurance Company
>
> By:      s/Aisha Tinker Bray
> Guess & Rudd P.C.
> 100 Cushman Street, Suite 500
> Fairbanks, Alaska 99701
> Phone: 907-452-8986
> Fax:   907-452-7015
> Email: atbray@guessrudd.com
> Alaska Bar No. 9505028

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 19 of 20

CERTIFICATE OF SERVICE
I hereby certify that on the 26th day of April, 2007, a copy of the foregoing document was served electronically on:

Kenneth A Legacki, Esq.

Guess & Rudd P.C.

By:    s/Aisha Tinker Bray

Case No. 3:05-cv-204-TMB, Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion to Strike Plaintiff's Expert Witness Disclosures and Report/Opinions of Expert Witness
Page 20 of 20