IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER,<br><br>              Plaintiff,<br><br>  vs.<br><br>PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,<br><br>              Defendant. | Case No. 3:05-cv-00204  TMB<br><br>O R D E R |

## I.    Motions Presented

At Docket No. 113, Defendant Progressive asks this Court to issue a protective order: (1) preventing Plaintiff Weilbacher from taking the depositions of Progressive attorneys Kellie Rubesne and Michael Sablack, and (2) limiting the deposition of Progressive attorney Daniel Quinn to his conversation with Danny Withers in this matter.  At Docket No. 120, Defendant also moves for a protective order stating that Progressive does not have to respond to any of the discovery requests in Plaintiff's Second Set of Discovery Requests to Defendant dated December 29, 2006.  Finally, at Docket No. 128, Progressive also moves to strike Plaintiff's expert witness disclosures.  The Court considered the motions at oral argument on May 18, 2007, and hereby GRANTS Progressive's motions.

## II.    Discussion

At issue in this litigation is whether Plaintiff is entitled to a separate "each person" policy limit of underinsured motorist coverage for loss of society/consortium for the death of his daughter under the following provision of his insurance policy with Progressive:

> The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

1

Plaintiff also argues that Progressive's refusal to pay his separate claim is an act of bad faith. Under Alaska law, the tort of bad faith denial of a claim "necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis."[1]

On November 14, 2004, this Court issued an order granting in part Plaintiff Weilbacher's motion to compel discovery on these claims. The Court recognized that Plaintiff's claims for breach of contract and denial of payment in bad faith require interpretation of the disputed contract under Alaska law, which contemplates the consideration of extrinsic evidence when interpreting contracts. Specifically, the Court granted Plaintiff's motion to compel with "respect to the policy contracts database as to Alaska" and "the drafting history of the relevant provisions of the contract as used in Alaska." The Court specifically denied Plaintiff's motion to compel "with respect to the contractual provisions or drafting history as they relate to jurisdictions outside of Alaska." The Court also granted discovery of documents from the *Wold* litigation related to the issue of whether Progressive intended for a loss of consortium claim to trigger a separate per person policy limit.

Progressive filed a notice of compliance in connection with the Court's November 14 Order on December 15, 2006. Progressive informed the Court that it had produced a copy of the Alaska policy contracts database containing the disputed provision, the model policy form, and relevant portions of the briefing of Progressive in the *Wold* matter. Progressive also informed Plaintiff that none of the documents contained within the *Wold* file relate to the issue of whether Defendant intended for a loss of consortium claim to trigger a separate per person policy limit, and withheld the file. The briefing in the *Wold* case reveals that Progressive took a legal position entirely consistent with its position before this Court in the *Wold* litigation.

Michael Sablack, Assistant General Counsel in the Corporate Law Department of Progressive, also stated in an affidavit that the provision in dispute in this litigation has been in Progressive's model policy since the 9607 model was developed and its provisions were finalized on April 28, 1997. Sablack stated that there was no drafting history for this provision of the model policy. While the model 9607 policy was adapted to conform to the laws of Alaska and there were

---

[1] *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993).

drafting notes for some of the provisions of the policy within the policy contracts database, Sablack stated that there were no similar drafting notes for the disputed provision. Along with its motion for a protective order, Progressive also filed an affidavit from Kellie Rubesne, an attorney in the Corporate Law Department for Progressive, and she also stated that there were no drafting notes in the policy contracts database related to the disputed provision of Alaska Policy 9607.

While the Court granted Plaintiff limited leeway to obtain discovery to explore his theory that Progressive modified its policy in a bad faith attempt to circumvent Alaska law, it is clear that the policy has not in fact been modified from the model policy. Further discovery on this issue in the form of deposition testimony or interrogatories would be unnecessarily duplicative and at best only tangentially relevant to the ultimate questions in this case, whether Progressive breached the insurance contract as written or denied Plaintiff's claim without a reasonable basis. The argument that Plaintiff is seeking to make as he explained it at oral argument is that the existing policy does not provide the minimum coverage required under Alaska statute and case law if interpreted in the manner suggested by Progressive. This is clearly a legal argument that will primarily require an analysis of the contract as written, as well as Alaska statutes and case law. The Court will consider these legal arguments in connection with Progressive's pending summary judgment motion. Therefore, no further discovery will be permitted in the form of additional discovery requests or deposition testimony other than the limited deposition testimony of Daniel Quinn, discussed below.

The Court also grants Progressive's motion for a protective order seeking to limit the scope of the deposition testimony of Mr. Quinn. Plaintiff may only question Mr. Quinn about his conversation with Mr. Withers in connection with Mr. Weilbacher's claim and the basis for any advice that he might have given Mr. Withers. It is expected that the parties will cooperate and complete the deposition of Mr. Quinn in sufficient time for Plaintiff to timely file his opposition to Progressive's motion for summary judgment on May 31, 2007. However, the Court recognizes that the parties are operating under a compressed time frame. If Plaintiff is unable to complete the deposition and file his opposition by May 31, 2007, the parties shall confer and submit a joint revised briefing schedule and two requested dates for oral argument by May 31, 2007.

Also before the Court is Defendant's Motion to Strike Expert Witness Disclosure at Docket No. 128. In the November 14 Order, this Court stated that "Plaintiff will be permitted to identify an expert and provide expert witness disclosures if he can demonstrate that the expert testimony is directly related to the newly produced discovery. If Plaintiff cannot make such a showing, Plaintiff will not be permitted to identify any additional experts." Progressive moves to strike plaintiff's expert report because it far exceeds the scope of the November 14 order and further argues that Plaintiff has not met his burden of linking the expert's testimony to any newly-discovered evidence. The Court agrees.

First, the Court rejects Plaintiff's argument that Progressive should be sanctioned for spoliation of evidence and making unsubstantiated privilege arguments. The Court significantly narrowed the scope of discovery through its November 14 Order, and Plaintiff has offered no evidence that Progressive had and withheld, destroyed or made unsubstantiated privilege claims with respect to any documents falling within the parameters of discovery permitted by the Court's November 14 Order.

The Court agrees that Plaintiff has made no convincing showing that the expert testimony being proffered is directly related to the newly-produced discovery, and therefore GRANTS Progressive's motion to exclude the expert report. The Court also notes that the expert report primarily contains legal conclusions that are not the appropriate subject for expert testimony.

### III.   Conclusion

In conclusion, Progressive's motions for protective orders at Docket Nos. 113 and 120 are hereby GRANTED, and Progressive's motion to strike Plaintiff's expert witness disclosure at Docket No. 128 is hereby GRANTED.

Dated at Anchorage, Alaska, this 23rd day of May, 2007.

/s/ Timothy Burgess

Timothy M. Burgess
United States District Judge