Kenneth W. Legacki, Esq.
Alaska Bar No. 8310132
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848
E-mail:  legacki@gci.net

Attorney for Plaintiff
Ronald V. Weilbacher

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| PROGRESSIVE NORTHWESTERN | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | )  Case No. 3:05-cv-0204-TMB |
| | ) |

## PLAINTIFF'S OPPOSITION TO
## PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION.

Progressive's motion for summary judgment asserts:   (1) Mr.

Weilbacher's independent and separate claim for loss of society is considered derivative by Progressive, (2) the policy is void *ab initio* because of an alleged misrepresentation of Mr. Weilbacher; and (3) there was no bad faith committed by Progressive when it declined to pay Mr. Weilbacher his separate per person limits for loss of society under AS 09.15.010.

Weilbacher asserts the policy was not voided because Progressive was told by the Division of Insurance, specifically, that it could not void a policy for an alleged misrepresentation; AS 28.20.440 prohibits Progressive from voiding the policy; and factually, there was no misrepresentation as shown by Progressive's own internal litigation memorandum and the adjusters' investigation.

The declination of payment for a separate per person limit to Mr. Weilbacher for his independent and separate loss of society claim violates Alaska law which permits a separate, independent claim for loss of society. See State Farm Mut. Auto. Ins. Co. v. Dowdy, 111 P.3d 337, 343 (Alaska 2005), State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1079-80 (Alaska 2001), State Farm Mut. Auto. Ins. Co. v. Harrington, 918 P.2d 1022 (Alaska 1996), Gillispie v. Beta Constr. Co., 842 P.2d 1272 (Alaska 1992), Burton v. State Farm Fire & Cas. Co., 796 P.2d 1361, 1363-64 (Alaska 1990), and AS 21.89.020(c)(1).

Progressive misconstrued the policy provision it relies upon to deny

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 2 of 50

payment to Mr. Weilbacher of his separate per person limit of $100,000.

Progressive's argument that there was no bad faith is also wrong as a matter of law:  By attempting to void the policy after specifically being told by the Division of Insurance it could not do so, and accusing Mr. Weilbacher of insurance fraud is a tortious violation of the contract.  Further, Progressive had no good faith basis to deny the claim by claiming it is derivative when the Alaska case law indicates that Mr. Weilbacher's claim is an independent and separate claim for the mental anguish he has suffered because of the death of his daughter.

## II.  RONALD WEILBACHER'S LOSS OF SOCIETY CLAIM IS BOTH INDEPENDENT AND SEPARATELY COMPENSABLE UNDER THE POLICY.

The Alaska Supreme Court, in Bering Strait School Dist. v. RLI Ins. Co., 873 P.2d 1292 (Alaska 1994), discussed the general test for interpreting insurance contracts.  It stated:

> Insurance contracts are contracts of adhesion, and as such "will be construed according to the 'principle of reasonable expectations.'" [State v. Underwriters at Lloyds, London, 775 P.2d 396, 400 (Alaska 1988) (quoting 6B J. Appelman, Insurance Law and Practice § 4254, at 25 (Buckley ed. 1979)).]  The reasonable expectations doctrine has been stated as follows:

> > The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 3 of 50

negated those expectations.

[Underwriters at Lloyds, London, 755 P.2d at 400 (quoting Robert Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971)).] In order to determine the reasonable expectations of the parties,

> we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

Stordahl v. Government Employees Ins. Co., 564 P.2d 63, 66 (Alaska 1977) (footnote omitted).

Construction of an insurance policy under the principle of reasonable expectations does not depend on a prior determination of policy ambiguity. Id. However, where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, the court accepts that interpretation which most favors the insured. Starry v. Horace Mann Ins. Co., 649 P.2d 937, 939 (Alaska 1982). Grants of coverage should be construed broadly "while exclusions are interpreted narrowly against the insured." Hahn v. Alaska Title Guaranty Co., 557 P.2d 143, 145 (Alaska 1976); Starry at 939.

Bering Strait v. RLI, 873 P.2d at 1294-95.

## A. ALASKA LAW TREATS LOSS OF SOCIETY CLAIMS AS SEPARATE AND INDEPENDENT CLAIMS OF A PARENT.

Mr. Weilbacher's daughter Heidi died near Anchorage in an automobile accident at age 14. Under Alaska law, several distinct types of claims arose from this tragedy. First, Heidi's estate had a claim under Alaska's wrongful death statute (AS 09.55.580) for pecuniary loss. Because Heidi left no spouse or

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 4 of 50

children, no claims were available for loss of consortium, loss of contributions for support, loss of prospective training and education--all of which are available only to a child or spouse of the decedent. These claims may fairly be called "derivative."

A second distinct claim which was triggered by Heidi's death is the independent and direct claim of her parents for loss of society under AS 09.15.010.

In 1992, the Alaska Supreme Court first held that a parent has a separate, independent cause of action for their own mental anguish when a child dies in a vehicle accident. <u>Gillispie v. Beta Constr.</u>, 842 P.2d 1272, 1273 (Alaska 1992).

In <u>State Farm v. Lawrence</u>, 26 P.3d 1074 (Alaska 2001), the Alaska Supreme Court held that a parent who suffers emotional distress because of the death of a child is to be considered having suffered <u>directly</u>, and not derivatively, because the child was killed. <u>Id.</u> at 1079.

> Other courts have <u>rejected</u> arguments equating emotional distress and loss of consortium. We agree with those courts. Unlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have suffered <u>directly</u>, <u>rather than</u> <u>derivative</u> injuries that resulted from an injury to another.

<u>Id.</u> at 1079 (footnotes omitted) (emphasis added).

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 5 of 50

In Black's Law Dictionary, when looking up "mental anguish", one is referred to "emotional distress." "Emotional distress" is defined as:

> A highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering.

<u>See</u> Black's Law Dictionary 563, 1007 (8th ed. 2004).

Under the <u>Lawrence</u> decision, Mr. Weilbacher's mental anguish is an injury that he himself has suffered as a result of his daughter Heidi's death and his mental anguish qualifies for a separate per person limit.

Even if the Lawrence parents' injuries <u>did</u> result from their son's bodily injury, this would not necessarily lead to the conclusion that the parents' injuries do not qualify for policy limits separate from those that their son received. In <u>Crabtree</u>, the Supreme Court of Louisiana rejected State Farm's argument that a wife could not recover separate policy limits for the mental anguish that she claimed "resulted from" the injuries suffered by her husband. The Louisiana court indicated that State Farm's interpretation, which would read the "each person" limit as preventing coverage of a second person whose bodily injury arguably "resulted from" the injuries to the first, disregards "the clear and explicit language defining the aggregate coverage for 'Each Accident' as 'all damages due to <u>bodily</u> injury to two or more persons in the same accident.'"

Given the problematic consequences of holding that single policy limits <u>necessarily</u> apply if one person's injury "results from" the bodily injury of another, the <u>Crabtree</u> court construed State Farm's policy language to mean that the "Each Person" limit applies if only one person suffered "bodily injury" in an accident. On the other hand, separate limits apply to two or more persons who suffer "bodily injury" if those persons were injured "in the same

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 6 of 50

accident."

> We find the Louisiana Supreme Court's reasoning to be persuasive. Given the wording of State Farm's "Each Accident" provision, it is objectively reasonable for State Farm insureds to expect that two or more persons who suffer bodily injury in the same accident would be entitled to separate policy limits. Since we honor the objectively reasonable expectations of insureds regarding the terms of insurance contracts, we reject State Farm's interpretation of the policy language at issue.

State Farm v. Lawrence, 26 P.3d at 1078 (footnotes omitted)[1]

In Allstate Ins. Co. v. Teel, 100 P.3d 2, 5 (Alaska 2004), the Alaska court reiterates its holding that a parent suffers an injury directly when their child is killed in an accident.

