Daniel Quinn                         Ronald Weilbacher v. Progressive                         May 31, 2007

Page 10

1  Q. And is that per year or -- you know, I guess is
2  that per year?
3  A. I guess so, yeah.
4  Q. How many times have you -- before this phone
5  conversation with Withers, how many times have you
6  reviewed the policy for this particular issue?
7  A. I can't tell you how many times. I think the
8  main focus would be the Wold case because that was --
9  that probably was an issue in that case that I recall.
10 Q. And looking -- is there a difference between a
11 derivative claim and an independent claim?
12    MR. ZIPKIN: Again, this goes beyond the scope
13 necessary to form the basis for the statements made
14 during the phone conversation.
15    THE WITNESS: A derivative versus a -- what is
16 it?
17 BY MR. LEGACKI:
18 Q. Independent claim?
19 A. I'm not really sure. I think I would have to
20 see the language and the context. And I think that
21 sometimes that terminology gets used kind of loosely,
22 actually.
23 Q. Didn't you argue in Wold that the question, of
24 course, was to decide whether or not a claim is
25 independent or a derivative?

Page 11

1     MR. ZIPKIN: This is totally beyond the scope
2  of the court's order. And I personally don't think we
3  have to put up with it.
4     You're allowed to talk about the conversation
5  and the basis for opinions stated during the
6  conversation. If it isn't tied to that it's out of
7  bounds. And I intend to leave if --
8     MR. LEGACKI: If you want to leave, leave. I'm
9  going to ask some questions now. Go ahead, Dan.
10    MR. ZIPKIN: At some point very soon -- and I
11 think you're actually right on the border. You're
12 flouting the court's order.
13    MR. LEGACKI: Go ahead.
14    THE WITNESS: I guess I need to have more
15 information. The difficulty with even using this
16 terminology is that it's not entirely clear what it
17 means. And I'm not sure that it's dispositive of this
18 per person issue anyway.
19 BY MR. LEGACKI:
20 Q. Well, didn't you and the Supreme Court say that
21 there's independent versus derivative are two
22 different --
23 A. I may have said that. I tell you, I can't
24 remember my entire brief.
25    MR. ZIPKIN: Mr. Quinn, I'm going to advise you

Page 12

1  that -- of course, it's your decision, you're the
2  witness. You have been apprised of the court's order.
3  If this relates to your conversation with Mr. Withers, or
4  the basis for your opinion, then it's fair game. If it's
5  not, it's out of bounds.
6     THE WITNESS: Yeah.
7     MR. ZIPKIN: And I don't intend to let
8  Mr. Legacki ignore or violate the court's order.
9     THE WITNESS: I would say that, you know, what
10 I said in a brief was not the basis of my, you know,
11 brief conversation with Danny Withers. So I think this
12 probably is out of bounds based on that court order.
13 BY MR. LEGACKI:
14 Q. But you know the difference between a
15 derivative and independent claim?
16    MR. ZIPKIN: Same objection. This is a
17 strictly limited deposition, Mr. Legacki. If you can
18 relate it to the scope allowed by the court, fine.
19    MR. LEGACKI: Well, it was discussed in the
20 conversation.
21    MR. ZIPKIN: Well, actually it wasn't. What he
22 said in the Wold appeal was not discussed in the
23 conversation.
24 BY MR. LEGACKI:
25 Q. In the discussion with Mr. Withers you --

Page 13

1  Mr. Withers stated you talked about derivative claims and
2  independent claims. And I want to ask you, is there a
3  difference between an independent claim and a derivative
4  claim?
5  A. Well, I don't remember saying that to
6  Mr. Withers, which isn't to say that I didn't say it, but
7  I don't recall that. What I do recall saying is that
8  generally, consortium claims, in my view, do not give
9  rise to a separate per person limit. And that NIED
10 claims, at least under the Lawrence case, the Supreme
11 Court with some reservations said that in that case that
12 it did. And that's really about the extent of my
13 conversation with him.
14    I didn't talk about -- at least to my memory,
15 use the terms derivative or independent.
16 Q. Well, I guess you wrote the Wold brief before
17 you talked to Withers. And I just saw here -- would you
18 like to see what you wrote?
19    MR. ZIPKIN: I have the same objection. And I
20 think the witness has told you that it's out of bounds.
21 So it's up to you, Mr. Quinn. I'm not your lawyer.
22 BY MR. LEGACKI:
23 Q. Is there a difference between an independent
24 claim and a derivative claim?
25    MR. ZIPKIN: Same objection.

