IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RONALD V. WEILBACHER,

    Plaintiff,

-vs-

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

    Defendant.
_____/

Case No. 3:05-cv-0204-TMB



DEPOSITION OF ROBERT A. LOHR

Pages 1 - 147 inclusive

July 26, 2006, 9:00 a.m.

Anchorage, Alaska



EXHIBIT 23 PAGE 1 OF 38 PAGES

Page 1

Page 2

```
 1          IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF ALASKA
 3
 4   RONALD V. WEILBACHER,
 5        Plaintiff,
 6   -vs-
 7   PROGRESSIVE NORTHWESTERN
     INSURANCE COMPANY,
 8
          Defendant.
 9   _____/
     Case No. 3:05-cv-0204-TMB
10
11
12
13      DEPOSITION OF ROBERT A. LOHR,
14
15   Taken on behalf of the Plaintiff pursuant to notice, at
16   the offices of Alaska Stenotype Reporters, 511 West Ninth
17   Avenue, Anchorage, Alaska, before Britney Chonka, Court
18   Reporter for Alaska Stenotype Reporters and Notary Public
19   For the State of Alaska.
20
21
22
23
24
25
```

Page 3

```
 1              A-P-P-E-A-R-A-N-C-E-S
 2   For the Defendant:
 3
     GUESS & RUDD, P.C.
 4   Gary A. Zipkin
     510 L Street, Suite 700
 5   Anchorage, AK 99501
 6
 7
 8   For the Plaintiff:
 9
     Kenneth W. Legacki, Esquire
10   425 G Street, Suite 920
     Anchorage, AK 99501
11
12
13
14
15
16
17
18   Reported By:     Britney Chonka, Court Reporter
19
20
21
22
23
24
25
```

Page 4

```
 1                      I-N-D-E-X
 2
     EXAMINATION BY:                              PAGE
 3
     Mr. Legacki                                    5
 4
 5   Mr. Zipkin                                   143
 6
 7
 8
 9
     EXHIBITS:
10
     No. 1  Copy of Mr. Lohr's handwritten notes    6
11
     No. 2  Disclosure of Expert Witness Testimony 10
12
     No. 3  Copies of PACMAN sheets                44
13
     No. 4  Supplemental Brief of Appellee         73
14
     No. 5  LEXSTAT AS 09.55.570                   84
15
     No. 6  Copy of Webster's Dictionary pages    115
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1   THEREUPON:
 2                 ROBERT A. LOHR
 3   was called as a witness herein, after having been duly
 4   sworn upon oath by Britney Chonka, Notary Public, was
 5   examined and testified as follows:
 6                    EXAMINATION
 7   BY MR. LEGACKI:
 8       Q. Sir, would you please state your name for the
 9   record, spelling your last name.
10       A. Yes, Robert A. Lohr, L-O-H-R.
11       Q. Okay. How do you prefer to be called; Bob,
12   Robert, Mr. Lohr?
13       A. Bob is fine.
14       Q. Okay. You have some other notes there. What
15   exactly are those?
16       A. These are notes that I took yesterday on some of
17   the cases that I reviewed, re-reviewed, if you will.
18           MR. LEGACKI: Can we make a copy of this?
19           (Thereupon, a brief recess was taken, after
20           which the following proceedings were had:)
21   BY MR. LEGACKI:
22       Q. You also have a typed list here of other cases
23   that you reviewed; is that correct?
24       A. That's correct.
25       Q. When did you review these cases?
```

### Page 6

1  A. Some of them probably overlap things that were
2  on the original list with my report. So some of those
3  cases I reviewed in preparation for the report. A number
4  of the other ones, especially the ones that are not on
5  the original list of the report, are cases that I've
6  reviewed within the last week or two.
7  Q. So the cases that are not on your report is the
8  ones you reviewed the last week or two?
9  A. Yes, that's correct.
10 Q. Okay. And this is notes you took of -- of --
11 A. These -- sorry.
12 Q. I think we should mark that.
13     (Exhibit 1 was marked.)
14 BY MR. LEGACKI:
15 Q. And Exhibit 1 is where you, was it yesterday,
16 reviewed these cases and made some notes; is that
17 correct?
18 A. Yes.
19 Q. Okay. And we looked at some documents here that
20 you reviewed. And I -- a box here, and you have a lot of
21 them tabbed, I take it, here for a particular reason; is
22 that correct?
23 A. Yes.
24 Q. Okay. And what was the reason you tabbed these
25 things here?

