Robert Lohr                     Deposition                     July 26, 2006

Page 62

1  policy?
2     A. Yes.
3     Q. How is it defined?
4     A. Quote, bodily injury, bold-faced, close quote,
5  means bodily harm, sickness or disease, including death
6  that results from bodily harm, sickness or disease.
7     Q. Does it exclude emotional injuries?
8     A. The definition of bodily injury in the policy
9  does not make explicit reference to emotional injuries.
10    Q. So is it excluded or is it included?
11       MR. ZIPKIN: It's an incomplete hypothetical.
12 BY MR. LEGACKI:
13    Q. Is emotional distress excluded under the bodily
14 injury definition?
15       MR. ZIPKIN: Definition is not an exclusion.
16    Mischaracterizes the policy.
17 BY MR. LEGACKI:
18    Q. Well, does bodily injury mean emotional distress
19 issues?
20       MR. ZIPKIN: That calls for a legal conclusion.
21       THE WITNESS: As you know, the courts have
22    interpreted emotional distress as requiring bodily
23    injury or requiring that the bystander exception be
24    satisfied.
25 BY MR. LEGACKI:

Page 63

1     Q. I'm just asking is bodily injury -- is emotional
2  distress considered as a bodily injury?
3        MR. ZIPKIN: Object to form.
4        THE WITNESS: By whom? I'm not clear on the
5     question. I'm sorry.
6  BY MR. LEGACKI:
7     Q. By the parent. By anybody.
8        MR. ZIPKIN: The question is, does the parent
9     consider emotional distress to be bodily injury?
10 BY MR. LEGACKI:
11    Q. Does bodily injury mean only physical injury or
12 does it also mean mental injury?
13    A. For example, the Workers' Comp law treats stress
14 claims in the absence of physical injury, bodily injury
15 as a different category requiring a different standard of
16 proof than a -- an injured worker through a bodily
17 injury.
18    Q. So what does the Progressive policy -- I'm not
19 talking about the Workers' Comp. I'm talking about
20 Progressive's policy. Define bodily injury. Does it
21 include emotional distress?
22    A. I just note that your previous question referred
23 to anywhere, defined anywhere.
24    Q. In the policy, I'm sorry.
25       MR. ZIPKIN: Object to form.

Page 64

1        THE WITNESS: Bodily injury means bodily harm,
2     sickness or disease, including death that results
3     from bodily harm, sickness or disease.
4  BY MR. LEGACKI:
5     Q. Well, I guess my question is, you're the expert,
6  does that include emotional injuries?
7        MR. ZIPKIN: Object to form. Are you talking
8     about negligent infliction of emotional distress?
9  BY MR. LEGACKI:
10    Q. No, just emotional injuries with bodily injury?
11    A. I -- the question is so vague that I have real
12 difficulty saying without more details on the
13 hypothetical. If you can give me an example of emotional
14 injury that you're talking about.
15    Q. A parent losing their daughter, like
16 Mr. Weilbacher.
17       MR. ZIPKIN: Well, that claim was a claim for
18    loss of society.
19 BY MR. LEGACKI:
20    Q. Emotional injury, the greatest injury a parent
21 can ever suffer, would that be included under bodily
22 injury?
23       MR. ZIPKIN: Object to form.
24       THE WITNESS: The courts have held that
25    negligent infliction claims can qualify as physical

Page 65

1     injury under the bystander exception, if a -- and if
2     a NIED claimant is present at an accident scene.
3        MR. ZIPKIN: For the record, when you say NIED,
4     he means N-I-E-D.
5  BY MR. LEGACKI:
6     Q. Well, doesn't the Lawrence decision state that,
7  Lawrence -- loss of consortium would be a separate policy
8  award, per-person award?
9        MR. ZIPKIN: Object to form. Different policy,
10    not the Progressive policy, irrelevant.
11       THE WITNESS: My recollection is that the
12    Lawrence opinion deals with negligent infliction
13    claims.
14 BY MR. LEGACKI:
15    Q. Don't they also address the loss of consortium
16 as well?
17    A. I believe they touch on it, yes.
18    Q. Don't they say that -- let's look at page 1079.
19 Even if we consider Lawrence's parents' claims to be akin
20 to claims for loss of consortium, State Farm will not
21 necessarily prevail on a separate policy limits issue.
22       MR. ZIPKIN: What's the question?
23 BY MR. LEGACKI:
24    Q. Do you see that, sir?
25    A. I see that. Thank you.

