Robert Lohr      Deposition      July 26, 2006

---

Page 78

1  THE WITNESS: In order to answer the question, I
2  would want to review the language of the policy
3  itself, the entire policy and the claim itself in
4  its entirety to know whether that's the case. Those
5  are both important attributes, and without having
6  those fleshed out in the hypothetical, I can't give
7  you an answer.
8  BY MR. LEGACKI:
9     Q. So you were retained as an expert in this case
10 to determine whether or not Mr. Weilbacher has a claim
11 under AS 09.15.010, which states that he has a loss of
12 society claim for -- an independent loss of society claim
13 for his daughter and you can't tell me whether or not
14 it's covered under the policy?
15    MR. ZIPKIN: Mis --
16    THE WITNESS: That's not what I said.
17 BY MR. LEGACKI:
18    Q. Can you tell me?
19    A. That's a different question. The one you asked
20 was in the context of State Farm versus Dowdy.
21    Q. I'm -- I changed it. Under the Progressive
22 policy, can Mr. Weilbacher collect under the underinsured
23 motorist policy of Progressive for loss of society?
24    MR. ZIPKIN: Objection. Are you saying separate
25 per-person limit or under the same per-person limit

Page 79

1  that pays off for the death of the daughter?
2  Separate per-person or same per-person? If you're
3  willing to help me understand the question.
4  BY MR. LEGACKI:
5     Q. Let's do it under separate per-person.
6     A. I believe Mr. Weilbacher has already been
7  compensated under the Progressive policy as part of the
8  single per-person limit and that he is not entitled to
9  addition -- an additional separate per-person claim of
10 his own.
11    Q. Okay. Well, let's assume that he was -- since
12 bodily injury is not clearly defined, okay, you mentioned
13 before that you didn't know what -- the definition of
14 bodily injury. So let's assume he's not covered under
15 that particular clause, bodily injury clause, because he
16 did not suffer, quote, bodily injury. Would he still be
17 able to collect under the underinsured motorist policy?
18    MR. ZIPKIN: Objection, mischaracterizes his
19 answer. He read you the definition of bodily injury
20 from the Progressive policy.
21    THE WITNESS: That's basically what I was going
22 to say, is that I think it is clearly defined under
23 the policy, bodily injury. But if you could give me
24 the follow-up to that so I can remove that faulty
25 premise and try to answer the rest of your question,

Page 80

1  I'd be happy to do it.
2  BY MR. LEGACKI:
3     Q. I thought you said you could not answer what
4  bodily injury means.
5     A. No. I was trying to find the terms that were
6  described in the State Farm case in the Progressive
7  policy and could not find those terms.
8     Q. How -- how --
9     A. I did find, and I read, the definition of bodily
10 injury from the Progressive policy.
11    Q. Under Progressive would he be -- what is the
12 definition of bodily injury in the Progressive case --
13 Progressive policy?
14    A. Bodily injury means bodily harm, sickness or
15 disease, including death that results from bodily harm,
16 sickness or disease.
17    Q. Okay. So if he, Mr. Weilbacher, only had severe
18 mental depression, mental anguish, would he be covered
19 under the bodily injury claim?
20    MR. ZIPKIN: Object to form.
21    Actually, can I have the question back please,
22 if you don't mind.
23    (Whereupon, the above referred to answer was
24 read back by the court reporter, and the
25 following proceedings were had:)

Page 81

1  BY MR. LEGACKI:
2     Q. Definition of bodily injury?
3     MR. ZIPKIN: Object to form. It's an incomplete
4  hypothetical.
5     THE WITNESS: I believe he would be covered
6  under that definition.
7  BY MR. LEGACKI:
8     Q. Okay.
9     Now, you did not read the Alaska Wrongful Death
10 Statute or did not refer to it in your report, did you?
11    MR. ZIPKIN: Which question are you asking?
12 BY MR. LEGACKI:
13    Q. You did not refer to the Alaska Wrongful Death
14 Statute in your report, did you?
15    A. That's correct.
16    Q. Okay. Do you know if, under the Wrongful Death
17 Statute, Mr. Weilbacher can claim loss of society or loss
18 of consortium?
19    MR. ZIPKIN: Calls for a legal conclusion, and
20 is an incomplete hypothetical.
21    THE WITNESS: Your question is whether he can
22 claim that?
23 BY MR. LEGACKI:
24    Q. Under the Wrongful Death Statute, Alaska
25 Wrongful Death Statute, is he entitled to a loss of

---

EXHIBIT 23, PAGE 21 OF 38      21 (Pages 78 to 81)

