Robert Lohr                    Deposition                    July 26, 2006

Page 94

1   whether or not it's mentally -- it's covered under bodily
2   injury; is that what you're saying?
3       A. I'm saying I can't respond intelligently to your
4   question, because the terminology of the harm to the
5   person is so vague. It's so imprecise, I don't know what
6   it means.
7       Q. Well, what -- where is the line between where
8   mental illness or mental injury would be covered under
9   the definition of bodily injury?
10          MR. ZIPKIN: Object to form. And it calls for a
11      legal conclusion.
12          THE WITNESS: In the Progressive policy, bodily
13      injury is defined as: Means bodily harm, sickness
14      or disease, including death that results from bodily
15      harm, sickness or disease.
16          That definition does not specifically address,
17      as a separate category, mental illness.
18  BY MR. LEGACKI:
19      Q. Okay. So is mental illness covered or it is
20  excluded?
21          MR. ZIPKIN: There are more choices than those
22      two.
23          THE WITNESS: I think the answer depends on the
24      nature of the diagnosis. And earlier your
25      hypothetical used severe depression, or words to

Page 95

1   that effect, as the standard. And under that
2   language I did state that I believe that it would
3   qualify as bodily injury.
4   BY MR. LEGACKI:
5       Q. So you had to have a medical diagnostic -- or
6   some kind of a diagnosis to make sure it's covered, or
7   what?
8           MR. ZIPKIN: Same objections.
9           THE WITNESS: I think that the terminology in
10      the hypothetical needs to be sufficiently specific
11      for me to give any kind of meaningful response to
12      your question.
13  BY MR. LEGACKI:
14      Q. So you can't tell me where is the line as for --
15  when mental illness is covered under the bodily injury
16  definition of Progressive's insurance policy?
17      A. Frankly, I'm not sure that severe depression
18  resulting from the death of one's child even qualifies as
19  mental illness. It strikes me that it would be a
20  perfectly normal kind of reaction to expect, and that
21  I -- when I think of mental illness, I think of abnormal
22  psychology diagnoses that don't have much grounding in
23  reality.
24          When I think of the death of a child and the
25  typical reaction to that, that doesn't strike me as

Page 96

1   having the attributes of mental illness; rather it would
2   be something where you would want some assistance,
3   therapy, perhaps medications if they were prescribed, to
4   work through. But maybe I have an odd definition of
5   mental illness. That doesn't fit it.
6       Q. Would -- would you call it emotional issue --
7   illness?
8           MR. ZIPKIN: Object to form.
9           Also, can you read it back, I didn't understand
10      the question.
11          (Whereupon, the above referred to question was
12      read back by the court reporter, and the following
13      proceedings were had:)
14  BY MR. LEGACKI:
15      Q. Rather than a mental illness, when a parent's --
16  what they're going through when a child dies, is that
17  emotional illness or mental illness? What would you call
18  that?
19          MR. ZIPKIN: Compound, object to form.
20  BY MR. LEGACKI:
21      Q. I guess, tell me what -- what would you call
22  that when, as you just described, when the parent loses a
23  child and all the things they go through in their mind,
24  is that emotional illness?
25          MR. ZIPKIN: Object to form.

Page 97

1   BY MR. LEGACKI:
2       Q. What is it?
3           MR. ZIPKIN: Now you're calling for a medical
4       diagnosis. Lack of foundation. Object to form.
5           THE WITNESS: I think the diagnosis would likely
6       vary with the individual. I don't think that
7       posttraumatic stress would be an atypical kind of
8       conclusion for a medical practitioner to reach in a
9       case like that.
10  BY MR. LEGACKI:
11      Q. Would posttraumatic stress be covered under the
12  definition of bodily injury?
13          MR. ZIPKIN: Incomplete hypothetical. Calls for
14      legal conclusion.
15          THE WITNESS: I think it could be. I think it
16      would depend on the specifics of the circumstances.
17  BY MR. LEGACKI:
18      Q. Let's look down at the bottom of page 8 of 55
19  where I asked Mr. Withers: Could you explain to me the
20  difference, your understanding of a direct claim and
21  derivative claim.
22          MR. ZIPKIN: I have the same objection here as I
23      expressed there.
24          MR. LEGACKI: You didn't have an objection
25      there.

