### Page 110

1  unambiguous language and it limits the amount of any
2  claim, derivative claim to being part of the single
3  per-person limit of the person directly involved in
4  the accident.
5      And that language has not been found by any
6  court of law that I could find to be impermissible,
7  where the language is clear and unambiguous, that it
8  includes in the per-person limit, such matters as
9  loss of consortium claims.
10 BY MR. LEGACKI:
11     Q. Could you explain what you just said?
12     MR. ZIPKIN: Object to form. Last answer speaks
13 for itself.
14     THE WITNESS: The Progressive policy basically
15 provides single per-person limits in this case, in
16 this policy, of $100,000 or 300,000 per accident.
17 The single per-person limit includes derivative
18 claims. On page 9 of my opinion, quoting from the
19 Progressive policy, which is a quote from pages 27
20 to 28 of the UM/UIM section on limits of liability,
21 the Progressive policy says, quote, a bodily injury
22 limit of liability under this part 3 for, quote,
23 each person, close quotes, includes the total of all
24 claims made for such bodily injury and all claims
25 derived from such bodily injury, including but not

### Page 111

1  limited to loss of society, loss of companionship,
2  loss of services, loss of consortium and wrongful
3  death.
4      And the Bates numbers for that are 100382 to
5  383.
6  BY MR. LEGACKI:
7      Q. But doesn't AS 09.15.010 give him a separate and
8  independent claim not derivative of his daughter's
9  injury?
10     MR. ZIPKIN: Objection, form and foundation.
11 You are making equivalent the words separate,
12 independent and nonderivative; deliberately
13 confusing.
14     If you can answer, go ahead.
15     THE WITNESS: Could I hear the question back,
16 please.
17     (Whereupon, the above referred to question
18     was read back by the court reporter, and the
19     following proceedings were had:)
20     THE WITNESS: No, I don't believe so.
21 BY MR. LEGACKI:
22     Q. Why?
23     A. I believe the statute 09.15.010 gives
24 Mr. Weilbacher the right to file a claim with the court
25 for loss of consortium. And it talks about separate

### Page 112

1  independent. I don't recall discussion of nonderivative
2  as a factor in the court's reasoning or the statute
3  itself.
4      Q. Do -- you have the copy of the Gillispie
5  decision, right? In fact, you made notes in it?
6      A. I do.
7      Q. "Creates a separate independent parental cause
8  of action, including the right to recover for loss of
9  society."
10     You see that, Exhibit Number 1?
11     A. I'm looking for the case. You're talking about
12 the notes, I'm looking for the case.
13     Q. Let's look at Number 1: Creates a separate
14 independent parental cause of action, including the right
15 to recover for loss of society.
16     A. I see my notes, there, yes.
17     Q. So let's -- are you saying that that insurance
18 policy can take away that right to recover for loss of
19 society independently?
20     MR. ZIPKIN: Object to form. Mischaracterize's
21 what the witness has said.
22     THE WITNESS: Since Gillispie interprets AS
23 09.15.010 to create a separate independent parental
24 cause of action, I don't believe that an insurance
25 policy could take away the right to an independent

### Page 113

1  claim.
2  BY MR. LEGACKI:
3      Q. Isn't that what that language is trying to do?
4      A. No.
5      Q. It's not?
6      A. Not in my opinion.
7      Q. Why is that?
8      A. Because by -- when a policy treats a separate
9  independent parental cause of action as included in a
10 category of a single per-person limit related to the
11 injury of an insured, that isn't removing the independent
12 cause of action.
13     Q. Well -- so how does one collect, if it's -- how
14 does one collect for loss under AS 09.15.010?
15     A. I believe that one would collect according to
16 the terms of the insurance policy.
17     Q. And what's that?
18     A. In this case, as I read just a few minutes ago,
19 in part, the bodily injury limit of liability under this
20 part 3 for, quote, each person, close quote, includes the
21 total of all claims made for such bodily injury and all
22 claims derived from such bodily injury, including but not
23 limited to loss of society, loss of companionship, loss
24 of services, loss of consortium and wrongful death, close
25 quote.

