Aisha Tinker Bray
Gary A. Zipkin
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
(907) 452-8986 Telephone
(907) 452-7015 Facsimile
E-mail: atbray@guessrudd.com

Attorneys for Progressive Northwestern Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD V. WEILBACHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PROGRESSIVE NORTHWESTERN | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) 3:05-cv-204-TMB |

PROGRESSIVE'S REPLY TO PLAINTIFF'S
OPPOSITION TO PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT

The straightforward issue in this case is the legal interpretation of Progressive's underinsured motorist policy provision regarding the limit of liability for "each person."  See Exhibit A at 100,383.  Mr. Weilbacher's Opposition, however, simply fails to discuss, let alone analyze, this critical policy provision, nor does he offer this court any legitimate reason not to enforce it.  Except with regard to one footnote, Mr. Weilbacher fails to distinguish any of Progressive's legal authority or to provide any contrary legal authority regarding the proper interpretation to be given to the policy provision at issue. Mr. Weilbacher shows an utter disregard for the relevant law

construing the policy provision at issue, which case law consistently holds that a loss of society claim is derivative to, and included within, an "each person" or "per person" policy limit. When the court properly construes and applies the policy provision to Mr. Weilbacher's loss of society claim, the resulting conclusion is that he is simply not entitled to a second, separate "each person" UIMBI policy limit as a matter of law.

  A. Mr. Weilbacher's loss of society
claim was properly included in the "each person"
<u>UIMBI policy limit previously paid by Progressive.</u>

   Mr. Weilbacher continues to misapprehend that, although he has an independent claim for loss of society pursuant to AS 09.15.010, that claim is subject to the same "each person" UIMBI policy limit as his daughter's bodily injury (wrongful death) claim under the relevant policy language. Progressive recognizes that AS 09.15.010 "creates a separate, independent parental cause of action" which "includes the right to recover loss of society damages." <u>Gillispie v. Beta Const Co.</u>, 842 P.2d 1272, 1273-74 (Alaska 1992). A loss of society claim is independent because it is the parent's personal claim for harm suffered by the parent, not the child. It does not follow, however, that every independent claim is entitled to an "each person" UIMBI policy limit, and Mr. Weilbacher provides no legal authority or analysis to support this assumption.

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 2 of 27

Whether a claim is entitled to a separate "each person" policy limit depends not on the characterization of the claim, but on the policy language at issue.

> [W]hether a loss-of-society claim should trigger separate "per person" coverage may hinge more on a particular policy's definition of the scope of its bodily injury coverage than on the inherent nature of a cause of action for loss of society.

State Farm Mut. Automobile Ins. Co. v. Dowdy, 111 P.3d 337 (Alaska 2005) (quoting Wold v. Progressive Preferred Ins. Co., 52 P.3d 155, 166 n.36 (Alaska 2002)).  Here, the policy language clearly and unambiguously includes Mr. Weilbacher's loss of society claim within the "each person" UIMBI policy limit paid to Heidi Weilbacher for her wrongful death (bodily injury).  In fact, Progressive paid the full UIMBI policy limit to the Estate of Heidi Weilbacher, Mr. Weilbacher, and Ms. Mauro for this reason.  See Exhibit C at 29.


Mr. Weilbacher's reliance on State Farm Mut. Auto. Ins. Co. v. Lawrence, 26 P.3d 1074, 1078 (Alaska 2001), and Allstate Ins. Co. v. Teel, 100 P.3d 2, 5 (Alaska 2004), for the proposition that he is entitled to a second, separate "each person" UIMBI policy limit is misplaced.  See Opposition at 6-7. Lawrence and Teel both involved parents' NIED claims.  Id. at 1076.  They did not involve claims for loss of consortium or loss of society.  Mr. Weilbacher is not making a NIED claim in this case.  Mr. Weilbacher specifically admitted in responses to Requests for Admission that he is not making a claim for NIED

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for Summary Judgment
Page 3 of 27

and that his claim is solely for loss of society under
AS 09.15.010.[1]  See Exhibit E at RFA#1 & 2.

In a footnote, Mr. Weilbacher also attempts to
discredit and avoid this court's prior, controlling opinion in
Government Employees Ins. Co. v. Encelewski, 1995 U.S. Dist.
LEXIS 1107 (D.Alaska 1995).  See Opposition at 7 n.1.
Mr. Weilbacher attempts to argue that the holding in Encelewski
is not controlling because it rejected the holding of Crabtree
v. State Farm Ins. Co., 632 So.2d 736 (La. 1984).  This is the
only case cited by Progressive that Mr. Weilbacher attempts to
distinguish and his attempt fails.  The Alaska Supreme Court
cited and quoted Crabtree favorably in the Lawrence decision
with regard to separate "each person" policy limits for NIED
claims.  Both Crabtree and Lawrence involved NIED claims.  On
the other hand, Encelewski involved both a NIED claim and a loss
of society claim.  With regard to the NIED claim, the Encelewski
court recognized that her NIED claim with physical manifestation
was a separate bodily injury, as in Crabtree and as the Alaska
Supreme Court subsequently determined in Lawrence.  Id. at *14.
On the other hand, with regard to the loss of society claim --
the claim actually at issue in this case -- the Encelewski court
recognized the exact opposite.  The court stated,