> That Teel's claim is direct does not bar the claim. The wording of Allstate's policy does not exclude direct claims--it states that one would be entitled to recover so long as one's damages were "because of" bodily injury to an occupant of the insured vehicle. Webster's Dictionary defines the term "because of" to mean "by reason of" or "on account of." Legal causation is a stricter standard, generally requiring that (1) "but for" the occurrence of the event the injury would not have occurred, and (2) the event was a "significant and important" cause of the injury. In light of both the common and legal definitions of causation, we cannot say that the policy language excludes an NIED claim.

---

[1] Progressive cites to Government Employees Ins. Co. v. Encelewski, Case No. A94-0211 (Civil) HRH, to support its position that Weilbacher should not receive a separate per person limit. In Encelewski, Judge Holland rejected the holding of Crabtree v. State Farm Ins. Co., 632 So. 2d 736 (La. 1994). However, the Alaska Supreme Court in Lawrence adopted the Crabtree rationale. Therefore, Progressive's reliance on Encelewski is misplaced and misleading.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 7 of 50

If Teel can prove all of the elements of a bystander NIED claim, then her injuries were "because of" the bodily injury suffered by her son: The injuries suffered by an individual entitled to recover under the bystander exception to NIED claims, though not derivative, are the natural and probable consequence of contemporaneously witnessing the bodily injury suffered by someone with whom they have a close relationship. We therefore conclude that a party who has met the burden of proving his or her NIED claim would satisfy the causal requirement between the accident and the injury that the Allstate policy requires.

Id. at 5 (footnotes omitted).

To prove a direct claim for loss of society, Ronald Weilbacher need only show that his child died negligently and he suffered mental distress. See State Farm v. Dowdy, 111 P.3d at 343.

Progressive has however taken the inexplicable position that Ronald Weilbacher's loss of society claim must be considered a derivative of Heidi's own wrongful death claim, although Gillispie v. Beta Constr. Co. states that the mental anguish a parent suffers when the death of a child occurs is an independent, separate claim. Gillispie held that a child's death is the greatest loss a parent may suffer and a parent suffers immense mental anguish, grief, and a sense of loss when a child is killed. See Gillispie, 842 P.2d at 1274.

Progressive never states how or why the loss of society claim is derivative. Nowhere in the policy does it state loss of society is a derivative claim, and it will not pay separate per person limits for a loss of society claim.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 8 of 50

Both Dan Quinn and Robert Lohr, Progressive's expert, state the policy does not define derivative.  (Ex. 22, Quinn Depo. at 25-26; Ex. 23, Lohr Depo. at 106)

### B.   PROGRESSIVE'S POLICY INTERPRETATION CONFLICTS WITH ALASKA LAW AND THE REASONABLE EXPECTATIONS OF THE PARTIES.

Progressive concedes Mr. Weilbacher has a separate, independent loss of society claim then seeks to avoid paying a separate policy limit by wrongfully defining this claim as derivative.  In this exercise, Progressive is supported only by its economic aims and not by reason, logic, or certainly Alaska law.  Progressive's employees, attorneys, and experts cannot articulate a coherent justification for treating Mr. Weilbacher's independent loss of society claim as merely a derivative claim covered under the payment for Heidi's wrongful death.

Both Danny Withers and Adam Lund, the adjusters for Progressive who declined Ronald Weilbacher's claim, agree that Mr. Weilbacher suffered mental anguish.  There appears to be no logical reason not to equate the independent, separate loss of society claim as a direct cause of action which entitles Mr. Weilbacher to a separate per person limit in light of the Alaska Supreme Court's holdings in Gillispie, Lawrence and Dowdy.  In Allstate v. Teel, 100 P.3d 2, 4-5 (Alaska 2004), the court held an NIED claim is a direct claim.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 9 of 50

Adjuster Danny Withers himself stated there is no difference between an NIED claim and a loss of society claim.  Mr. Withers testified:

> Q      Well, is an NIED claim of a parent independent?
> A      Yes.
> Q      So what's the difference between an independent NIED claim than an independent loss of society claim under AS 09.15.010?
> A      I don't know if there is any difference.

(Defendant's Ex. N, Withers Depo. at 41)

Mr. Withers was then questioned about the holding of the Teel decision, and whether after Teel a loss of society claim under AS 09.15.010 is excluded.

> Q      . . .    The reason I'm asking you now sir, do you think the Progressive policy excludes a independent claim of the Weilbachers under AS 09.15.010?
> A      That it excludes that claim?  No, I don't think it does.

(Defendant's Ex. N, Withers Depo. at 42-43)

Mr. Lund stated in his deposition that Mr. Weilbacher's loss of society claim is for his own injury, his own pain, and his own individual loss.

> Q      What does that mean, "individual claims?"
>            MR. ZIPKIN:  Asked and answered.
> Q      (By Mr. Legacki)  Regarding to this note here?
> A      As I stated earlier, that means that the father has his own claim for his loss of society and loss of consortium.  He can make a claim.
> Q      He can make his own individual separate claim?
> A      He can make an individual claim.  It's his claim.  In that

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 10 of 50

sense, it's individual, belongs to him.

Q    What does that mean "belongs to him?"  Would you explain it?  If you had an insured come to you and say, "What does that mean, my individual claim?"  How do you explain that to him?

A    Well, it's his loss of his daughter and <u>his injury</u>, <u>his pain</u> or however you want to describe it.  His loss of consortium, his loss of the society and companionship with his daughter.  That's <u>his individual loss</u>.  Therefore, he has a claim for that.

(Defendant's Ex. O, Lund Depo. at 27 (emphasis added))

Since the adjusters themselves logically and pragmatically see no difference between a loss of society claim under AS 09.15.010 and an NIED action, which the Alaska Supreme Court has already held is a direct cause of action that is entitled to a separate per person limit, it seems that a reasonable expectation of Mr. Weilbacher is that he is entitled to a separate per person limit for his own mental anguish that he suffered when his daughter Heidi was tragically killed by an underinsured driver.

## C.    PROGRESSIVE'S POLICY REQUIRES CONFORMITY WITH ALASKA LAW.

Mr. Weilbacher has demonstrated that (1) under Alaska law he has a separate and independent claim for loss of society which is his separate bodily injury, and (2) Progressive's policy interpretation here violates Alaska law in defining loss of society claims as derived from and compensated only under Heidi's wrongful death claim.  Progressive urges the Court to adopt its strained

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 11 of 50

arguments to foreclose Mr. Weilbacher from recovering a separate policy limit for his separate bodily injury claim. Progressive however does not reveal that the policy at issue has a specific provision which resolves all conflicts between its policy and Alaska law by amending any conflicting language to conform with Alaska law.

The insurance contract provides:

**TERMS OF POLICY CONFORMED TO STATUTES**

If any provision of this policy fails to conform with the legal requirements of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform with such legal requirements. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

(Defendant's Ex. A at 61 of 68)

It is the law of Alaska that a loss of society claim under AS 09.15.010 is a separate and independent injury of a parent giving rise to a direct claim. Progressive has improperly labeled loss of society claims as derivative. This denomination, however, is wrong under well-established Alaska law, including AS 09.15.010, as interpreted by multiple Alaska Supreme Court opinions. Progressive may not, as the Red Queen in Lewis Carol's classic simply says, "Words mean what I say they mean, or who is in control, me or the

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 12 of 50

words?"  The words of AS 09.15.010 are interpreted not by Progressive, but rather by the Alaska Supreme Court, which made it clear that this statute provides a direct and independent parental claim for loss of society.