4 (Pages 10 to 13)

Southcentral Court Reporting
(907) 952-9572

EXHIBIT 22
Page 4 of 9

Page 14

1   THE WITNESS: I think I'm going to follow
2   Mr. Zipkin's advice. It just seems we're getting
3   beyond -- well beyond anything I discussed with
4   Mr. Withers.
5   BY MR. LEGACKI:
6   Q. Well, I'm trying to find out the basis for your
7   conversation. And you said it was -- I'm trying to show
8   that it all goes to the basis of your advice to
9   Mr. Withers not to pay this claim. And so one of the
10  things I want to know is, based on your previous
11  experience, and you wrote this to the Supreme Court
12  representing Progressive, and you made a representation
13  to the Alaska Supreme Court, as I read that, that an
14  independent claim is different than a derivative claim?
15  MR. ZIPKIN: Okay. You've made a number of
16  misrepresentations. And I believe they're all
17  deliberate. One, there was no decision by Progressive.
18  MR. LEGACKI: State your objection. And then
19  don't lecture, please, Gary. You're the one that is
20  violating the order here. Just make your objection.
21  MR. ZIPKIN: If you think you've got a basis
22  for seeking sanctions against me, you go for it.
23  Contrary to what you just said, there was no
24  decision by Progressive not to pay his claim. His claim
25  was paid. It was just paid under a single limit. So

Page 15

1   you're misrepresenting the facts to the witness. And I
2   know it's deliberate because you do it all the time.
3   And I didn't hear the witness say that he
4   discussed the difference between derivative and
5   independent. You assume there is a difference, by the
6   way. Your questions assume it, when there is no evidence
7   that there is a difference. You can have an independent,
8   yet derivative claim.
9   THE WITNESS: I would also say that I didn't
10  advise Danny whether to pay or not to pay a claim. I
11  didn't even know, and still don't, the details of this
12  particular claim. You know, the purpose of his call was,
13  you know, does the Teel case, you know, hold that, you
14  know, a particular claim gives rise to another per person
15  limit. And my response was, you know, I don't think it
16  does hold that. That was really the gist of our
17  conversation.
18  BY MR. LEGACKI:
19  Q. So did you or did you not, advise him on the
20  coverage issue in this case?
21  A. I told you -- I mean, I just told you the gist
22  of the conversation. You know, if you want to
23  characterize that as -- I guess you'd have to use your
24  own characterization as to whether I'm advising him on
25  anything. I just said I don't think that the Teel case

Page 16

1   addresses this particular issue.
2   Q. They raised -- as you know, they said advice of
3   counsel is an affirmative defense that shows not in bad
4   faith -- okay -- they -- Withers said he called you up --
5   and they put this in the pleadings as an affirmative
6   defense, and advice of counsel, so they didn't do
7   anything wrong. So we get it -- they're alleging
8   that you advised --
9   A. I advised him that the Teel case, in my view,
10  did not hold that -- did not hold anything about a
11  separate per person limit. It didn't even address the
12  issue. So in my view it didn't, you know, change the
13  status quo in Alaska law on that subject. That was my --
14  that was my discussion with him.
15  Q. And do you recall the Teel case?
16  A. Dimly. I mean, I glanced at it today, but I
17  don't -- I haven't studied it.
18  Q. It raises the issue of direct claim, right?
19  A. My recollection is that it raised the question
20  of whether a parent's NIED claim was covered under a
21  UM -- you know, UM coverage or UM policy that had UM
22  coverage on a vehicle that had not been issued to that
23  parent. That's my memory.
24  So the question was, can this parent assert a
25  claim? You know, are they an insured under that policy.

Page 17

1   That was the issue. And it seems like there may have
2   been some discussion of direct versus independent, but I
3   don't remember that.
4   Q. Is there a difference between direct and
5   independent?
6   A. I'm not quite sure what the difference is with
7   regard to the per person limit question. Because as I
8   understand what the Supreme Court says is, you've got to
9   look at the language of the policy to make that
10  determination.
11  Q. And you didn't look at the language of the
12  policy?
13  A. The language of which policy?
14  Q. The Progressive policy.
15  A. I didn't during my conversation with Dan
16  Withers. What I looked at was the Teel case because the
17  question was, does the Teel case address the issue of a
18  separate per person limit. And I looked at the Teel
19  case, and I said -- I concluded that it doesn't address
20  the issue of a per person limit.
21  Q. Didn't -- well let's look at the Teel case, if
22  you don't mind. Look at Page 5.
23  A. Page 5. Okay.
24  Q. In the first column on the left. "That Teel's
25  claim is direct does not bar the claim. The wording of