### Page 7

1  A. I tabbed them as a note to myself, during the
2  review of something, that I wanted to pay particular
3  attention to.
4  Q. Okay. Then you have another list of things here
5  that you reviewed, which are these two cases of Hillman
6  versus Nationwide. And you have that on your other list
7  here, and Anderson versus Continental Insurance Company,
8  and you also have that on this list here?
9  A. That's correct.
10 Q. So why is -- is this different than this list,
11 or why did you add these two cases here?
12 A. The handwritten list you have there, the
13 supplemental list of materials reviewed with just those
14 two items on it, were things that I was taking note of to
15 add to my typewritten list.
16 Q. Oh, okay.
17 A. So that's where they're duplicated.
18 Q. So these are included in this?
19 A. That was my intention, yes.
20 Q. Okay. And you've met with Mr. Zipkin to prepare
21 for today's deposition?
22 A. I met with Mr. Zipkin last week.
23 Q. Last week?
24 A. Yes.
25 Q. Did you meet with anyone else from his firm?

### Page 8

1  A. I believe that Aisha Tinker Bray was on the
2  phone connected to that meeting --
3  Q. Was that --
4  A. -- an attorney from his firm.
5  Q. Right. In Fairbanks.
6  A. Yes.
7  Q. Was anyone else involved?
8  A. No.
9  Q. I notice an e-mail from Greg Grebe -- not Grebe,
10 Silvey, Greg Silvey. Did you talk to Greg Silvey at all?
11 A. I don't recall any discussions or correspondence
12 with Greg Silvey concerning this case.
13 Q. Okay. And how long did you and -- talk to Mr.
14 Zipkin and Ms. Brady -- Gray on the phone [as spoken]?
15 A. It was approximately one hour.
16 Q. What was discussed?
17 A. I reviewed my written expert opinion with them
18 and tried to cover the bases for my opinions in this
19 report.
20 Q. And did they advise you to make any changes or
21 anything to this report or to speak differently about
22 that report than what you'd already written?
23 A. No, they did not.
24 Q. Can you tell me specifically what they told you?
25 A. My recollection is that we reviewed the written

### Page 9

1  report and the bases for it. We talked about some of the
2  cases that were mentioned in my report. And that's my
3  recollection of it. It was not an intensive meeting or
4  anything like that.
5  Q. I also noticed that in your box here you had
6  material from the Wold case, W-O-L-D. When did you get
7  that material, like the briefing in the Supreme Court,
8  things like that?
9  A. I believe that information was provided at the
10 time of that meeting, from Guess & Rudd to me. You're
11 talking about the supplemental briefing to the Supreme
12 Court in the Wold case?
13 Q. Right. You got that last week?
14 A. I believe so, yes.
15 Q. Okay.
16 A. I had the Wold case itself earlier than that, is
17 my recollection.
18 Q. When did you have it earlier?
19 A. If I could refer to my expert report, that might
20 help me.
21 Q. Do you have that or do you need it?
22 A. I didn't bring a copy. I have several in the
23 box there, but if we have one with Bates numbers, I'd
24 just assume have the same reference points you have on
25 yours.