### Page 66

1   Q. Okay. As noted above, the dispositive questions
2   interpreting aspects in Lawrence's policy as to whether
3   the Lawrence's parents suffered bodily injury and whether
4   such bodily injury was suffered in the same accident that
5   injured their son. You see that?
6       MR. ZIPKIN: And the next sentence.
7       MR. LEGACKI: His weight is (inaudible)
8   pertaining to these questions.
9       THE WITNESS: If I may, it says: State Farm has
10  waived its arguments pertaining to these questions.
11  BY MR. LEGACKI:
12      Q. That's right.
13      A. And would you repeat your question, please?
14      Q. Don't they say that there's a possibility they
15  can still get per-person limits for loss of consortium?
16      MR. ZIPKIN: Object to form. If the insurer
17  waives the argument, I suppose.
18      THE WITNESS: The Lawrence court said that State
19  Farm would not necessarily prevail on the separate
20  policy limits issue. "Not necessarily."
21  BY MR. LEGACKI:
22      Q. Right. Thank you.
23      Not necessarily, right.
24      So if an above -- paragraph above that it says:
25  Other courts have rejected arguments equating emotional

### Page 67

1   distress and loss of consortium. We agree with those
2   courts. Unlike claims for loss of consortium, claims for
3   emotional distress concern injuries that the claimants
4   have suffered directly, rather than derivative injuries
5   that result from an injury to another.
6       You see that?
7       A. I do.
8       Q. So forget the loss of consortium. If a parent
9   suffers emotional injury directly because of the death of
10  their daughter, would they be covered under the policy?
11      MR. ZIPKIN: This is attempting to mislead the
12  witness about the claim that you're presenting in
13  this case and the claim recognized by our court in
14  Gillispe, which was a loss of society claim, not a
15  claim for emotional distress.
16  BY MR. LEGACKI:
17      Q. Go ahead.
18      A. I recall that in the request for admissions --
19  there may be a different overall title, but it was a
20  portion of a document that you responded to, Mr. Legacki,
21  concerning requests for admissions, you admitted
22  specifically that this was a loss of consortium claim
23  under 09.15.010.
24      Q. Right.
25      A. And that this was not an emotional distress

### Page 68

1   claim.
2       Q. Right. What does the Gillispie decision say?
3   It's a separate, independent claim, correct?
4       MR. ZIPKIN: Object to form.
5       THE WITNESS: Are you asking --
6       MR. LEGACKI: Yeah.
7       THE WITNESS: -- what does the Gillispie
8   decision say about that?
9   BY MR. LEGACKI:
10      Q. Let's look at your Exhibit Number 1.
11      A. Okay.
12      Q. Gillispie versus Beta, this is your notes:
13  09.15.010 creates a separate, independent parental cause
14  of action, including the right to recover loss of
15  society. You see that?
16      A. I do.
17      Q. Okay. So that means it would be a separate
18  claim and not derivative of the wrongful death claim of
19  the daughter, correct?
20      A. No, that's not correct.
21      Q. Why is that not correct?
22      A. Because you are substituting for the court's
23  terminology, where they said separate, you are
24  substituting non-derivative.
25      Q. Is an independent -- is independent and

### Page 69

1   derivative synonymous?
2       A. I'm sorry, ask that again, please.
3       Q. Is independent and derivative synonymous?
4       A. As we discussed earlier, a derivative claim is
5   one that grows out of the injury or the claim of another.
6   And the court said in Gillispie that, in fact, that
7   statute 09.15.010 does create a separate, independent
8   cause of action.
9       Q. Right. So is derivative and independent
10  synonymous?
11      MR. ZIPKIN: I'm going to object to form.
12      THE WITNESS: I recall a different court -- this
13  court, in a different case, having difficulty
14  defining the terms and how they affect coverage
15  under a policy. And what they said was the way to
16  determine this is to look to the language of the
17  policy itself. And that these distinctions don't
18  determine coverage or lack of coverage, they
19  determine access to the courts, they determine the
20  validity of filing a claim, the right to file a
21  claim, but that they do not -- the most useful thing
22  in interpreting coverage under a policy is the
23  language of the policy itself, the objective
24  reasonable expectation of the claimant or
25  policyholder and the extrinsic evidence about what