Alaska Stenotype Reporter (907) 276-1680

Robert Lohr             Deposition                   July 26, 2006

Page 82

1  consortium, loss of society claim?
2      MR. ZIPKIN: Same objections. Incomplete
3  hypothetical. You're not telling the witness to
4  assume or not assume whether Mr. Weilbacher was
5  dependent upon his daughter.
6  BY MR. LEGACKI:
7      Q. I just asked.
8      I'm sorry, assuming he's not depending on his
9  daughter, he's a parent, can he claim loss of consortium,
10 loss of society under the Wrongful Death Statute?
11     MR. ZIPKIN: Same objection.
12     THE WITNESS: I need to clarify whether your
13 question is, can he make the claim or whether he's
14 entitled to make it in the sense that it would be
15 found valid?
16 BY MR. LEGACKI:
17     Q. Either or. If he's not entitled to it, he can't
18 make it, can he? Is he permitted, under the Wrongful
19 Death Statute, to collect for loss of society or loss of
20 consortium?
21     MR. ZIPKIN: Object to the extent people make
22 frivolous claims all the time.
23 BY MR. LEGACKI:
24     Q. If you look at the contract, I'm talking about
25 Wrongful Death Statute.

Page 83

1      A. I understand. I'm thinking about the answer.
2      MR. ZIPKIN: Same objections, calls for a legal
3  conclusion, and is an incomplete hypothetical.
4      THE WITNESS: I don't know the answer.
5  BY MR. LEGACKI:
6      Q. Well, don't you think that's important to know,
7  whether or not he has a right to collect for loss of
8  society, loss of consortium under the Wrongful Death
9  Statute when you analyze his claim and analyze the policy
10 language?
11     A. I understand that Mr. Weilbacher has the -- is
12 entitled to make a claim under the loss of consortium
13 provision.
14     Q. Under what; Wrongful Death Statute?
15     A. That's the part that I have not focused on. As
16 I indicated this morning, I have not focused on the
17 Wrongful Death Statute itself.
18     Q. Do you think, for your analysis of
19 Mr. Weilbacher's claim as to whether or not it's
20 separate, dis -- or derivative, or direct or derivative,
21 that you should understand the Wrongful Death Statute?
22     MR. ZIPKIN: Objection. Claim here is not
23 presented under the Wrongful Death Statute. You've
24 presented it under AS 09.15.010. So objection,
25 irrelevant.

Page 84

1      THE WITNESS: And I believe you included in your
2  stem to the question several different concepts,
3  some of which are found in the case that established
4  the right to a claim under 09.15.010, others of
5  which were not included, so that's confusing to me.
6  BY MR. LEGACKI:
7      Q. I'm talking -- does Mr. Weilbacher, being the
8  parent of Heidi, their 15-year-old daughter, who is not
9  dependent upon her, does he have a right -- entitled to a
10 claim under the Alaska Wrongful Death Statute?
11     A. And I answered that question.
12     Q. And I'll -- that is no, correct? Or yes or no,
13 I don't know; what is it?
14     A. My answer was I don't know.
15     Q. Okay. Do you think that you, in analyzing
16 Mr. Weilbacher's present claim as to whether or not it is
17 a direct or derivative claim, should understand the
18 Wrongful Death Statute and what it permits?
19     A. I felt that it was sufficient to understand the
20 nature of the claim that he actually brought under the
21 policy and the contentions related to both the statute
22 under which the claim was brought and the case law that
23 relates to that statute.
24     Q. Let's look at --
25     (Exhibit 5 was marked.)

Page 85

1  BY MR. LEGACKI:
2      Q. I'd like to hand you a printout of the Alaska
3  Statute, there's two of them here, AS 09.55.570 and AS
4  09.55.580. .570, the Survival Statute and .580 is the
5  Wrongful Death Statute.
6      Let's look at .580, if you could, middle of the
7  paragraph where it says: When the decedent's survived by
8  no spouse or children or other dependents, the amount
9  recovered shall be administered as other personal
10 property of the decedent but shall be limited to
11 pecuniary loss.
12     Do you see that?
13     A. I do.
14     Q. What does that mean to you?
15     MR. ZIPKIN: Calls for a legal conclusion.
16     THE WITNESS: I'd like to read the entire
17 section.
18     MR. LEGACKI: Sure.
19     THE WITNESS: I've reviewed the section. Would
20 you repeat your question.
21 BY MR. LEGACKI:
22     Q. When a decedent's survived by no spouse or
23 children or other dependents, the amount recovered shall
24 be administered as other personal property of the
25 decedent but shall limited to pecuniary loss.