Robert Lohr                     Deposition                     July 26, 2006

### Page 98

1    MR. ZIPKIN: I did. I said you called for a
2    legal conclusion.
3    BY MR. LEGACKI:
4    Q. His answer: Well, direct claim is a claim that
5    arises out of bodily injury as defined by the policy and
6    a derivative claim is a claim that arises out of that
7    bodily injury to the person that's involved there.
8        Okay?
9        Do you see that?
10   A. I see that.
11   Q. So if Mr. Weilbacher had posttraumatic stress
12   because of the death of his daughter, is that his own
13   individual bodily injury as defined by Mr. Withers?
14       MR. ZIPKIN: Object to form. Mr. Withers wasn't
15   asked about PTSD and he wasn't in a position to
16   offer a legal conclusion or opinion about anything.
17       THE WITNESS: Would you ask me the question
18   again, please?
19       MR. LEGACKI: Please repeat the question.
20       (Whereupon, the above referred to question
21       was read back by the court reporter, and the
22       following proceedings were had:)
23   BY MR. LEGACKI:
24   Q. If Mr. Weilbacher suffered from posttraumatic
25   stress, would that be a direct claim or as -- since he

### Page 99

1    suffered a bodily injury?
2        MR. ZIPKIN: Object to form. Lack of
3    foundation.
4        THE WITNESS: Is -- I don't think there's enough
5    information there for me to answer, but I have two
6    areas I'd like to ask you to clarify. One is the
7    facts surrounding his posttraumatic stress, and the
8    other is whether I am to be using Mr. Withers'
9    explanation of what a direct claim is or my own
10       understanding?
11   BY MR. LEGACKI:
12   Q. Right. Mr. Withers' definition of direct claim.
13   A. And --
14   Q. If we established that somebody suffered
15   posttraumatic stress and that's considered a bodily
16   injury in the policy, would that be a direct claim that
17   Mr. Weilbacher is entitled to collect for?
18       MR. ZIPKIN: Object to form, foundation.
19   Incomplete hypothetical.
20       THE WITNESS: It's a great leap for me to try to
21   put myself in Mr. Withers' shoes. Once again, now
22   that I know that for the first time, I don't know
23   what he said about direct or derivative throughout
24   his answers to inform me, becoming him for purposes
25   of answering that question. That's just -- it's --

### Page 100

1    it's a big leap for the hypothetical for me to
2    become Mr. Withers with whatever knowledge he
3    brought to the deposition on that part of the
4    question.
5    BY MR. LEGACKI:
6    Q. I'm just asking you, sir, the question is
7    directed to just this part. He says: A direct claim is
8    a claim that arises out of bodily injury, as defined by
9    the policy.
10       Okay? And I'm asking you, based on your
11   interpretation, since you're the expert here interpreting
12   the policy, Mr. Withers, as he defines it -- if
13   Mr. Weilbacher suffered from posttraumatic stress, would
14   he have direct claim for bodily injury?
15       MR. ZIPKIN: The witness doesn't have to --
16   doesn't have to answer differently than he already
17   did. Asked and answered.
18       MR. LEGACKI: No, he didn't.
19       Please answer the question, sir.
20       MR. ZIPKIN: It's asked and answered, it's an
21   incomplete hypothetical, lacks foundation and asks
22   the witness to assume --
23       MR. LEGACKI: No. Please, Gary, just make your
24   objections. Don't lecture the witness. I let you
25   go all morning like that. Now, I just want him to

### Page 101

1    answer the question.
2        MR. ZIPKIN: I've been trying to limit -- I'm
3    making my objection for the record, whether you like
4    it or not.
5        Incomplete hypothetical, lack of foundation,
6    assumes facts not in evidence. And asked the
7    witness to put himself in the position of some other
8    person.
9    BY MR. LEGACKI:
10   Q. Go ahead. Answer the question, please.
11   A. Since Mr. Withers states in part, from what you
12   quoted, that a derivative claim is made -- is a claim
13   that arises out of that bodily injury to the person
14   that's involved there, I believe Mr. Withers would argue
15   that Mr. Weilbacher's claim is also derivative, assuming
16   that his injury or illness meets the policy language
17   concerning bodily injury.
18   Q. So you just said is also derivative. So it's
19   direct and derivative; it's both?
20   A. That's not what I said.
21   Q. Didn't you just say "is also derivative"?
22       MR. ZIPKIN: Putting words in his mouth.
23   Objection, mischaracterizes.
24   BY MR. LEGACKI:
25   Q. My question is, I asked you about what

EXHIBIT 23, PAGE 26 OF 38 PAGES            26 (Pages 98 to 101)