Robert Lohr          Deposition          July 26, 2006

### Page 114

1    Q. Yeah, but doesn't the Lawrence and -- state that
2 loss of consortium is separate and the parents may have a
3 separate claim?
4      MR. ZIPKIN: Lawrence is an NIED claim,
5    mischaracterizes --
6      MR. LEGACKI: No, let's -- Lawrence --
7    consortium -- "too much legal interpretation, expect
8    a lay person." "Claims are direct, not derivative."
9      THE WITNESS: NIED claims are direct, not
10    derivative.
11 BY MR. LEGACKI:
12    Q. Don't they also address the consortium claim as
13 well?
14      MR. ZIPKIN: It's deliberately mischaracterizing
15    the case, trying to confuse the witness
16    deliberately.
17      THE WITNESS: I believe that the focus of State
18    Farm versus Lawrence is the negligent infliction of
19    emotional distress claims. I believe that the topic
20    of loss of consortium may be discussed within there,
21    but the holding relates to NIED claims.
22 BY MR. LEGACKI:
23    Q. You were asking for a dictionary before to try
24 to see if derivative, separate, independent are
25 derivative -- or -- or I mean synonymous. Do you still

### Page 115

1 need to see that?
2    A. I guess it depends on what questions you want to
3 ask me.
4    Q. Are they synonymous?
5      MR. ZIPKIN: Are what synonymous?
6 BY MR. LEGACKI:
7    Q. Are derivative, independent and separate
8 synonymous?
9      MR. ZIPKIN: Calls for a legal conclusion which
10    is not in the province of Webster's.
11      THE WITNESS: But he's correct, I did ask to
12    look at the dictionary definition. And would like
13    to do so, if you don't mind.
14      MR. LEGACKI: Sure.
15      (Exhibit 6 was marked.)
16      THE WITNESS: I have direct and I have
17    independent, but you have one other page here from
18    the Ss?
19 BY MR. LEGACKI:
20    Q. Well, that's as far as I could bend it.
21    A. I've reviewed those definitions of the three
22 terms. I've looked at derivative, independent and
23 separate.
24    Q. Are they synonymous?
25    A. All three of those?

### Page 116

1      MR. ZIPKIN: Object to form. Calls for a legal
2    conclusion.
3      And asked and answered.
4      THE WITNESS: I believe the answer to whether or
5    not they are synonymous to each other depends very
6    much on the specifics of the circumstances. There
7    are times when they would be close to synonymous.
8    There are other times when they wouldn't be
9    synonymous, depending on the specific facts of the
10    situation.
11 BY MR. LEGACKI:
12    Q. Derivative, according to this is: Derive:
13 Using or taking from other sources, not original, ab --
14 of derivation.
15      Independent is defined as: Free from the
16 influence, control or determination of another or others.
17 Right? Independent is free from the original. And
18 separate implies the pulling apart of things previously
19 joined or assembled.
20      Of course, as the State will refer to this same
21 dictionary when they're trying to define terms, correct?
22    A. I believe I've seen this used as a reference
23 point for common sense meaning of terms, typically not
24 for legal terms in a court opinion.
25    Q. Common sense terms, exactly.

### Page 117

1      I mean, common sense tells you derivative and
2 independent are not the same thing, right?
3      MR. ZIPKIN: Object to form. Calls for a legal
4    conclusion.
5      THE WITNESS: I've tried to answer that by
6    indicating it very much depends on the specific
7    facts in the situation, as to whether they are
8    synonyms or not.
9 BY MR. LEGACKI:
10    Q. I'm just looking at a common sense guy who is
11 insured and looking at a policy, do you think that he
12 can -- going to say that independent and derivative are
13 synonymous?
14      MR. ZIPKIN: The policy says loss of society is
15    derived from, that's what the policy says.
16      MR. LEGACKI: But then the Gillispie case says
17    he has an independent cause of action, that's not
18    derivative.
19      MR. ZIPKIN: Doesn't say that at all. Object,
20    mischaracterizes Gillispie. Doesn't say anything
21    about derivative, nonderivative, not one word.
22      MR. LEGACKI: Let's look at Gillispie.
23 BY MR. LEGACKI:
24    Q. Do you see that, sir?
25    A. I'm sorry, do I see what?