---

[1]  In fact, Mr. Weilbacher cannot meet the elements of a NIED claim under
Alaska law.  See Beck v. Dep't of Transp. & Public Facilities, 837 P.2d 105
(Alaska 1992); Mattingly v. Sheldon Jackson College, 743 P.2d 356 (Alaska
1987).

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 4 of 27

> The majority of courts have held that a loss of society or loss of consortium claim is not a "bodily injury."
>
> This court holds that reasonable parties would not understand or interpret the term "bodily injury" or "injury to the person" to include a loss of consortium.  Such a claim does not involve an injury to the body.

Id. at *10-11 (citations omitted).  Thus, Encelewski is entirely consistent with Crabtree and Lawrence with regard to NIED claims.  However, Mr. Weilbacher's claim is not an NIED claim.  Mr. Weilbacher's claim is for loss of society.  Under Encelewski, a loss of society claim is not "bodily injury" and is included within the "each person" policy limit with the underlying "bodily injury."

In fact, the clear majority of cases which have considered this issue have agreed that loss of society claims are not "bodily injury" but, rather, derivative to the original bodily injury claim and properly included within the "each person" policy limit.

> A person who has lost the society, companionship, and services of his or her spouse has sustained a personal injury.  This loss, although tangible, real, and compensable, is not a bodily injury within the commonly accepted meaning of that term.

Lampton v. United Servs. Auto. Ass'n, 835 P.2d 532, 534 (Colo. Ct. App. 1992).  "The claims of the physically injured spouse and plaintiff's derivative loss of consortium claim must be combined within the single "each person" recovery limit."  Id.

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 5 of 27

> Under policies fixing a maximum recovery for 'bodily'
> injury to one person, it has usually been held that
> the limitation was applicable to all claims of damages
> flowing from such bodily injury, and that therefore it
> is immaterial that some part of the damages may be
> claimed by a person other than the one suffering the
> bodily injuries.

Keene v. Travelers Indem. Co., 73 F.Supp. 638, (W.Dist.Va. 1999)

(quoting *Construction and Application of Provision in Liability

Policy Limiting Amount of Insurer's Liability to One Person*, 13

A.L.R.3d 1228, 1234 (1967)).  See Creamer v. State Farm Mut.

Auto. Ins. Co., 161 Ill. App. 3d 223 (Ill. App. 1987) ("Loss of

consortium is a personal rather than a bodily injury and is

generally included and subject to the policy limitations for

bodily injury to one person."); GEICO v. Fetisoff, 958 F.2d

1137, 1142 (D.C. Cir. 1992) ("the limitation of liability

provision is unambiguous, and [plaintiff's] loss of consortium

claim is encompassed by the "each person" limitation"); Illinois

Farmers Insurance Company v. Urszula Marchwiany *et al.*, Docket

No. 101598, *4 (Ill. Sept. 21, 2006) (DE#99) ("the policy

unambiguously provided that the per-person limit of liability

was the maximum payment required for all damages resulting from

bodily injury to an insured, including damages sustained by

other").


     Any other construction would also render the "each

accident" provision meaningless.  The "each accident" provision

specifically requires that two or more persons sustain bodily

injury in the same accident.  See Exhibit A at 100,383.

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 6 of 27

Mr. Weilbacher was in Kenai at the time of the accident.  See
Exhibit F.  Mr. Weilbacher could not and did not suffer any
"bodily harm, sickness, or disease" in the same accident as
Heidi.  Exhibit A at 100,358 & Exhibit J at 82:2-9 & 85:2-6.
See Fetisoff, 958 F.2d at 1142 (loss of consortium claim not
encompassed in the "each occurrence" limitation, because the
higher "each occurrence" limitation was triggered only when two
or more persons sustain bodily injury in the same accident).

> The limits of liability under the policy are neither
> affected nor contingent upon the number of causes of
> action that might accrue from one person's bodily
> injury.  Rather, the relevant contingency is the
> number of people who suffer bodily injury.

Gonzales v. Allstate Ins. Co., 21 P.2d 944, 947 (N.M. 1996).  In
other words, it is immaterial how many independent claims for
damages Mr. Weilbacher may have against the underinsured
tortfeasor.  Mr. Weilbacher did not suffer bodily injury in the
accident.  All of his independent claims stem from, are the
result of, and derive from, his daughter's death, and the policy
language controls.  As such, under the clear, unambiguous policy
language, his loss of society claim is included in the "each
person" UIMBI policy limit already paid.