Progressive's labelling of this direct and independent parental claim as derived from Heidi's wrongful death claim is incorrect.  Progressive's insurance contract requires that when any provision of this policy fails to conform with Alaska legal requirements, such provision is "deemed amended to conform."  Had Progressive inserted loss of society claims under the definitions of property damage, the result would be the same.  Defining a claim incorrectly in the policy changes neither the claim, nor the rights of the claimant to recover for his injuries.  Because Progressive's policy and its interpretation of its obligations disregards Alaska law, such provisions and obligations are to be conformed to comply with the requirements of Alaska law.  Progressive is obligated to respect Mr. Weilbacher's loss of society claim as a separate and independent claim which triggers a separate bodily injury policy limit.

### III. THE POLICY DOES NOT SHOW WHY RONALD WEILBACHER CANNOT RECEIVE A SEPARATE PER PERSON LIMIT FOR HIS LOSS OF SOCIETY CLAIM.

Progressive denies Mr. Weilbacher an independent, separate per

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 13 of 50

person limit by creating a fictional intent to the per person limit provision in the policy. The policy provision does not define a derivative claim, and it does not exclude a loss of society claim. Progressive itself does not know why the provision exists in the policy because the drafting history of the policy does not exist. The insurance contract does not state a loss of society claim is a derivative claim not subject to a per person limit under the policy.

On page 6 of the policy, also known as page 20 of 68 in Defendant's Exhibit A, the insuring agreement states that:

> Subject to the Limits of Liability, if **you** pay a premium for **bodily injury** liability coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** for which an **insured person** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of a vehicle or a **rental vehicle**.

Under <u>Gillispie</u>, <u>Lawrence</u> and <u>Dowdy</u>, it is clear that Progressive would have to pay a loss of society claim filed against Mr. Weilbacher.

In Part III of the insurance policy, also known as the Uninsured/Underinsured Motorist Coverage, the insurance policy states:

> Subject to the Limits of Liability, if **you** pay a premium for Uninsured/Underinsured Motorist Coverage for **bodily injury, we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured/underinsured motor vehicle** because of **bodily injury**:

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 14 of 50

1.   sustained by an **insured person**;
2.   caused by **accident**; and
3.   arising out of the ownership, maintenance or use of **an uninsured/underinsured motor vehicle**.

(Defendant's Exhibit A at 34 of 68)[2]

The policy then goes on to state:

If **your Declarations Page** shows a split limit:

1.   the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one (1) person;
2.   subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two (2) or more persons in any one (1) **accident**; and . . . .

---

[2] Adam Lund, manager of the Claims Department in Alaska, testified that Mr. Weilbacher met all of the above elements required to be met by the policy.

Q   I guess your counsel has already admitted he's an insured person?
A   Okay.
Q   And that the death of his daughter was caused by an accident?
A   Uh-huh.
Q   Correct?
A   Right.
Q   And the car, Esper, was underinsured?
A   Uh-huh.
Q   That's the three elements, right?
A   We've got those three, yes.

(Defendant's Ex. O, Lund Depo. at 22)

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 15 of 50

> The **bodily injury** Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death.

(Defendant's Ex. A at 42 of 68)

The policy itself defines loss of society as being included in the definition of "bodily injury," but damages are capped at an "each person" limit of $100,000.[3]  The $100,000 limit includes all claims that can be made by an injured person.

Dan Quinn, upon whom Progressive is relying for its affirmative defense of advice of counsel, concurred that the above policy language decrees capping the limit an insured can recover and does not purport to define a derivative claim.  (Ex. 22, Quinn Depo. at 25-26)

Progressive's expert, Robert Lohr, testified that derivative is not a defined term of the insurance policy.  (Ex. 23, Lohr Depo. at 106)  Nowhere in the insurance policy does it state that a loss of society claim is <u>not</u> entitled to a separate per person limit.

_____

[3]  Progressive has affirmatively stated to this Court that no drafting history of the provision exists.  Therefore, all inferences are to be taken in favor of Mr. Weilbacher and against Progressive.  <u>See</u> <u>Sweet v. Sisters of Providence in Washington</u>, 895 P.2d 484, 492 (Alaska 1995); <u>Thorne v. Dept. of Public Safety</u>, 774 P.2d 1326, 1331 (Alaska 1989).

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

Both Mr. Withers and Mr. Lund agree that Heidi Weilbacher was negligently killed and Ronald Weilbacher suffered mental anguish. Therefore, Mr. Weilbacher has met the elements for a loss of society claim. Dowdy, 111 P.3d at 343. Mr. Withers and Mr. Lund, the two individuals who were responsible for adjusting Mr. Weilbacher's claim, testified that Mr. Weilbacher does have an independent and separate claim, but never explain why it is not subject to a separate per person limit.

Adam Lund testified he did not know how a separate claim is defined, nor was he aware of AS 09.15.010.

    Q    Well, you were listed as the person who's going to testify
         about the policy and the policy language in the case. Are
         you aware of that?
    A    To a limited extent.
    Q    What's the definition of bodily injury in Alaska, do you
         know?
             . . . .
             THE WITNESS:    I don't know what the legal
         definition would be, but it's, you know, we would consider
         it bodily injury, physical injury, essentially, to a person.
    Q    (By Mr. Legacki)  Would mental injury be the same thing?
    A    It could be considered an injury.[4]
    Q    Would a mental injury be covered under the policy?
             . . . .
             THE WITNESS:  Would a mental injury be covered

---

[4]  In 2001, in State Farm v. Lawrence, the Alaska Supreme Court held that emotional distress is an injury that a parent suffers directly. Lawrence, 26 P.3d at 1079.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

under the policy?  Possibly.

. . . .

Q    Okay.  If Mr. Weilbacher -- let's assume Mr. Weilbacher was in an accident.  He caused the accident.  And if someone sued Mr. Weilbacher for mental anguish for loss of society, loss of consortium, would his insurance cover that?

A    Loss of society, loss of consortium, yes.

. . . .

Q    Okay.  What would happen if Mr. Weilbacher killed a child in an accident?  Can the parent of that child sue Mr. Weilbacher under AS 09.15.010 for the death of child?

. . . .

THE WITNESS:  I don't know the statute by number.

Q    (By Mr. Legacki)  That's where a parent can collect for the death of a child.  Are you familiar with that?

A    Is it a wrongful death statute or is that something different, I'm not sure what the number --

Q    It's a separate claim.

A    It's a separate claim?  So it's their independent claim for --

Q    For death of a child.

A    Death of a child, okay.  And your question is: Can they make a claim for that?

Q    Yes, would Progressive pay for that claim?

A    They would have a claim that would be covered under the policy.

Q    Would it be a separate claim?

A    Can you define separate?

Q    Their own individual claim.

A    It is an individual claim, yes.

(Defendant's Ex. O, Lund Depo. at 13-14, 15-16)

Regarding Mr. Weilbacher's claim of loss of society, Mr. Lund testified he does not know what the term independent claim means.

Q    Is there anything else that we should look at?

. . . .

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

Q     (By Mr. Legacki) Whether or not -- to determine whether or not he would be covered by the claim AS 09.15.010?

. . . .

THE WITNESS: Well, we provided coverage for the claim, so, yes we found coverage.

Q     (By Mr. Legacki) How about for his own injury?

A     For his own injury?

Q     For the death of his daughter?

A     His loss of society and loss of consortium claim, yes.

Q     He would be entitled to that?

A     There is coverage for that.

Q     And as a separate claim, individually?

A     He has an individual claim.

Q     An independent claim?

. . . .

THE WITNESS: He has a claim.

Q     An independent claim?

A     Define what you mean by "independent". I believe it's derivative of the child's bodily injury claim.

Q     You don't -- the statute -- the claim under AS 09.15.010, you don't think that it's independent and separate or you think it's derivative?

A     I think he has an individual claim for his loss of society and loss of consortium.

Q     Is that separate and distinct from his daughter's claim, from his daughter's death?

. . . .

A     It is separate and distinct. He has his own, again, individual claim for his loss of society and loss of consortium, so that would be his claim, correct.

Q     That's an independent claim, his own independent claim?

A     You, know, independent, again depends on the definition of independent. It's his claim, his individual claim.