Page 18

1  Allstate's policy does not exclude direct claims. It
2  states that one would be entitled to recover so long as
3  one's damage were because of bodily injury to an occupant
4  of the insured vehicle." Do you see that?
5     A.  I'm not actually seeing it. Where is it on
6  the -- okay. All right. I see that paragraph.
7     Q.  And then it goes on at the bottom, "If Teel can
8  prove all the elements of a bystander NIED claim...the
9  injuries suffered by an individual entitled to recover
10 under the bystander exception to NIED claims, though not
11 derivative..."
12         MR. ZIPKIN: Hold on a second. You left out a
13 whole part of the sentence. You just acted like the
14 sentence said something totally different than what it
15 says.
16 BY MR. LEGACKI:
17    Q.  "The injuries suffered by an individual
18 entitled to recover under the bystander exception to NIED
19 claims, though not derivative, are the natural and
20 probable consequences of contemporaneously witnessing the
21 bodily injury suffered by someone with whom they have a
22 close relationship."
23    A.  Okay.
24    Q.  Do you see that?
25    A.  I see that.

Page 19

1     Q.  It's an independent, direct claim, right?
2     A.  Well, I mean, it says what it says. It
3  certainly says that it's a -- they do characterize it as
4  a direct claim. But I think you have to -- you know, the
5  question though, is whether the fact that it's a direct
6  claim means that it gives rise to another per person
7  limit.
8         And this case doesn't address that at all.
9  There is a case that does address that. And that's the
10 Lawrence case. And the Lawrence case does not say that
11 because it's a direct or independent claim it gives rise
12 to a per person limit. So I guess that's why I'm having
13 trouble with your language or your questions, which seem
14 to presuppose that characterization of a claim as direct
15 or independent, necessarily means that it gives rise to
16 another per person limit. I don't think that follows.
17    Q.  Did you refer to Lawrence when you talked to --
18    A.  I did not.
19    Q.  Okay. Lawrence came afterwards, didn't it?
20    A.  I don't think it did, but I could be wrong. I
21 think Lawrence came up before this one -- before Teel.
22    Q.  How about the Daughty case?
23    A.  The Daughty case came after. And Dowdy, I
24 believe, makes the same point that I'm making, which is
25 that whether an NIED claim gives rise to another per

Page 20

1  person limit, hinges on issues independent of whether
2  it's direct, whether it's characterized as a direct
3  claim. And that's also -- I mean, they're really just
4  reiterating what they said in Lawrence, but they
5  highlight that point.
6         In other words, whether something is direct is
7  not dispositive as to whether it gives rise to another
8  per person limit. At least that's my reading of those
9  cases.
10    Q.  We just had a decision come down to the Supreme
11 Court Friday, Ayers versus USAA.
12    A.  Yes.
13    Q.  And the court referred to a mirror image?
14    A.  Right.
15    Q.  What does that mean?
16         MR. ZIPKIN: Objection. This could not
17 possibly have formed the basis for any discussion between
18 this witness and Mr. Withers. You know it, so you're
19 deliberately ignoring the court's order.
20         Again, Mr. Quinn, it's up to you to decide
21 whether this goes beyond the court's order, which I want
22 to make sure you got, so I sent it to you. But if this
23 goes on, I intend to seek sanctions against Mr. Legacki,
24 I do. Because this is deliberately violating the court's
25 order.

Page 21

1         MR. LEGACKI: Go ahead.
2         THE WITNESS: I'm quite sure I didn't talk
3  about the mirror image rule with Mr. Withers during his
4  phone conversation. But in general, my understanding of
5  the mirror image rule is, that it refers to a
6  requirement, under some circumstances, that coverage
7  provided under liability portion of an auto policy apply
8  equally and the UM coverage of the policy. That's -- at
9  least that's my understanding of the mirror image rule.
10 BY MR. LEGACKI:
11    Q.  And did Mr. Wither ask you about that? Did you
12 discuss that in seeking your advice?
13         MR. ZIPKIN: First of all, his name is Withers,
14 with an "S" at the end.
15         THE WITNESS: I certainly -- I don't recall
16 having any discussion about that during our conversation.
17 BY MR. LEGACKI:
18    Q.  And you would have to look at the policy for
19 that, right?
20    A.  Well, to have a discussion about the mirror
21 image rule, I could probably talk about the mirror image
22 rule just as I have now without looking at the policy.
23 BY MR. LEGACKI:
24    Q.  Like to advise somebody as to whether or not to
25 pay on a policy, you would have to look at the policy,