Page 10

1    (Exhibit 2 was marked.)
2    THE WITNESS: I don't see the Wold case referred
3    to in my materials reviewed for the expert report
4    that I did, nor in a quick review of the contents of
5    the opinion, do I see a specific reference to Wold.
6    So that leads me to believe that I looked at Wold
7    after this report was submitted.
8    My recollection is that it was probably done in
9    response to the time when I attended the deposition
10   that you conducted of Mr. Withers, but that's
11   surmise on my part.
12   BY MR. LEGACKI:
13   Q. Okay. Who gave you the materials to review?
14   Did you get them yourself or did somebody give them to
15   you to review for the report?
16   MR. ZIPKIN: Object to form.
17   THE WITNESS: That was -- it differed in
18   different cases. Some of the materials I obtained
19   directly through Westlaw. And other cases I
20   reviewed in hard copy volumes of Pacific 2nd and
21   other materials I received from Mr. Zipkin's office.
22   Those would be the three sources that, from which I
23   received -- well, a fourth, also not for cases, but
24   for Division of Insurance information would have
25   been Ms. Bray, Tinker Bray up in Fairbanks by

Page 11

1    electronic conveyance, by attachments to e-mails.
2    BY MR. LEGACKI:
3    Q. Okay. Maybe I'm a little confused. Let's go
4    through, then, what exactly did you get from the firm of
5    Guess & Rudd?
6    A. I got some of the cases that I felt were
7    relevant to the question, some of the legal opinions. I
8    got the electronic version of the Alaska Division of
9    Insurance files related to the Progressive form filing
10   with the Division. And I got, as we discussed, the
11   supplemental briefing materials on Wold last week.
12   Q. Okay. So you have here materials reviewed: I
13   reviewed the following documents in forming my opinions,
14   you have A.S. 21.36, 21.42, right? Or is that a misprint
15   or --
16   A. No, that's accurate. And Title 21, generally.
17   Q. Okay. Now, did they give that to you or did you
18   have that yourself, or did you go to research that
19   yourself?
20   A. I had that myself.
21   Q. You did that on your own, you researched that
22   title on your own?
23   A. That's correct.
24   Q. Okay. And you got the complaint and answer,
25   obviously, from Guess & Rudd; motion for summary

Page 12

1    judgment, you obviously got from it Guess & Rudd. The
2    policy, I'm assuming you got that from Guess & Rudd; is
3    that correct?
4    A. I believe so, yes.
5    Q. Okay. Schedule and planning order, you got that
6    from Guess & Rudd, right?
7    A. That's correct.
8    Q. Allstate versus Teel, did you get that from
9    Guess & Rudd?
10   A. No, I had that myself. I had that from the time
11   of the case.
12   Q. From what case?
13   A. From the time of Teel itself. I was actually
14   retained as an expert in Teel for a small role.
15   Q. You did not list that in your Rule 26
16   disclosure.
17   A. That's correct, because I was not deposed or did
18   not testify in Teel.
19   Q. And what was your role in Teel?
20   A. I was retained as an expert by Mr. Mark
21   Wilkerson, on behalf of Allstate, on the specific issue
22   of the $2500 kicker, the attorney's fee issue and only
23   that issue.
24   Q. Is there any other cases, that you've been an
25   expert in, that you have not listed here in the Rule 26

Page 13

1    disclosure?
2    A. I listed in Rule 26 disclosure those items
3    required by the Rule 26, which is those cases where I've
4    been deposed or testified in court. And I limited my
5    disclosure to that which the rule seems to require.
6    Q. My question is, have you been retained as an
7    expert in any other cases, other than the Teel case and
8    those listed in the disclosure here?
9    A. Yes.
10   Q. Okay. How many other cases?
11   A. Approximately 25.
12   Q. And who retained you?
13   A. Typically law firms, on behalf of either
14   insurers or, in a limited number of cases, plaintiffs.
15   Q. Insured, meaning insurance companies?
16   A. Insurers, yes.
17   Q. Insurers. Okay.
18   A. Yes.
19   Q. And several plaintiffs have retained you?
20   A. One plaintiff's firm has retained me.
21   Q. And who is that?
22   A. That was actually -- retained as a consultant,
23   so I didn't testify. I believe the matter's completed
24   now, so --
25   Q. What firm is that?