### Page 70

1  they believed at the time of the claim. Those are
2  the things that --
3  BY MR. LEGACKI:
4  Q. Sir, you're a graduate of Swarthmore, you're a
5  graduate of MBA -- or not MBA, a master's degree from
6  Harvard. It's a very simple question. The English
7  language, is derivative and independent synonymous terms?
8       MR. ZIPKIN: If we're using the English
9  language, if you would start the question with the
10 word "are" not "is".
11      THE WITNESS: Derivative is a term that strikes
12 me of art, that is -- I believe there's a legal
13 context to it that, I will confess to you, I don't
14 fully understand. I have focused on the language
15 that the court has used in these cases which is
16 separate, independent parental cause of action,
17 because I think I know what those terms mean through
18 having studied them.
19     I'm not a lawyer. I don't claim to be a lawyer,
20 so it's not a legal understanding. But I have tried
21 to understand how those terms are used in the
22 various cases and in the Alaska statutes. I have
23 not done a comparable review for derivative, hence
24 my reluctance to -- to speculate on an analogy like
25 that.

### Page 71

1  BY MR. LEGACKI:
2  Q. Sir, I'm just -- it's a -- let's assume you're
3  writing a paper. Okay? And we're just talking English
4  101 here.
5  A. Okay.
6  Q. Is derivative and independent synonymous terms?
7       MR. ZIPKIN: Those aren't the only choices.
8  It's a logical fallacy. I object on form and
9  substance to the question.
10 BY MR. LEGACKI:
11 Q. Go ahead.
12      THE WITNESS: Do you have a dictionary I might
13 borrow?
14      MR. ZIPKIN: There are times when independent
15 may be derivative, there are times when it may not
16 be.
17 BY MR. LEGACKI:
18 Q. Are they synonymous terms?
19     Do you know what synonymous terms mean?
20 A. I do. That's not my concern.
21 Q. I know it's not your concern, I'm --
22 A. I mean, it's not my difficulty.
23 Q. I know it's not. I'm just asking if -- if your
24 kid, anybody, if your wife or somebody's writing a paper
25 and they say is derivative and independent synonymous,

### Page 72

1  what would you say?
2       MR. ZIPKIN: I object. There are times when an
3  independent claim may be derivative and there are
4  times when an independent claim may not be
5  derivative. What about that? You present him with
6  a limited choice that's not complete.
7  BY MR. LEGACKI:
8  Q. Go ahead.
9  A. I do believe that independent and derivative
10 operate on different planes, and at times they are
11 synonymous and other times it would be a poor synonym to
12 analogize the two.
13 Q. When are they synonymous?
14 A. Those -- that's something where I would like to
15 do more homework before I give an opinion, because, as I
16 indicated, I have not tried to study the question of
17 derivative. Independent I have, but the derivative part
18 and its -- how close it is to independent or how far away
19 it is from independent is not something that I have
20 thought about enough to have an intelligent answer.
21 Q. So you said you did some research on
22 independent, is that the phrase you used or --
23 A. I've tried to look at that term as used in the
24 court cases and in the Alaska statutes, yes.
25 Q. What's your conclusion on that?

### Page 73

1  A. That independent does not depend on other
2  things, it stands alone.
3  Q. Right.
4       MR. ZIPKIN: This is normally the time we take a
5  lunch break. You say you're pretty much going to go
6  all day?
7       MR. LEGACKI: Yeah. I just want one last thing
8  here.
9  BY MR. LEGACKI:
10 Q. You had in your pile there, the briefs from the
11 Wold case; is that correct?
12 A. I believe what I had was the supplemental
13 briefing on Wold.
14      (Exhibit 4 was marked.)
15 BY MR. LEGACKI:
16 Q. You remember seeing that, sir? You were given
17 that after you had done your report?
18 A. Yes, I do remember.
19 Q. I'd like to -- next page. I just took this one,
20 page 9, here. They argue that Gillispie does not answer
21 the question as to whether a parent's statutory loss of
22 consortium claim for the death of a child is considered
23 to be derivative or independent.
24     Do you see that?
25 A. Yes, I do.