EXHIBIT 23 PAGE 22 Of 38 PAGES          22 (Pages 82 to 85)

Alaska Stenotype Reporter (907) 276-1680

## Page 86

1  What does that mean?
2  MR. ZIPKIN: Calls for legal conclusion.
3  I refer Counsel to in re: Pushruk,
4  P-U-S-H-R-U-K, for a definition, if he wants it.
5  THE WITNESS: I believe it means that if the
6  decedent has no surviving spouse or children or
7  other dependents, there is a limitation placed by
8  the statute on the amount that is subject to
9  recovery under the Wrongful Death section.
10 BY MR. LEGACKI:
11 Q. And what is that recovery limited to?
12 A. To the pecuniary loss.
13 Q. Which means what?
14 MR. ZIPKIN: Same objections. And it's
15 irrelevant.
16 THE WITNESS: I believe that's a restriction
17 along the lines of financial loss. It's a
18 subcategory of the overall loss, it's a restriction
19 on it. And I believe it relates to financial loss.
20 BY MR. LEGACKI:
21 Q. So it's loss of consortium, financial loss or
22 can a -- can a person, under that category survived by no
23 spouse or children, can somebody collect loss of
24 consortium damages under the Wrongful Death Statute?
25 MR. ZIPKIN: Same objections.

## Page 87

1  THE WITNESS: Loss of consortium is a
2  permissible consideration for a jury or a court in
3  figuring the amount of damages under the section.
4  BY MR. LEGACKI:
5  Q. For somebody who has no spouse or children or
6  other dependents?
7  MR. ZIPKIN: The question is nonsensical.
8  Again, it's calling for a legal conclusion.
9  THE WITNESS: Subsection A is ex -- excludes
10 subsection F causes felonious killing, that's not
11 relevant to your question. I'm just trying to
12 examine subsection A to look at the interplay of the
13 sentence that you quoted and subsection C where the
14 permissible, but not required, considerations for
15 fixing damages are listed.
16 MR. ZIPKIN: We will stipulate that Mr. Lohr was
17 not retained to determine whether a loss of
18 consortium claim can be brought by a nondependent
19 parent under the Wrongful Death Statute. He was not
20 retained for that purpose. It's irrelevant.
21 THE WITNESS: It appears to me that the
22 restrictive language in subsection A certainly
23 suggests that the list of allowable considerations
24 in subsection C do not include a fatally injured
25 person with no spouse or children or other

## Page 88

1  dependents that survived them.
2  BY MR. LEGACKI:
3  Q. So Mr. Weilbacher, a parent of Heidi, cannot
4  collect a loss of consortium claim under the Wrongful
5  Death Statute, can he?
6  A. This is a matter of first impression for me to
7  actually review the statute and try to look at how they
8  work together. And what I would want to do is to look at
9  the case law that relates to this section before
10 expressing an opinion on that subject.
11 Q. Well, we're involved in this litigation now. I
12 mean, you need more time to review this issue as it
13 relates to this litigation?
14 MR. ZIPKIN: I'll make it easy for you. I'll
15 offer a stipulation that we agree that
16 Mr. Weilbacher, if he is nondependent, cannot assert
17 a loss of consortium claim under the Wrongful Death
18 Statute. That appears to be what you're suggesting,
19 is the assumption you should have, I'll stipulate.
20 MR. LEGACKI: This is your expert you hired to
21 give a legal opinion, or give an expert opinion in
22 this case. I'm just trying to find out what he
23 knows. If he doesn't understand the Wrongful Death
24 Statute, I -- I -- you know --
25 MR. ZIPKIN: I'm offering you a stipulation.

## Page 89

1  You can take it or not take it. He was not hired
2  for the purpose of determining whether
3  Mr. Weilbacher has a loss of consortium claim as a
4  nondependent under the Wrongful Death Statute. That
5  wasn't part of his assignment, so I don't understand
6  the purpose of the question. I offered you a
7  stipulation. If you want it, take it. If you
8  don't, fine.
9  BY MR. LEGACKI:
10 Q. Well, the trouble about it is -- do you know --
11 do you recall whether Withers testifying as -- that Mr.
12 Weilbacher's claims were derivative because of the
13 wrongful death of his daughter, his loss of consortium,
14 loss of society claim; do you remember him saying that?
15 A. What I remember is Mr. Withers, at his
16 deposition, saying that they were derivative claims. I
17 don't recall the causation that he attributed.
18 Q. Let's look. Would you like to see his
19 testimony?
20 A. I'd be happy to review it, if you wish.
21 MR. ZIPKIN: You have it, but we weren't
22 provided it?
23 MR. LEGACKI: I got it from the -- on the
24 Internet. I downloaded it from the Internet.
25 MR. ZIPKIN: I'd like to know why this was made