Alaska Stenotype Reporter (907) 276-1680

Robert Lohr                                Deposition                              July 26, 2006

### Page 102

1  Mr. Withers said: A direct claim is a claim that arises
2  out of bodily injury as defined by the policy.
3      And my question was, if Mr. Weilbacher had
4  posttraumatic stress, which means that it's covered under
5  the definition of bodily injury, would he have a direct
6  claim?
7      MR. ZIPKIN: You don't like the answer. The
8  answer was given.
9  BY MR. LEGACKI:
10     Q. My question, sir; yes or no?
11     A. My answer was to quote from the answer that you
12  gave earlier, the full text, and to say that he would
13  believe, Mr. Withers would believe that it was a
14  derivative claim.
15     Q. No. No. I'm asking you, sir. I'm not
16  asking -- that's Mr. Withers' definition: A direct claim
17  is a claim that arises out of bodily injury as defined by
18  the policy?
19     MR. ZIPKIN: And he keeps going.
20  BY MR. LEGACKI:
21     Q. "And a derivative claim is a claim that arises
22  out of a bodily injury to a person that's involved
23  there".
24     We know the Wrongful Death Statute,
25  Mr. Weilbacher can't collect under that, can he? He's

### Page 103

1  not entitled to collect anything because he's not a
2  dependent of the decedent, right?
3      A. I've given my opinion on that latter part. And
4  I've heard a stipulation offered. I haven't heard what
5  you've said about that.
6      Q. Well, I'm asking you. You're the expert. I
7  mean, you're the expert here, you're supposed to say my
8  client, a high school graduate, should have known what
9  this language is. And you can't give me a simple answer,
10  I mean --
11     MR. ZIPKIN: This is purely argumentative. And
12  pretty soon I'm going to ask that we adjourn. You're
13  arguing --
14     MR. LEGACKI: I'm not arguing, I just want to
15  know.
16  BY MR. LEGACKI:
17     Q. I asked you a simple question.
18     A. And I gave you what I thought was a pretty
19  straightforward answer.
20     Q. A direct claim is a claim that arises out of
21  bodily injury as defined by the policy.
22     Now, do you agree with that, that that's what a
23  direct claim is?
24     A. My previous answer focused on the rest of that
25  sentence, not on that part.

### Page 104

1      Q. I'm asking you, how do you define a direct
2  claim? Is that a -- do you know what a direct claim is?
3      MR. ZIPKIN: Calls for a legal conclusion. The
4  supreme court speaks to that.
5  BY MR. LEGACKI:
6      Q. Do you know what a direct claim is?
7      MR. ZIPKIN: Same objections. It's a legal
8  conclusion.
9      THE WITNESS: I believe I do know what a direct
10  claim is.
11  BY MR. LEGACKI:
12     Q. What is a direct claim?
13     A. My understanding is that a direct claim is one
14  filed by a claimant directly with the court, for example,
15  and not on behalf of another.
16     Q. Okay. So Mr. Weilbacher filed a claim on his
17  own, not on behalf of his daughter, so he has a direct
18  claim. And under the insurance policy, since he has a
19  direct claim, it is not derivative, but it's a direct
20  claim, he should collect under, right?
21     MR. ZIPKIN: Mischaracterizes the answer that
22  was given and calls for legal conclusion.
23  BY MR. LEGACKI:
24     Q. Is that right?
25     A. No. I don't agree.

### Page 105

1      Q. What's a direct claim then?
2      A. I think I just tried to answer that as best I
3  could.
4      Q. So it's someone who files a claim on behalf of
5  themselves.
6      A. And not on behalf of another, typically, for
7  example, with the court system.
8      Q. Okay. So is -- under the insurance policy, is
9  Progressive obligated to pay when a person files a direct
10  claim [as spoken]?
11     MR. ZIPKIN: Incomplete hypothetical. You're
12  talking about a separate per-person limit?
13  BY MR. LEGACKI:
14     Q. Answer the question. Go ahead.
15     A. I'll answer as best I can, which is that it
16  depends on the nature of the direct claim. It depends on
17  the policy language and it depends on the case law
18  interpreting the elements of the policy that are at
19  issue.
20     Q. So under insurance context, do you know the
21  definition of a direct and derivative claim under the
22  Progressive policy?
23     MR. ZIPKIN: Object to the question on form.
24  Assumes that the policy defines direct and
25  derivative.