Robert Lohr                               Deposition                              July 26, 2006

Page 118

1  Q. The case where it says it's not related to the
2  Wrongful Death Statute.
3  A. What page are you on?
4  Q. 1273.
5  MR. ZIPKIN: Any particular paragraph?
6  MR. LEGACKI: In re the Estate of Pushruk: When
7  the decedent's not survived by dependents, the
8  statute limits recovery to pecuniary loss, the
9  Gillispes then cannot claim loss of society under
10  the Wrongful Death Statute.
11  THE WITNESS: I see that.
12  BY MR. LEGACKI:
13  Q. Okay. However there's going to be a new
14  separate and independent claim under different statute,
15  their own individual claim, not related to the Wrongful
16  Death claim, not derivative of the Wrongful Death claim?
17  MR. ZIPKIN: Objection, you've asked three
18  different questions, the last, as though you were
19  quoting when, of course, you know you're not.
20  Compound, mischaracterizes what the case states.
21  THE WITNESS: I see that the court points the
22  Gillispies towards a recourse found in AS 09.15.010
23  and reaches a holding that that statute does create
24  a separate, independent parental cause of action.
25  BY MR. LEGACKI:

Page 119

1  Q. And it's not derivative of the death of a
2  daughter, is it?
3  MR. ZIPKIN: Mischaracterizes the case.
4  THE WITNESS: I don't see any reference to -- by
5  the court to the term nonderivative.
6  BY MR. LEGACKI:
7  Q. You're an expert; isn't that what they're
8  saying?
9  A. I think being an expert would tend to make me
10  more cautious about imprecise analogies rather than less
11  so. So if the court didn't go there, and I'm not a
12  lawyer, I'm not sure I would want to try to reach that
13  analogy in the context of this case interpreting that
14  statute.
15  MR. ZIPKIN: Do you need to take a break?
16  THE WITNESS: It would be good for me to not do
17  that when we're in the middle of a question.
18  (Thereupon, a brief recess was taken, after
19  which the following proceedings were had:)
20  BY MR. LEGACKI:
21  Q. I'd like to look at 33 of 55.
22  A. I have that page.
23  Q. Line 7 -- I'm sorry line 4: Well, is an NIED
24  claim of the parent independent?
25  Answer: Yes.

Page 120

1  Question: So what's the difference between an
2  independent NIED claim and an independent loss of society
3  claim under AS 09.15.010?
4  And his answer is: I don't know if there is any
5  difference.
6  You see that?
7  A. I see that, yes.
8  Q. Did you take that into consideration in your
9  analysis, that he does not -- cannot tell the difference
10  between an independent NIED claim and an independent
11  claim under AS 09.15.010.
12  MR. ZIPKIN: Object to form. I'll leave it
13  there.
14  THE WITNESS: I did not take into account
15  Mr. Withers' conclusion at this deposition, which I
16  believe was July 12, in writing my report, which was
17  submitted in June.
18  BY MR. LEGACKI:
19  Q. Knowing that he cannot tell the difference
20  between an independent NIED claim and an independent
21  claim under AS 09.15.010, does that change your analysis
22  that possibly Mr. Weilbacher can collect under a
23  separate per-person liability?
24  MR. ZIPKIN: Mischaracterizes, Mr. Withers
25  didn't say there is no difference, he says he

Page 121

1  doesn't know, he's not a lawyer. So lack of
2  foundation.
3  THE WITNESS: Would you ask the question again,
4  please?
5  (Whereupon, the above referred to question
6  was read back by the court reporter, and the
7  following proceedings were had:)
8  THE WITNESS: First I need to address the
9  question. I don't believe that Mr. Withers was
10  saying that there's no difference.
11  BY MR. LEGACKI:
12  Q. He doesn't know the difference.
13  A. He said he didn't -- I don't -- quote, I don't
14  know if there is any difference, close quote.
15  Q. Right.
16  A. His uncertainty in that area, if that's what it
17  is, does not influence my conclusion in my expert
18  opinion.
19  Q. Why?
20  A. For example, Mr. Withers' response suggests
21  perhaps that he did not know that the courts have done
22  much more to define NIED claims under the case law than
23  they have to define the parameters of loss of consortium
24  claims. And had he known that, his opinion might have
25  been different. There's just a number of factors that

EXHIBIT 23 PAGE 31 OF 38 PAGES          31 (Pages 118 to 121)