Progressive does not understand how Mr. Weilbacher can
repeatedly misrepresent that the policy does not state "how or
why" his loss of society claim is derivative.  Progressive
recognizes that the word "derivative" is not a defined term in
the policy.  See Exhibit A.  In fact, most of the words in the

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 7 of 27

English language are not defined terms under the policy.
However, the policy clearly identifies that a loss of society
claim is derivative of — or derived from — Heidi's bodily
injury.  Under the LIMITS OF LIABILITY section of Part III, the
policy provides:

> The **bodily injury** Limit of Liability under this Part
> III for "each person" includes the total of all claims
> made for such **bodily injury** and all claims derived
> from such **bodily injury**, including, but not limited
> to, loss of society, loss of companionship, loss of
> services, loss of consortium, and wrongful death.[2]

Id. at 100,383.  Mr. Weilbacher's loss of society claim is
clearly and expressly included in the "each person" UIMBI policy
limit as a specific claim "derived from" Heidi's bodily injury.[3]


A person of average intelligence and experience would
read this for exactly what it is: the "each person" limit is the
most Progressive will pay for all damages due to bodily injury
to one person, including all loss of society claims derived from
such bodily injury.  Heidi Weilbacher is the only "insured
person" to have sustained bodily injury in the accident.
Mr. Weilbacher's loss of society claim under AS 09.15.010 is due
to the death of, or bodily injury sustained by, Heidi.

---

[2]  The fact that the original drafting history for this policy provision in
the model policy (not the Alaska policy) is no longer available does not lead
to any presumptions.  See Opposition at 16 n.3.  This is neither a case
involving intentional spoilation of evidence, nor a criminal defendant.
[3]  Notably, all of the claims listed in this provision (i.e., loss of society,
loss of companionship, loss of services, loss of consortium, and wrongful
death) are independent claims.  However, for purposes of Progressive's UIMBI
coverage under this policy, they are included within the "each person" policy
limit paid for the underlying bodily injury.

Case No. 3:05-cv-204-TMB    Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 8 of 27

Complaint at ¶VII.  Mr. Weilbacher's claim is clearly the result
of injury to another or "due to a bodily injury to one (1)
person" — Heidi.  The policy specifically states that the bodily
injury limit for "each person" includes the total of all claims
made for bodily injury to the one person, plus all claims
derived from such bodily injury.  As such, Mr. Weilbacher's
claim is subject to the same "each person" UIMBI policy limit as
Heidi's estate's claim.

        Mr. Weilbacher also fails to address in his Opposition
that the policy language at issue was approved by the State of
Alaska Division of Insurance ("DOI").  In order to approve the
policy language, the DOI must have determined that Progressive's
inclusion of loss of society claims in the "each person" UIMBI
policy limit paid for the underlying bodily injury did not
violate any aspect of Alaska's insurance law.  The DOI's
approval cannot be ignored.  The DOI's approval is entitled to
some deference, especially where the agency interpretation is
longstanding.  Government Employees Ins. Co. v. Graham-Gonzalez,
107 P.3d 279, 286 (Alaska 2005).  As Nationwide Mut. Ins. Co. v.
Cummings, No. A83-533 Civil (D.Alaska 1984) (Exhibit G), aptly
demonstrates, the DOI has been approving language like
Progressive's with the same results for a long time.

        The fact that Mr. Weilbacher has an independent cause
of action under AS 09.15.010 for loss of society as a result of

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 9 of 27

his daughter's death does not mean he is automatically entitled to a separate "each person" policy limit of UIMBI coverage. Mr. Weilbacher's claim is controlled by the policy language. Under the clear, unambiguous policy language, Mr. Weilbacher's claim is subject to the "each person" UIMBI policy limit already paid.  Thus, Progressive did not breach the insurance contract by declining to pay him a second "each person" UIMBI policy limit for his loss of society claim.

        B.   <u>Mr. Weilbacher's policy is void *ab initio*</u>.

      As a preliminary matter, Progressive does not believe the court needs to reach this alternative argument.  As set forth above, the unambiguous policy language controls and Mr. Weilbacher is not entitled to another, separate "each person" policy limit of UIMBI coverage.  However, in the event the court decides to reach this issue, Mr. Weilbacher's opposition is wholly without merit and misrepresents information in an attempt to mislead the court from the true issue — that Mr. Weilbacher's omissions, misrepresentations, and false statements render his policy void *ab initio* under AS 21.42.110.