Q     Independent of his daughter's?

. . . .

THE WITNESS: Again, it depends on what independent means.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB

(Defendant's Ex. O, Lund Depo. at 22-24,

In commenting on adjuster Danny Withers' valuations of Mr. Weilbacher's independent claim, which he admits is for Mr. Weilbacher's own injury and pain for the loss of his daughter, Mr. Lund testified as follows:

Q    At the bottom there it says "The individual claims of father and mother will include loss of consortium, loss of society." Do you see that?

A    Yes.

Q    What does that mean, "individual claims?"

. . . .

Q    (By Mr. Legacki)  Regarding to this note here?

A    As I stated earlier, that means that the father has his own claim for his loss of society and loss of consortium.  He can make a claim.

Q    He can make his own individual separate claim?

A    He can make an individual claim.  It's his claim.  In that sense, it's individual, belongs to him.

Q    What does that mean "belongs to him?"  Would you explain it?  If you had an insured come to you and say, "What does that mean, my individual claim?"  How do you explain that to him?

A    Well, it's his loss of his daughter <u>and his injury, his pain or however you want to describe it</u>.  His loss of consortium, his loss of the society and companionship with his daughter. <u>That's his individual loss.</u>  <u>Therefore, he has a claim for that.</u>

Q    And Exhibit 4 says "parents' individual claims would have value of 50- to $75,000 each." How does one evaluate what the value of a case of losing a 15-year-old daughter -- how do you come up with the total of 50- to $75,000?

. . . .

THE WITNESS:  It is very difficult to put a value on anything of that nature.  I would hate to have to put a number on something like that.  It's a judgment that the

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

claims rep has to make based on the facts of the case and what they know about the situation.

Q    (By Mr. Legacki)  And it says "parents' individual claims would have value of 50- to $75,000 each."

Does that mean it's 50- to $75,000 for each of the parents, individually for Ms. Morrow and Mr. Weilbacher?

. . . .

THE WITNESS:  I would interpret that to mean that each individual -- each individual claim could have a value of 50- to 75,000 in Danny's opinion.

(Defendant's Ex. O, Lund Depo. at 26-28 (emphasis added))

Mr. Lund admitted that Mr. Weilbacher suffered a tremendous loss.

Q    Let's look at page 1274 of the decision.  And look at the second paragraph: "The result we reach today" -- do you see that?

A    Yes.

Q    Okay.  I want to go down to the middle of that "without question."

A    Okay.

Q    "Without question the death of one's own child is the greatest loss a parent may suffer."

Do you agree with that?

A    It's clearly a tremendous loss.

. . . .

Q    (By Mr. Legacki)  Well, we just looked at some cases and he suffered the greatest loss a parent could ever suffer; he, himself. And the policy is $100,000 per person, $300,000 max, and he's a person other than his daughter Heidi that suffered injury because he suffered the greatest loss a parent can suffer, right?

A    He suffered a loss.

Q    And that is separate from the loss of his daughter?  His daughter died, right?

A    His daughter died.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 21 of 50

Q    So he has a different loss than a daughter, correct?
A    He has a loss resulting from the death of his daughter.
Q    And it's separate from his daughter, correct?

    . . . .

THE WITNESS:    I think we talked earlier about "separate" and other definitions of different words.  He has his own individual claim arising out of the death of his daughter.

Q    (By Mr. Legacki)  Right.  So he says, okay, my daughter died and the insurance pays for her and I've got my own individual claim, correct? That's a reasonable assumption on his part?
A    I've stated that he has his own individual claim.

(Defendant's Ex. O, Lund Depo. at 32-33, 41-42)

Mr. Lund, a senior adjuster for Progressive, who is in charge of Alaska, does not know the difference between a direct claim and a derivative claim.  If Mr. Lund does not know the difference, how is an insured to know?

Q    (By Mr. Legacki)  Back on record.  Under Alaska law do you know the difference between a direct and a derivative claim?
A    Under Alaska law do I know the difference between a direct and a derivative claim?  If I were to give you an opinion -- I don't feel qualified to give you a legal opinion about what that is.
Q    Just as your understanding as a claims adjuster.
A    As I said earlier, a derivative claim arises out of the injury in the case to the child.  The direct claim is a claim that the party can make directly to the company or against the policy that's a separate claim.
Q    The injury that they personally suffer?
A    Pardon?
Q    Is it an injury that they suffer?
A    That who suffers?

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 22 of 50

Q    The parent or the person who has the direct claim.  Would that be an injury that they suffer directly?

· · · ·

THE WITNESS:  It is an injury that they have suffered.

(Defendant's Ex. O, Lund Depo. at 53-54)

Danny Withers, the local adjuster who first declined the claim, testified that Mr. Weilbacher has a separate claim, other than the wrongful death claim.

Q    So the issue of the case is whether or not when his daughter died was he considered an independent claim for the death of his daughter, correct?

· · · ·

THE WITNESS:  Yes that's the issue.

Q    (By Mr. Legacki)  Okay. And the statute allows him to file an independent claim, correct, AS 09.15.010?

A    Yes, he can file a claim.

Q    Okay.  And it gives him a right to collect for the death of his daughter independent of any wrongful death action.

A    I believe so.

· · · ·

Q    Well, okay, let's assume that he sued the tortfeasor, okay? Can he file a lawsuit directly against the tortfeasor under AS 09.15.010 for the loss of society?

A    I believe he could.

(Defendant's Ex. N, Withers Depo. at 13-15)

When Mr. Withers was asked about his notes in valuating Mr. Weilbacher's individual, separate claim for loss of society, he testified as follows:

Q    All right.  You state at the bottom there:  "The individual's claims of father/mother will include loss of consortium and

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 23 of 50

loss of society;" is that correct?

A    Uh-huh.

Q    What do you mean by "individual's claims"?

A    Means that they have an individual claim for loss of consortium or loss of society.

. . . .

Q    This is another PACMAN note of yours, I think it's dated February 15 '04, 2004?

A    Uh-huh.

Q    The parents' individual claim put a value of 50,000 to 75,000 each for the wrongful death of their 15-year-old daughter?

A    Yes.

Q    Why do you -- how did you come to the value of 50/75,000?

A    It's an estimate of what their individual claims might be worth.

Q    How did you get that figure?

A    Mostly just off of experience, the kind of value those claims might have.

Q    You put a value of a lost child at somewhere between 50 and $75,000?

A    Well, I'm talking about the loss of society and loss of consortium-type claims.

Q    That's all you value the loss of a child?  Is there anything that tells me in your experience you value the loss of a child at only 50 to $75,000?

. . . .

THE WITNESS:  It might be worth more than that, but that's, you know, that's an estimate.  I don't -- you know something that in my experience, a jury might award.

Q    (By Mr. Legacki)  And what experience is that?

A    Just over the years, cases I've had.

Q    Could you tell me which cases where the jury only awarded 50 to $75,000 for the loss of a child?

A    I can't recall any.

. . . .

Q    (By Mr. Legacki)  I mean, would you be happy with 50 to $75,000 for the loss of your daughter?

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 24 of 50

   . . . .

THE WITNESS:  You know, you can't put the value on the loss of a child; that's not what we're dealing with here.  We're dealing with, you know, the loss of consortium, loss of society.

   . . . .

Q    Can you imagine any other greater loss of injury or pain or suffering than a parent losing a child?

A    Probably not, no.  Probably pretty tough.

(Defendant's Ex. N, Withers Depo. at 19-23)

Mr. Withers admitted a parent like Mr. Weilbacher could collect a separate per person limit for an NIED claim.  He was then asked if there was a difference between an NIED claim and a loss of society claim.  Mr. Withers testified there was not a difference between the two claims--they are the same.

Q    (By Mr. Legacki)  Does the policy, Progressive policy, exclude direct actions and direct claims of the parents?