Page 74

1    Q. And Progressive, in this particular case, is not
2    taking the position that they're synonymous, they're
3    taking the position that they're different and distinct
4    claims, correct?
5        MR. ZIPKIN: Object to form.
6        THE WITNESS: I'd like to review the entire
7    filing.
8    BY MR. LEGACKI:
9    Q. I'm just asking how that phrase is used there,
10   "derivative or independent" the or means they're two
11   distinct things. They're not synonymous, correct?
12       MR. ZIPKIN: Object to form. And it doesn't
13   matter what this brief says on that subject. It is
14   not binding in any way in this case.
15       THE WITNESS: I'd prefer to review the
16   supplemental brief.
17   BY MR. LEGACKI:
18   Q. Just answer the question. You can come back and
19   clarify it later on if you'd like.
20   A. I prefer to review it before I answer the
21   question.
22   Q. You know, I'd like you just to answer the
23   question that's on the table.
24       MR. ZIPKIN: You can't force a witness to do
25   that which the witness is unwilling to do, so I

Page 75

1    don't know what the point of this is.
2        THE WITNESS: I'll try to answer. Your
3    interpretation is, one possible interpretation of
4    having both of those terms together, is to set them
5    against each other.
6        The other possible interpretation is that those
7    are two separate items that are being considered
8    under the question the court has raised. My
9    recollection is that the court wanted to know
10   whether a loss of society claim can trigger a
11   separate per-person policy limit. And separate
12   per-person are pretty clear terms.
13       Derivative or independent, I would want --
14   particularly on the derivative, I'd want to review
15   the entire filing in order to say anything more
16   about it.
17   BY MR. LEGACKI:
18   Q. Well, I'm -- just want that one sentence.
19   Specifically, Gillispie does not answer the question,
20   whether parent's statutory loss of consortium claim where
21   the death of a child is considered derivative or
22   independent.
23       MR. ZIPKIN: So what's the question?
24   BY MR. LEGACKI:
25   Q. The question is are they two separate, distinct

Page 76

1    things; derivative and independent?
2    A. And I believe I just answered that question by
3    saying that one interpretation is they could be as
4    oppositional, as opposed to each other. And another is
5    they could be two items that are being separately
6    considered for whether they meet this test.
7    Q. Okay.
8        MR. LEGACKI: Let's take a lunch break.
9        (Thereupon, a brief luncheon recess was
10       taken, after which the following proceedings
11       were had:)
12   BY MR. LEGACKI:
13   Q. Okay. Do you have Exhibit 1 there? Your notes
14   for the four cases?
15   A. Yes, I do, thank you.
16   Q. You went and looked at State Farm versus Dowdy
17   at the top page there?
18   A. Yes.
19   Q. You have noted there, it says: No showing of
20   physical injuries required.
21       Does that mean for a loss of society claim?
22   A. I believe it does, yes.
23   Q. Okay. So you could have a bodily injury with no
24   showing of physical injury required?
25       MR. ZIPKIN: Objection, that mischaracterizes

Page 77

1    what he said.
2        MR. LEGACKI: Well, I'm asking.
3        MR. ZIPKIN: Deliberately mischaracterizes what
4    he said.
5        THE WITNESS: Under State Farm versus Dowdy, the
6    parental loss of society did not require a showing
7    of physical injury.
8    BY MR. LEGACKI:
9    Q. Okay. Does that meet the requirement of a
10   bodily injury under a policy, do you know?
11   A. I don't recall the specific language of the
12   State Farm policy with respect to bodily injury in that
13   case.
14   Q. So if loss of society -- let me ask you this, if
15   loss of society is not a bodily injury, would you still
16   be able to claim under underinsured motorist policy?
17       MR. ZIPKIN: Incomplete hypothetical.
18       THE WITNESS: Would you repeat the question,
19       please?
20       (Whereupon, the above referred to question
21       was read back by the court reporter, and the
22       following proceedings were had:)
23       MR. LEGACKI: Collect under underinsured
24   motorists policy.
25       MR. ZIPKIN: Same objection.