Robert Lohr                     Deposition                     July 26, 2006

Page 90

1  available to the other side and not to me.
2      MR. LEGACKI: Check your e-mail.
3      MR. ZIPKIN: So I object to any question related
4  to this.
5  BY MR. LEGACKI:
6  Q. Let's look at the bottom left-hand corner.
7  A. I have that page.
8  Q. Question, line 13: What do you mean by
9  derivative.
10     Answer, it means it's derivative of the single
11 bodily injury. It's a claim that's derivative of a
12 wrongful death claim in this case.
13     MR. ZIPKIN: Yes, what's the question?
14 BY MR. LEGACKI:
15 Q. You see that, sir?
16 A. Yes, I do.
17 Q. So Mr. Withers was saying that Mr. Weilbacher's
18 claim is derivative of the Wrongful Death claim?
19     MR. ZIPKIN: There's no question there. If
20 you're saying does it say what it says; it says what
21 it says.
22 BY MR. LEGACKI:
23 Q. You see that sir?
24 A. I see that. I agree that you have accurately
25 stated it.

Page 91

1      MR. ZIPKIN: Mr. Withers is absolutely right, of
2  course. It is derivative of the Wrongful Death
3  claim. That doesn't mean that the loss of society
4  claim is brought under the Wrongful Death Statute.
5  It's brought under AS 09.15.010, as you know.
6  You're misrepresenting and mischaracterizing the
7  testimony deliberately.
8  BY MR. LEGACKI:
9  Q. Okay. Let's look at page 8 of 55.
10 A. I have that.
11 Q. Beginning on line 4 there, I asked him: Would
12 you define direct; would you mind telling me what direct
13 means, a direct claim as you understand it?
14     And his answer is: Well, as I understand it,
15 it's a claim that rises out of bodily injury or property
16 damage as defined by the policy.
17     Correct?
18 A. That's what this page said. I would note that,
19 to my knowledge, this is not yet a transcript that the
20 witness has had -- the deponee (sic) has had an
21 opportunity to review and possibly correct.
22 Q. He can correct and change that if he wants,
23 sure.
24 A. I am simply noting the nature of the document
25 that I'm reviewing.

Page 92

1  Q. Oh, I understand that. He's got 30 days to
2  correct it when he gets it.
3      But you said that if Mr. Weilbacher had a mental
4  injury, that that would be considered bodily injury under
5  the Progressive policy, correct?
6  A. I believe you had described a specific
7  hypothetical mental injury in your question, it was not
8  just a mental injury. So I did not respond to the
9  question you're now asking. It was a different question
10 that I answered.
11 Q. Okay. If he has severely upset mental anguish,
12 would that be covered under the definition of bodily
13 injury in the Progressive policy?
14 A. Again, that's a different question than what you
15 asked me before.
16     Severely upset mental anguish?
17 Q. Severe mental anguish. If he had severe mental
18 anguish, would that be covered under the definition of
19 bodily injury in the Progressive policy?
20 A. I'm not a doctor either, but that strikes me as
21 an unbelievably ambiguous diagnosis and I don't know what
22 it means.
23 Q. Well, do you think his distress, severe distress
24 of losing a daughter, would that be covered as an injury,
25 mental injury, under bodily injury?

Page 93

1  A. The terminology keeps shifting. When we talked
2  earlier, the question was about severe depression, which
3  I believe is a medically or DSM IV recognized
4  terminology. Some of these other ones I'm not familiar
5  with them enough to know where they would fall on a scale
6  of severity, although certainly the nature of the
7  accident suggests that the injuries could be quite
8  severe.
9  Q. Right. Is that what Gillispie says, there's no
10 greater loss to a parent than the death of a child?
11 A. I believe I recall that characterization, yes.
12 Q. Would that kind of injury, that mental distress,
13 would that meet the definition of bodily injury under the
14 Progressive policy?
15     MR. ZIPKIN: Object to form. Haven't defined
16 that kind of injury.
17     THE WITNESS: Again, focusing on that
18 terminology, I don't know whether it would or would
19 not. It would depend on how a parent would
20 experience that. And while it's possible to
21 characterize in a general fashion what an awful
22 thing that is, that doesn't go to how an individual
23 responds to that situation.
24 BY MR. LEGACKI:
25 Q. So it depends on how one responds to it as to