EXHIBIT 23, PAGE 27 OF 38 PAGES                    27 (Pages 102 to 105)

Alaska Stenotype Reporter (907) 276-1680

Robert Lohr     Deposition     July 26, 2006

Page 106

1. MR. LEGACKI: Exactly my point.
2. MR. ZIPKIN: The policy gives you the definition
3. of derivative. I don't believe it does give you a
4. definition of direct. So I don't know what the
5. question is asking.
6. BY MR. LEGACKI:
7. Q. Go ahead. Is there anywhere -- how do I know
8. whether or not I have a direct -- strike that.
9. Is there anywhere in the policy that defines a
10. direct cause of action?
11. A. I haven't looked for that particular term in the
12. policy. I would be happy to do so.
13. Q. I'm just asking, have you ever -- have --
14. A. I gave you my best answer, which is I haven't
15. focused on that term, I'd be happy to look for it.
16. Q. Is derivative defined?
17. A. Your question is whether it is defined in the
18. policy as a defined term, not whether or not it appears
19. in the policy as a --
20. Q. Defined term. Is derivative a defined term?
21. A. In reviewing part three of the Progressive
22. policy entitled Uninsured/Underinsured motorist coverage,
23. I do not find derivative as a defined term.
24. Q. I'd like to -- let's look at Mr. Withers'
25. deposition, please. Page 11 of 55. Page 21.

Page 107

1. A. Page 21.
2. Q. I'm sorry, line 21.
3. A. Okay.
4. Q. "So the issue of the case is whether or not when
5. his daughter died, was he considered an -- was he
6. considered an independent claim for the death of his
7. daughter, correct.
8. Objection to form.
9. The witness: Yes, that's the issue.
10. You see that?
11. A. No.
12. Q. Page 11 of 55, in the left-hand corner.
13. A. I have that page.
14. Q. Look up line 21.
15. Question: So the issue of the case --
16. You see that?
17. A. I see that now, yes.
18. Q. Okay. And he says: Yes, that's the issue.
19. The next question: Okay. And the statute
20. allows him to file an independent claim, correct, AS
21. 09.15.01?
22. Answer: Yes, he can file a claim.
23. Question: Okay. And it gives him the right to
24. collect for the death of his daughter independent of any
25. wrongful death action?

Page 108

1. Answer: I believe so.
2. MR. ZIPKIN: What's the question?
3. BY MR. LEGACKI:
4. Q. You see that?
5. A. I do.
6. Q. How do you interpret that answer and question?
7. Does that mean that Mr. Withers is recognizing that
8. Mr. Weilbacher has an independent claim that is not
9. derivative of the Wrongful Death Statute?
10. MR. ZIPKIN: Objection. You're putting words in
11. his mouth. You're making the word independent
12. equivalent to direct and giving it legal
13. significance. Mr. Withers told you he was not a
14. lawyer. So now you're interpreting words for
15. Mr. Withers and then asking the witness to assume
16. that's what Mr. Withers said.
17. BY MR. LEGACKI:
18. Q. Just reading what he said here. Go ahead.
19. A. Would you repeat the question please?
20. (Whereupon, the above referred to question
21. was read back by the court reporter, and the
22. following proceedings were had:)
23. MR. ZIPKIN: Object to form, as well. I don't
24. even know what the words mean "derivative of the
25. Wrongful Death Statute."

Page 109

1. THE WITNESS: I cannot reach the conclusion that
2. that's what Mr. Withers meant based on the answer
3. here.
4. BY MR. LEGACKI:
5. Q. Well, will you agree with me that Mr. Weilbacher
6. cannot collect for any loss of consortium or loss of
7. society under the Wrongful Death Action [as spoken],
8. correct?
9. A. Given that he was not, Mr. Weilbacher was not
10. dependent on his daughter as a source of income, and
11. given the interpretation that I have heard as part of an
12. offer of a stipulation, which is generally consistent
13. with where my response ended up, I think that's correct.
14. Q. Okay. Now, how -- if he cannot collect a
15. derivative claim under the Wrongful Death Statute, how
16. can the insurance contract say that his loss of society,
17. loss of consortium claim is derivative of the wrongful
18. death of his daughter?
19. MR. ZIPKIN: Question ignores AS 09.15.010.
20. BY MR. LEGACKI:
21. Q. Answer the question.
22. MR. ZIPKIN: Object to form, foundation.
23. THE WITNESS: The policy language concerning
24. single per-person limits is in the policy, in the
25. Progressive policy. In my opinion, it is clear,