Page 122

1  may have led him to state: I don't know if there's any
2  difference. And I don't know what those factors were.
3      So your question to me was, would his statement
4  in the deposition here have changed my opinion in the
5  case. That's my recollection of it. My answer is no, it
6  would not have.
7      Q. Well, Mr. Withers testified that he had over
8  20-some years experience in the business. And if he
9  can't tell the difference, how can a lay person like Mr.
10 Weilbacher know any difference?
11     MR. ZIPKIN: Object to form; relevance,
12 foundation.
13     THE WITNESS: I don't think that's what
14 Mr. Withers said. I think you're still putting the
15 interpretation on his response that likely goes well
16 beyond the parameters of what he said.
17 BY MR. LEGACKI:
18     Q. Well --
19     A. And I have more that I'd like it say. I'm not
20 done with that answer yet.
21     I take the question that you asked Mr. Withers
22 at page 33 line 7 through 9 of the deposition transcript
23 to be an interpretation of the case law. I note that
24 elsewhere in the general area of the deposition, you've
25 been asking about individual cases and interpreting

Page 123

1  those, so I don't know that what he says here is in the
2  context of applying Progressive policy language or not.
3  Just looking at this snippet, it's not clear to me,
4  exactly what question he's answering there. One of the
5  old guideposts to people being deposed is to be very
6  clear on understanding what the question is.
7      Q. So when I asked him if there's -- if an NIED is
8  an independent claim and a claim under AS 09.15.010 is
9  independent, can you explain the difference, and he says
10 he can't, how does that -- how does that -- how -- if he
11 is interpreting the policy, the whole question in this
12 case is what the interpretation of the policy is, how can
13 you opine that he doesn't know what he's talking about?
14     MR. ZIPKIN: Objection. The question is a non
15 sequitur. Compound, form, foundation.
16 BY MR. LEGACKI:
17     Q. What is unclear about my question and his
18 answer?
19     A. As I indicated, I believe -- well, I'm not clear
20 on whether the question deals with the interpretation of
21 case law or whether it deals with the application of the
22 Progressive policy.
23     Q. Even if it's case law, what difference would
24 that make for the policy?
25     MR. ZIPKIN: I object. The question that you're

Page 124

1  reading here doesn't even refer to the policy,
2  doesn't refer to any term of the policy, any
3  provision of the policy. You're talking about
4  differences between NIED and loss of consortium
5  claims to someone who is not a lawyer. And I
6  objected repeatedly at that time that you were
7  calling for a legal conclusion.
8      So the witness tells you he doesn't know, in
9  part, because he's not a lawyer. And then you try
10 to use it against him. I object.
11     THE WITNESS: Would you repeat the question
12 please?
13     (Whereupon, the above referred to question
14 was read back by the court reporter, and the
15 following proceedings were had:)
16     THE WITNESS: I believe it's one thing to apply
17 case law to a policy interpretation, interpretation
18 of coverage. It's another thing to expect a
19 witness, even with 20 years plus of experience in
20 the industry, to be immediately conversant with
21 elements of what different cases have held. That's
22 something that with some -- with a little bit of
23 homework, perhaps they could do, they might even ask
24 the question of coverage counsel or in-house counsel
25 and then get back to you with a reply.

Page 125

1      When it's an on-the-spot kind of exercise as
2  part of the deposition, I think the context matters
3  a great deal.
4  BY MR. LEGACKI:
5      Q. Well, let's look at page 41 of 55.
6      A. I have page 41.
7      Q. Line 1: So this is a common issue whether or
8  not you can collect a direct claim under AS 09.15.010?
9      "It's come up before, yes.
10     "In what context has it come up before?
11     "The same context in this case, whether or not
12 loss of society, loss of consortium is derivative or
13 nonderivative."
14     Do you see that?
15     A. I do.
16     Q. Okay. So he -- he is aware of this issue of
17 09.15.010. And so I asked him, explain what's the
18 difference between the two claims. He says he doesn't
19 know of any difference. I don't know if there's any
20 difference, he says, right?
21     MR. ZIPKIN: Mischaracterizes the testimony, out
22 of context. And you're asking this witness to read
23 the mental thoughts of another witness.
24     THE WITNESS: Would you give me the page
25 reference again? I've been reading the context