      First, and contrary to Mr. Weilbacher's misrepresentations, the DOI <u>never</u> "prohibited" Progressive from rescinding a policy as void *ab initio* when there are misrepresentations, omissions, and incorrect statements of fact

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 10 of 27

on the application.  See Opposition at 28.  For this novel
proposition, Mr. Weilbacher relies on two letters from the DOI
produced as Exhibit 24, regarding amendments to the language in
Progressive's ProRater Application — Form No. 3645 (3/97) AK as
DOI Filing 26007.[4]  However, Mr. Weilbacher's application clearly
states that it is a Form No. 1211 AK (01/99) and the policy at
issue is DOI Filing 25405.  Exhibit I at 6 & Exhibit R.  Thus,
the documents in Exhibit 24 have nothing to do with either the
policy or application at issue in this case.[5]

Additionally, the letters provided in Exhibit 24 do not
stand for the proposition advocated by Mr. Weilbacher and, even
if they did, are countermanded by current Alaska Statute and
case law.  In these 1998 letters, the DOI expressed its concerns
regarding potentially denying coverage for permissive drivers
with regard to language in an old Progressive application form.
Exhibit 24 at 1.  However, the DOI, specifically noted that

---

[4] According to the facsimile stamp at the top of each page, plaintiff's
attorney received the documents in Exhibit 24 from the Division of Insurance
on May 15, 2007 and May 21, 2007.  Not only were these documents (regarding an
unrelated filing) obtained well after the close of discovery, but they were
also never produced to Progressive.  Progressive wonders what other documents
plaintiff's attorney has intentionally and wrongfully withheld, especially
since page 2 of Exhibit 24 indicates that it is page 2 of 13.

[5] Mr. Weilbacher argues that Progressive acted in bad faith by failing to
disclose these irrelevant documents.  Opposition at 30.  Putting aside the
basic fact that bad faith must occur in the claims handling process prior to
litigation, Progressive produced the entire DOI file received directly from
the DOI regarding the actual policy at issue, DOI Filing 25405.  Progressive
did not obtain — and obviously neither did Mr. Weilbacher — the DOI filing
with regard to the application actually filled out by Mr. Weilbacher, Form No.
1211 AK (01/99).

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 11 of 27

Progressive had already "addressed the case of fraud, omission and misrepresentation in the applicant's statement." Id. In other words, the DOI was not concerned with the specific issue in this case — omissions and misstatements in the application — since Progressive had properly addressed that issue. Id. Also, contrary to Mr. Weilbacher's assertions, Progressive did not remove any wording regarding voiding a policy. Progressive reworded a clause in its old application form to change a reference to a denial of coverage to a reference to policy cancellation in the event of nondisclosure of information. Id. at 2. Nothing whatsoever was discussed or revised regarding voiding a policy *ab initio*. Id.

Mr. Weilbacher's novel assertion is also directly contrary to AS 21.42.110 and the Alaska Supreme Court's unanimous decision in Bennett v. Hedglin, 995 P.2d 668 (Alaska 2000), decided two years after the letters produced. It is axiomatic that a (misapplied and misinterpreted) letter from the DOI cannot overrule an Alaska Statute or a subsequent, unanimous decision of the Alaska Supreme Court. Thus, even if the DOI somehow "prohibited" Progressive from rescinding a policy as void *ab initio* in 1998 (which it did not), the Alaska Supreme Court "overruled" this alleged opinion in 2000 in Bennett based on the authority of AS 21.42.110. As the court in Bennett stated,

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for Summary Judgment
Page 12 of 27

> The legislative history and the statutory
> framework reveal no evidence that the legislature
> intended to abrogate [the common law remedy of
> rescission]. In fact, statutory language added at the
> same time as AS 21.36.210 and AS 21.36.220
> specifically contemplates rescission as a remedy. The
> cancellation provisions in AS 21.36.210 and
> AS 21.36.220 do not exclude the remedy of rescission,
> but rather protect policy holders by limiting the
> grounds and immediacy of cancellation. Other courts
> have construed analogous statutory provisions
> addressing cancellation due to fraud and material
> misrepresentation as preserving the insurer's right to
> rescission, at least with respect to claims made by
> the insured and not by innocent third parties. We
> agree with this approach and construe AS 21.42.110 to
> codify the availability of rescission as a remedy.

Bennett, 995 P.2d at 673. Thus, it is immaterial what

Mr. Weilbacher believes the DOI informed Progressive about back

in 1998, since the letters involve unrelated filings and because

in 2000 the Alaska Supreme Court affirmed that AS 21.42.110

codifies the insurer's remedy of rescission for omissions,

misrepresentations, and false statements on an insurance

application.