A    What do you mean by direct claims?

Q    Well, if a parent has a direct claim for say, an NIED, is that excluded?

A    No.

Q    If the court finds that -- well, why is it then when you have a statutory claim then for the loss of society that's not a direct claim?

A    It an independent claim.  In other words, it's independent. They have a claim.  But it's still a derivative claim of a single bodily injury limit.

Q    Well, is an NIED claim of a parent independent?

A    Yes.

Q    So what's the difference between an independent NIED claim than an independent loss of society claim under AS 09.15.010?

A    I don't know if there is any difference.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 25 of 50

. . . .

Q     . . . .  The reason I'm asking you now sir, do you think the Progressive policy excludes a independent claim of the Weilbachers under AS 09.15.010?

A     That it excludes that claim?  No, I don't think it does.

. . . .

Q     And it's a separate claim different from what the estate of Heidi Weilbacher claimed, correct?

A     It's an independent claim.  It's <u>separate</u> from the <u>wrongful death</u>.

Q     Right and it's his own right.  <u>He can collect as an injured party because of the death of his daughter, correct</u>?

A     Correct.

(Defendant's Ex. N, Withers Depo. at 40-43, 62 (emphasis added))

The adjusters state that Mr. Weilbacher has an independent, separate claim for loss of society, but they never indicate where in the policy loss of society is <u>not</u> subject to a separate per person limit.   Mr. Lund did not know the definition of derivative claim, but yet he declined to pay Mr. Weilbacher's claim. This Court should find that Mr. Weilbacher had a reasonable expectation to be compensated a separate per person limit for his mental anguish.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 26 of 50

**IV.   BOTH LEGALLY AND FACTUALLY, PROGRESSIVE'S MOTION TO VOID THE POLICY IS SPURIOUS AT BEST AND CONSTITUTES AN ACT OF BAD FAITH.**

**A.   THE DIVISION OF INSURANCE SPECIFICALLY PROHIBITED PROGRESSIVE FROM DENYING COVERAGE "IF" THERE WAS A MISREPRESENTATION ON THE INSURANCE APPLICATION.**

Progressive has moved to void coverage of the tragic death of Heidi Weilbacher and Mr. Weilbacher's independent and separate claim for damages because of an alleged misrepresentation on the insurance application. But Progressive has misled the Court and Mr. Weilbacher in (1) failing to tell the Court and Mr. Weilbacher about the documents from the State of Alaska, Division of Insurance, which show that Progressive was specifically prohibited from voiding a policy "if" there was a misrepresentation, and (2) failing to cite the appropriate statutory authority regarding this issue.

The recently discovered records obtained through the Division of Insurance show Progressive knows its claim of misrepresentation is frivolous, if not deceiving. Following its review of Progressive's ProRater and AutoPro Application filing, the Division of Insurance informed Progressive that:

> 3645 ProRater
> Page 2.  Cancellation that complies with AS 21.36.210 and AS 21.36.220 is okay, but denying coverage for a permissive driver

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 27 of 50

violates AS 28.20.440.   (You have addressed the case of fraud, omission and misrepresentation in the applicant's statement.)

**This filing is disapproved and may not become effective** until the additional information is received and the filing is approved.

(Ex. 24, July 29, 1998 Letter from Division of Insurance)

Karen Shaw, Progressive's Policy Compliance Attorney, then wrote

to the Division of Insurance on July 31, 1998, and stated:

This letter is in response to our telephone conversation on July 29, 1998 and your letter of the same date with respect to the above-captioned filing.  The Vehicle Information section on the **ProRater Application - Form No. 3645 (3/97) AK** has been revised as follows (blue underlined text is new material and red strike through is deleted material):

PLEASE INFORM APPLICANT THAT FAILURE TO DISCLOSE ALL DRIVERS/RESIDENTS OF HOUSEHOLD OR ALL ACCIDENT/VIOLATIONS CAN ~~RESULT IN A DENIAL OF COVERAGE OR~~ CAUSE PREMIUM UPRATE <u>AND/OR POLICY CANCELLATION</u>.

Enclosed is a revised copy of the **ProRater Application - Form No. 3645 (3/97) AK**.  We hope you are now in a position to approve both the **ProRater Application - Form 3645 (3/97) AK** and **AutoPro Application - Form 2725 AK (12/97)**. . . .

(Ex. 24, July 31, 1998 Letter from Karen Shaw)

Progressive was apprised in 1998 that its attempt to void coverage

for an alleged misrepresentation would violate the law.

Progressive, citing to AS 21.42.110, asserts that if there is a

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 28 of 50

misrepresentation in the application, the policy becomes void.    However, Progressive has failed to provide to the Court and to Mr. Weilbacher the Division of Insurance correspondence specifically prohibiting Progressive from voiding any policy for misrepresentation because it would violate state laws.    On July 29, 1998, Dee Ann Teseneer, Insurance Analyst for the Division of Insurance, wrote to Karen Shaw of Progressive and advised her that the Division would <u>not</u> approve a form application filing because it did not comport with AS 28.20.440.[5] (<u>See</u> Ex. 24)

On July 31, 1998, Ms. Karen Shaw of Progressive advised the Division of Insurance that Progressive would revise its policies to delete any reference to voidance of a policy or denial of coverage for misrepresentation, and

---

[5]  Alaska Statute 28.20.440(f)(1) states:

(f)     Every motor vehicle liability policy is subject to the following provisions but these provisions need not be contained in the policy.

(1)     The liability of the insurance carrier becomes absolute whenever injury or damage covered by the policy occurs; the policy may not be cancelled or annulled as to this liability after the occurrence of the injury or damage; no statement made by the insured or on behalf of the insured and no violation of the policy defeats or voids the policy.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

filed a revised application with the language voiding the policy deleted from the proposed policy.

The filings with the Division of Insurance show that Progressive knew that it could not void a policy for any misrepresentation, and the request to be able to void a policy for misrepresentation was specifically denied by the Division of Insurance.

Neither this July 31, 1998 letter, nor the July 29, 1998 letter referred to by Ms. Shaw, were disclosed to Mr. Weilbacher, although Progressive has continually represented to this Court and to Mr. Weilbacher that it has produced the relevant filings with the Division of Insurance regarding this policy. Progressive's failure to produce the above-mentioned documents and its attempt to void the policy under a spurious allegation is another act of bad faith and a breach of its fiduciary duty toward Mr. Weilbacher.  (See Ex. 24)

**B.    PROGRESSIVE'S INITIAL DISCLOSURES SHOW THAT IT HAD KNOWLEDGE OF THE STATUS OF HEIDI WEILBACHER'S RESIDENCY AND DETERMINED THERE WAS NO MISREPRESENTATION.**

Documents produced by Progressive with its initial disclosures show that Progressive had full knowledge of the residency of Heidi Weilbacher when it determined there was coverage.   Mr. Weilbacher had fully disclosed to

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 30 of 50

Progressive the relationship that he had with his daughter, and the documents show that Mr. Weilbacher did not misrepresent the living arrangements to Progressive. For Progressive to allege otherwise is committing a fraud upon the Court. An index of the documents previously submitted to the Court at Docket No. 83 is attached hereto as Exhibit 25, and the documents show Progressive had knowledge of Heidi's residency status as early as February 20, 2002. (Ex. 25; Docket No. 83)

All of Progressive's own documents and its own investigation show that Progressive's allegation of fraud by Mr. Weilbacher is spurious at best.

Progressive's investigation showed that Heidi resided with her mother in Anchorage, where she attended Dimond High School, and resided with her father in Soldotna for periods of time in the summer.

Progressive determined the mother had primary physical custody, and after its investigation, Progressive still found that Mr. Weilbacher had coverage under the policy and that it had a duty to pay Mr. Weilbacher for the death of his daughter.