    Second, Progressive's disclosures in this case

demonstrate that Progressive "knew," based primarily on

Mr. Weilbacher's statements in his February 20, 2002 interview,

that Heidi resided with her mother during the school year and

with him during the summer, such that she was a resident of his

household at the time of the accident. See Exhibit F at 100002-

100003 & Exhibit D at 100043. Progressive thus relied, to its

detriment, on Mr. Weilbacher's interview statements in

determining there was UIMBI coverage under the policy for Heidi

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 13 of 27

as a "relative."  See Exhibit B at 100302-100304.  It was not
until Mr. Weilbacher's deposition that Mr. Weilbacher admitted
under oath that he had omitted in his application (and should
have disclosed) that Heidi, who was then over age 14, resided
with him at the time of the application.  Exhibit J at 20:5-7,
20:19-23, 21:1-6, 22:23-23:5, & 32:22-33:6.[6]


     Mr. Weilbacher tries to avoid his omissions and
misrepresentations of Heidi as a resident of his household by
blaming it on his insurance agent, claiming the insurance agent
knew his daughter and that he simply initialed where he was
told, and by now claiming he did not understand the questioning
at his deposition.  See Opposition at 33.  However,
Mr. Weilbacher's attempt to avoid the ramifications of his
actions — his failure to ensure that his policy application was
correct - is not a viable excuse and is without merit.

> In the absence of proof of fraud, <u>failure to
> read [the contract] is an unavailing excuse
> or defense and cannot justify an avoidance,
> modification or nullification of the
> contract or any provision thereof.</u>

<u>Standard Venetian Blind Co. v. Am. Empire Ins. Co.</u>, 503 Pa. 300,

305 (Pa. 1983) (internal citations and quotation omitted)

_____

[6]  Although unrelated to any issue in this case, Mr. Weilbacher blatantly
misrepresents Mr. Withers' October 25, 2002, 2729 Report.  Opposition at 32;
DE#83 Ex. 20.  This report was <u>not</u> prepared for Guess & Rudd, but almost three
<u>years</u> before Guess & Rudd was retained.  In fact, if Mr. Weilbacher's
misrepresentations had been true the report would have been redacted and never
produced.  Also, the report does <u>not</u> state that Mr. Weilbacher "had coverage"
or that "Progressive was responsible for paying" him.  The report speaks for
itself.

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 14 of 27

(emphasis added).  In fact, even where the insurance <u>agent</u>
<u>deliberately</u> omits relevant information from the application,
"there can be no recovery on the policy where the insured,
failing to read the application, affirms the accuracy of the
statements therein contained."  <u>Campbell v. The Equitable Life</u>
<u>Assurance Soc'y</u>, 1995 U.S. App. LEXIS 24658, *4 (6th Cir. 1995)
(citing <u>Montgomery v. Reserve Life Ins. Co.</u>, 585 S.W.2d 620
(Tenn. Ct. App.), <u>cert</u>. <u>denied</u>, (Tenn. 1979)).

> If a party, who can read . . . will not read
> a deed put before him for execution; or if,
> being unable to read, will not demand to
> have it read or explained to him, he is
> guilty of supine negligence, which . . . is
> not the subject of protection, either in
> equity or at law.

<u>McKenna v. Metropolitan Life Ins. Co.</u>, 126 Fed. Appx. 571, 575
(3d Cir. March 30, 2005) (quoting Chief Justice John Bannister
Gibson in <u>Greenfield Estate</u>, 14 Pa. 489, 496 (1850)).


    Mr. Weilbacher claims that he did not review his policy
application before signing it.  As he admits now, he simply
initialed and signed where his agent told him to, affirming the
accuracy of all the statements in the application.  <u>See</u> Exhibit
J at 21:5-6 & 37:12-15  Mr. Weilbacher also did not ask for
clarification of the questions at his deposition from either Mr.
Zipkin, who was conducting the deposition, or his own attorney,

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 15 of 27

who was present at the deposition.[7]  Mr. Weilbacher is guilty of
supine negligence, which does not excuse his omissions.

Third, Mr. Weilbacher's procedural attack against
Progressive for raising his now-revealed material omissions and
misrepresentations is specious.  See Opposition at 34.
Progressive was unaware that Mr. Weilbacher had made omissions,
misrepresentations, and false statements on his application
until he admitted to such at his deposition on August 21, 2006.[8]
Until then, Progressive had no reason not to believe
Mr. Weilbacher's February 20, 2002 interview statements that
Heidi resided with her mother during the entire school year.
See Exhibit B at 100302-100304.  Very soon thereafter, in order
to comply with the court's filing deadlines, Progressive filed
its Alternate Motion for Summary Judgment, raising this legal
argument.  In other words, Progressive promptly raised a
legitimate legal argument in defense of Mr. Weilbacher's claims
following discovery of the basis for that defense.
Mr. Weilbacher has now known of this argument and Ms. Pfeifer's

---

[7]  Mr. Weilbacher's novel assertion that Mr. Zipkin should have made him
explain his prior statement that Heidi attended Diamond High School is very
curious.  First, Mr. Zipkin has no obligation to ask any question of
Mr. Weilbacher at a deposition.  Second, if Mr. Weilbacher's statement was
confusing, his attorney had the obligation and opportunity to ask clarifying
questions; he did not bother.  Third, it is immaterial.  The fact that Heidi
attended Diamond High School in 2002 is meaningless as to where she was
residing on December 21, 2000 when Mr. Weilbacher signed and submitted his
application.
[8]  As the court will recall, Mr. Weilbacher's deposition was taken after the
close of discovery because he refused to cooperate on a deposition date before
the close of discovery.  See DE#43 at 7-9 & DE#56 Ex. E.