On February 20, 2002, Mr. Weilbacher was interviewed by the adjuster for Progressive, Danny Withers, and he told them that he had joint legal custody of his daughter, that his daughter lived with her mother during the school

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 31 of 50

year, attended Dimond High School, and that she lived with him during the summer in Soldotna.  (See Defendant's Ex. F)

On October 25, 2002, in a litigation memorandum compiled by Danny Withers, the adjuster in this case, and sent to the law firm of Guess & Rudd, Mr. Withers stated that Mr. Weilbacher had coverage and that Progressive was responsible for paying Mr. Weilbacher.  [Docket No. 83, Ex. 20]

As the documents in the initial disclosures show, Progressive was well aware that Mr. Weilbacher did not misrepresent Heidi's residency when he applied for insurance.

C.    **PROGRESSIVE IS MANIPULATING THE SELECTIVE TESTIMONY OF MR. WEILBACHER AND OMITTING FACTS TO THE POINT OF BEING DISHONEST WITH THE COURT.**

Progressive and its attorneys are asserting Mr. Weilbacher misrepresented Heidi's residency status to Progressive because he failed to disclose in his application that his daughter was living with him.  In its motion, Progressive failed to advise the Court that it had already resolved this issue in favor of Mr. Weilbacher.  As Progressive readily acknowledges in its disclosure documents, it knew that Heidi was living with her mother in Anchorage, Alaska, during the school year, and was attending Dimond High School.  As Mr.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 32 of 50

Weilbacher testified in his deposition, he initialed where the insurance broker told him to initial on the application after it was faxed to him. (Defendant's Ex. J, Weilbacher Depo. at 21, 33) There is no statement from the insurance broker to dispute Mr. Weilbacher.

As Mr. Weilbacher testified, he disclosed the information about his daughter: "I have had the insurance people pretty well just do the paperwork for me. . . They knew my daughter." (Defendant's Ex. J, Weilbacher Depo. at 34-35)

Progressive's own documents show that at the time the application was made on December 21, 2000, Heidi Weilbacher was living in Anchorage, Alaska, with her mother. As Mr. Weilbacher stated in the accompanying affidavit, he understood that Mr. Zipkin was asking about joint legal custody at the deposition, and not physical custody. [Docket No. 83, Ex. 21, Weilbacher Affidavit] It is obvious that Mr. Zipkin was taking advantage of Mr. Weilbacher's lack of education, especially when he never asked Mr. Weilbacher to explain his prior statement to Progressive on February 20, 2002, wherein Mr. Weilbacher said Heidi attended Dimond High School. (Defendant's Ex. F)

As Mr. Weilbacher testified in his deposition, he has a ninth grade education and he never received a GED. (Defendant's Ex. J, Weilbacher Depo.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 33 of 50

at 9)   Yet, Mr. Zipkin and Ms. Bray, having the above documents in their possession, have accused Mr. Weilbacher of committing insurance fraud.   There was no fraud or misrepresentation, especially in light of the fact that Progressive, after doing a thorough investigation, concluded that there was coverage and that Mr. Weilbacher should be entitled to compensation for the death of his daughter.

**D.    THE AFFIRMATIVE DEFENSE OF VOIDANCE WAS NEVER RAISED BEFORE THE CLOSE OF DISCOVERY, AND PLAINTIFF HAS NOT BEEN ABLE TO CONDUCT ANY DISCOVERY ON THIS ISSUE TO REBUT THE ALLEGATIONS OF THE DEFENDANT.  THEREFORE, THIS ISSUE SHOULD BE PRECLUDED FROM BEING ARGUED.**

The issue of Mr. Weilbacher misrepresenting facts on his insurance application was first raised in a motion [Docket Nos. 70, 71] filed by Progressive on August 28, 2006.   The Court denied, without prejudice, Progressive's motion [Docket No. 103], and now Progressive has raised the issue again in its recent summary judgment motion.   However, Progressive did not list as a witness the individual from whom it now has an affidavit stating that Progressive would have raised the rates if it had known that Mr. Weilbacher's 14-year old daughter was living with him, and furthermore, contrary to the representations, Progressive has not given Mr. Weilbacher an entire set of documents filed with the Division of Insurance regarding the issues in this case.   Missing from any documentation

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 34 of 50

produced to Mr. Weilbacher is Progressive's correspondence with the Division of Insurance over this issue.  (Ex. 24)

Mr. Weilbacher has not been able to cross-examine the person who filed the affidavit in support of Progressive's motion for summary judgment because the individual was never listed as a witness, and the person was disclosed after discovery had closed pursuant to this Court's Scheduling and Planning Order.  Mr. Weilbacher has been prejudiced and has not been able to counter this new affirmative defense raised by Progressive.  Furthermore, Mr. Weilbacher has shown that Progressive is not being candid with the Court because Progressive failed to cite to correspondence between Progressive and the Division of Insurance which specifically prohibits voiding a policy after an injury occurs, and other statutory authority which negates its argument.

### V.    PROGRESSIVE ACTED IN BAD FAITH WHEN IT DENIED RONALD WEILBACHER'S INDEPENDENT, SEPARATE DIRECT CLAIM FOR LOSS OF SOCIETY UPON THE DEATH OF HIS DAUGHTER.

Progressive has offered no cogent reason why it did not pay Ronald Weilbacher his separate per person limit for the mental anguish that he suffered because of the death of his daughter.  Progressive asserts that Mr. Weilbacher's loss of society claim was derivative, but has offered no evidence to support its

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 35 of 50

assertion.  When asked for documentation as to the intent of the policy language in dispute and whether it was modified to take into consideration the Alaska case law regarding independent claims for loss of society, Progressive claims all documentation has been lost.  Progressive denied Mr. Weilbacher's claim in a vacuum.

In a first-party action for breach of contract against an insured, the breach of duty by the insurer constitutes a tort action.

> We hold that, in the first-party context, an insured's cause of action against an insurer for breach of the duty of good faith and fair dealing sounds in tort.  The special relationship between the insured and insurer in the insurance context justifies this result.  State Farm contends that such a holding turns every breach of a commercial contract into a tort cause of action.  We disagree.  As commentators have noted:
>
> > The adhesionary aspects of the insurance contract, including the lack of bargaining strength of the insured, the contract's standardized terms, the motivation of the insured for entering into the transaction and the nature of the service for which the contract is executed, distinguish this contract from most other non-insurance commercial contracts.  These features characteristic of the insurance contract make it particularly susceptible to public policy considerations.

State Farm Fire & Cas. Co. v. Nicholson, 777 P.2d 1152, 1156-57 (Alaska 1989) (footnote omitted).   See also State Farm Mut. Auto. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992).

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 36 of 50

In 1992, in <u>Gillispie v. Beta Constr. Co.</u>, 842 P.2d 1272 (Alaska 1992), the Alaska Supreme Court stated that a parent whose child dies in a vehicle accident has an independent, separate claim for loss of society. The elements for a loss of society claim are very simple: (1) the child's death was negligently caused, and (2) the parent suffered mental distress as a result. <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Dowdy</u>, 111 P.3d 337, 343 (Alaska 2005), <u>citing</u> <u>to</u> <u>Gillispie</u>, 842 P.2d at 1273-74.

In 2001, the Alaska Supreme Court stated, in <u>State Farm Mut. Auto.</u> <u>Ins. Co. v. Lawrence</u>, 26 P.3d 1074, 1079 (Alaska 2001), that a claim for emotional distress is a direct claim, and not a derivative claim. <u>Lawrence</u> was decided on July 13, 2001, four days after the death of Heidi Weilbacher. At the time Heidi Weilbacher was killed, the Alaska case law clearly indicated that a parent's claim for mental anguish is a direct claim to the parent and is not derivative of the death of a child, and is entitled to a separate per person limit.