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 16 of 27

affidavit for over nine months and done nothing.[9]  Since Mr.
Weilbacher's omissions, misrepresentation, and false statements
are now known — he admitted to them at his deposition — the
question of whether his policy is void *ab initio* pursuant to
AS 21.42.110 is a legal question appropriately raised in summary
judgment proceedings.

Mr. Weilbacher admitted under oath at his deposition
that he provided false and misleading responses to two of the
application's underwriting questions.  Since Progressive would
not have issued the policy at the same premium had it known the
true facts, the policy is void *ab initio* and Mr. Weilbacher is
prevented from recovering anything under the policy, entitling
Progressive to summary judgment on all of Mr. Weilbacher's
claims against it as matter of law.

### C.  Mr. Weilbacher's claims for bad faith and punitive damages fail as a matter of law.

First, it is apparent that Mr. Weilbacher does not
understand the difference between breach of the insurance
contract and insurance bad faith.  <u>See</u> Opposition at 36.  These
are separate and distinct claims.  Breach of contract is simply

---

[9]  Contrary to Mr. Weilbacher repeated misrepresentations, Progressive
produced the entire DOI file that it received from the DOI with regard to the
actual policy at issue (DOI Filing 25405).  As noted above, it is
Mr. Weilbacher who requests information from the DOI (albeit irrelevant
information) and then intentionally withholds it from discovery.

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 17 of 27

the failure for any reason to pay benefits owed under the contract, and the remedy is payment of the benefits owed. It is the breach of the covenant of good faith and fair dealing implied in every contract of insurance that potentially gives rise to the tort of insurance bad faith in the first-party context. See State Farm Fire & Cas. Co. v. Nicholson, 777 P.2d 1152, 1156 (Alaska 1989) ("[I]n the first-party context, an insured's cause of action against an insurer for breach of the duty of good faith and fair dealing sounds in tort."). It is not the breach of the contract alone that gives rise to the tort claim for bad faith. "The tort of bad faith arises when the insurance company intentionally denies, fails to process, or pay a claim without a reasonable basis for such action." Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1324 (Alaska 1993) (quoting Noble v. National American Life Insurance Co., 624 P.2d 866, 868 (Ariz. 1981)). Hence, there can be no claim for bad faith when an insurer has properly denied a claim or where the insurer had a reasonable basis for its denial, even if the denial itself turns out to be incorrect. See e.g. T.G.S. Transp., Inc. v. Canal Ins. Co., 2007 U.S.App. LEXIS 520, *2 (9th Cir. Jan. 8, 2007) (affirming summary judgment on bad faith claim in favor of insurer since denial of coverage, though erroneous, was not unreasonable).

As discussed above, Progressive did not breach the insurance contract when it denied Mr. Weilbacher a second,

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 18 of 27

separate "each person" UIMBI policy limit for his loss of
society claim.  Additionally, even in the unlikely event the
court were to determine that Progressive breached the insurance
contract, Progressive's denial was not unreasonable.

In his Opposition, Mr. Weilbacher persists in his
illusion that Progressive offered no reason why it denied his
claim for a second, separate "each person" UIMBI policy limit.[10]
Opposition at 35.  Mr. Weilbacher ignores Progressive's
reliance on its clear, unambiguous policy language.  See e.g.
Exhibit D at 100030.  The policy specifically provides that the
UIMBI policy limit for "each person" includes claims for "loss
of society, loss of companionship, loss of services, loss of
consortium."  Exhibit A at 100,383.  Progressive promptly and
properly denied Mr. Weilbacher's request for a second "each
person" UIMBI policy limit based on its prior payment of a full
"each person" UIMBI policy limit to Mr. Weilbacher, the Estate
of Heidi Weilbacher, and Cathy Mauro.  See Exhibit C at 100062.

Mr. Weilbacher also challenges Progressive's reliance
on the advice of attorney Dan Quinn.[11]  See Opposition at 39.