Danny Withers, the adjuster for this case, admitted in his deposition he sees no difference between an "NIED claim" and a loss of society claim. (Defendant's Ex. N, Withers Depo. at 40-41) Yet, Progressive still refused to compensate Mr. Weilbacher for the death of his daughter by asserting a loss of society claim is a derivative claim, rather than independent and separate, as set

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 37 of 50

forth by the Alaska Supreme Court.

There is no Alaska case law that supports Progressive declining to pay Mr. Weilbacher a separate per person policy limit. However, as early as 1992, and again reiterated four days after Heidi's death, the Alaska case law is quite clear--the parent of a child who dies in a car accident suffers an independent loss that is direct, not derivative, and is entitled to a separate per person limit.

The policy does not define derivative, and in fact, one is hard pressed in the Alaska case law to find what the term "derivative" means. Even Progressive's expert could not define derivative.

> Derivative is a term that strikes me of art, that is -- I believe there's a legal context to it that, I will confess to you, I don't fully understand.

(Defendant's Ex. O, Lohr Depo. at 70)

Since there is no reasonable, plausible explanation as to why Progressive declined Mr. Weilbacher his separate per person limit for his independent mental anguish claim, which was first set forth in 1992, and reaffirmed four days after Heidi's death in 2001, Progressive was acting in bad faith in not paying Mr. Weilbacher his per person limit.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 38 of 50

A.   **ADVICE OF COUNSEL IS A SHAM DEFENSE IN THAT DANIEL QUINN DID NOT GIVE ADVICE AS TO WHETHER THE POLICY ENTITLED RONALD WEILBACHER TO A SEPARATE PER PERSON LIMIT.**

At the eleventh hour, Progressive has tried to assert an advice of counsel defense in order to justify its declination of not paying Mr. Weilbacher a separate per person limit. However, in reviewing the testimony of Dan Quinn, he states that he never gave Progressive the advice to decline the coverage to Mr. Weilbacher. Mr. Quinn was only asked a short, distinct question as to whether the Teel case held that there was a direct action for loss of society. In responding to that specific question posed by Progressive's adjuster Danny Withers, Mr. Quinn told him what he thought the Teel case said.

Interestingly enough, Mr. Quinn stated that he did not discuss the Gillispie decision, nor the Lawrence decision, with Mr. Withers. Mr. Quinn said he did not even charge for the consultation because it was so brief, and since it was a cursory telephone conversation, he did not make any notes of the conversation. (Ex. 22, Quinn Depo. at 5-7)

Dan Quinn testified he did not advise Progressive whether to pay or not to pay the claim because Mr. Quinn did not even know the details of the claim. Mr. Quinn stated:

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 39 of 50

I would also say that I didn't advise Danny whether to pay or not to pay a claim. I didn't even know, and still don't, the details of this particular claim. You know, the purpose of his call was, you know, does the Teel case, you know, hold that, you know, a particular claim gives rise to another per person limit. And my response was, you know, I don't think it does hold that. That was really the gist of our conversation.

(Ex. 22, Quinn Depo. at 15)

Obviously, there cannot be an advice of counsel affirmative defense when counsel gave no advice.

[I]t is simply not enough for the carrier to say it relied on the advice of counsel, however unfounded, and then expect that valid claims for coverage can be denied with impunity pursuant to such advice.

Szumigala v. Nationwide Mut. Ins. Co., 853 F.2d 274, 282 (5th Cir. 1988).

It appears that Progressive has raised a sham defense in order to attempt to obfuscate its wrongdoing in denying Mr. Weilbacher's claim. By frivolously raising the advice of counsel defense, Progressive is admitting that it wrongfully denied Mr. Weilbacher his separate per person limit, and by asserting that it received advice of counsel not to pay the claim, Progressive is frivolously trying to prohibit a claim for punitive damages for its reckless disregard of Mr. Weilbacher's rights.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 40 of 50

**B.    PROGRESSIVE'S OWN EXPERT DOES NOT KNOW WHY, UNDER THE POLICY, WEILBACHER'S INDEPENDENT, SEPARATE CLAIM FOR LOSS OF SOCIETY HAS BEEN DENIED.**

Progressive hired an expert, Robert Lohr[6], to opine that Progressive was justified in denying Ronald Weilbacher's claim, but also concluded that Mr. Weilbacher is entitled to an independent, separate claim for loss of society for the death of his daughter.  Mr. Lohr admitted that the policy does not define "derivative," and he does not understand what derivative means.  But yet, Mr. Lohr opines that Progressive could decline to compensate Mr. Weilbacher for his loss because his claim is "derivative."  If Progressive's own expert does not know what a derivative claim means, how can Ronald Weilbacher know?

Mr. Lohr, in his report which has been submitted to the Court as Defendant's Ex. P [Docket No. 133], lists only four cases he reviewed to reach the conclusions in his report, and they are <u>Allstate v. Teel</u>, <u>Gillispie v. Beta Constr.</u>, <u>Hillman v. Nationwide</u>, and <u>Government Employees Ins. Co. v. Graham-</u>

---

[6]    Mr. Lohr, formerly the Commissioner of Insurance for the State of Alaska, is a personal friend of Gary Zipkin, plays racquetball with Mr. Zipkin several times a week, and also socializes with Mr. Zipkin.    (Ex. 23, Lohr Depo. at 19)  Mr. Zipkin encouraged Mr. Lohr to become an expert on insurance matters.  (<u>Id.</u>)  Forty percent of Mr. Lohr's business comes from the law firm of Guess & Rudd, and of the 30 cases on which he has been retained as a consultant, he has only been retained for the plaintiff's side once and that was regarding the interpretation of a health insurance policy.  (<u>Id.</u> at 16-19)

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 41 of 50

Gonzalez.  (Ex. 23, Lohr Depo. at 21)

In analyzing this case for Progressive, Mr. Lohr failed to consider the Alaska wrongful death statute, nor did he consider AS 09.15.010, although Progressive has taken the position that Mr. Weilbacher's claim is "derivative of" the wrongful death of Heidi Weilbacher.

In opining in his report, Mr. Lohr never considered AS 09.15.010, although he believes that he did review the statute.  (Id. at 24)  Mr. Weilbacher asserted his claim under AS 09.15.010 and the holding in Gillispie v. Beta Construction.

Mr. Lohr concedes he never considered whether Mr. Weilbacher had a separate, independent claim as set forth under Gillispie v. Beta Constr. Co..  (Ex. 23, Lohr Depo. at 40)  Mr. Lohr testified that he did not find definitions for the term "bodily injury each accident" or the term "bodily injury each person" in the Progressive policy.  (Id. at 58-59)  He also testified that he could not find a definition of the term "derivative" within the Progressive policy.  (Id. at 106)

Mr. Lohr admitted that he, with a master's degree from Harvard, cannot understand what derivative means.  (Id. at 70)  Mr. Lohr stated:

> Derivative is a term that strikes me of art, that is -- I believe there's
> a legal context to it that, I will confess to you, I don't fully
> understand.  I have focused on the language that the court has used
> in these cases which is separate, independent parental cause of

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 42 of 50

action, because I think I know what those terms mean through having studied them.

I'm not a lawyer. I don't claim to be a lawyer, so it's not a legal understanding. But I have tried to understand how those terms are used in the various cases and in the Alaska statutes. I have not done a comparable review for derivative, hence my reluctance to -- to speculate on an analogy like that.

(Ex. 23, Lohr Depo. at 70)

Mr. Lohr testified in his deposition that the insurance policy cannot exclude Mr. Weilbacher's independent parental cause of action for loss of society under AS 09.15.010. (<u>Id.</u> at 112)

Progressive's own expert admits he does not know the difference between derivative and a direct claim, but he does state an independent claim "stands alone." (<u>Id.</u> at 72-73) In his report, Mr. Lohr ignored the Alaska Supreme Court's decisions of <u>Lawrence</u> and <u>Dowdy</u>, which hold emotional distress/mental anguish claims are direct claims entitled to separate per person limits. (Ex. 23, Lohr Depo. at 22)

Mr. Lohr has opined that Progressive can deny Mr. Weilbacher his independent claim for the mental anguish he suffered upon the death of his daughter because it is derivative, although he himself does not know what derivative means. Clearly, Mr. Lohr's report should not be given any weight by this Court in support of Progressive, but his report does show that even an alleged

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 43 of 50

"expert" cannot comprehend why Progressive excluded Ronald Weilbacher's loss of society claim.