---

[10]  Mr. Weilbacher also persists in intentionally mischaracterizing
Progressive's discovery responses regarding the drafting history of the
relevant policy provision.  Progressive did not claim the documentation had
been "lost," see Opposition at 36; Progressive simply stated it did not have
any such documentation.
[11]  Mr. Weilbacher is well aware that Progressive did not wait and raise the
defense of advice of counsel at "the eleventh hour," but in fact raised it
immediately after waiving the attorney-client privilege for the conversations

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 19 of 27

Progressive fully acknowledges that Mr. Quinn did not specifically advise Mr. Withers on whether or not to deny Mr. Weilbacher's second claim.  Mr. Quinn provided advice to Mr. Withers/Progressive regarding Mr. Weilbacher's attorney's misinterpretation of the <u>Teel</u> decision and whether a loss of consortium claim is generally controlled by the policy language and included within the same "each person" limit as the wrongful death claim.  Exhibit N at 58:16-59:12, 58:16-59:12, & 59:23-60:2; Exhibit S at 16:9-14 & 13:7-9.  There is no requirement — and Mr. Weilbacher provides none - that Progressive's discussion with counsel must be long and drawn out or that counsel must opine on the ultimate issue in the case.  Progressive contacted counsel for an opinion on discrete issues and then reasonably and in good faith relied on the advice of counsel in making its ultimate determination not to pay Mr. Weilbacher another, separate "each person" UIMBI policy limit.

Mr. Weilbacher's reliance on <u>Szumigala v. Nationwide Mut. Ins. Co.</u>, 853 F.2d 274 (5th Cir. 1988), regarding advice of counsel is misplaced.  As the court in <u>Szumigala</u> recognized, "'An insurance company's good faith reliance on advice of counsel negates allegations of bad faith.'"  <u>T.G.S. Transp.</u>, 2007 U.S. App. LEXIS 520, *3 (quoting <u>State Farm Mut. Auto. Ins. Co. v. Super. Ct.</u>, 228 Cal.App.3d 721, 725 (Cal. Ct. App.

---

between Mr. Withers and Mr. Quinn as an accommodation to Mr. Weilbacher's attorney.  <u>See</u> DE#152.

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for Summary Judgment
Page 20 of 27

1991)).  The court then determined that the insurer's reliance
is risky where "through verbal sleight of hand, the advising
attorney concocts an imagined loophole in a policy whose plain
language extends coverage."  Szumigala, 853 F.2d at 282.  This
is clearly not the case here.  Progressive reasonably relied, in
good faith, on the advice it received from Mr. Quinn when making
its ultimate determination to deny Mr. Weilbacher's demand for a
second per person limit.

     Additionally, and as the T.G.S. Transp. court noted,
"[t]he fact that other courts have interpreted the law in the
same manner as did the insurer . . . is certainly probative of
the reasonableness, if not necessarily the ultimate correctness,
of an insurer's position."  T.G.S. Transp., 2007 U.S. App. LEXIS
520, *3 (quoting Morris v. Paul Revere Life Ins. Co., 109
Cal.App.4th 966, 976 (Cal. Ct. App. 2003)).  Progressive's
interpretation of the relevant provision is consistent with this
court's earlier opinions on this issue and numerous opinions
from other jurisdictions.  As such, Progressive acted reasonably
and correctly in declining to pay Mr. Weilbacher a second "each
person " UIMBI policy limit and Mr. Weilbacher's bad faith
claims fails as a matter of law.

     Mr. Weilbacher further fails to refute – thereby
admitting – that he did not suffer any compensable injury as a

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 21 of 27

result of the alleged breach of the covenant of good faith and
fair dealing.  It is axiomatic that Mr. Weilbacher must actually
suffer some form of injury or harm resulting in compensable
damages as a result of Progressive's alleged breach of the
covenant of good faith and fair dealing (not the breach of
contract) in order for his bad faith claim to be actionable.
See <u>Talmadge v. State Farm Mut. Auto. Ins. Co.</u>, 1997 U.S. App.
LEXIS 3114 (10th Cir. 1997).  Not only did Progressive do
nothing wrong as a matter of law, but Mr. Weilbacher did not
suffer any injury or harm as a result of Progressive's actions.
He did not suffer any additional emotional distress.  He did not
suffer any physical injury.  He did not suffer any economic
loss.  Progressive's decision to decline to pay him an
additional "each person" UIMBI policy limit did not cause
Mr. Weilbacher any separate harm or injury other than the amount
of that separate limit.  As in <u>Talmadge</u>, "Inasmuch as the record
reveals no substantial damages, either physical or economic, in
addition to emotional distress, [Mr. Weilbacher's] claim fails."
<u>Talmadge</u>, 1997 U.S. App. LEXIS 3114, *10.

        Finally, Mr. Weilbacher cannot recover punitive damages
in this action as a matter of law because his bad faith claim
fails as a matter of law and because Progressive's conduct does
not rise to the level of outrageous and malicious conduct
necessary to support punitive damages.  In his Opposition,
Mr. Weilbacher wholly fails to address how Progressive's conduct

Case No. 3:05-cv-204-TMB  <u>Weilbacher v. Progressive Northwestern Ins. Co.</u>
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 22 of 27

in this matter rises to the level of intentional, outrageous, and malicious conduct necessary to support an award of punitive damage.  Personal attacks on Progressive's counsel for having friendly relations with an expert witness, or for questions posed to plaintiff during his deposition (all of which were appropriate) clearly do not supply the elements of a punitive damages case and do not merit further discussion.