### C. PROGRESSIVE HAS SLANDERED RONALD WEILBACHER BY FALSELY ACCUSING HIM OF INTENTIONALLY MAKING A MISREPRESENTATION ON HIS INSURANCE APPLICATION.

Progressive claims that Mr. Weilbacher made a misrepresentation on his insurance application and alleges that his daughter Heidi was living with him at the time he filled out his insurance application.

Progressive conducted an extensive investigation of the coverage issue in this case, including interviewing Mr. Weilbacher and taking a statement from him. Progressive also gathered public information regarding Heidi Weilbacher and Danny Withers came to the conclusion that Heidi Weilbacher primarily lived with her mother, and stayed with her father during the summer.

Progressive was told by the Division of Insurance, even before Mr. Weilbacher applied for insurance, that it could never void a policy if there was a misrepresentation in the policy. Progressive acknowledged the Alaska statute that prohibits voiding a policy if there is a misrepresentation after an accident occurs.

Progressive has falsely accused Mr. Weilbacher of committing

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 44 of 50

misrepresentation and fraud, and are now trying to void the policy even though (1) legally it cannot do so, (2) it was told by the Division of Insurance that it could not do so, and (3) the factual investigation by Progressive shows that Mr. Weilbacher was telling the truth on his application.

### D. THE FACTS SUPPORT A FINDING OF BAD FAITH BY PROGRESSIVE.

In <u>Hillman v. Nationwide Mut. Fire Ins. Co.</u>, 855 P.2d 1321, 1324 (Alaska 1993), the Alaska Supreme Court stated:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard and lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. . . .

<u>Id.</u> at 1324.

Progressive has never stated a cogent reason for denying Mr. Weilbacher's individual, per person liability for loss of society that he suffered upon the death of his daughter. As far back as 1992, the Alaska Supreme Court has stated that Mr. Weilbacher has an independent, separate cause of action for loss of society.

Progressive has not cited any Alaska case that shows a loss of society claim is a derivative claim and not an independent, separate direct claim where a parent is to be compensated in their own right under a separate per

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 45 of 50

person limit.

Nowhere in the insurance contract does it state that a loss of society claim is a derivative claim and is not entitled to a separate per person limit.

Danny Withers himself admitted that there was no difference between an NIED claim, which would constitute a separate per person limit, and a loss of society claim, which Progressive asserts does not permit a separate per person limit.

Furthermore, even more outrageous, Progressive now alleges that Mr. Weilbacher committed misrepresentation and now wants to void the policy. Progressive was specifically told by the Division of Insurance that it could not void a policy when there is an alleged misrepresentation because the Alaska statute prohibits such.   For Progressive to now assert that Mr. Weilbacher committed  misrepresentation and fraud and the policy should be voided is clearly an intentional reckless disregard of the law and the facts in an attempt to deny coverage.

It is abundantly clear that the elements for the tort of bad faith have been met by the conduct of Progressive.  However, there is also a public policy rationale for punishing Progressive for their actions.  As Professor Widiss stated in his treatise *Uninsured and Underinsured Motorist Insurance*:

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 46 of 50

> [O]ne of the most compelling rationales for allowing insureds to recover punitive damages is that without such a remedy claimants are rendered virtually powerless in dealing with an insurer that arbitrarily denies a claim for insurance benefits.    Individual claimants seeking uninsured motorist insurance benefits almost uniformly do not have any significant leverage when dealing with a recalcitrant insurance company.  The possibility that the insurer's actions may subsequently be adjudged unreasonable for purposes of assessing punitive damages at least places insurers on notice that they do not have total immunity for cavalier, arbitrary, or capricious conduct.

Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 20.4 at 236 (3d ed. 2005) (footnote omitted).

Professor Widiss also states there are other justifications for awarding punitive damages, including insurance arrangements are "imbued with the public interest" and that the public's interest in assuring that claims adjusters and claims department managers, charged with the responsibility of evaluating an insured's request, accord the interests of the insured at least as much consideration as to the insurers.  (<u>Id.</u> at 236-37) Professor Widiss also stated that punitive damages are warranted because the:

> Unreasonable conduct by an insurer frustrates the public policy embodied in the applicable state insurance legislation, as well as breaching the implied-in-law duty to deal fairly and in good faith.

<u>Id.</u> at 237 (footnote omitted).  And last, but not least, Professor Widiss stated that in the context of claims for uninsured motorist insurance:

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 47 of 50

> [T]he one who pays the premiums for the uninsured motorist protection has the "reasonable expectation" that he will be dealt with fairly and in good faith by his insurer.

Id. (footnote omitted).

As Dan Quinn readily admitted in his deposition, the insurance policy does not define what a derivative claim is, and insurance adjusters Danny Withers and Adam Lund could not give a definitive answer as to why Mr. Weilbacher should not have received a separate per person limit for his independent claim.

The policy did not exclude a loss of society claim, and there was no good faith basis not to pay Mr. Weilbacher his loss of society claim as an independent and separate claim entitled to separate per person limits pursuant to Alaska law, AS 09.15.010.

Progressive has not shown any good reason not to award Mr. Weilbacher separate per person policy limits, and it has offered no good reason why it would slander Mr. Weilbacher by asserting misrepresentation and fraud when Progressive knew that Mr. Weilbacher was telling the truth when he signed the application for his insurance policy.  Progressive's conduct in this case is outrageous and it demands that the Court award punitive damages in this action.

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 48 of 50

## VI.    CONCLUSION.

This Court should find that Mr. Weilbacher is entitled to a separate per person limit for his claim of loss of society.  The Court should find that Progressive acted in bad faith when it denied Mr. Weilbacher's claim, and also acted in bad faith when it falsely accused Mr. Weilbacher of making a misrepresentation on his application in an attempt to void the policy.  This Court should find that punitive damages are warranted and hold a trial on that issue accordingly.

DATED this 7th day of June, 2007.

KENNETH W. LEGACKI, P.C.
Attorney for Plaintiff

By ___s/Kenneth W. Legacki___
    Kenneth W. Legacki
    Alaska Bar No. 8310132
    425 G Street, Suite 920
    Anchorage, AK  99501
    Phone: (907) 258-2422
    Fax: (907) 278-4848
    E-mail: legacki@gci.net

I HEREBY CERTIFY that on the 7th day of June, 2007, a copy of the foregoing document was electronically served on:

Gary A. Zipkin
Aisha Tinker Bray
Guess & Rudd

_____s/Kenneth W. Legacki_____

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK  99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 49 of 50

# INDEX OF EXHIBITS

Exhibit 22    -    Transcript of Deposition of Daniel Quinn,
                        taken May 31, 2007

Exhibit 23    -    Transcript of Deposition of Robert Lohr,
                        taken July 26, 2006

Exhibit 24    -    July 29, 1998 Letter from Division of Insurance
                    July 31, 1998 Letter from Karen Shaw

Exhibit 25    -    Index of Exhibits 1 through 21 filed with Docket No. 83,
                    Plaintiff's Opposition to Progressive's Alternate
                    Motion for Summary Judgment, dated September 15, 2006

Kenneth W. Legacki, P.C.
425 G Street, Suite 920
Anchorage, AK 99501
Telephone: (907) 258-2422
Facsimile: (907) 278-4848

PLAINTIFF'S OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT
Weilbacher v. Progressive - Case No. 3:05-cv-0204-TMB
Page 50 of 50