There is absolutely nothing to support an award of punitive damages in this case.  "To support punitive damages, the wrongdoer's conduct must be 'outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.'"  Nicholson, 777 P.2d at 1158 (internal quotation omitted).  See also AS 09.17.020(b); State Farm Mut. Auto. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992) (quoting Alyeska Pipeline Serv. Co. v. O'Kelley, 645 P.2d 767, 774 (Alaska 1982)).

Here, Mr. Weilbacher's bad faith claim is based solely on Progressive's decision to decline to pay a second, separate "each person" policy limit of UIMBI coverage.  Complaint at ¶IX; Exhibit M at 1.  There are no allegations -- much less supporting facts -- that Progressive acted outrageously, maliciously, or with any bad motive or reckless indifference.  An insurer's decision to deny a claim on the basis of its clear and unambiguous policy language and a reasonable, good faith reliance on advice of counsel consistent with prior case law from this court and other jurisdictions does

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 23 of 27

not rise anywhere close to the level of conduct necessary to support a punitive damages award as a matter of law.

### Conclusion[12]

There are no genuine issues of material fact and Progressive is entitled to summary judgment on Mr. Weilbacher's claims as a matter of law.  Additionally, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  Arpin v. Sanat Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001).

Based on the Progressive policy's clear and unambiguous language, Mr. Weilbacher's loss of society claim is specifically included in the "each person" policy limit Progressive has already paid.  He is simply not entitled to a second, separate "each person" UIMBI policy limit.  As in Lampton, the court should "refuse to hold [Progressive] liable 'beyond the scope of risks which have been clearly covered in the insurance policy.'" Lampton, 835 P.2d at 534 (quoting Martinez v. Hawkeye-Security Ins. Co., 576 P.2d 1017 (Colo. 1978).

---

[12]  Mr. Weilbacher's Opposition is replete with intentional misrepresentations and mischaracterizations of facts and events.  Progressive addressed herein the most egregious of such misrepresentations, but in no way countenances any other "statements" by Mr. Weilbacher that it did not specifically address.

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 24 of 27

In addition, and in the alternative, pursuant to AS 21.42.110, Mr. Weilbacher's policy is void *ab initio* due to his admitted material misrepresentations, omissions, and incorrect statements on his insurance application.  Furthermore, Mr. Weilbacher cannot prevail on his bad faith claim as a matter of law because: (1) Progressive properly denied his claim based on the policy language; (2) Progressive had a reasonable basis for denying his claim based on the policy language, the advice it received from attorney Dan Quinn, and prior case law interpreting similar insurance provisions from this court and other jurisdictions; and (3) Mr. Weilbacher has not demonstrated that he suffered any (additional) compensable injury or damages as a proximate result of Progressive's denial of his claim. Finally, Mr. Weilbacher is not entitled to recover punitive damages because Progressive's conduct clearly does not rise to the level of outrageous or malicious conduct necessary to support punitive damages under Alaska law as a matter of law.

DATED at Fairbanks, Alaska, this 12th day of June, 2007.

GUESS & RUDD P.C.
Attorneys for Progressive
Northwestern Insurance Company

By:      /s/Aisha Tinker Bray
Guess & Rudd P.C.
100 Cushman Street, Suite 500
Fairbanks, Alaska 99701
Phone: 907-452-8986
Fax:   907-452-7015
Email: atbray@guessrudd.com
Alaska Bar No. 9505028

Case No. 3:05-cv-204-TMB  Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 25 of 27

CERTIFICATE OF SERVICE

I hereby certify that on the
12th day of June, 2007, a copy
of the foregoing document was served
electronically on:

Kenneth A Legacki, Esq.

A Chambers Copy was also mailed
to the court pursuant to D.AK.LR 10.1(b).

Guess & Rudd P.C.

By:      /s/Aisha Tinker Bray

Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.
Progressive's Reply to Plaintiff's Opposition to Progressive's Motion for
Summary Judgment
Page 26 of 27

Table of Exhibits

| Exhibit | Description |
|---|---|
| R | First page of August 24, 1999 letter showing DOI approval for DOI Filing 25405 — Alaska Form No. 9607 (08/99) |
| S | Transcript of May 31, 2007 Deposition of Dan Quinn |

Table of Exhibits - Progressive's Reply to Plaintiff's Opposition to
Progressive's Motion for Summary Judgment
Case No. 3:05-cv-204-TMB   Weilbacher v. Progressive Northwestern Ins. Co.